Jay S. Berke (JB 6500)
A Member of the Firm
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BLACKROCK, INC.,                                  :

                          Plaintiff,              :          ___ Civ. _____

                                                  :
         - against -                              :
                                                  :          **COMPLAINT**
SCHRODERS PLC.                                    :

                          Defendant.              :

                                                  :
                                                  :
                                                  :
                                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff BlackRock, Inc. ("BlackRock"), as and for its Complaint against

Defendant, Schroders plc ("Schroders"), alleges upon knowledge with respect to its own

acts and upon information and belief with respect to all other allegations herein, as

follows:

## INTRODUCTION

1.  Plaintiff BlackRock, a Delaware corporation headquartered in the

Southern District of New York, and Defendant Schroders plc, a foreign company which

is regularly doing and transacting business in the United States, including substantial

business within the Southern District of New York, are direct global competitors in the multi-billion dollar highly competitive business of asset management. Mr. Achim Küssner ("Mr. Küssner") was a member of BlackRock's Account Management Group and Head of BlackRock's institutional and retail businesses in Germany and Austria. He was also a Managing Director of BlackRock and BlackRock (Deutschland) GmbH ("BlackRock Germany"). As Head of the Frankfurt, Germany Office he supervised six directors and twenty-three additional employees, engaged in marketing asset management services or supporting activities, in the Frankfurt Office. Suddenly, on March 5, 2007, Mr. Küssner resigned. His resignation as a Managing Director of BlackRock and BlackRock Germany was made effective immediately, but Mr. Küssner continues to be on "garden leave" through June 30, 2007. Virtually simultaneously, during the period of March 8, through March 12, 2007, five additional employees, including three of the six Directors in BlackRock Germany's Frankfurt Office also resigned, and on March 12, 2007, Schroders Germany issued a press release announcing that Mr. Küssner would be assuming the position as Country Head of Schroders Germany.

2.   BlackRock has discovered e-mails and other documents showing that during the period from approximately December, 2006 to the date of his resignation, Mr. Küssner, who was contractually bound to BlackRock by covenants prohibiting him from soliciting employees of BlackRock and its affiliates, including BlackRock Germany, to leave their employment, and by covenants prohibiting him from disclosing BlackRock's confidential information to third parties, and who, as a Managing Director of BlackRock and BlackRock Germany, owed fiduciary duties of loyalty and fidelity to BlackRock and

2

its affiliates, had been and was blatantly violating those contracts and duties through a deceptive and secretive scheme, and was induced to commit those violations and aided and abetted in doing so by Defendant Schroders. Indeed, the e-mails show that Mr. Küssner and Defendant Schroders acted in concert to solicit and entice a team of key employees to resign from BlackRock Germany and join Defendant Schroders.

3.   Mr. Küssner and the other five BlackRock Germany employees he actively and improperly solicited away from BlackRock through this deceptive and secretive scheme, in breach of his contractual restrictive covenants and fiduciary duties, will begin working for Defendant Schroders in Germany on July 1, 2007. Defendant Schroders has knowingly and intentionally acted to deplete BlackRock's human resources at BlackRock Germany, and to obtain and use for defendant's own advantages BlackRock's confidential information about its operations, compensation and employees. Defendant has demonstrated its intent to induce and interfere with the contracts and fiduciary duties between Mr. Küssner, on the one hand, and BlackRock and BlackRock Germany, on the other hand. Mr. Küssner has shown his intent to violate these obligations as encouraged and induced to do by Defendant Schroders.

4.   Indeed, Mr. Küssner has repeatedly refused to give BlackRock any assurance that he will honor his obligations under the BlackRock, Inc. Confidentiality and Employment Policy which he executed on September 29, 2006 when he accepted the BlackRock companies' offer to become a Managing Director. Instead, he has specifically contended to BlackRock that his restrictive covenants were not binding upon him, effectively repudiating his agreements and clearly demonstrating that he intends to solicit

3

further employees away from BlackRock and BlackRock Germany and to utilize and disclose BlackRock confidential information to Defendant Schroders.

5. Defendant Schroders is now, and unquestionably will be, controlling Mr. Küssner's actions and Mr. Küssner has blatantly refused to agree to comply with his obligations to BlackRock.

6. Defendant Schroders has tortiously interfered with BlackRock's contractual rights and Mr. Küssner's contractual duties to BlackRock and his fiduciary duties of loyalty and fidelity and will continue to do so and continue to gain an unfair competitive advantage over BlackRock, and to irreparably injure BlackRock through, among other things, continually acting in concert with Mr. Küssner and causing and utilizing him to breach his covenants and to lure away and deplete the ranks of BlackRock and BlackRock Germany employees and to utilize BlackRock's confidential information, unless this Court preliminarily enjoins and ultimately issues a permanent injunction to prohibit Defendant Schroders from permitting Mr. Küssner to commence his employment with Schroders Germany for a reasonable period of time and to prohibit Defendant Schroders from inducing or accepting Mr. Küssner's breaches of his contractual and fiduciary duties to refrain from soliciting BlackRock employees or disclosing BlackRock confidential business information.

7. Accordingly, this action seeks to obtain first this Court's order establishing and authorizing BlackRock to immediately engage in a limited period of expedited discovery, and prior to July 1, 2007, to obtain this Court's preliminary

4

injunction prohibiting Defendant Schroders' improper employment of Mr. Küssner and from interfering with his contracts and duties to BlackRock.

8.    Thereafter, upon a full jury trial of these issues, Plaintiff seeks to obtain a permanent injunction prohibiting such continued tortious interference with contract and fiduciary duty by Defendant and a judgment for damages and punitive damages against Defendant Schroders.

## PARTIES

9.    Plaintiff BlackRock is a Delaware corporation and a public company listed on the New York Stock Exchange with its principal place of business located at 40 East 52nd Street, New York, New York 10022.  BlackRock is a global asset management firm with offices in 16 different countries throughout the United States, Europe, Asia, Australia and the Middle East.  A significant amount of BlackRock's assets under management are managed for investment clients of BlackRock's subsidiary, BlackRock Germany.  BlackRock's goodwill with shareholders, the markets, investors, clients, suppliers and employees, and its financial performance and the value of its shares publicly traded on the New York Stock Exchange are materially affected by the business and performance of BlackRock Germany and BlackRock's other subsidiaries and affiliates.  BlackRock manages assets on behalf of institutions and individuals worldwide through a variety of equity, fixed income, cash management and alternative investment products.

