

Jay S. Berke  (JB 6500)
A Member of the Firm
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BLACKROCK, INC.,                           :

                    Plaintiff,             :

        - against -                        :                   ___ Civ. _____

SCHRODERS PLC.                             :

                    Defendant.             :

                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S ORDER TO SHOW CAUSE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT .........................................................................1

STATEMENT OF FACTS ................................................................................4

ARGUMENT....................................................................................................17

    POINT I BLACKROCK IS ENTITLED TO EXPEDITED DISCOVERY..........17

    POINT II BLACKROCK PLAINLY SATISFIES ALL OF THE
        STANDARDS AND IS ENTITLED TO A PRELIMINARY
        INJUNCTION PENDING A FINAL HEARING ON THE
        MERITS ..............................................................................................18

    POINT III BLACKROCK IS SUFFERING, AND WILL  CONTINUE
        TO SUFFER IRREPARABLE INJURY IN  THE ABSENCE OF
        A PRELIMINARY INJUNCTION............................................................19

    POINT IV ON BOTH CAUSES OF ACTION PLEADED,
        BLACKROCK HAS A SUBSTANTIAL LIKELIHOOD OF
        SUCCESS ON THE MERITS ...................................................................22

        A.    There is a Likelihood That BlackRock Will Succeed in
            Establishing That Defendant is Tortiously Interfering with
            the Confidentiality and Employment Policy...................................22

        B.    There is a Likelihood That BlackRock Will Succeed in
            Establishing That Defendant Has Tortiously Induced, And
            Aided And Abetted Breach Of Mr. Küssner's Fiduciary
            Duty of Loyalty and Fidelity..........................................................25

    POINT V THE BALANCE OF HARDSHIPS SHARPLY TILTS IN
        FAVOR OF BLACKROCK .....................................................................27

CONCLUSION....................................................................................................28

i

# TABLE OF AUTHORITIES

## CASES

A&L Scientific Corp. v. Latmore, 265 A.D.2d 355, 696 N.Y.S.2d 495
(2d Dep't 1999) ..................................................................................26

Ackermann v. Levine, 788 F.2d 830 (2d Cir. 1986)....................................4

Alberta Ltd. v. Pocklington (2001) 194 DLR (4th) 109 ...........................24

Ayyash v. Bank Al-Madina, 233 F.R.D. 325 (S.D.N.Y. 2005)................17

Benham Jewelry Corp. v. Aron Basha Corp., No. 97 Civ. 3841 (RWS),
1997 WL 639037 (S.D.N.Y. Oct. 14, 1997)....................................17

Brass v. America Film Techs., 987 F.2d 142 (2d Cir. 1993).....................26

Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568 (2d Cir. 1981)............26, 27

Douglas v. Hello! Ltd [2005] EWCA Civ. 595 .........................................24

DoubleClick, Inc. v. Henderson, No. 116914/97, 1997 WL. 731413 (Sup. Ct. N.Y.
County Nov. 7, 1997)....................................................................25, 26

EcoLab, Inc. v. Paolo, 753 F. Supp. 1100 (E.D.N.Y. 1991)...............19, 23

Ecolab, Inc. v. K.P. Laundry Machine, Inc., 656 F. Supp. 894 (S.D.N.Y. 1987)............23

Higher District Court Karlsruhe, decision from 24 January 2001 - 6 U 167/00..........25, 27

In re Enron Corp., 316 B.R. 434 (Bankr. S.D.N.Y. 2004)...........................4

FMC Corp. v. Taiwan Tainan Giant Industrial Co., 730 F.2d 61 (2d Cir. 1984) ............20

Global Telesystems, Inc. v. KPNQwest, N.V., 151 F. Supp. 2d 478
(S.D.N.Y. 2001) ........................................................................19, 28

Hivac v. Park Royal Sci. Instr., Ltd [1946] Ch 169....................................26

Keybank, National Associate v. Quality Payroll Systems, Inc., CV 06-3013, 2006 WL
1720461 (E.D.N.Y. June 22, 2006) ................................................18

Mainstream Properties v. Young & Ors [2005] EWCA Civ. 861 ..............24

North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38 (2d Cir. 1999)............................20

Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982) ................................................................17

OMG Fidelity, Inc. v. Sirius Tech., Inc., 239 F.R.D. 300 (N.D.N.Y. 2006) .....................18

Prudential Insurance Co. of America v. Barone, No. 98-CV-0272E (SC), 1998 WL
    269065 (W.D.N.Y. May 19, 1998) ..............................................................................23

U.S. Reinsurance Corp. v. Humphreys, 205 A.D.2d 187, 618 N.Y.S.2d 270
    (1st Dep't 1994)............................................................................................................20

Roso-Lino Beverage Distributings, Inc. v. Coca-Cola Bottling Co. of N.Y., Inc.,
    749 F.2d 124 (2d Cir. 1984).....................................................................................18, 20

Shred-It USA, Inc. v. Mobile Data Shred, Inc., 202 F. Supp. 2d 228
    (S.D.N.Y. 2002) ............................................................................................................22

Sovereign Bus. Forms, Inc. v. Stenrite Industrial, Inc., No. 00 Civ. 3867 BDP,
    2000 WL 1772599 (S.D.N.Y. Nov. 28, 2000) .............................................................22

Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27
    (2d Cir. 1995) ...............................................................................................................20

Travellers International AG v. Trans World Airlines, Inc., 684 F. Supp. 1206
    (S.D.N.Y. 1988) ............................................................................................................20

Twentieth Century Fox Film Corp. v. Mow Trading Corp., 749 F. Supp. 473
    (S.D.N.Y. 1990) ......................................................................................................17, 18

## STATUTES

28 U.S.C. § 1332(a)(2).........................................................................................................4

28 U.S.C. § 1391(a) ............................................................................................................4

## MISCELLANEOUS

Fed. R. Civ. P. 4(f)(1) ................................................................................4

Fed. R. Civ. P. 4(h)(2) ................................................................................4

Fed. R. Civ. P. 26(d) ................................................................................17

Fed. R. Civ. P. 33(a) ................................................................................17

Fed. R. Civ. P. 34(b) ................................................................................17

Plaintiff BlackRock, Inc. ("BlackRock"), respectfully submits this Memorandum of Law in Support of its Order to Show Cause which seeks expedited discovery and a preliminary injunction against Defendant Schroders plc ("Schroders").

