UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BLACKROCK, INC.,

                      Plaintiff,

       - against -

SCHRODERS PLC.

                      Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**AFFIDAVIT OF
ROBERT P. CONNOLLY**

STATE OF NEW YORK     )
                         : ss.:
COUNTY OF NEW YORK   )

        I, Robert P. Connolly, having first been duly sworn, hereby depose and

say:

        1.     I am General Counsel of BlackRock, Inc., a corporation organized

under the laws of the State of Delaware in the United States of America, which is a public

company.  I have responsibility for the legal affairs of BlackRock, Inc. ("BlackRock"),

and of its subsidiaries and affiliates.  As General Counsel, I am familiar with BlackRock's

contracts with employees that prohibit the solicitation and enticement of other employees

of BlackRock or its subsidiaries or affiliates to leave their employment with our

companies as well as the confidentiality policies protecting the types of information

BlackRock and its subsidiaries and affiliates do not make publicly available, and the

nature of such confidential non-public, business information. I make this affidavit based on my personal knowledge and experience and on documentary information.

2.      BlackRock is a global asset management firm headquartered in New York City and with offices in 16 different countries throughout the United States, Europe, Asia, Australia and the Middle East. The firm manages assets on behalf of institutions and individuals worldwide through a variety of equity, fixed income, cash management and alternative investment products.

3.  BlackRock brings this action against Schroders plc ("Schroders") a company of the United Kingdom, which regularly does and transacts business in the United States, including substantial business in New York. According to its website, Schroders is a global asset management company with $251.5 billion in assets under management as of December 31, 2006, and with approximately 12% of such assets – approximately $30 billion – representing funds under management in the Americas, including the United States and New York. Based on my familiarity with the asset management business, funds under management both inside and outside the United States are regularly invested in securities in the United States through United States' securities exchanges, including those in New York, within the Southern District of New York. Schroders is a direct global competitor of BlackRock in the multi-billion dollar highly competitive business of asset management. In reporting Schroders' financial results for the fiscal year ended 2002, Schroders' Chief Executive Officer, Michael Dobson reported that approximately 14% of the its clients were based in the United States. According to

press reports in 2004, Mr. Dobson publicly announced that Schroders has targeted the United States as a key target for the growth of its business.

4.   Mr. Achim Küssner ("Mr. Küssner") was a member of BlackRock's Account Management Group and Head of BlackRock's institutional and retail businesses in Germany and Austria.  He was a Managing Director of BlackRock and of BlackRock's German subsidiary BlackRock (Deutschland) GmbH ("BlackRock Germany").  He was also Head of the Frankfurt, Germany Office and supervised six directors and twenty-three additional employees, engaged in marketing asset management services or supporting activities, in the Frankfurt Office.  Mr. Küssner was the only Office Head and Managing Director of the Frankfurt Office and six directors there ranked immediately below him.

5.   Suddenly, on March 5, 2007, Mr. Küssner resigned from BlackRock and BlackRock Germany.  His resignation as Managing Director of BlackRock and BlackRock Germany was made effective immediately, but Mr. Küssner continues as an employee through and until June 30, 2007.  Virtually simultaneously, during the period of March 8, through March 12, 2007, five additional employees, including three of the directors of the BlackRock Germany Frankfurt Office also resigned.  On March 12, 2007, Schroders Investment Management GmbH ("Schroders Germany"), wholly owned by Schroders, issued a press release announcing that Mr. Küssner would be assuming the position as Country Head of Schroders Germany and would function as Head of the German and Austrian offices.

6.   Mr. Küssner was contractually bound to BlackRock by covenants prohibiting him from soliciting and enticing employees of BlackRock and its affiliates,

3

including BlackRock Germany, to leave their employment, and by covenants prohibiting

him from disclosing BlackRock's and its subsidiaries' and affiliates' confidential

information to third parties.  Covenants of this nature are common in the investment

management business due to the dependence on individual services and the highly

confidential nature of the information which is entrusted to its employees.  Additionally,

as a Managing Director of BlackRock and BlackRock Germany, Mr. Küssner owed

fiduciary duties of loyalty and fidelity, to BlackRock and its subsidiaries and affiliates,

including BlackRock Germany, which continue until Mr. Küssner's current period of

"garden leave" expires after June 30, 2007.