10. Defendant Schroders plc is a company of the United Kingdom with its principal place of business located in the United Kingdom at 31 Gresham St., London,

5

EC2V 7QA, England. Defendant Schroders plc is a global asset management firm which operates from 35 offices in 26 different countries across Europe, the United States, and Asia Pacific through subsidiaries and affiliates, including Schroders Germany. Defendant Schroders plc regularly does and transacts business at its primary U.S. address: 875 3rd Avenue, 22nd floor, New York, NY 10022-6225. Schroders is a direct global competitor of BlackRock in the multi-billion dollar highly competitive business of asset management. In reporting Schroders' financial results for the fiscal year ended 2002, Schroders' Chief Executive Officer, Michael Dobson reported that approximately 14% of its clients were based in the United States. According to press reports in 2004, Mr. Dobson publicly announced that Schroders has targeted the United States as a key target for the growth of its business. A significant amount of Defendant Schroders plc's more than $250 billion of assets under management are invested through exchanges located in the Southern District of New York, and/or invested in securities through trades and transactions occurring in the Southern District of New York, and/or are managed in, or managed and invested for clients located in, the United States, and more particularly, the Southern District of New York.

## JURISDICTION AND VENUE

11. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2). The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.

6

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because:

(A)    a substantial part of the events giving rise to the claims asserted herein occurred in this District, and/or

(B)    a substantial part of the property that is a subject of this action is situated in this District, and/or

(C)    the Defendant is presently subject to personal jurisdiction in this District pursuant to the standards of Sections 301 and 302 of the New York State Civil Practice Law and Rules because the Defendant has been and is doing and transacting business in this District or because the Defendant has committed one or more of the tortuous acts, which are the subject of this action, without the State, and has thereby caused and is causing injury to Plaintiff and Plaintiff's property within the State in which this District is located, and there is no District in which this action may otherwise be brought within the meaning of 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### BlackRock's Transaction With Merrill Lynch and Mr. Küssner's Employment With BlackRock Germany

13. On September 29, 2006, Merrill Lynch & Co., Inc. ("Merrill Lynch") contributed the entities and assets that constituted its investment management business, formerly named Merrill Lynch Investment Managers ("MLIM"), to BlackRock, Inc. and in exchange for this contribution, BlackRock, Inc. issued to Merrill Lynch shares of common stock and shares of Series A non-voting participating preferred stock (the

7

"Merrill Lynch Transaction"). This Merrill Lynch Transaction was negotiated and closed in New York.

14. Pursuant to the Merrill Lynch Transaction, Merrill Lynch Investment Managers (Deutschland) GmbH became BlackRock Germany. Thus, on September 29, 2006, Mr. Küssner was offered the opportunity to become an employee and Managing Director of BlackRock Germany and accepted this offer.

15. Also as a result of the Merrill Lynch Transaction and BlacRock's offer of employment, Mr. Küssner became the Head of BlackRock Germany's Frankfurt Office and was responsible for leading all activities (both retail and institutional) of BlackRock in Germany and Austria. Mr. Küssner managed all of the employees in BlackRock Germany's Frankfurt Office as well as all of those in the Munich Office.

16. Mr. Küssner's duties and responsibilities included management and marketing to retail and institutional investors and in the course of his employment, he regularly coordinated with BlackRock in New York on business transactions and matters affecting BlackRock Germany and BlackRock and periodically traveled to the United States for meetings and other BlackRock related business dealings in New York and was ultimately subject to BlackRock's supervision in New York.

17. In connection with the Merrill Lynch Transaction and in order to safeguard the goodwill and confidential information of the new entity, all former MLIM Germany employees, including Mr. Küssner, in accepting the offer of employment by BlackRock and in consideration therefore, agreed to sign and be bound by BlackRock's customary confidentiality and employment policy on September 29, 2006 (the

"Confidentiality and Employment Policy"). Thus, on September 29, 2006, Mr. Küssner

entered into the contractually binding Confidentiality and Employment Policy.

Covenants of this nature are common in the investment management business due to the

dependence on individual services and the highly confidential nature of the information

which is entrusted to its employees. A copy of the Confidentiality and Employment

Policy is attached hereto at Exhibit A.

### Mr. Küssner's Employment Covenants

18. By its express terms, the Confidentiality and Employment Policy, was

a contract between Mr. Küssner and Plaintiff BlackRock. All obligations under that

contract were owed directly to Plaintiff BlackRock and Plaintiff BlackRock is a party

and/or third party beneficiary of that contract. Accordingly, the Confidentiality and

Employment Policy was entitled the "BlackRock, Inc. Confidentiality and Employment

Policy" and specifically defined BlackRock, Inc. in Section I thereof, as also "including

any BlackRock affiliates and any predecessor firms such as Merrill Lynch Investment

Managers, LLC and its affiliates."

19. Section I of the Confidentiality and Employment Policy provides as

follows:

> BlackRock, Inc., including any BlackRock affiliates and
> any predecessor firms such as Merrill Lynch Investment
> Managers, LLC and its affiliates (hereinafter the
> "Company"), maintains a policy that all matters relating to
> the business of the Company are to be held in the strictest
> confidence and are governed by this Confidentiality and
> Employment Policy (this "Policy"). Any violations by an
> employee ("Employee") of the Company of this Policy may
> result in immediate dismissal and may subject the
> Employee to both criminal and civil liability and penalties.

Employees and former Employees of the Company (collectively "Employee(s)") may not, without the prior written consent of the Company, use, divulge, disclose, or make accessible to any other person, firm, partnership, corporation or other entity any Confidential Information (as defined below) pertaining to the business of the Company except (i) while employed by the Company, in the business of and for the benefit of the Company. . ..

For purposes of this Policy, "Confidential Information" shall mean any non-public information (whether oral, written or electronically stored) relating to the business or the affairs of the Company or of any client of the Company, whether obtained from the Company, any Client of the Company or known by the Employee as a consequence of or through Employee's relationship with the Company, whether obtained before or after the date Employee executes this Policy and whether obtained from an entity which was not a BlackRock affiliate at the time such information became available to Employee but which is now or later becomes a BlackRock affiliate. Such information includes but is not limited to non-public information concerning the financial data, strategic or financial plans, business plans, proprietary project information, marketing plans, future transactions (regardless of whether or not such transactions are executed), customer lists, employee lists, employees' salary and other compensation, partners' compensation, and other proprietary and confidential information of the Company or its clients, that, in any case, is not otherwise available to the public. Confidential Information includes information encompassed in drawings, designs, plans, proposals, reports, research, marketing and sales plans, financial information, costs, quotations, specification sheets and recording media. Confidential Information also includes information which relates directly or indirectly to the computer systems and computer technology of the Company, including but not limited to source codes, object codes, reports, flow charts, screens, algorithms, use manuals, installation and/or operation manuals, computer software, spreadsheets, data computations, formulas, techniques, databases, and any other form or compilation of computer-related information.

20. Section II.B of the Confidentiality and Employment Policy provides as follows:

<u>Non-Enticement of Employees</u>

An Employee shall not, during his or her employment and for a period of one (1) year following the termination of such employment, either on his or her own account or in conjunction with or on behalf of any other person, company, business entity or other organization whatsoever, directly or indirectly induce, solicit, entice, participate in or procure any person who is an Employee of the Company to leave such employment.