## **PRELIMINARY STATEMENT**

Plaintiff BlackRock, a Delaware corporation headquartered in New York engaged in the global asset management business, is before this Court seeking an order to show cause against one of BlackRock's major global competitors, Defendant Schroders, a company of the United Kingdom, which manages or invests for its clients billions of dollars in the United States including within the Southern District of New York.[1] (Connolly Aff. ¶ 2-3; Complaint ¶¶ 1, 9-10.)  Defendant Schroders knowingly, intentionally, wrongfully and deceptively induced Mr. Achim Küssner ("Mr. Küssner"), a trusted Managing Director of BlackRock, to solicit and entice away three of the six Directors and two additional significant employees of BlackRock's Frankfurt, Germany Office, and another in its London office, in blatant violation of Mr. Küssner's contractual obligations and fiduciary duties of loyalty and fidelity to BlackRock.  Mr. Küssner is currently on "garden leave," the term given to post-resignation paid leave during which an employee continues to be an employee of Plaintiff with continuing fiduciary duties of loyalty and fidelity.  Mr. Küssner's contractual restrictive covenants prohibiting him from soliciting other BlackRock employees and disclosing BlackRock confidential business

---

[1]     As set forth herein, references to the Complaint in this Action shall be denoted as "Complaint ¶ __"; references to affidavit of Robert P. Connolly dated April 19, 2007 in this Action shall be denoted as "Connolly Affidavit" or "Connolly Aff."

information will continue for one year after Mr. Küssner's garden leave period expires beginning July 1, 2007.

Absent a preliminary injunction, and ultimately a permanent injunction, Defendant Schroders will continue using Mr. Küssner, and induce and aid him to breach his covenants and duties to Plaintiff BlackRock. Mr. Küssner is set to begin working for Defendant Schroders in Germany on July 1, 2007, and, in a telephone conversation with Robert P. Connolly, General Counsel of BlackRock, has effectively repudiated his restrictive covenants and fiduciary duties to BlackRock. (Connolly Affidavit ¶ 36.) Thus, Defendant Schroders has induced him to improperly solicit BlackRock employees and to disclose BlackRock's confidential business information and will continue to do so unless a preliminary injunction against Defendant Schroders preserving the status quo is granted by this Court so that BlackRock can pursue this permanent injunction action to its conclusion without sustaining additional irreparable injury.

Therefore, the order to show cause sought by Plaintiff BlackRock seeks to have this Court set an initial hearing date, proposed to occur during the week of April 23, 2007, or such other time convenient to the Court, to determine BlackRock's motion for expedited discovery so that BlackRock can depose the six officials of Defendant Schroders and Defendant's agent who directly participated in Defendant Schroder's wrongdoing, and so that BlackRock can obtain necessary relevant documents for such depositions. The order to show cause also seeks a date to be set by the Court for a preliminary injunction hearing subsequent to completion of the expedited discovery. The preliminary injunction sought would preserve the status quo by prohibiting Defendant

Schroders from employing or permitting any of its subsidiaries or affiliated companies to employ Mr. Küssner during the pendency of this Action, so that Defendant Schroders cannot capitalize on its intentional and knowing and aggravated wrongdoing through which it acted in concert with Mr. Küssner to deplete management at BlackRock's Frankfurt Germany Office. The preliminary injunction would also prohibit Defendant Schroders from inducing or accepting any further violations by Mr. Küssner of his restrictive covenants against soliciting BlackRock's employee or disclosing BlackRock's confidential information, and enjoin Defendant Schroders from hiring improperly solicited employees or using BlackRock confidential information, so that Defendant Schroders could not capitalize on the fruits of any violations of Mr. Küssner's covenants and duties to BlackRock.

The Court should set a period for expedited discovery to commence immediately after the first hearing date and conclude by June 7, 2007, and should set a briefing schedule with a preliminary injunction hearing date for June 21, 2007, or such other dates convenient to the Court which would enable expedited discovery to be appropriately completed, post-discovery briefs to be filed and exchanged, and the Court to rule on the issuance of the preliminary injunction prior to July 1, 2007.

The preliminary injunctive relief sought by BlackRock is necessary, reasonable and fully supported by law. The conduct of Defendant Schroders has caused, will likely cause, and will continue to cause BlackRock severe and irreparable harm for which it has no adequate remedy at law. Moreover, the relief sought by BlackRock

3

merely seeks to prevent Defendant – pending this action – from doing that which it is already under a legal obligation not to do.

This Court has diversity jurisdiction of this action under 28 U.S.C. § 1332(a)(2) and in personam jurisdiction of Defendant Schroders based on its activities and business in this District, and pursuant to the standards of Sections 301 and 302 of the New York State Civil Practice Law and Rules ("CPLR") and venue is appropriate under 28 U.S.C. § 1391(a). (Complaint ¶¶ 9-12.)

The Order to Show Cause should provide that Defendant Schroders is to be served by registered international mail pursuant to Rules 4(f)(1) and (h)(2) of the Federal Rules of Civil Procedure, which authorizes service upon a foreign corporation under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). Article 10(a) of the Hague Convention provides that a party may send judicial documents directly to a foreign corporation via postal channels provided that the State of destination does not object to this method and the United Kingdom has not objected to such service by registered mail. See Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir. 1986) (service of process under Article 10(a) by the use of registered mail is appropriate under the Hague Convention); In re Enron Corp., 316 B.R. 434, 446 n.10 (Bankr. S.D.N.Y. 2004) (service by mail to the United Kingdom is permissible).

### STATEMENT OF FACTS

Mr. Achim Küssner was a member of BlackRock's Account Management Group and Head of BlackRock's institutional and retail businesses in Germany and

Austria. (Connolly Aff. ¶ 4; Complaint ¶ 15.) He was also a Managing Director of BlackRock and BlackRock (Deutschland) GmbH ("BlackRock Germany"). (Connolly Aff. ¶ 4; Complaint ¶ 15.) As Head of the Frankfurt, Germany Office he supervised six directors and twenty-three additional employees, engaged in marketing asset management services or supporting activities, in the Frankfurt Office. Suddenly, on March 5, 2007, Mr. Küssner resigned. (Connolly Aff. ¶ 5; Complaint ¶ 46.) His resignation as a Managing Director of BlackRock and its subsidiary BlackRock Germany was made effective immediately, but Mr. Küssner continues to be on "garden leave" through June 30, 2007. (Connolly Aff. ¶ 6; Complaint ¶ 46). Virtually simultaneously, during the period of March 8, through March 12, 2007, five additional employees, including three of the six Directors in BlackRock Germany's Frankfurt Office also resigned, and on March 12, 2007, Schroders Germany issued a press release announcing that Mr. Küssner would be assuming the position as Country Head of Schroders Germany. (Connolly Aff. ¶ 5; Complaint ¶¶ 47-48.)