       7.     BlackRock has discovered e-mails and other documents showing

that since approximately December, 2006, Mr. Küssner has been and was violating those

contracts and duties, and has been and was induced to commit those violations and aided

and abetted in doing so by Schroders.  Indeed, the e-mails show that Mr. Küssner and

Schroders acted in concert to solicit and entice a team of key employees to resign from

BlackRock and join Schroders.  True and correct English translations of these e-mails and

documents are attached to the Complaint in this action.

       8.     The covenants prohibiting the solicitation or enticement away of

employees of BlackRock companies and disclosure of confidential business information

are set forth in the BlackRock, Inc. Confidentiality and Employment Policy (the

"Confidentiality and Employment Policy").  In the second half of 2006 the asset

management division of Merrill Lynch & Co., Inc. known as Merrill Lynch Investment

Managers ("MLIM") and BlackRock, Inc. were merged to become a new independent company under the management of BlackRock. The negotiation of this merger was conducted and finalized primarily in New York. Once the merger was accomplished, MLIM's Germany operation became the new entity, BlackRock Germany. Also, in connection with the merger transaction and in order to safeguard the goodwill, continued employment relationships and confidential information of BlackRock and all the new entities and other BlackRock subsidiaries and affiliates, the former MLIM employees in Germany, in consideration of their employment, agreed to execute and be bound by the Confidentiality and Employment Policy. This Confidentiality and Employment Policy was drafted in New York City and sets forth the customary policy which has long been in use by all employees of BlackRock, and was amended to reflect the specific applicability of the policy to employees of BlackRock Germany as a result of the merger.

9.       In his capacities as Managing Director and employee Mr. Küssner, on September 29, 2006, executed the Confidentiality and Employment Policy and thereby became contractually bound to abide by the provisions of that policy. By its terms, those provisions of the Confidentiality and Employment Policy that prohibit Mr. Küssner from disclosing BlackRock's and its subsidiaries' and affiliates' confidential information at all times survive and continue after the termination of Mr. Küssner's employment with BlackRock and/or BlackRock Germany. Also by its terms, the Confidentiality and Employment Policy includes, among other things, provisions prohibiting Mr. Küssner from soliciting or assisting others to solicit employees and clients of BlackRock or its

subsidiaries or affiliates for a period of one year subsequent to his employment at a BlackRock entity.

10.   Also as Managing Director and employee, Mr. Küssner has an independent fiduciary duty to promote and safeguard the best interests of BlackRock and its related entities and to protect and not disclose their confidential information. Notwithstanding his resignation, Mr. Küssner remains an employee of a BlackRock company until June 30, 2007, and although no longer a Managing Director, he remains bound by his fiduciary duty of loyalty and fidelity through June 30, 2007.

11.   Under Section I, the Confidentiality and Employment Policy makes clear that Mr. Küssner's obligations under the policy were owed directly to, and for the benefit of, BlackRock, Inc., which was defined therein as "including any BlackRock affiliates and any predecessor firms such as Merrill Lynch Investment Managers, LLC and its affiliates."

12.   Thus, Section I of the Confidentiality and Employment Policy provides as follows:

> BlackRock, Inc. including any BlackRock affiliates and any predecessor firms such as Merrill Lynch Investment Managers, LLC and its affiliates (hereinafter the "Company") maintains a policy that all matters relating to the business of the Company are to be held in the strictest confidence and are governed by this Confidentiality and Employment Policy (this "Policy").  Any violations by an employee ("Employee") of the Company of this Policy may result in immediate dismissal and may subject the Employee to both criminal and civil liability and penalties.

13.    Under Section II.B, the Confidentiality and Employment Policy contains the following provisions prohibiting the solicitation and enticement of employees away from BlackRock or any of its subsidiaries or affiliates:

Non-Enticement of Employees

An Employee shall not, during his or her employment and for a period of one (1) year following the termination of such employment, either on his or her own account or in conjunction with or on behalf of any other person, company, business entity or other organization whatsoever, directly or indirectly induce, solicit, entice, participate in or procure any person who is an Employee of the Company to leave such employment.