**Schroders Interference with Mr. Küssner's Contractual Covenant and<br>Fiduciary Duty Prohibiting the Solicitation of Employees to Leave BlackRock**

21. Since at least in December 2006, Defendant Schroders, knowingly, intentionally and willfully induced and aided and abetted conduct which blatantly violated Plaintiff BlackRock's contractual rights and Mr. Küssner's contractual obligations to Plaintiff BlackRock under the provisions of the Confidentiality and Employment Policy set forth above, which prohibit Mr. Küssner from enticing, inducing, influencing or soliciting any employee of BlackRock, including BlackRock Germany, to terminate his or her employment. Such conduct is also prohibited by Mr. Küssner's fiduciary duties of loyalty and fidelity and Defendant Schroders has likewise knowingly, intentionally and willfully induced and aided and abetted conduct which blatantly violates those duties.

22. As a result of Defendant Schroders' conduct, BlackRock Germany has lost its Managing Director and three of its six Directors. The five particular employees of BlackRock Germany who were solicited away from BlackRock Germany are Clemens

11

Bertram (Director), Robert Schlichting (Director), Joachim Nareike (Director), Melanie Katharina Stahl (Vice President), and Katja Wanke (Associate).

23. As established by e-mail and other documents, at least as early as December 6, 2006, Defendant Schroders retained, utilized and/or authorized the firm of Jamesbeck Global Partners, commonly referred to as a "headhunter," to act as Defendant Schroders' agent to fill a vacant position as Country Head of Schroders Germany. Ms. Kirsty McAlpine was the agent at Jamesbeck Global Partners who represented Defendant Schroders in this effort and who solicited and acted in concert with Mr. Küssner in an effort to induce him to accept an offer by Defendant Schroders to fill the position as Country Head of Schroders Germany.

24. According to the "Position Summary, Country Head, Germany," which Ms. McAlpine, on behalf of Defendant Schroders, furnished to Mr. Küssner, "Schroders Investment Management . . . a leading independent global asset manager providing specialist asset management services to institutional, retail and high net worth investors [had] [a]s at 31 December 2005 . . . £128.4 billion under management [and] a strong and established presence in Europe, Asia Pacific and the US, employing approximately 2,400 people in offices in over 20 countries [, with] [a]ll investment activities . . . managed within a single division with a strong commitment for delivering performance across markets and products."

25. Also according to the "Position Summary, Country Head, Germany," Defendant Schroders sought a candidate for this position, who, among other things, could

12

"[d]evelop and maintain strong understanding of demand and the competitor set for
Schroders in the German market and work to access and convert the new business
opportunity set." A copy of this document is attached hereto at Exhibit B.

26. As a result of this solicitation, direct discussions were held between
executives at Defendant Schroders and Mr. Küssner. E-mail correspondence indicates
that, on Friday, February 9, 2007, Mr. Küssner had five separate meetings with senior
executives of Defendant Schroders in London. These e-mails reserved one hour time
slots for Mr. Küssner to interview separately with Schroders' Chief Executive Officer,
Mr. Michael Dobson, with Schroders' Head of Human Resources for the Investment and
Distribution Group, Ms. Jayne Bayliss, with Schroders' Global Head of Distribution, Mr.
Massimo Tosato, with Schroders' Head of Investment, Mr. Alan Brown, and with
Schoders' Deputy Head of Distribution, Mr. John Troiano. Translated copies of these e-
mails are attached hereto at Exhibit C.

27. Subsequent e-mails from December 2006, and early 2007 indicate
that Defendant Schroders continued its secret discussions with Mr. Küssner over the
course of several months. Translated copies of these e-mails are attached hereto at
Exhibit D.

28. On repeated occasions, while employed by BlackRock Germany and
while Mr. Küssner should have been loyally fulfilling his fiduciary duties to BlackRock,
Mr. Küssner instead traveled to London for meetings with Defendant Schroders without
BlackRock's knowledge.

13

29. During the course of these negotiations, Defendant Schroders, through its agent Ms. McAlpine, discussed with Mr. Küssner the employment of additional BlackRock Germany employees that Mr. Küssner would bring with him to Defendant Schroders. These discussions included the topic of how compensation would be structured at Defendant Schroders for the BlackRock Germany employees whom Mr. Küssner was soliciting or would solicit.

30. By e-mail dated February 1, 2007 Ms. McAlpine informed Mr. Küssner of the bonus structure which Defendant Schroders was proposing to provide to the defecting BlackRock Germany team, as follows:

> Achim,
>
> as discussed. Bios to follow shortly.
>
> *          *          *
>
> The sales compensation structure pays the team 15% of gross new revenues in institutional in year 1, 7.5 % in year 2, 7.5 % in year 3; on retail 7.5 % of revenues on net sales in year one only plus a percentage of gross sales (1-4%) dependant on the longevity of the business in the previous year. And there is no cap.

A translated copy of this e-mail is attached hereto at Exhibit E.

31. Eager to clarify his own piece of this proposed compensation structure and how it related to the rest of the BlackRock Germany employees he was bringing to Defendant Schroders, Mr. Küssner in an e-mail dated February 1, 2007 at 8:38 PM, inquired of Ms. McAlpine whether the entire bonus pot also included the bonus for the Country Manager, as follows:

> The total number of the pot includes the bonus of the
> country manager or excluded?

A translated copy of this e-mail is attached hereto at Exhibit F.

32. Also during the course of these negotiations, Mr. Küssner made clear to Ms. McAlpine that, in contravention of Mr. Küssner's contractual covenants and his fiduciary duties of loyalty and fidelity, he was willing and able to target and provide information about BlackRock Germany employees he would solicit to leave their employment with BlackRock Germany. Thus, in an e-mail to Ms. McAlpine on February 5, 2007, Mr. Küssner stated:

> I could bring in contact names…
>
> By the way: To [sic] you need a great institutional sales for
> Nordic? I know somebody who is not happy …!
>
> Ms. McAlpine replied:
>
> Possibly, happy to talk to them if you want to put them in
> touch. If it's related to this, we can talk about it on Friday.
>
> Mr. Küssner answered back:
>
> There are some more: Global Head of Marketing, Fund
> Managers etc., etc.

A translated copy of this e-mail is attached hereto at Exhibit G.

33. Defendant Schroders further induced, aided and abetted Mr. Küssner's wrongful solicitation of BlackRock Germany employees by providing him with an organizational chart to be used for determining how the BlackRock Germany employees would be integrated into Defendant Schroders' organization.