BlackRock has discovered e-mails and other documents showing that during the period from approximately December, 2006 to the date of his resignation, Mr. Küssner, who was contractually bound to BlackRock by covenants prohibiting him from soliciting employees of BlackRock and its affiliates, including BlackRock Germany, to leave their employment, and by covenants prohibiting him from disclosing BlackRock's confidential information to third parties, and who, as a Managing Director of BlackRock and BlackRock Germany, owed fiduciary duties of loyalty and fidelity to BlackRock and its affiliates, had been and was blatantly violating those contracts and duties through a

5

deceptive and secretive scheme, and was induced to commit those violations and aided

and abetted in doing so by Defendant Schroders.  (Connolly Aff. ¶ 7; Complaint ¶¶ 23-

45, 53-56.)  Indeed, the e-mails show that Mr. Küssner and Defendant Schroders acted in

concert to solicit and entice a team of key employees to resign from BlackRock Germany

and join Defendant Schroders.  (Connolly Aff. ¶ 7; Complaint ¶¶ 23-45, 50-52, 58-61.)

The covenants prohibiting the solicitation or enticement away of

employees of BlackRock companies and disclosure of confidential business information

are set forth in the BlackRock, Inc. Confidentiality and Employment Policy (the

"Confidentiality and Employment Policy").  (Connolly Aff. ¶ 8; Complaint ¶¶ 19-20.)  In

the second half of 2006 the asset management division of Merrill Lynch & Co., Inc.

known as Merrill Lynch Investment Managers ("MLIM") and BlackRock, Inc. were

merged to become a new independent company under the management of BlackRock.

(Connolly Aff. ¶ 8; Complaint ¶ 13.)

The negotiation of this merger was conducted and finalized primarily in

New York.  (Connolly Aff. ¶ 8; Complaint ¶ 13.)  Once the merger was accomplished,

MLIM's Germany operation became the new entity, BlackRock Germany.  (Connolly

Aff. ¶ 8; Complaint ¶ 14.)  Also, in connection with the merger transaction and in order

to safeguard the goodwill, continued employment relationships and confidential

information of BlackRock and all the new entities and other BlackRock subsidiaries and

affiliates, the former MLIM employees in Germany were offered the opportunity to

continue their employment and in consideration thereof agreed to execute and be bound

by the Confidentiality and Employment Policy.  (Connolly Aff. ¶ 8; Complaint ¶ 17.)

This Confidentiality and Employment Policy was drafted in New York City and sets forth the customary policy which has long been in use by all employees of BlackRock, and was amended to reflect the specific applicability of the policy to employees of BlackRock Germany as a result of the merger. (Connolly Aff. ¶ 8.)

In accepting BlackRock's offer of employment in the capacities as Managing Director and employee Mr. Küssner, on September 29, 2006, executed the Confidentiality and Employment Policy and thereby became contractually bound to abide by the provisions of that policy. (Connolly Aff. ¶ 9; Complaint ¶¶ 14, 17.) By its terms, those provisions of the Confidentiality and Employment Policy that prohibit Mr. Küssner from disclosing BlackRock's and its subsidiaries' and affiliates' confidential information at all times survive and continue after the termination of Mr. Küssner's employment with BlackRock and/or BlackRock Germany. (Connolly Aff. ¶¶ 9, 12; Complaint ¶ 19.) Also by its terms, the Confidentiality and Employment Policy includes, among other things, provisions prohibiting Mr. Küssner from soliciting or assisting others to solicit employees and clients of BlackRock or its subsidiaries or affiliates for a period of one year subsequent to his employment at a BlackRock entity. (Connolly Aff. ¶¶ 9, 13; Complaint ¶ 20.)

Also as Managing Director and employee, Mr. Küssner has an independent fiduciary duty to promote and safeguard the best interests of BlackRock and its related entities, including BlackRock Germany, and to protect and not disclose their confidential information. (Connolly Aff. ¶ 10; Complaint ¶ 14.) Notwithstanding his resignation, Mr. Küssner remains an employee of a BlackRock company until June 30,

2007, and although no longer a Managing Director, he remains bound by his fiduciary duty of loyalty and fidelity through June 30, 2007. (Connolly Aff. ¶ 10; Complaint ¶ 46.)

Under Section I, the Confidentiality and Employment Policy makes clear that Mr. Küssner's obligations under the policy were owed directly to, and for the benefit of, BlackRock, Inc., which, as defined therein, also "include[ed] any BlackRock affiliates and any predecessor firms such as Merrill Lynch Investment Managers, LLC and its affiliates." (Connolly Aff. ¶ 11; Complaint ¶ 18.)

At least as early as December 6, 2006, Schroders retained, utilized and/or authorized the firm of Jamesbeck Global Partners, commonly referred to as a "headhunter," to act as Schroders' agent to fill a vacant position as Country Head of Schroders Germany. (Connolly Aff. ¶ 15; Complaint ¶ 23.) Based on these e-mails and documents, Ms. Kirsty McAlpine was the agent at Jamesbeck Global Partners who represented Schroders in this effort and who solicited and dealt with Mr. Küssner in an effort to induce him to accept an offer by Schroders to fill the position as Country Head of Schroders Germany. (Connolly Aff. ¶ 15; Complaint ¶ 23.)

E-mail correspondence indicates that, on Friday, February 9, 2007, Mr. Küssner had five separate meetings with senior executives of Schroders in London. (Connolly Aff. ¶ 18; Complaint ¶ 26.) These e-mails reserved one hour time slots for Mr. Küssner to interview separately with Schroders' Chief Executive Officer, Mr. Michael Dobson, with Schroders' Head of Human Resources for the Investment and Distribution Group, Ms. Jayne Bayliss, with Schroders' Global Head of Distribution, Mr. Massimo

Tosato, with Schroders' Head of Investment, Mr. Alan Brown, and with Schoders' Deputy

Head of Distribution, Mr. John Troiano.  (Connolly Aff. ¶ 18; Complaint ¶ 26.)