14.    The e-mail and other documents clearly indicate that Schroders actively induced and aided and abetted and acted in concert with Mr. Küssner to violate this covenant prohibiting solicitation and enticement of the employees under his supervision at BlackRock Germany and, and similarly acted in concert with Mr. Küssner to violate his fiduciary duty of loyalty and fidelity.

15.    Thus, at least as early as December 6, 2006, Schroders retained, utilized and/or authorized the firm of Jamesbeck Global Partners, commonly referred to as a "headhunter," to act as Schroders' agent to fill a vacant position as Country Head of Schroders Germany.  Based on these e-mails and documents, Ms. Kirsty McAlpine was the agent at Jamesbeck Global Partners who represented Schroders in this effort and who solicited and dealt with Mr. Küssner in an effort to induce him to accept an offer by Schroders to fill the position as Country Head of Schroders Germany.

16.    According to the "Position Summary, Country Head, Germany," which Ms. McAlpine, on behalf of Schroders, furnished to Mr. Küssner, the entity

7

actively recruiting, interviewing, soliciting and controlling the hiring of Mr. Küssner was Schroders, "a leading independent global asset manager providing specialist asset management services to institutional, retail and high net worth investors [had] [a]s at 31 December 2005 … £128.4 billion under management [and] a strong and established presence in Europe, Asia Pacific and the US, employing approximately 2,400 people in offices in over 20 countries [, with] [a]ll investment activities … managed within a single division with a strong commitment for delivering performance across markets and products."

17.    Also according to the "Position Summary, Country Head, Germany," Schroders sought a candidate for this position, who, among other things, could "[d]evelop and maintain strong understanding of demand and the competitor set for Schroders in the German market and work to access and convert the new business opportunity set."

18. E-mail correspondence indicates that, on Friday, February 9, 2007, Mr. Küssner had five separate meetings with senior executives of Schroders in London. These e-mails reserved one hour time slots for Mr. Küssner to interview separately with Schroders' Chief Executive Officer, Mr. Michael Dobson, with Schroders' Head of Human Resources for the Investment and Distribution Group, Ms. Jayne Bayliss, with Schroders' Global Head of Distribution, Mr. Massimo Tosato, with Schroders' Head of Investment Mr. Alan Brown, and with Schoders' Deputy Head of Distribution, Mr. John Troiano.

19. By e-mail dated January 30, 2007, Mr. Gavin Ralston of Schroders transmitted through, Ms. McAlpine, an organization chart showing Schroders Germany's structure. This chart indicated, through use of the designation "TBA" (presumably, meaning "To Be Announced"), open positions at Schroders which would allow for the hiring of employees of BlackRock Germany who, at that time, were Directors or other important marketing or support employees at BlackRock Germany, working under the direct supervision of Mr. Küssner as the Office Head of the Frankfurt, Germany Office.

20. E-mails reveal that a few days later, on February 2, 2007, Mr. Küssner received from Mr. Ralston, through Ms. McAlpine, amended information relating to how the BlackRock Germany team might be compensated upon its arrival at Schroders.

21. E-mail correspondence on February 5, 2007, between Mr. Küssner and Mr. Joachim Nareike, then-BlackRock Germany's Director of Retail Business ("Mr. Nareike"), demonstrates that Schroders actively worked through Mr. Küssner to arrange times to meet the team of defecting BlackRock Germany employees. Mr. Nareike is one of the BlackRock Germany Directors who has resigned to leave for Schroders with Mr. Küssner. According to the above mentioned February 5, 2007 e-mail, Mr. Küssner writes to Mr. Nareike about Schroders request to Mr. Küssner for Schroders to meet with the BlackRock Germany team:

> They [Schroders] wanted to come over on Monday in order
> to meet you guys. I stopped them for now.