15

34. Thus, by e-mail dated January 30, 2007, Mr. Gavin Ralston of Defendant Schroders transmitted, through Ms. McAlpine, an organization chart showing Schroders Germany's structure. This chart indicated, through use of the designation "TBA" (presumably, meaning "To Be Announced"), open positions at Schroders which would allow for the hiring of the employees of BlackRock Germany who, at that time, were Directors or other important marketing or support employees at BlackRock Germany, working under the direct supervision of Mr. Küssner as the Office Head of the Frankfurt Office. A translated copy of this e-mail is attached hereto at Exhibit H.

35. A few days later, on February 2, 2007, Mr. Küssner received from Mr. Ralston, transmitted through Ms. McAlpine, amended information relating to how the BlackRock Germany team might be compensated upon its arrival at Schroders. A translated copy of this e-mail is attached hereto at Exhibit I.

36. E-mail correspondence between Mr. Küssner and Mr. Joachim Nareike, BlackRock Germany's Director of Retail Business ("Mr. Nareike"), further establishes that Defendant Schroders actively worked through Mr. Küssner to arrange times to meet the team of defecting BlackRock Germany employees. With respect to such a meeting proposed by Defendant Schroders, Mr. Küssner writes to Mr. Nareike:

> They [Schroders] wanted to come over on Monday in order to meet you guys. I stopped them for now.

A translated copy of this e-mail is attached hereto at Exhibit J.

37. The Defendant Schroders executives to whom Mr. Küssner was referring are believed to have included one or more of the following: Mr. Michael Dobson, Ms. Jayne Bayliss, Mr. Massimo Tosato, Mr. Alan Brown, Mr. John Troiano or

16

Mr. Gavin Ralston. These Defendant Schroders executives actively participated in Defendant Schroders dealings with Mr. Küssner and knew of his wrongful efforts in recruiting additional BlackRock Germany employees on behalf of Defendant Schroders.

38. Mr. Küssner's active solicitation of BlackRock Germany employees and use of BlackRock and BlackRock Germany's computer system to effect such solicitation is exemplified by a chart furnished by Mr. Küssner to Mr. Nareike. In this chart, in an attempt to attract Mr. Nareike to leave BlackRock Germany and accept a position at Defendant Schroders, Mr. Küssner demonstrated how he, Mr. Nareike, and four additional BlackRock Germany employees would function when they were integrated into Defendant Schroders' operations. A translated copy of this chart is attached hereto at Exhibit K.

39. Tellingly, this organizational chart between Mr. Küssner and Mr. Nareike, on its face sets forth and reserves positions at Defendant Schroders for individuals identified by use of the precise initials of the five employees who later resigned from BlackRock Germany, virtually simultaneously with Mr. Küssner, to accept positions at Defendant Schroders, namely

- J.N. – Joachim Nareike
- C.W.B. – Clemens Bertram
- R.S. – Robert Schlichting
- M.K.S. – Melanie Katharina Stahl
- K.W. – Katja Wanke.

This chart also contains reference to the initials "A.H." (Mr. Adrian Harris) who formerly worked at BlackRock Germany as its Business Manager and who in this time period during 2007 was working for BlackRock's London office as a Director. Mr. Harris

therefore represents yet another BlackRock manager targeted by Defendant Schroders and Mr. Küssner for improper solicitation and recruitment away from BlackRock's organization. Mr. Harris resigned, like the other five employees solicited by Mr. Küssner, on March 13, 2007.

40. Furthermore, this chart unmistakably shows that Mr. Küssner was actually negotiating on behalf of Defendant Schroders with Mr. Nareike. Defendant Schroders needed Mr. Küssner to obtain Mr. Nareike's desired position requirements in order to secure Mr. Nareike's agreement to leave BlackRock Germany and accept employment at Defendant Schroders. Thus, the lower right portion of the aforementioned chart contains notes, inserted by "JN" (Mr. Nareike), who among other things, complains to Mr. Küssner: "where is [it] specified that I'm the No. 2?" Mr. Nareike further complains to Mr. Küssner that "C.W.B." (Mr. Bertram), looks to be in a "significantly better" position with Defendant Schroders than was at that time projected for Mr. Nareike. Clearly, Mr. Nareike drew these matters to Mr. Küssner's attention because Mr. Küssner was directly negotiating with Defendant Schroders to bring all the five employees to Defendant Schroders and to reach terms for those employees which would allow Mr. Küssner to successfully solicit those employees, on behalf of Defendant Schroders, to leave BlackRock Germany to become employees of Defendant Schroders.

41. In a further example of Mr. Küssner's solicitation on behalf of Defendant Schroders, this chart contains notations proposing that Mr. Stefan Hartl, who was then employed by Defendant Schroders and listed as its Head of Institutional, would be downgraded and placed underneath "R.S." (Robert Schlichting), a member of the

18

BlackRock Germany team who was positioned to become the new Head of Institutional

at Defendant Schroders.

42. The degree to which Defendant Schroders induced and encouraged

Mr. Küssner to deceptively and secretly solicit the BlackRock Germany employees under

his supervision and was negotiating with him the compensation terms for all members of

that team, including Mr. Nareike, is dramatically demonstrated and proven by an

exchange of e-mail correspondence between Mr. Küssner and Mr. Nareike on January

27-28, 2007. This coded conversation is deciphered by the logical meanings of the text

as follows:

> E-Mail from Mr. Küssner to Mr. Nareike, Jan. 27, 2007,
> 04:51 AM:
>
> *Just to give you short information: the Italian food was*
> *fantastic and I will still allow me having a dessert. We*
> *should talk about the recipe and who will play a part in the*
> *kitchen.*
> *Regards,*
> *Achim*
>
> Meaning: Mr. Küssner complements himself on a dinner
> meeting in an Italian restaurant with an office of Defendant
> Schroders and indicates that it is time for him to enjoy, as
> desert, a payday from Defendant Schroders for his success
> at BlackRock. Mr. Küssner indicates to Mr. Nareike that
> they should talk about the recipe for future success with
> Defendant Schroders and the composition of team of
> employees they would like to extract from BlackRock
> Germany and take with them to Defendant Schroders.
>
> E-Mail from Mr. Nareike to Mr. Küssner; Jan. 27, 2007,
> 02:54 PM:

*We could do this, do you already know who should pay for the bill and whether there is also a possibility for the employees to get a tip?*

Meaning:  Mr. Nareike begs the question that Defendant Schroders will "foot the bill," i.e. that Defendant Schroders will compensate Mr. Küssner and Mr. Nareike.  Mr. Nareike further inquires of Mr. Küssner as to what the payday at Defendant Schroders will look like for the former BlackRock Germany employees.

E-Mail from Mr. Küssner to Mr. Nareike, Jan. 27, 2007, 03:31 PM:

*It must be a tip included, otherwise you won't get any service.  But the details have to be clarified with the restaurant owner finally.*

Meaning:  Mr. Küssner assures Mr. Nareike that Defendant Schroders will provide good compensation to the team or they will not accept Defendant Schroders' offers of employment.  Mr. Küssner admits that he will discuss with Defendant Schroders the required compensation for the BlackRock Germany team.