By e-mail dated January 30, 2007, Mr. Gavin Ralston of Schroders

transmitted through Ms. McAlpine, an organization chart showing Schroders Germany's

structure.  (Connolly Aff. ¶ 19; Complaint ¶ 34.)  This chart indicated, through use of the

designation "TBA" (presumably, meaning "To Be Announced"), open positions at

Schroders which would allow for the hiring of employees of BlackRock Germany who, at

that time, were Directors or other important marketing or support employees at

BlackRock Germany, working under the direct supervision of Mr. Küssner as the Office

Head of the Frankfurt, Germany Office.  (Connolly Aff. ¶ 19; Complaint ¶ 34.)

E-mails reveal that a few days later, on February 2, 2007, Mr. Küssner

received from Mr. Ralston, through Ms. McAlpine, amended information relating to how

the BlackRock Germany team might be compensated upon its arrival at Schroders.

(Connolly Aff. ¶ 20; Complaint ¶ 35.)

E-mail correspondence on February 5, 2007, between Mr. Küssner and

Mr. Joachim Nareike, then-BlackRock Germany's Director of Retail Business ("Mr.

Nareike"), demonstrates that Schroders actively worked through Mr. Küssner to arrange

times to meet the team of defecting BlackRock Germany employees.  (Connolly Aff. ¶

21; Complaint ¶ 36.)  Mr. Nareike is one of the BlackRock Germany Directors who has

resigned to leave for Schroders with Mr. Küssner.  (Connolly Aff. ¶ 21; Complaint ¶ 47.)

According to the above mentioned February 5, 2007 e-mail, Mr. Küssner writes to Mr.

9

Nareike about Schroders request to Mr. Küssner for Schroders to meet with the

BlackRock Germany team:

> They [Schroders] wanted to come over on Monday in order
> to meet you guys.  I stopped them for now.

(Connolly Aff. ¶ 21; Complaint ¶ 36.)

A chart furnished by Mr. Küssner to Mr. Nareike clearly demonstrates that

all of the BlackRock Germany employees who resigned virtually simultaneously with

Mr. Küssner did so to accept positions with Schroders.  (Connolly Aff. ¶ 22; Complaint ¶

39.)  The chart also strongly indicates that Mr. Küssner and Schroders were working

together to solicit these employees away from BlackRock Germany.  (Connolly Aff. ¶ 22;

Complaint ¶¶ 39-41.)  Furthermore, the chart contains notations demonstrating that Mr.

Küssner apparently attempted to attract Mr. Nareike to leave BlackRock Germany and

accept a position at Schroders by demonstrating to Mr. Nareike how he (Mr. Narieke) and

the four additional BlackRock Germany employees would function when they were

integrated into Schroders' operations.  (Connolly Aff. ¶ 22; Complaint ¶ 40.)

Tellingly, this organizational chart between Mr. Küssner and Mr. Nareike,

on its face sets forth and reserves positions at Schroders for individuals identified by use

of the precise initials of the five employees who later resigned virtually simultaneously

with Mr. Küssner:

> - J.N. – Joachim Nareike
> - C.W.B. – Clemens Bertram
> - R.S. – Robert Schlichting
> - M.K.S. – Melanie Katharina Stahl
> - K.W. – Katja Wanke.

(Connolly Aff. ¶ 23; Complaint ¶ 39.)

This chart also demonstrates that Mr. Küssner was negotiating on behalf of Schroders with Mr. Nareike.  (Connolly Aff. ¶ 24; Complaint ¶ 40.)  Thus, the lower right portion of the aforementioned chart contains notes, inserted by "JN" (Mr. Nareike), who among other things, complains to Mr. Küssner:  "where is [it] specified that I'm the No. 2?"  (Connolly Aff. ¶ 24; Complaint ¶ 40.)  Mr. Nareike further complains to Mr. Küssner that "C.W.B." (Mr. Bertram), looks to be in a "significantly better" position with Schroders than was at that time projected for Mr. Nareike.  (Connolly Aff. ¶ 24; Complaint ¶ 40.)  The fact that Mr. Nareike communicated to Mr. Küssner the position he (Mr. Nareike) required at Schroders, relative to the positions of the other members of the BlackRock Germany team who would be defecting to Schroders, establishes that Schroders was using Mr. Küssner as the focal point for soliciting and negotiating the hiring of all members of the BlackRock Germany team for employment in Schroders' operation in Germany.  (Connolly Aff. ¶ 24; Complaint ¶ 40.)

In a further example of Mr. Küssner's solicitation on behalf of Schroders, this chart contains notations on it proposing that Mr. Stefan Hartl, who was then employed by Schroders and listed as its Head of Institutional, would be downgraded and placed underneath "R.S." (Robert Schlichting), a member of the BlackRock Germany team who was positioned to become the new Head of Institutional at Schroders. (Connolly Aff. ¶ 25; Complaint ¶ 41.)

Further e-mail correspondence between Mr. Küssner and Mr. Nareike dated January 27-28, 2007 reveals that there was a concerted effort by Schroders and Mr. Küssner to keep secret from BlackRock, their negotiations with each other and with the

11

rest of the BlackRock Germany defecting team of employees, and to destroy any e-mail evidence of these improper solicitation and enticement efforts so that BlackRock would never learn of, or be able to document such efforts in subsequent litigation such as the instant matter.  (Connolly Aff. ¶ 26; Complaint ¶ 42.)  These e-mails, which were written in code, concluded with Mr. Küssner directing Mr. Nareike to, "Make sure you delete this!"  (Connolly Aff. ¶ 26; Complaint ¶ 42.)

Notwithstanding Mr. Nareike's assurance to Mr. Küssner that the above proof of wrongdoing was deleted from Mr. Nareike's emails, BlackRock discovered these messages and accordingly, Mr. Küssner's wrongdoing, as induced, aided and abetted by Schroders was revealed.  (Connolly Aff. ¶ 27; Complaint ¶ 43.)

In addition to interfering with Mr. Küssner's contractual and fiduciary duties prohibiting him from soliciting away the employees of BlackRock and its subsidiaries and its affiliates, these same factual circumstances establish that Schroders interfered with Mr. Küssner's contractual and fiduciary duties prohibiting him from disclosing BlackRock's confidential business information.  (Connolly Aff. ¶ 28; Complaint ¶ 50.)

It is inevitable that in targeting and identifying BlackRock Germany's Directors and employees for Schroders and in negotiating employment terms for these employees with Schroders, Mr. Küssner utilized his knowledge as Head of BlackRock Germany's Frankfurt Office, of the particular competence, experience, and compensation levels of these BlackRock Germany employees, and disclosed this information to Schroders.  (Connolly Aff. ¶ 30; Complaint ¶ 52.)  All this information is BlackRock

confidential information, the disclosure of which was induced and/or accepted by

Schroders.  (Connolly Aff. ¶ 30; Complaint ¶ 52.)