22. A chart furnished by Mr. Küssner to Mr. Nareike clearly demonstrates that all of the BlackRock Germany employees who resigned virtually simultaneously with Mr. Küssner did so to accept positions with Schroders. The chart also strongly

indicates that Mr. Küssner and Schroders were working together to solicit these

employees away from BlackRock Germany.  Furthermore, the chart contains notations

demonstrating that Mr. Küssner apparently attempted to attract Mr. Nareike to leave

BlackRock Germany and accept a position at Schroders by demonstrating to Mr. Nareike

how he (Mr. Narieke) and the four additional BlackRock Germany employees would

function when they were integrated into Schroders' operations.

23. Tellingly, this organizational chart between Mr. Küssner and Mr.

Nareike, on its face sets forth and reserves positions at Schroders for individuals

identified by use of the precise initials of the five employees who later resigned virtually

simultaneously with Mr. Küssner:

- J.N. – Joachim Nareike
- C.W.B. – Clemens Bertram
- R.S. – Robert Schlichting
- M.K.S. – Melanie Katharina Stahl
- K.W. – Katja Wanke.

24. This chart also demonstrates that Mr. Küssner was negotiating on

behalf of Schroders with Mr. Nareike.  Thus, the lower right portion of the

aforementioned chart contains notes, inserted by "JN" (Mr. Nareike), who among other

things, complains to Mr. Küssner:  "where is [it] specified that I'm the No. 2?"  Mr.

Nareike further complains to Mr. Küssner that "C.W.B." (Mr. Bertram), looks to be in a

"significantly better" position with Schroders than was at that time projected for Mr.

Nareike.  The fact that Mr. Nareike communicated to Mr. Küssner the position he (Mr.

Nareike) required at Schroders, relative to the positions of the other members of the

BlackRock Germany team who would be defecting to Schroders, establishes that

Schroders was using Mr. Küssner as the focal point for soliciting and negotiating the hiring of all members of the BlackRock Germany team for employment in Schroders' operation in Germany.

25. In a further example of Mr. Küssner's solicitation on behalf of Schroders, this chart contains notations on it proposing that Mr. Stefan Hartl, who was then employed by Schroders and listed as its Head of Institutional, would be downgraded and placed underneath "R.S." (Robert Schlichting), a member of the BlackRock Germany team who was positioned to become the new Head of Institutional at Schroders.

26. Further e-mail correspondence between Mr. Küssner and Mr. Nareike dated January 27-28, 2007 reveals that there was a concerted effort by Schroders and Mr. Küssner to keep secret from BlackRock, their negotiations with each other and with the rest of the BlackRock Germany defecting team of employees, and to destroy any e-mail evidence of these improper solicitation and enticement efforts so that BlackRock would never learn of, or be able to document such efforts in subsequent litigation such as the instant matter. These e-mails, which were written in code, concluded with Mr. Küssner directing Mr. Nareike to, "Make sure you delete this!"

27.    Notwithstanding Mr. Nareike's assurance to Mr. Küssner that the above proof of wrongdoing was deleted from Mr. Nareike's emails, BlackRock discovered these messages and accordingly, Mr. Küssner's wrongdoing, as induced, aided and abetted by Schroders was revealed.

28.    In addition to interfering with Mr. Küssner's contractual and fiduciary duties prohibiting him from soliciting away the employees of BlackRock and its

subsidiaries and its affiliates, these same factual circumstances establish that Schroders

interfered with Mr. Küssner's contractual and fiduciary duties prohibiting him from

disclosing BlackRock's confidential business information.

       29.     With respect to Mr. Küssner's restrictive covenant prohibiting the

disclosure of confidential business information, Section I of the Confidentiality and

Employment Policy provides, in pertinent part, as follows:

> Employees and former Employees of the Company (collectively
> "Employee(s)") may not, without the prior written consent of the
> Company, use, divulge, disclose, or make accessible to any other person,
> firm, partnership, corporation or other entity any Confidential Information
> (as defined below) pertaining to the business of the Company except (i)
> while employed by the Company, in the business of and for the benefit of
> the Company…
>
> For purposes of this Policy, "Confidential Information" shall mean any
> non-public information (whether oral, written or electronically stored)
> relating to the business or the affairs of the Company or of any client of
> the Company, whether obtained from the Company, any Client of the
> Company or known by the Employee as a consequence of or through
> Employee's relationship with the Company, whether obtained before or
> after the date Employee executes this Policy and whether obtained from an
> entity which was not a BlackRock affiliate at the time such information
> became available to Employee but which is now or later becomes a
> BlackRock affiliate. Such information includes but is not limited to non-
> public information concerning the financial data, strategic or financial
> plans, business plans, proprietary project information, marketing plans,
> future transactions (regardless of whether or not such transactions are
> executed), customer lists, employee lists, employees' salary and other
> compensation, partners' compensation, and other proprietary and
> confidential information of the Company or its clients, that, in any case, is
> not otherwise available to the public. Confidential Information includes
> information encompassed in drawings, designs, plans, proposals, reports,
> research, marketing and sales plans, financial information, costs,
> quotations, specification sheets and recording media. Confidential
> Information also includes information which relates directly or indirectly
> to the computer systems and computer technology of the Company,

including but not limited to source codes, object codes, reports, flow
charts, screens, algorithms, use manuals, installation and/or operation
manuals, computer software, spreadsheets, data computations, formulas,
techniques, databases, and any other form or compilation of computer-
related information.

30.    It is inevitable that in targeting and identifying BlackRock

Germany's Directors and employees for Schroders and in negotiating employment terms

for these employees with Schroders, Mr. Küssner utilized his knowledge as Head of

BlackRock Germany's Frankfurt Office, of the particular competence, experience, and

compensation levels of these BlackRock Germany employees, and disclosed this

information to Schroders.  All this information is BlackRock confidential information,

the disclosure of which was induced and/or accepted by Schroders, and was used by

Schroders to successfully hire away key personnel from BlackRock Germany and thereby

to deplete the managerial ranks of BlackRock's German operations.

31.    As a result of Schroders conduct, which induced and aided and

abetted Mr. Küssner's conduct, the Frankfurt Office of BlackRock Germany has lost its

Managing Director and three of its six Directors.  The five particular employees of

BlackRock Germany who were solicited away from BlackRock Germany are Clemens

Bertram (Director), Robert Schlichting (Director), Joachim Nareike (Director), Melanie

Katharina Stahl (Vice President), and Katja Wanke (Associate).  The degree to which

Schroders and Mr. Küssner knowingly depleted such senior ranking personnel reveals

their intent to injure BlackRock and its subsidiary BlackRock Germany.

32.     Also on March 12, 2007, Schroders issued a press release announcing Mr. Küssner as the new Head of the German and Austrian Business of Schroders.  BlackRock's goodwill with its employees and the employees of BlackRock Germany who remain, and with the clients of BlackRock and BlackRock Germany, has been severely injured.  Schroders, BlackRock's major competitor, has now publicized itself to BlackRock clients and employees, as possessing the leadership and expertise in Germany formerly possessed by BlackRock and its subsidiary, BlackRock Germany.  BlackRock, Inc., which measures and reports its income and financial performance to its shareholders based on the performance of all of its subsidiaries and affiliates, including BlackRock Germany, together with BlackRock Germany, has been and will be irreparably harmed by the simultaneous departure of such a large percentage of its Frankfurt, Germany office employees, and by the disclosure of BlackRock's confidential information.

33.     Additional evidence of Schroders' and Mr. Küssner's unlawful intent to competitively harm BlackRock and BlackRock Germany by soliciting BlackRock Germany's employees for Schroders, is an interview Mr. Küssner gave to the Handelsblatt for a news article dated February 8, 2007.  This article explains the difficulties assets managers in Germany are currently having "vying for sales experts" and other employees as they expand their business.  The Handelsblatt quotes Mr. Küssner as stating that BlackRock is actively searching for more personnel because "[t]he demand is great."  However, while Mr. Küssner was publicly claiming to be searching for employees on behalf of BlackRock in this article, he was involved in soliciting

BlackRock employees to leave BlackRock for Schroders. Schroders, like the rest of the German asset management community had access to the Handelsblatt article, and therefore knew or should have known at the same time of Mr. Küssner's activities in soliciting away sales experts from BlackRock Germany. This is further evidence that Schroders and Mr. Küssner were aware of and intended the severe competitive harm and difficulties that BlackRock would face in replacing these employees.