E-Mail from Mr. Nareike to Mr. Küssner; Jan. 27, 2007, 03:34 PM:

*Always talk to the principal first!*
*To give you an idea about the amount of costs for such a thing I will report to you next Monday how much I have paid at  such a good Italian restaurant, resp. how much I would be willing to pay.*

Meaning:  Mr. Nareike recommends that Mr. Küssner speak with a highly placed executive at Defendant Schroders capable of making and finalizing compensation decisions.  Mr. Nareike then indicates that he will provide Mr. Küssner with the amount of compensation that he will require to leave BlackRock.

E-Mail from Mr. Küssner to Mr. Nareike; Jan. 27, 2007, 03:47 PM:

*OK, maybe some small change is given to the head waiter, too. Certainly the cook should not be the only person who gets a good payment. I have checked out the menu last night. Fantastic Asian food, very good Chinese food, but by now also BigMac and sound European cuisine. And salsa music as well.*

Meaning: Mr. Küssner concedes to Mr. Nareike that it will not just be Mr. Küssner, i.e. the "cook," meaning the future Head of the Office at Defendant Schroders, who will be "paid well", but it will also be Mr. Nareike, as the second in command, i.e. the "head waiter," who will receive substantial compensation. Mr. Küssner encourages Mr. Nareike to accept a position at Defendant Schroders given Defendant Schroders' business in Asia, China, America and Europe, with potential in South America.

E-Mail from Mr. Nareike to Mr. Küssner; Jan. 28, 2007, 08:09 AM:

*It is possible to eat quite well the worldwide basic requirements and on a rather boring side. But it's always hard to acquire trained and committed staff. And it should be well paid.*

Meaning: Mr. Nareike indicates to Mr. Küssner that there are also plenty of opportunities worldwide for Defendant Schroders' business. Mr. Nareike comments that the team they propose to take to Defendant Schroders has been well trained by BlackRock, and that such employees are "difficult to obtain" and "should be paid well" by Defendant Schroders.

E-Mail from Mr. Küssner to Mr. Nareike; Jan. 28, 2007, 08:36 AM:

*No fee like paid in Hollywood, but on a good level.*

Meaning: Mr. Küssner indicates to Mr. Nareike that they will not receive an unusually high level of compensation from Defendant Schroders but it will be significant and comparable to other European competitors.

E-Mail from Mr. Nareike to Mr. Küssner; Jan. 28, 2007, 09:39 AM:

*It would be interesting anyway, wouldn't it?*

Meaning:  On that basis, i.e., the expectation of a significant compensation package from Defendant Schroders which is comparable to other European competitors, Mr. Nareike expresses his continuing interest in joining Defendant Schroders.

E-Mail from Mr. Küssner to Mr. Nareike, Jan. 28, 2007, 10:41 AM:

*Yes it is, indeed.*

Meaning:  Mr. Küssner agrees with Mr. Nareike's expression of continuing interest in leaving BlackRock to accept employment at Defendant Schroders.

E-Mail from Mr. Nareike to Mr. Küssner; Jan. 28, 2007, 03:52 PM:

*We will hold a meeting tomorrow!*

Meaning:  Mr. Nareike proposes that he and Mr. Küssner meet the next day to discuss their defection to Defendant Schroders.

E-Mail from Mr. Küssner to Mr. Nareike; Jan. 28, 2007, 05:38 PM:

*Yes, I'd be glad to.*

Meaning:  Mr. Küssner agrees to the meeting with Mr. Nareike.

E-Mail from Mr. Nareike to Mr. Küssner; Jan. 28, 2007, 06:28 PM:

*Did you change your attitudes in principle or do you just want to elicit?*

Meaning:  Mr. Nareike inquires as to whether Mr. Küssner is committed to leaving BlackRock with the team or is still "exploring" that potential.

E-Mail from Mr. Küssner to Mr. Nareike, Jan. 28, 2007, 06:47 PM:

*I have pondered a lot and I am confident of finding a good restaurant.  But I will need a good headcook.  Please don't forget to delete!!!!!!*

Meaning:  Mr. Küssner states that he has given a lot of consideration to leaving and believes that employment with Defendant Schroders presents "enormous chances," i.e., significant opportunity for gains.  Mr. Küssner states that he will need a top assistant, thereby encouraging Mr. Nareike to leave BlackRock with Mr. Küssner for Defendant Schroders.   Mr. Küssner instructs Mr. Nareike to "[m]ake sure you delete this!" an indisputable admission that Mr. Küssner knows that his solicitation of his team to leave BlackRock is wholly improper and must be kept secret from BlackRock.

E-Mail from Mr. Nareike to Mr. Küssner; Jan. 28, 2007, 07:13 PM:

*Already deleted ....  Thank you for your trustfulness...we will talk tomorrow.*

Meaning:  Mr. Nareike indicates to Mr. Küssner that he has deleted the secret conversation and they will have further discussions when they meet in person.

A translated copy of this e-mail chain is attached hereto at Exhibit L.

43. Notwithstanding Mr. Nareike's assurance to Mr. Küssner that the above proof of wrongdoing was deleted from Mr. Nareike's emails, BlackRock discovered these messages and accordingly Mr. Küssner's wrongdoing, as induced, aided and abetted by Defendant Schroders was revealed.

23

44. Additional evidence of Defendant Schroders' and Mr. Küssner's unlawful intent to competitively harm BlackRock and BlackRock Germany by soliciting BlackRock Germany's employees for Defendant Schroders, is an interview Mr. Küssner gave to the Handelsblatt for a news article dated February 8, 2007. This article explains the difficulties asset managers in Germany are currently having "vying for sales experts" and other employees as they expand their business. The Handelsblatt quotes Mr. Küssner as stating that BlackRock is actively searching for more personnel because "[t]he demand is great." However, while Mr. Küssner was publicly claiming to be searching for employees on behalf of BlackRock in this article, he was involved in soliciting BlackRock employees to leave BlackRock for Defendant Schroders. Defendant Schroders, like the rest of the German asset management community, had access to the Handelsblatt article, and therefore knew at the same time of Mr. Küssner's activities in soliciting away sales experts from BlackRock Germany. A translated copy of this article is attached hereto at Exhibit M.

45. Defendant Schroders and Mr. Küssner were aware of and intended the severe competitive harm and difficulties that BlackRock would face in replacing these employees.

### Küssner and His Team Resign from BlackRock Germany

46. As a direct result of the aforesaid violative conduct by Defendant Schroders and Mr. Küssner, by letter dated March 5, 2007, Mr. Küssner resigned. His resignation as a Managing Director was made effective immediately. Mr. Küssner is currently an employee on a period of "garden leave" until June 30, 2007, during which

24

time Mr. Küssner continues to owe to BlackRock and BlackRock Germany fiduciary duties of loyalty and fidelity.