As a result of Schroders' conduct, the Frankfurt Office of BlackRock

Germany has lost its Managing Director and three of its six Directors.  (Connolly Aff. ¶

31; Complaint ¶ 63.)  The five particular employees of BlackRock Germany who were

solicited away from BlackRock Germany are Clemens Bertram (Director), Robert

Schlichting (Director), Joachim Nareike (Director), Melanie Katharina Stahl (Vice

President), and Katja Wanke (Associate).  (Connolly Aff. ¶ 31; Complaint ¶¶ 39, 47.)

The degree to which Schroders and Mr. Küssner knowingly targeted such senior ranking

personnel reveals their intent to injure BlackRock and its subsidiary BlackRock

Germany.  (Connolly Aff. ¶ 31; Complaint ¶ 63.)

Schroders, BlackRock's major competitor, has now publicized itself to

BlackRock clients and employees, as possessing the leadership and expertise in Germany

formerly possessed by BlackRock and its subsidiary, BlackRock Germany.  (Connolly

Aff. ¶ 32; Complaint ¶ 65.)  BlackRock, Inc., which measures and reports its income and

financial performance to its shareholders based on the performance of all of its

subsidiaries and affiliates, including BlackRock Germany, has been and will be

irreparably harmed by the simultaneous departure of these senior employees from its

Frankfurt, Germany office employees, and by the disclosure of BlackRock's confidential

information.  (Connolly Aff. ¶ 32; Complaint ¶ 65.)

Additional evidence of Schroders' and Mr. Küssner's unlawful intent to

competitively harm BlackRock and BlackRock Germany by soliciting BlackRock

Germany's employees for Schroders, is an interview Mr. Küssner gave to the

Handelsblatt for a news article dated February 8, 2007. (Connolly Aff. ¶ 33; Complaint ¶

44.) This article explains the difficulties assets managers in Germany are currently

having "vying for sales experts" and other employees as they expand their business.

(Connolly Aff. ¶ 33; Complaint ¶ 44.) The Handelsblatt quotes Mr. Küssner as stating

that BlackRock is actively searching for more personnel because "[t]he demand is great."

(Connolly Aff. ¶ 33; Complaint ¶ 44.) However, while Mr. Küssner was publicly

claiming to be searching for employees on behalf of BlackRock in this article, he was

involved in soliciting BlackRock employees to leave BlackRock for Schroders.

(Connolly Aff. ¶ 33; Complaint ¶ 44.) Schroders, like the rest of the German asset

management community had access to the Handelsblatt article, and therefore knew or

should have known at the same time of Mr. Küssner's activities in soliciting away sales

experts from BlackRock Germany. (Connolly Aff. ¶ 33; Complaint ¶ 44.)

       Due to Schroders actions, Mr. Küssner has also breached his contractual

and fiduciary obligations of confidentiality. (Connolly Aff. ¶ 34; Complaint ¶ 57.) As a

Managing Director and Office Head of BlackRock Germany, Mr. Küssner was regularly

entrusted with BlackRock confidential business information including BlackRock

product initiatives, marketing strategies, confidential customer and client information,

and information about BlackRock and BlackRock Germany's key personnel. (Connolly

Aff. ¶ 34; Complaint ¶ 53.)

       Significantly, Mr. Küssner attended a BlackRock management conference

in Tarrytown, New York on October 7, 2006 where BlackRock's confidential marketing

strategies and business plans were disclosed to him in confidence and as a fiduciary

contractually bound by BlackRock's Confidentiality and Employment Policy. (Connolly

Aff. ¶ 35; Complaint ¶ 54.)

Alarmingly, on March 13, 2007, BlackRock's General Counsel had a

personal telephone conversation with Mr. Küssner, subsequent to the submission of Mr.

Küssner's resignation. (Connolly Aff. ¶ 36; Complaint ¶ 66.) Mr. Küssner was reminded

of his obligations under his Confidentiality and Employment Agreement and requested

that he commit that he would abide by those obligations. (Connolly Aff. ¶ 36; Complaint

¶ 66.) Mr. Küssner repeatedly refused to give any such assurance and instead took the

position that the Confidentiality and Employment Policy was not binding upon him, a

clear indication that he intends to solicit further employees away from BlackRock and

violate confidentiality. (Connolly Aff. ¶ 36; Complaint ¶ 66.)

Indeed, Mr. Küssner's willingness to continue to solicit additional

employees away from BlackRock is evidenced by an e-mail exchange between him and

Ms. McAlpine on February 5, 2007. (Connolly Aff. ¶ 37; Complaint ¶ 67.) In that

exchange, Mr. Küssner offered, "By the way: to [sic] you need a great institutional sales

for Nordic? I know somebody who is not happy…." (Connolly Aff. ¶ 37; Complaint ¶

67.) After Ms. McAlpine replied that she was "possibly" interested in such an employee,

Mr. Küssner suggested he could give her names of even more senior BlackRock

employees for Ms. McAlpine to solicit away from BlackRock. (Connolly Aff. ¶ 37;

Complaint ¶ 67.) Mr. Küssner wrote, "There are some more [employees]: Global Head

of Marketing, Fund managers, etc, etc.." (Connolly Aff. ¶ 37; Complaint ¶ 67.)

Accordingly, an injunction by this court against Schroders is necessary to assure that Schroders will not induce or permit or take advantage of such violative behavior by Mr. Küssner or otherwise act in concert with him or cause him to breach his duties to BlackRock. (Connolly Aff. ¶ 38; Complaint ¶ 64.) This injunction should necessarily prohibit Schroders from permitting Mr. Küssner to commence his employment with a Schroders company for a reasonable period of time and to prohibit Schroders from inducing or accepting Mr. Küssner's breaches of his contractual and fiduciary duties to refrain from soliciting BlackRock employees or disclosing BlackRock confidential business information. (Connolly Aff. ¶ 38; Complaint ¶ 64.)

Expedited discovery permitting BlackRock to depose the Schroders officers and managers, and its agent, the headhunter, who have been dealing with Mr. Küssner, and document discovery from Schroders and the headhunter is therefore urgently needed so that BlackRock can present the full facts of Schroders' tortious conduct at the hearing for a preliminary injunction against Schroders. (Connolly Aff. ¶ 39; Complaint ¶ 70.)