34.    Thus, it strongly appears that due to Schroders actions, Mr. Küssner has not only blatantly breached his nonsolicitation and nonenticement contractual and fiduciary obligations, but also his contractual and fiduciary obligations of confidentiality. As a Managing Director and Office Head of BlackRock Germany, Mr. Küssner was regularly entrusted with BlackRock confidential business information including BlackRock product initiatives, marketing strategies, confidential customer and client information, and information about BlackRock and BlackRock Germany's key personnel.

35.    Significantly, Mr. Küssner attended a BlackRock management conference in Tarrytown, New York on October 7, 2006 where BlackRock's confidential marketing strategies and business plans were disclosed to him in confidence and as a fiduciary contractually bound by BlackRock's Confidentiality and Employment Policy.

36.    Alarmingly, on March 13, 2007, I had a personal telephone conversation with Mr. Küssner, subsequent to the submission of his resignation in which I reminded him of his obligations under his Confidentiality and Employment Agreement

and requested that he commit to me that he would abide by those obligations. Mr.

Küssner repeatedly refused to give me any such assurance and instead took the position

that the Confidentiality and Employment Policy was not binding upon him, a clear

indication that he intends to solicit further employees away from BlackRock and

BlackRock Germany and to utilize and disclose BlackRock confidential information to

Schroders. Schroders is now, and unquestionably will be, controlling Mr. Küssner's

actions and Mr. Küssner has blatantly refused to agree to comply with his obligations to

BlackRock.

37.     Indeed, Mr. Kuessner's willingness to continue to solicit additional

employees away from BlackRock is evidenced by an e-mail exchange between him and

Ms. McAlpine on February 5, 2007. In that exchange, Mr. Kuessner offered, "By the

way: to [sic] you need a great institutional sales for Nordic? I know somebody who is

not happy..." After Ms. McAlpine replied that she was "possibly" interested in such an

employee, Mr. Kuessner suggested he could give her names of even more senior

BlackRock employees for Ms. McAlpine to solicit away from BlackRock. Mr. Kuessner

wrote, "There are some more [employees]: Global Head of Marketing, Fund managers,

etc, etc.."

38.     Accordingly, an injunction by this court against Schroders is

necessary to assure that Schroders will not induce or permit or take advantage of such

violative behavior by Mr. Küssner or otherwise act in concert with him or cause him to

breach his duties to BlackRock. This injunction should necessarily prohibit Schroders

from permitting Mr. Küssner to commence his employment with a Schroders company

for a reasonable period of time and to prohibit Schroders from inducing or accepting Mr.

Küssner's breaches of his contractual and fiduciary duties to refrain from soliciting

BlackRock employee or disclosing BlackRock confidential business information.

      39.    Expedited discovery permitting BlackRock to depose the

Schroders officers and managers, and its agent, the headhunter, who have been dealing

with Mr. Küssner, and document discovery from Schroders and the headhunter is

therefore urgently needed so that BlackRock can present the full facts of Schroders'

tortious conduct at the hearing for a preliminary injunction against Schroders.

      40.    As Mr. Küssner specifically acknowledged in executing the

Confidentiality and Employment Policy, at Section II.B thereof:

> any violation, breach or other failure . . . to comply with
> [the] Policy could materially and irreparably injure the
> Company and its business in a manner inadequately
> compensable in damages, and that the Company may seek
> and obtain injunctive relief against the breach or threatened
> breach of this policy [the] Policy in addition to other legal
> remedies that maybe available.

      41.    For these reasons also, a preliminary injunction against Schroders

is warranted and necessary.

42.    I strongly and respectfully urge the Court to issue an appropriate preliminary injunction against Schroders preserving the status quo and therefore preventing further irreparable injury to BlackRock.

Robert P. Connolly

Sworn to me this
____ day of April 2007

VINCENT B. TRITTO
NOTARY PUBLIC - State of New York
No 31-4945461
Qualified in New York County
Commission Expires 3/19/11

No previous application has been made.

18