47. Within a few days after receipt of the resignation notice by Mr. Küssner, and before Defendant Schroders issued the press release announcing it hired Mr. Küssner, the five other BlackRock Germany employees identified above also resigned from their employment with BlackRock Germany. Mr. Harris similarly resigned in this same time period.

48. One week after Mr. Küssner's resignation from BlackRock Germany, on March 12, 2007, Defendant Schroders issued a press release introducing Mr. Küssner as the new head of the German and Austrian Business of Defendant Schroders. A translated copy of this release is attached hereto at Exhibit N.

49. Before the BlackRock Germany group resignations, these five employees all worked together closely under the supervision of Mr. Küssner as part of his team. E-mail correspondence and documents reflecting Defendant Schroders' and Mr. Küssner's unlawful plans to effect a concerted raid of key BlackRock Germany employees, in direct contravention of the contractual and fiduciary obligations Mr. Küssner owed to BlackRock, disclose that these five employees were solicited and encouraged by Defendant Schroders and Mr. Küssner to resign from BlackRock Germany in order to begin employment with Mr. Küssner at Defendant Schroders.

### Mr. Küssner Breaches His Confidentiality Employment Covenant

50. In addition to interfering with Mr. Küssner's contractual and fiduciary duties prohibiting him from soliciting away the employees of BlackRock and its

subsidiaries and its affiliates, these same factual circumstances establish that Defendant Schroders interfered with Mr. Küssner's contractual and fiduciary duties prohibiting him from disclosing BlackRock's confidential business information.

51. Thus, Defendant Schroders, knowingly, intentionally and willfully induced and aided and abetted conduct which blatantly violated Plaintiff BlackRock's contractual rights and Mr. Küssner's contractual obligations to Plaintiff BlackRock under the provisions of the Confidentiality and Employment Policy not to disclose confidential business information.

52. It is inevitable that in targeting and identifying BlackRock Germany's Directors and employees for Defendant Schroders and in negotiating employment terms for these employees with Defendant Schroders, Mr. Küssner utilized his knowledge as Head of BlackRock Germany's Frankfurt Office, of the particular competence, experience, and compensation levels of these BlackRock Germany employees, and disclosed this information to Defendant Schroders. As earlier quoted, BlackRock's Confidentiality and Employment Policy, Section I specifically prohibits disclosure of "employee lists, employees' salary and other compensation" and specifically defines such information as "Confidential Information." Nevertheless, precisely this type of confidential information was disclosed by Mr. Küssner to Defendant Schroders, which induced and/or accepted such information from Mr. Küssner, and used this confidential information to successfully hire away key personnel from BlackRock Germany and thereby to deplete the managerial ranks of BlackRock's German operations.

53. Moreover, as an Office Head and Managing Director, Mr. Küssner was regularly privy to substantial confidential information of BlackRock relating to its operations, including product initiatives, marketing strategies, confidential customer and client information and about the compensation of BlackRock's and BlackRock Germany's employees. Pursuant to his duties as an Office Head and Managing Director, Mr. Küssner had access to this confidential business information and he periodically traveled to the United States and particularly to BlackRock meetings in New York, where he gained further access to and learned this confidential business information.

54. Significantly, Mr. Küssner attended a BlackRock management conference in Tarrytown, New York on October 7, 2006 where BlackRock's confidential marketing strategies and business plans were disclosed to him in confidence and as a fiduciary contractually bound by BlackRock's Confidentiality and Employment Policy.

55. To protect against disclosure of this confidential information, BlackRock's Confidentiality and Employment Policy, Section I, as earlier quoted, specifically prohibits disclosure of "financial data, strategic or financial plans, business plans, proprietary project information, marketing plans, [and] future transactions (regardless of whether or not such transactions are executed)" and specifically defines such information as "Confidential Information." As noted above, covenants of this type are common in the investment management business.

56. Nevertheless, Mr. Küssner has stated that he does not consider the restrictive covenants in his Confidentiality and Employment Policy to be binding upon him and has both stated and demonstrated his refusal to comply with both the

27

prohibitions of disclosure of confidential information and of the solicitation of employees away from BlackRock and its subsidiaries and affiliates.

57. Accordingly, as a result of the conduct of Defendant Schroders and Mr. Küssner, the confidentiality provisions of BlackRock's Confidentiality and Employment Policy, binding upon Mr. Küssner and legally required to be respected by Defendant Schroders were violated by Mr. Küssner, tortiously interfered with by Defendant Schroders, and pursuant to Mr. Küssner's statements and his upcoming employment by Defendant Schroders, and employment of other employees as a result of breaches by Mr. Kuessner, will be continually and repeatedly violated in the future.

58. Defendant Schroders induced and aided and abetted and acted in concert with Mr. Küssner to bring about the deceptive plan to solicit BlackRock Germany's employees in furtherance of unfair competition and in violation of the contractual employee nonsolicitation and confidentiality provisions of his contractually binding Confidentiality and Employment Policy as well as his fiduciary duty of loyalty and fidelity.

59. At all times pertinent to their actions, Defendant Schroders had full knowledge of Mr. Küssner's employment relationship with BlackRock and contractual and legal obligations to BlackRock. As senior officers within Defendant Schroders, Mr. Michael Dobson, Ms. Jayne Bayliss, Mr. Massimo Tosato, Mr. Alan Brown, Mr. John Troiano, and Mr. Gavin Ralston had fiduciary duties themselves and these high level employees were acutely aware that as a Managing Director and Head of Office, Mr.

Küssner owed a fiduciary duty of loyalty and fidelity to BlackRock and BlackRock Germany.

60. It is undeniable that Defendant Schroders knew its actions in inducing and aiding and abetting Mr. Küssner and in acting in concert with him would severely injure, impair and impede the business activities of BlackRock and unfairly and improperly advantage and assist the competitive activities of Defendant Schroders and Defendant Schroders took these actions intentionally, willfully, knowingly, wantonly, recklessly, maliciously, deceptively, in bad faith, in a grossly negligent manner and/or with the specific intent of severely injuring and competitively harming BlackRock and devastating its Frankfurt, Germany Office.

61. Defendant Schroders took the actions alleged and ascribed to it in this Complaint intentionally, willfully, knowingly, wantonly, recklessly, maliciously, deceptively, in bad faith, in a grossly negligent manner and/or with the specific intent to actively induce, entice, solicit, aid and abet and act in concert with Mr. Küssner in taking the actions alleged and ascribed to Defendant and to Mr. Küssner in this Complaint.