**ARGUMENT**

POINT I

BLACKROCK IS ENTITLED TO EXPEDITED DISCOVERY

BlackRock seeks expedited discovery, which is essential to BlackRock's ability to develop the evidence required for preliminary injunctive relief. District courts have broad power to grant expedited discovery in appropriate cases under Rules 26(d), 33(a) and 34(b) of the Federal Rules of Civil Procedure. Benham Jewelry Corp. v. Aron Basha Corp., No. 97 Civ. 3841 (RWS), 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of the injunctive proceedings. See 6 James Wm. Moore et al., Moore's Federal Practice § 26.121 (3d ed. 2003).

This Court routinely grants expedited discovery in actions seeking preliminary injunctions, particularly in actions such as this where unfair competition is at issue. See, e.g., Benham Jewelry Corp., 1997 WL 639037, at *20; Twentieth Century Fox Film Corp. v. Mow Trading Corp., 749 F. Supp. 473, 475 (S.D.N.Y. 1990).

BlackRock meets the necessary requirements and is entitled to expedited discovery under either the "good cause" test recently accepted by this court, or the four-part test derived from Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) (ordering expedited discovery under "more flexible 'good cause' test," recognizing that when a preliminary injunction is at issue it makes little sense to require factors similar to those required to grant a preliminary injunction in order to obtain discovery to prepare for the preliminary

17

injunction hearing).  See also OMG Fidelity, Inc. v. Sirius Tech., Inc., 239 F.R.D. 300,

303 (N.D.N.Y. 2006) (granting expedited discovery under "more relaxed standard []

focused upon the reasonableness of the proposed discovery requests" in tortuous

interference with contract action by former employer against competitor who hired its

former employee); Keybank, Nat'l Assoc. v. Quality Payroll Sys., Inc., CV 06-3013,

2006 U.S. Dist. Lexis 42078, at *10 (E.D.N.Y. 2006) (plaintiff satisfies standard under

either test).

  The discovery sought will work no undue hardship or prejudice on the

defendant as the information sought is in Defendant's control and possession.  See

Twentieth Century Fox Film Corp., 749 F. Supp. at 475 (granting expedited discovery

where information sought was in defendant's control and possession, was not overly

burdensome).

POINT II

BLACKROCK PLAINLY SATISFIES ALL OF THE<br>STANDARDS AND IS ENTITLED TO A PRELIMINARY<br>INJUNCTION PENDING A FINAL HEARING ON THE MERITS

  The criteria for obtaining injunctive relief in the Second Circuit are well-

established.  A moving party, such as BlackRock, must establish two elements: "(a)

irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently

serious questions going to the merits to make them a fair ground for litigation and a

balance of hardships tipping decidedly toward the party requesting the preliminary

relief."  Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of N.Y., Inc., 749

F.2d 124, 125 (2d Cir. 1984).

18

Because BlackRock plainly satisfies these requirements on this motion, as more fully described below, the Court should grant the preliminary injunction prayed for. Such an injunction prohibiting Defendant Schroders from employing Mr. Küssner or other employees improperly solicited by him or using BlackRock's confidential information disclosed by him, in violation of his contractual covenants and fiduciary duties, preserves the status quo and merely prohibits Defendant Schroders from committing violations during the pendency of this Action – exactly what Defendant must do without an injunction – but unfortunately exactly what Defendant's conduct has shown it refuses to do without an injunction.  See, e.g., Global Telesystems, Inc. v. KPNQwest, N.V., 151 F. Supp. 2d 478 (S.D.N.Y. 2001) (granting preliminary injunction prohibiting the defendant corporation from attempting to solicit and directly or indirectly employ the plaintiff corporation's chief financial officer in violation of no-solicitation/no-hire provision of a "confidentiality agreement"); EcoLab, Inc. v. Paolo, 753 F. Supp. 1100 (E.D.N.Y. 1991) (granting preliminary injunction to prevent defendant corporation from soliciting customers and using confidential information in violation of confidentiality provisions of plaintiff corporation's former employees).

<u>POINT III</u>

BLACKROCK IS SUFFERING AND WILL
CONTINUE TO SUFFER IRREPARABLE INJURY IN
<u>THE ABSENCE OF A PRELIMINARY INJUNCTION</u>

BlackRock has suffered and will continue to suffer irreparable injury as a result of the wrongful and deceptive acts of Defendant unless this Court enters the preliminary injunctive relief requested by BlackRock.  A threatened loss of a business or

19

serious injury to goodwill constitute irreparable harm that is not compensable by a

damage award.  See, e.g., Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27,

37-38 (2d Cir. 1995) (irreparable harm is clearly instanced both when the viability of

plaintiff's business is threatened and when the substantial loss of sales beyond those of

the terminated product are threatened); Roso-Lino Beverage Distribs. Inc., 749 F.2d at

125 (granting preliminary injunction as to the cancellation of a distributorship, and

finding the loss of the distributorship constituted irreparable harm which could not be

compensated by money damages); Travellers Int'l AG v. Trans World Airlines, Inc., 684

F. Supp. 1206, 1216 (S.D.N.Y. 1988) (granting preliminary injunction against the

termination of a contract where cancellation would result in a loss of 95% of plaintiff's

business).  Further, when confidential and trade secret information is lost, irreparable

harm occurs because such a loss "cannot be measured in money damages." FMC Corp.

v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir. 1984) (per curiam).  Courts

have not hesitated to issue a preliminary injunction in such cases.  See North Atl.

Instruments, Inc. v. Haber, 188 F.3d. 38, 49 (2d Cir. 1999) (granting preliminary

injunction where the court concluded plaintiff-employer had shown irreparable harm

where the defendant employee, who was subject to a confidentiality clause, had printed

out and utilized former employer's proprietary client list); U.S. Reinsurance Corp. v.

Humphreys, 205 A.D.2d. 187, 618 N.Y.S.2d 270 (1st Dep't 1994) (granting preliminary

injunction forbidding former corporate director from anticipatorily breaching

confidentiality agreement).