**Defendant's Actions Have Caused**
**and Unless Enjoined Will Continue to Cause Irreparable Harm to BlackRock**

62. By reason of the foregoing, BlackRock has been and is continuing to be irreparably harmed in that the business of BlackRock is being injured, BlackRock and its subsidiaries and affiliates, including BlackRock Germany, are losing or are being threatened with the loss of resources, business, customers, potential customers, business opportunities, goodwill, business contacts, employees, profits, benefit of the Confidentiality and Employment Policy, trade secrets and BlackRock confidential information, and other harm, each of which would and will be inadequately remedied by money damages because of, among other reasons, the difficulty of ascertaining the amount of such damages that have been and will be suffered by BlackRock.

63. As a result of Defendant Schroders' improper conduct, which induced and aided and abetted Mr. Küssner's conduct, BlackRock has lost its Head of business in Germany and Austria and the Frankfurt Office of BlackRock Germany has lost its Managing Director and three of its six Directors. The degree to which Defendant Schroders and Mr. Küssner knowingly, intentionally and unnecessarily recruited such senior ranking personnel reveals their intent to injure and competitively harm BlackRock and its subsidiary BlackRock Germany. Defendant Schroders had no need for all of the BlackRock Directors and employees who Mr. Küssner solicited away from BlackRock to come with him to Defendant Schroders' organization. Nevertheless, Defendant Schroders made room for these employees so they could be stolen from BlackRock's organization by Mr. Küssner, who knew the comparative functions and performance of these employees and was a BlackRock fiduciary with BlackRock authority over these

30

employees. Defendant Schroders intended to inflict economic harm to BlackRock and
BlackRock Germany.

64. Defendant Schroders will continue with its wrongful conduct unless it
is enjoined and Mr. Küssner will continue with his wrongful conduct unless Defendant
Schroders is enjoined from permitting him to become employed by a Defendant
Schroders company for a reasonable period of time and Defendant Schroders is enjoined
from further inducing breaches of the covenants prohibiting solicitation of employees of
BlackRock companies or disclosing the confidential information of BlackRock
companies or the breach of the fiduciary duties of employees of BlackRock companies,
or from accepting or utilizing the fruits from any prior or future such breaches.

65. Also on March 12, 2007, Defendant Schroders issued a press release
announcing Mr. Küssner as the new Head of the German and Austrian Business of
Defendant Schroders. BlackRock's goodwill with the employees of BlackRock Germany
who remain, and with the clients of BlackRock and BlackRock Germany, has been
severely injured. Defendant Schroders, BlackRock's major competitor, has now
publicized itself to BlackRock clients and employees, as possessing the leadership and
expertise in Germany formerly possessed by BlackRock and its subsidiary, BlackRock
Germany. BlackRock, Inc., which measures and reports its income and financial
performance to its shareholders based on the performance of all of its subsidiaries and
affiliates, including BlackRock Germany, together with BlackRock Germany, has been
and will be irreparably harmed by the simultaneous departure of such a large percentage

31

of its Frankfurt, Germany office employees, and by the disclosure of BlackRock's confidential information.

66. Alarmingly, on March 13, 2007, Robert P. Connolly, General Counsel of BlackRock, had a personal telephone conversation with Mr. Küssner, subsequent to the submission of his resignation in which Mr. Connolly reminded Mr. Küssner of his obligations under his Confidentiality and Employment Agreement and requested that Mr. Küssner commit that he would abide by those obligations. Mr. Küssner repeatedly refused to give Mr. Connolly any such assurance and instead took the position that the Confidentiality and Employment Policy was not binding upon him, clearly demonstrating that Mr. Küssner intends to solicit further employees away from BlackRock and BlackRock Germany and to utilize and disclose BlackRock confidential information to Defendant Schroders. Defendant Schroders has induced and aided and abetted Mr. Küssner's prior wrongful actions, which will continue because Defendant Schroders is now, and unquestionably will be, controlling Mr. Küssner's actions and Mr. Küssner has blatantly refused to agree to comply with his obligations to BlackRock.

67. Indeed, Mr. Küssner's willingness to continue to solicit additional employees away from BlackRock is evidenced by the above referenced e-mail exchange between him and Ms. McAlpine on February 5, 2007, in which, Mr. Küssner offered to target other employees for solicitation away from BlackRock companies: "By the way: to [sic] you need a great institutional sales for Nordic? I know somebody who is not happy..." As set forth in Paragraph 32 above, after Ms. McAlpine replied that she was

"possibly" interested in such an employee, Mr. Küssner suggested he could give her

names of even more senior BlackRock employees for Ms. McAlpine to solicit away from

BlackRock. Mr. Küssner wrote, "There are some more [employees]: Global Head of

Marketing, Fund managers, etc, etc.."

68. As Mr. Küssner specifically acknowledged in executing the

Confidentiality and Employment Policy, at Section II.B thereof:

> any violation, breach or other failure . . . to comply with
> [the] Policy could materially and irreparably injure the
> Company and its business in a manner inadequately
> compensable in damages, and that the Company may seek
> and obtain injunctive relief against the breach or threatened
> breach of [the] Policy in addition to any other legal
> remedies that maybe available.

69. Expedited discovery permitting BlackRock to depose the Defendant

Schroders officers and managers, and its agent, the headhunter, who have been dealing

with Mr. Küssner, and document discovery from Defendant Schroders and the

headhunter is urgently needed so that BlackRock can present the full facts of Defendant

Schroders' tortious conduct at the hearing for a preliminary injunction against Defendant

Schroders.

70. Accordingly, BlackRock is entitled to expedited discovery, and the

preliminary and the permanent injunctive relief prayed for in this Complaint against

Defendant Schroders.

33

## FIRST CLAIM FOR RELIEF

(By Plaintiff Against Defendant for Unfair Competition Through
Tortious Interference with the Confidentiality and Employment Policy)

71. Plaintiff BlackRock repeats and realleges paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72. The Confidentiality and Employment Policy is a valid contract between Mr. Küssner and Plaintiff BlackRock, and/or between Mr. Küssner and BlackRock Germany for the benefit of Plaintiff BlackRock. Defendant knew of the Confidentiality and Employment Policy at the time it intentionally, willfully, knowingly, wantonly, recklessly, maliciously, deceptively, in bad faith, and/or in a grossly negligent manner, acted in total disregard of BlackRock's contractual and other rights and induced Mr. Küssner to breach the Confidentiality and Employment Policy. The totality of conduct and actions alleged and ascribed to Defendant have tortiously interfered and are interfering with the obligations which Mr. Küssner owes to BlackRock under the Confidentiality and Employment Policy.

73. Defendant intentionally, willfully, knowingly, wantonly, recklessly, maliciously, deceptively, in bad faith, and/or in a grossly negligent manner, to inflict economic harm upon BlackRock and its companies, including BlackRock Germany and did inflict such harm; to interfere with BlackRock's contractual and other rights and did so interfere; and to induce Mr. Küssner to breach his above described Confidentiality and Employment Policy and did induce such breach. Defendant Schroders acted in concert with Mr. Küssner and Defendant Schroders has engaged in unfair competition in violation of law.