Defendant's continuing wrongful scheme and efforts have been and will continue causing serious and continuing harm and irreparable injury to BlackRock, which cannot be adequately redressed by damages, by, among other things:

- Injuring BlackRock by covertly utilizing Mr. Küssner to breach his contract and fiduciary duties by soliciting three of the six BlackRock Frankfurt Office Directors to resign and significant employees to resign and thereby depleting the senior management of the Frankfurt Office;

- Injuring BlackRock by covertly utilizing Mr. Küssner to breach his contract and fiduciary duties to maintain BlackRock's confidentiality by inducing him to disclose confidential information about the comparative performance of BlackRock employees and their compensation which Defendant Schroders and Mr. Küssner jointly used to target Directors and employees and entice them away from BlackRock to Schroders;

- Publicly announcing Defendant Schroders' wrongful acquisition of BlackRock's leadership in Germany, and doing so shortly after Mr. Küssner, in his role as Managing Director and Office Head of BlackRock Germany publicly stated in an interview the fiercely competitive environment in Germany and the difficulties with which asset management firms like BlackRock were faced with hiring and retaining highly competent market personnel;

- Setting Mr. Küssner's start date at Defendant Schroders as July 1, 2007 knowing that Mr. Küssner possesses confidential BlackRock information about other Directors and managers and about customers and business plans, and knowing that Mr. Küssner has repudiated his restrictive covenants in a telephone conversation with BlackRock's General Counsel; and therefore has every intention to continue violating BlackRock's rights and to thereby cause injury and economic harm to BlackRock and unfair competitive advantage to Schroders;

- Injuring BlackRock's goodwill with its remaining directors, managers, employees, customers, and clients through the damage to BlackRock's reputation in Germany and elsewhere caused by the above violative conduct of Defendant Schroders and Mr. Küssner;

- Threatening to continue the above violative course of conduct absent a preliminary injunction.

21

Each of these ongoing wrongful actions are irreparably harming BlackRock in such a way that a remedy of money damages will be inadequate. See Shred-It USA, Inc. v. Mobile Data Shred, Inc., 202 F. Supp. 2d 228, 234 (S.D.N.Y. 2002) (finding irreparable harm and issuing preliminary injunction enjoining defendant-competitors from violating employee and customer nonsolicitation provision); Sovereign Bus. Forms, Inc. v. Stenrite Indus., Inc., No. 00 Civ. 3867 BDP, 2000 WL 1772599, at *13 (S.D.N.Y. Nov. 28, 2000) (injunctive relief was appropriate as to defendant-employee's violations of non-compete and customer non-solicitation provisions because future violations were likely to result in irreparable harm).

Consistent with this authority and given the magnitude of the continuing irreparable harm these actions and anticipated actions have been and will be causing BlackRock, this Court should grant BlackRock a preliminary injunction prior to a full hearing on the merits of the Complaint.

## POINT IV

### ON BOTH CAUSES OF ACTION PLEADED, BLACKROCK HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

A.    There is a Likelihood That BlackRock Will Succeed in Establishing That Defendant is Tortiously Interfering with the Confidentiality and Employment Policy

Defendant is tortiously interfering with the obligations Mr. Küssner owes BlackRock under the Confidentiality and Employment Policy. BlackRock is likely to succeed on the merits because it can demonstrate facts which will be further substantiated and even more strongly established through expedited discovery, proving that: (i) there exists a valid contract between BlackRock and Mr. Küssner, (ii) Defendant knew of the

contract, (iii) Defendant intentionally induced Mr. Küssner to breach that contract, and
(iv) BlackRock has suffered and will continue suffering substantial and irreparable harm
as a result.  See Ecolab, Inc. v. Paolo, 753 F. Supp. 1100, 1113 (E.D.N.Y. 1991) (granting
employer's motion for preliminary injunction against new employer of former employees
to enjoin tortious interference with employment contract, using confidential customer
information and soliciting customers); accord Ecolab, Inc. v. K.P. Laundry Mach., Inc.,
656 F. Supp. 894, 897 (S.D.N.Y. 1987) (granting employer's motion for preliminary
injunction against former employees who tortiously induced breach of employment
agreement containing nonsolicitation and trade secrets provisions); see also  Prudential
Ins. Co. of Am. v. Barone, No. 98-CV-0272E (SC), 1998 WL 269065, at *3 (W.D.N.Y.
May 19, 1998) (granting preliminary injunction restraining former employee from
soliciting former customers and disclosing proprietary information wherein employer
asserted claim of tortious interference with contract).

        The Confidentiality and Employment Policy is a valid contract between
BlackRock and Mr. Küssner.  It prohibits Mr. Küssner from, among other things, directly
or indirectly inducing, soliciting, enticing or procuring any employee of BlackRock to
leave such employment.  (Confidentiality and Employment Policy, § II.B.)  It also
requires Mr. Küssner to hold all matters relating to BlackRock business with the strictest
confidence.  (Confidentiality and Employment Policy, § I.)

        Applying the law of the United Kingdom and/or Germany, BlackRock
will also prevail on its claims.  In the United Kingdom, there are two lines of cases on the
standard for establishing the tort of inducement to beach of contract.  One line of cases

represented by 369413 <u>Alberta Ltd. v. Pocklington</u> (2001) 194 DLR (4th) 109, requires a

plaintiff to demonstrate that the defendant had an intent to induce a breach of contract by

another and intention to harm the plaintiff is not a required element of the tort.  Under

this standard, Plaintiff BlackRock is substantially likely to prevail.  The other line of

cases represented by <u>Mainstream Properties v. Young & Ors</u> [2005] EWCA Civ. 861 and

<u>Douglas v. Hello! Ltd</u> [2005] EWCA Civ. 595, presently require a plaintiff to establish

defendant's intention to economically harm the plaintiff in order to prove this tort.  Under

this standard, Plaintiff BlackRock is also substantially likely to prevail.  The proof thus

far set forth in the Complaint strongly indicates that when Mr. Küssner was interviewing

with Defendant Schroders, Defendant's operations in Germany had no need for more

BlackRock employees other than Mr. Küssner, but Defendant worked with Mr. Küssner

in reforming its structure to make room for the BlackRock team which Mr. Küssner and

Defendant jointly and unnecessarily for Defendant's operations solicited away from

BlackRock Germany so as to injure BlackRock's German Business.  Moreover, the

evidence shows that Defendant Schroders is to employ Mr. Küssner despite the fact that

this former fiduciary of BlackRock, who remains bound by BlackRock's Confidentiality

and Employment Policy has repudiated his obligations under that contract.