34

74. By reason of the foregoing, Plaintiff has sustained damages in excess of $75,000 and Defendant is liable to Plaintiff in an amount to be determined and for punitive damages in an amount to be determined.

75. Although BlackRock has been damaged in excess of $75,000 and seeks damages in this Action, any such damages are an inadequate remedy and BlackRock has no adequate remedy at law.

76. By reason of the foregoing, Plaintiff BlackRock has sustained and is continuing and will continue to sustain irreparable injury, and having no adequate remedy at law, is entitled to a expedited discovery and preliminary and permanent injunctive relief to enjoin Defendant from, alone or with others, committing, directly or indirectly, the tortious acts alleged in this Claim for Relief or otherwise engaging in conduct to destroy BlackRock's reputation, goodwill and other related businesses and prohibiting or mandating any other actions by Defendant necessary to prevent or remedy the irreparable injury to BlackRock set forth above.

77. Pursuant to F.R.C.P. 44.1, BlackRock intends to rely on the law of the United States and any state thereof, including New York, and/or the law of the United Kingdom and/or Germany.

## SECOND CLAIM FOR RELIEF

(By Plaintiff Against Defendant for Unfair Competition Through Tortiously Inducing, Aiding and Abetting Breach of the Fiduciary Duty of Loyalty and Fidelity)

78. BlackRock repeats and realleges paragraphs 1 through 70 of this Complaint as if fully set forth herein.

79. As a Managing Director, Head of Office, and employee of BlackRock Germany, a wholly owned subsidiary and affiliate of Plaintiff BlackRock, Mr. Küssner owed a duty of undivided loyalty, fidelity, good faith and diligence to Plaintiff BlackRock and BlackRock Germany.

80. Defendant intentionally, willfully, knowingly, wantonly, recklessly, maliciously, deceptively, in bad faith, and/or in a grossly negligent manner, to inflict economic harm upon BlackRock and its companies, including BlackRock Germany and did inflict such harm; to interfere with BlackRock's rights and those of its subsidiaries and affiliates, including BlackRock Germany, and did so interfere; and to induce Mr. Küssner to breach his above described fiduciary duties and did induce such breach. Defendant Schroders acted in concert with Mr. Küssner and Defendant Schroders has engaged in unfair competition in violation of law.

81. By reason of the foregoing, Plaintiff has sustained damages in excess of $75,000 and Defendant is liable to Plaintiff in an amount to be determined and for punitive damages in an amount to be determined.

82. Although BlackRock has been damaged in excess of $75,000 and seeks damages in this Action, any such damages are an inadequate remedy and BlackRock has no adequate remedy at law.

83. By reason of the foregoing, BlackRock has sustained and is continuing and will continue to sustain irreparable injury, and having no adequate remedy at law, is entitled to expedited discovery and preliminary and permanent injunctive relief to enjoin Defendant from, alone or with others, committing, directly or indirectly, the tortious acts

alleged in this Claim for Relief or otherwise engaging in conduct to destroy BlackRock's reputation, goodwill and other related businesses and prohibiting or mandating any other actions by Defendant necessary to prevent or remedy the irreparable injury to BlackRock set forth above.

84. Pursuant to F.R.C.P. 44.1, BlackRock intends to rely on the law of the United States and any state thereof, including New York, and/or the law of the United Kingdom and/or Germany.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff BlackRock demands judgment as follows:

I.      Preliminarily enjoining Defendant Schroders, its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of such injunction from employing or permitting any other subsidiary or affiliate of Defendant Schroders from employing Mr. Küssner for a reasonable period during the pendency of this action.

II.      Preliminarily enjoining Defendant Schroders, its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of such injunction from interfering with the contractual obligations of any present or former Managing Director or employee of Plaintiff BlackRock, or its subsidiary and affiliate BlackRock Germany, including Mr. Achim Küssner, Mr. Clemens Bertram, Mr. Robert Schlichting, Mr. Joachim Nareike, Ms. Melanie Katharina Stahl, and Ms. Katja Wanke by inducing, aiding or abetting or otherwise interfering with the restrictive covenants of the BlackRock, Inc. Confidentiality

37

and Employment Policy which prohibit Managing Directors or employees or former employees of BlackRock or any of its subsidiaries or affiliates from soliciting BlackRock employees to leave BlackRock or any of its subsidiaries or affiliates and which prohibit the disclosure of confidential information of BlackRock or any of its subsidiaries or affiliates during the pendency of this action.

III.    Preliminarily enjoining Defendant Schroders, its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of such injunction from retaining or utilizing any confidential information of BlackRock or any of its subsidiaries or affiliates.

IV.    Preliminarily enjoining Defendant Schroders, its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of such injunction from employing or permitting any other subsidiary or affiliate of Defendant Schroders from employing Mr. Küssner for a reasonable period subsequent to the conclusion of this action.

V.    Permanently enjoining Defendant Schroders, its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of such injunction from interfering with the contractual obligations of any present or former Managing Director or employee of Plaintiff BlackRock, or its subsidiary and affiliate BlackRock Germany, including Mr. Achim Küssner, Mr. Clemens Bertram, Mr. Robert Schlichting, Mr. Joachim Nareike, Ms. Melanie Katharina Stahl, and Ms. Katja Wanke by inducing, aiding or abetting or otherwise interfering with the restrictive covenants of the BlackRock, Inc. Confidentiality

38

and Employment Policy which prohibit Managing Directors or employees or former employees of BlackRock or any of its subsidiaries or affiliates from soliciting BlackRock employees to leave BlackRock or any of its subsidiaries or affiliates and which prohibit the disclosure of confidential information of BlackRock or any of its subsidiaries or affiliates.

VI.     Permanently enjoining Defendant Schroders, its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of such injunction from employing or working with any present or former employee of BlackRock Germany solicited to leave BlackRock Germany by Mr. Küssner or by any other BlackRock Managing Director or employee in violation of the BlackRock, Inc. Confidentiality and Employment Policy.

VII.    Permanently enjoining Defendant Schroders, its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of such injunction from retaining or utilizing any confidential information of BlackRock or any of its subsidiaries or affiliates.

VIII.   Awarding BlackRock damages in an amount to be determined in excess of $75,000 and punitive damages in an amount to be determined against Defendant Schroders on each and both of the First and Second Claims for relief.

IX.     Awarding BlackRock costs and disbursements of this action together with reasonable attorneys' fees.

X.      Awarding BlackRock expedited discovery for this action; and

39

XI.    Awarding BlackRock such other and further relief as the Court

shall determine to be necessary and appropriate.

Dated: New York, New York
       April 20, 2007

Jay S. Berke  (JB 6500)
A Member of the Firm
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax:    (212) 735-2000
Attorneys for Plaintiff

40