      BlackRock is also likely to prevail under German law where Defendant's

conduct will be evaluated under the statutory language of Germany's Act Against Unfair

Competition,  §§ 3-4  UWG (Act Against Unfair Competition).  Section 3 UWG, entitled

"Prohibition of Unfair Competition" states:  "Unfair actions of competition, suitable to

interfere in a not insignificant way with competition to the detriment of other

competitors, consumers or other market participants, are illegal." Section 4 UWG,

entitled "Examples for Unfair Competition" provides at subsection 10 that unfair

competition within the meaning of § 3 includes acts which "systematically interferes with

a competitor." These standards are exceeded in the instant case. See the official

headnote to Higher District Court Karlsruhe, decision from 24 January 2001 - 6 U

167/00 which states:

> The generally permissible solicitation (luring away) of
> employees of another company is only against public
> policy if there are additional particular circumstances.
> Such circumstances are, for example, the inducement to a
> breach of contract [and] the solicitation by invasion into the
> business sphere of the competitor…
>
> Therefore, a violation of public policy in the field of
> competition will only be assumed once particular
> circumstances accompany the attempt of solicitation, for
> example when an unfair measure is being employed or if a
> condemnable purpose is being pursued. Such conduct
> violates public policy in the field of competition under the
> aspects of exploitation, or interference, of a competitor.

B.    There is a Likelihood That BlackRock Will Succeed in Establishing That
       Defendant Has Tortiously Induced, And Aided And Abetted Breach Of Mr.
       Küssner's Fiduciary Duty of Loyalty and Fidelity

Defendant has tortiously induced, aided and abetted breaches of Mr.

Küssner's fiduciary duty of loyalty and fidelity he owed to Plaintiff BlackRock and

BlackRock Germany as a Managing Director and employee and Head of the Frankfurt

Office.

The duty of loyalty prevents an employee from acting in any manner

inconsistent with his agency or trust. See, e.g., DoubleClick, Inc. v. Henderson, No.

116914/97, 1997 WL 731413, at *6 (Sup. Ct. N.Y. County Nov. 7, 1997). At all times an

employee is bound to exercise the utmost good faith and loyalty in the performance of his duties. See id. While employed, the employee must exert his best efforts on behalf of the company and not compete with it, profit at its expense or place his private interests in conflict with its interests. See, e.g., A&L Scientific Corp. v. Latmore, 265 A.D.2d 355, 356, 696 N.Y.S.2d 495, 496 (1st Dep't 1999). Moreover, a person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed. See, e.g., Brass v. Am. Film Techs., 987 F.2d 142, 150 (2d Cir. 1993).

Here, the very same actions by Defendant Schroders which interfered with Mr. Küssner's contractual obligations, resulted in blatant interference with Mr. Küssner's fiduciary duties of loyalty and fidelity to BlackRock and its subsidiary BlackRock Germany. Moreover, just as BlackRock is substantially likely to prevail under either the law of the United Kingdom or Germany on its interference with contract claim, Plaintiff BlackRock is also substantially likely to prevail on its claim against Defendant Schroders for interference with Mr. Küssner's fiduciary duties.

Under the law of the United Kingdom:

> "[T]here is some implied term, or that it should generally be implied, that a man is expected loyally to work for an employer and that any work for a competitor would be regarded as being in breach of trust or failing to give loyal service. We cannot agree that there is any implication in any contract of employment other than that a man is expected to give loyal service and not to do anything which can create substantial harm to his employer."

Hivac v. Park Royal Sci. Instr., Ltd [1946] Ch 169. And again, as cited above, under the German law of Unfair Competition, there is a substantial probability that BlackRock will

prevail in establishing a violation because Defendant Schroders' conduct has induced "solicitation by invasion into the business sphere of the competitor," employed "unfair measures" for a "condemnable purpose," and/or constituted "exploitation" of Mr. Küssner or "interference" with his fiduciary duties to "a competitor" (Plaintiff BlackRock), by "a competitor" (Defendant Schroders). See the official headnote to Higher District Court Karlsruhe, decision from 24 January 2001 - 6 U 167/00, supra.

## POINT V

## THE BALANCE OF HARDSHIPS SHARPLY TILTS IN FAVOR OF BLACKROCK

The balance of hardships heavily favors Plaintiff BlackRock. In weighing the balance of the hardships, "the movant must show that the harm which he would suffer from the denial of his motion is decidedly greater than the harm his opponent would suffer if the motion was granted." Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981). Defendant has flagrantly interfered with and circumstances strongly demonstrate the intent of Defendant Schroders to induce Mr. Küssner and to act in concert with him, to cause blatant violation of his contractual covenants prohibiting solicitation of BlackRock personnel and disclosure of BlackRock's confidential business information.

The preliminary injunction BlackRock seeks does nothing more than to preserve the status quo during the pendency of this Action: Defendant Schroders should not be employing Mr. Küssner under the circumstances here, should not be inducing and helping him to breach his contractual obligations and fiduciary duties by soliciting away more BlackRock directors and employees and disclosing more confidential BlackRock

business information. This is all that Defendant Schroders will be prevented from doing during the pendency of this Action, and to permit it to do otherwise would be to permit it to continue violating the rights of Plaintiff BlackRock, to wrongfully recruit its personnel, to unfairly compete, and to economically injury BlackRock by deleting its managerial ranks. Significantly, the preliminary injunction sought here will not prevent Defendant Schroders from competing with BlackRock or properly recruiting or hiring BlackRock personnel, as long as such recruiting and hiring does not involve the efforts of Mr. Küssner, or any other present or former Managing Director, Director, or employee, during the period of continuing application of his or their covenants to BlackRock and does not involve the disclosure or use of BlackRock confidential business information or any other breach of contract or fiduciary duty by BlackRock personnel. See Global Telesystems Inc., 151 F. Supp. 2d at 483 (balance of hardships tipped decidedly in favor of plaintiff-corporation where executive had gone to work for plaintiff's competitor in violation of no-hire and no-solicitation provisions in a confidentiality agreement).

## CONCLUSION

Having demonstrated the threat of irreparable harm and a strong likelihood of success on the merits, as well as a balance of equities which tips decidedly in favor of BlackRock here, Plaintiffs are entitled to the issuance of expedited discovery and a preliminary injunction in the form prayed for. For the reasons set forth above, and in the Complaint and attachments, and in the accompanying Affidavit of Robert P. Connolly, Plaintiff BlackRock, Inc. respectfully requests that this Court enter its Order to Show Cause in all respects, establish a period for and authorize a period of expedited discovery

and ultimately impose the requested preliminary injunction against Defendant Schroders plc.

Dated: New York, New York
      April 20, 2007

Jay S. Berke  (JB 6500)
A Member of the Firm
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax:    (212) 735-2000
Attorneys for Plaintiff

29