PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036-4039
(212) 858-1000
Frederick A. Brodie (FB 6429)

2300 N Street, NW
Washington, DC 20037-1122
(202) 663-8000
Christine N. Kearns (*Pro Hac Vice* pending)
Attorneys for Defendant
Schroders plc

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BLACKROCK, INC,

        Plaintiff,

    -against-

SCHRODERS PLC.,

        Defendant.

Civil No. 07 CV 03183 (PKL)
ECF CASE ELECTRONICALLY FILED

---

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..................................................................1

II.     BACKGROUND ........................................................................................3

    A.     The Named Parties and the *Real* Parties ..................................... 3

    B.     The Facts. ......................................................................................... 4

    C.     Procedural History. ......................................................................... 7

III.    ARGUMENT ..............................................................................................7

    A.     The Court Lacks Personal Jurisdiction Over Schroders plc. .................. 7

        1.    BlackRock Cannot Establish Personal Jurisdiction Over Schroders plc Under CPLR § 301. ................................................ 8

            a.    BlackRock Cannot Establish Personal Jurisdiction Over Schroders plc Through SIMNA. .......................................... 9

            b.    SIMNA Is Not An "Agent" or "Mere Department" of Schroders plc. ...................................................................... 10

        2.    BlackRock Cannot Establish Personal Jurisdiction Over Schroders plc Under CPLR § 302. ............................................. 12

    B.     Plaintiffs' Complaint Should Be Dismissed on the Ground of Forum Non Conveniens............................................................................. 15

        1.    No Deference Should Be Given To Plaintiff's Choice of Forum. ............... 15

        2.    Germany's Courts Provide An Adequate, Alternative Forum. ................... 18

        3.    The Public and Private Interest Factors All Favor Dismissal....................... 19

            a.    All Relevant Sources of Proof Are in Germany or the UK.................. 20

            b.    Compulsory Process is Available In Germany, But Not New York.................................................................................... 21

            c.    Cost of Obtaining Willing Witnesses.................................................. 21

            d.    Local Interest in the Controversy. ....................................................... 22

            e.    Burden On New York Jurors.............................................................. 23

            f.    Familiarity with the Law. ................................................................... 24

i

IV.    CONCLUSION..................................................................................................................25

ii

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page**

Acosta v. JPMorgan Chase & Co., No. 06-0995-cv, 2007 U.S. App. LEXIS 5635
    (2d Cir. Mar. 6, 2007) ............................................................................................1

Allstate Life Ins. Co. v. Linter Group, Ltd., 994 F.2d 996 (2d Cir. 1993) .................20, 22

Arochem Int'l, Inc. v. Buirkle, 968 F.2d 266 (2d Cir. 1992)............................................24

Babcock v. Jackson, 12 N.Y.2d 473, 191 N.E.2d 279 (1963) ..........................................24

Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822 (2d Cir. 1990) ...............................19

Calavo Growers of Cal. v. Generali Belg., 632 F.2d 963 (2d Cir. 1980) .........................20

Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC,
    155 F.3d 603 (2d Cir. 1998)..............................................................................20

Cedric Kushner Prods., Ltd. v. Thobela, No. 93 Civ. 4592 (PKL), 1994 U.S. Dist.
    LEXIS 5247 (S.D.N.Y. Apr. 22, 1994) ........................................................13, 14

Celi v. Canadian Occidental Petroleum Ltd., 804 F. Supp. 465 (E.D.N.Y. 1992) .............8

Conte v. Flota Mercante Del Estado, 277 F.2d 664 (2d Cir. 1960) ..................................25

Diatronics, Inc. v. Elbit Computers, Ltd., 649 F. Supp. 122 (S.D.N.Y. 1986),
    aff'd, 812 F.2d 712 (2d Cir. 1987)...................................................................16, 22

DiRienzo v. Philip Servs. Corp., 294 F.3d 21 (2d Cir. 2002)...........................................21

Ente Nazionale Idrocarburi v. Prudential Sec. Group, 744 F. Supp. 450
    (S.D.N.Y. 1990)................................................................................................21

Fagan v. Deutsche Bundesbank, 438 F. Supp. 2d 376 (S.D.N.Y. 2006) ..............19, 21, 23

Feinberg v. Deloitte & Touche, No. 91 Civ. 4496 (JFK), 1993 U.S. Dist. LEXIS
    11749 (S.D.N.Y. Aug. 25, 1993) ................................................................. 13-14

FESA UK Ltd. v. M/V Artis Sun, No. 01 Civ. 2940 (SHS),
    2002 U.S. Dist. LEXIS 23419 (S.D.N.Y. Mar. 26, 2002) ....................................23

Gulf Oil Co. v. Gilbert, 330 U.S. 501 (1947) .................................................. 20, 21-22, 23

In re Beck Indus., Inc., 479 F.2d 410 (2d Cir. 1973)........................................................17

In re Ski Train Fire, 230 F. Supp. 2d 403 (S.D.N.Y. 2002)..........................................8, 11

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)..........................................................10

Ionescu v. E.F. Hutton & Co. (France) S.A., 465 F. Supp. 139
     (S.D.N.Y. 1979)..........................................................................................16

Iragorri v. United Techs. Corp., 274 F.3d 65 (2d Cir. 2001)................................ 15-16, 22

Jacobs v. Feliz Bloch Erben Verlag fur Buhne und Funk KG,
     160 F. Supp. 2d 722 (S.D.N.Y. 2001)............................................................ passim

Jazini v. Nissan Motor Co., 148 F.3d 181 (2d Cir. 1998)..............................................8, 10

JLB Equities, Inc. v. Owen Fin. Corp., 131 F. Supp. 2d 544, 550
     (S.D.N.Y. 2001)...................................................................................... 12-13

Kirch v. Liberty Media Corp., No. 04 Civ. 667, 2006 U.S. Dist. LEXIS
     82175 (S.D.N.Y. Nov. 8, 2006) ...........................................................18, 19, 22, 25

L'Europeene de Banque v. La Republica de Venezuela, 700 F. Supp. 114
     (S.D.N.Y. 1988) .........................................................................................7

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
     26 F. Supp. 2d 593 (S.D.N.Y. 1998)........................................................................8

Machleder v. Diaz, 801 F.2d 46 (2d Cir. 1986)................................................................24

Mareno v. Rowe, 910 F.2d 1043 (2d Cir. 1990)................................................................14

Marine Midland Bank, N.A. v. Miller, 664 F.2d 899 (2d Cir. 1981) ....................................1

Meteoro Amusement Corp. v. Six Flags, 267 F. Supp. 2d 263 (N.D.N.Y. 2003).............10

NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale, No. 96 Civ. 9321
     (LMM), 1999 U.S. Dist. LEXIS 817 (S.D.N.Y. Jan. 28, 1999) .................... passim

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146 (2d Cir. 2005) .....................15

Opert v. Schmid, 535 F. Supp. 591 (S.D.N.Y. 1982) ......................................................19

Porter v. LSB Indus., Inc., 600 N.Y.S.2d 867 (App. Div. 4th Dep't 1993)........... 10-11, 13

Saraceno v. S.C. Johnson & Son, Inc., 83 F.R.D. 65 (S.D.N.Y. 1979) .......................10, 11

Schenker v. Assicurazioni Generali, No. 98 Civ. 9186 (MBM),
     2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 15, 2002) ......................................12

Snyder v. Ply Gem Indus., Inc., 200 F. Supp. 2d 246 (S.D.N.Y. 2001) ..............................8

iv

Soltex Polymer Corp. v. Fortex Indus., 590 F. Supp. 1453 (E.D.N.Y. 1984),
    aff'd, 832 F.2d 1325 (2d Cir. 1987)....................................................................10

Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.,
    421 F. Supp. 2d 741 (S.D.N.Y. 2006)............................................................ passim

Stutts v. DE Dietrich Group, 465 F. Supp. 2d 156 (E.D.N.Y. 2006)...................... 9-10, 12

Tsegaye v. Impol Aluminum Corp., 01 Civ. 5943 (LMM), 2003 U.S. Dist. LEXIS
    1397 (S.D.N.Y. Jan. 30, 2003)............................................................ 8-9, 10, 12

Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633 (2d Cir. 1956) .................................1

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
    751 F.2d 117 (2d Cir. 1984).....................................................................................11

Wade v. Olympus Indus., Inc., 695 F. Supp. 730 (S.D.N.Y. 1988)....................................8

## Statutes and Rules

28 U.S.C. § 1332(a)(2)....................................................................................................17

CPLR § 301............................................................................................................ passim

CPLR § 302............................................................................................................ passim

Defendant Schroders plc respectfully submits this memorandum of law in support of its motion to dismiss the Complaint based upon lack of personal jurisdiction and on the ground of *forum non conveniens*.[1]

## I.    PRELIMINARY STATEMENT[2]

This case involves a small group of German employees who voluntarily resigned from one German employer, BlackRock (Deutschland) GmbH ("BlackRock Germany") to work for another German employer, Schroder Investment Management GmbH ("Schroders Germany"). The crux of the claims made by Plaintiff BlackRock, Inc., ("BlackRock") is that a UK headhunter allegedly retained by Schroders plc (an indirect corporate parent of Schroders Germany), in combination with one of BlackRock Germany's employees, Achim Küssner, unlawfully solicited certain BlackRock Germany employees to join Schroders Germany.

BlackRock's claims are subject to substantial legal defenses under German law, and the Complaint, not surprisingly, chooses facts selectively, thereby presenting a distorted and wrong account of the key events. This Court, however, need not address the merits. Rather, BlackRock has resorted to the improper tactic of filing this case in New York, which has no nexus to the allegations, and where the interested parties and witnesses (such as the German employers and employees, the UK headhunter and Mr. Küssner himself) cannot readily participate. The tactic

---

[1] On April 20, 2007, the Court entered an Order to Show Cause why it should not permit expedited discovery and schedule a hearing date on Plaintiff's request for a preliminary injunction. This motion to dismiss should resolve both issues. Schroders plc has, however, also filed today a separate opposition those requests, without waiver of its defenses.

[2] On a motion to dismiss for lack of personal jurisdiction, the Court may consider materials outside the pleadings such as sworn statements of the parties. See Marine Midland Bank, NA v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Likewise, "[i]t has long been the law of this Circuit that 'in the determination of a motion to dismiss for *forum non conveniens*, the court may consider affidavits submitted by the moving and opposing parties,'" Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2d Cir. 1956), and make findings of fact." Acosta v. JPMorgan Chase & Co., No. 06-0995-cv, 2007 U.S. App. LEXIS 5635, at *3 (2d Cir. Mar. 6, 2007).

fails and the case should be dismissed.

BlackRock has neither named BlackRock Germany as a plaintiff nor named Schroders Germany or Mr. Küssner as a defendant in this action. Instead, BlackRock has sued only Schroders plc, a UK corporation with its principal and only place of business in London, England. Schroders plc is an indirect corporate parent of an investment management firm, Schroder Investment Management North America Inc. ("SIMNA"), which has an office in New York. That attenuated corporate relationship provides no basis for this Court to assert personal jurisdiction over Schroders plc -- especially where, as here, neither SIMNA nor any U.S. Schroders subsidiary is identified in the Complaint or has anything to do with the case. Schroders plc's motion to dismiss for lack of personal jurisdiction should, therefore, be granted.

In addition, this action should be dismissed on the ground of *forum non conveniens*. The alleged unlawful acts <u>all</u> occurred in Europe (most in Germany), and substantially all evidence, including crucial witnesses, are in Germany. Not one witness to the alleged interference with contract or fiduciary duty is in New York. Presumably to benefit from this Court's discovery rules, BlackRock has filed a Complaint by the wrong party, against the wrong party and is attempting to proceed in a Court with no connection to the parties or the alleged facts. BlackRock's blatant forum shopping should be given no deference. Moreover, this Court has repeatedly held that Germany provides an adequate, available alternative forum for matters such as this. Finally, *all* private and public interest factors weigh heavily in favor of this action being heard before the German courts, if anywhere. No factor favors New York.[3]

---

[3] Schroders plc would consent to the jurisdiction of the courts of Germany, if BlackRock Germany commences an action there, without waiver of any other defenses. Trust Decl. at ¶ 15. (All declarations and affidavits are cited herein by the name of the declarant.)

## II.     BACKGROUND

### A.     The Named Parties and the *Real* Parties

Plaintiff BlackRock is a Delaware Corporation "headquartered in the Southern District of New York."  Complaint at ¶ 1.  According to its website (BlackRock.com), BlackRock and its subsidiaries have approximately 5,000 employees worldwide.  One of those subsidiaries, BlackRock Germany is a limited liability company formed under the laws of Germany. Mr. Küssner was employed by BlackRock Germany as "head of BlackRock's institutional and retail businesses in Germany and Austria."  Id. at ¶ 1.  "As head of the Frankfurt, Germany office, he supervised six directors and twenty-three additional employees, engaged in marketing asset management services or supporting activities, in the Frankfurt office."  Id.

Defendant Schroders plc is "a company of the United Kingdom with its principal place of business located in the United Kingdom at 31 Gresham Street, London EC2V 7QA England." Complaint at ¶ 10.  Schroders plc is a holding company for the Schroders group of companies. Trust Decl. at ¶ 2.  Its direct subsidiary, Schroder Administration Limited (a UK corporation), wholly owns Schroder International Holdings Limited (a UK corporation), which in turn owns all the common shares in Schroders Germany.  Id.

Schroder International Holdings Limited also owns Schroder U.S. Holdings Inc., a U.S. corporation.  Schroder U.S. Holdings, Inc. is the sole owner of SIMNA, also a U.S corporation. Trust Decl. at ¶ 3.

Schroders plc has its only office in London.  Trust Decl. at ¶ 4.  Schroders plc has no operations other than the ownership of its subsidiaries.  Schroders plc has no operations in the United States.  Schroders plc is neither licensed nor qualified to do business in New York.  It has no office, place of business, employees or bank account in New York, and does not own, use, or possess any property in New York.  The address that BlackRock cites at paragraph 10 of the

3

Complaint, 875 3rd Avenue, 22nd floor, New York, NY, 10022-6225, is the office address of SIMNA, not Schroders plc. Trust Decl. at ¶¶ 4-5.

SIMNA has no role in the operations of Schroders plc. SIMNA is not authorized to contractually bind Schroders plc. Trust Decl. at ¶ 8. Schroders plc and SIMNA maintain strict and separate corporate formalities. Trust Decl. at ¶¶ 10-11. SIMNA has its own duly elected officers and board of directors. It conducts separate board meetings and maintains separate minutes of such meetings. Only one director of Schroders plc is a director of SIMNA. They have no other directors in common. Id.[4] Schroders plc and SIMNA maintain separate financial records. Transactions between SIMNA and Schroders plc, if any, are recorded by appropriate entries in the books and records of the companies in accordance with generally recognized accounting principles. Id.

### B.    The Dispute.

On August 8, 2005, Mr. Küssner entered into an Employment Contract with Merrill Lynch Investment Managers (Deutschland) GmbH. Kearns Decl. at ¶ 2. That Employment Contract stated: "this Contract is subject to German law. The place of jurisdiction is Frankfurt am Main." Id. In September 2006, Merrill Lynch Investment Managers (Deutschland) GmbH became BlackRock Germany. Complaint at ¶ 14.

After the September 2006 transaction, Mr. Küssner become an employee and Managing Director of BlackRock Germany and "the Head of BlackRock Germany's Frankfurt office and was responsible for leading all activities. . . of BlackRock in Germany and Austria." Complaint at ¶ 15. He supervised BlackRock Germany employees in Frankfurt and Munich. Id.

---

[4] The CEO of SIMNA also serves on an advisory group to the CEO of Schroders plc.

4

On September 4, 2006, Mr. Küssner received a memo entitled "Your Employment Contract with Merrill Lynch Investment Managers (Deutschland) GmbH," which enclosed the Confidentiality and Employment Policy (Exhibit A to the Complaint). Kearns Decl. at ¶ 3. The memorandum stated, "with the exception of the changes listed in this letter, in the annex to this letter and in the Confidentiality and Employment Policy, all contractual terms and conditions of employment will remain unaffected." Id. The German choice of law provision and "place of jurisdiction," therefore, remained unaffected.

The Confidentiality and Employment Policy contains the legend "Germany (exempt)," referring to Mr. Küssner's employment location and status. Complaint Ex. A at 1. According to BlackRock's general counsel, the Confidentiality and Employment Policy "was amended to reflect the specific applicability of the policy to employees of BlackRock Germany." Connolly Aff. at ¶ 18. For example, the Confidentiality and Employment Policy states "the Employee further acknowledges that the disclosure of business and trade secrets may constitute a criminal offense pursuant to Section 7 of the German Act Against Unfair Competition (UWG)." Complaint Ex. A at 2. Significantly, the Confidentiality and Employment Policy contains no prohibition against working for a competitor,[5] although it purports to restrict the solicitation of employees and clients. Id.

BlackRock claims that "[s]ince at least December 2006, Defendant Schroders, knowingly, intentionally, and willfully induced, aided, and abetted" Mr. Küssner's violation of the [Confidentiality and Employment] Policy and his fiduciary duties." Complaint at ¶ 21. BlackRock's contention is based primarily upon a series of e-mails (translated from the German)

---

[5] BlackRock nevertheless makes the nonsensical request that this Court enjoin Schroders plc from hiring Mr. Küssner.

between Mr. Küssner and BlackRock Germany colleagues and between Mr. Küssner and a UK headhunter, Jamesbeck Associates ("Jamesbeck"). Complaint at ¶¶ 23-42. Jamesbeck's was retained to fill the position of "Country Head of Germany" for Schroders Germany. Complaint at ¶¶ 23-25 and Ex. B. The position description states that "the successful candidate will be responsible for managing and developing Schroders Germany business." Id.

Notably, the e-mails attached to the Complaint do not refer to the Confidentiality and Employment Policy or establish that Schroders plc had actual or constructive knowledge of its existence or terms. Nevertheless, BlackRock alleges unlawful inducement by Schroders plc of Mr. Küssner to breach both the Confidentiality and Employment Policy and Mr. Küssner's fiduciary duties to BlackRock Germany.

On March 5, 2007, Mr. Küssner resigned, although he remains a BlackRock Germany employee through June 30, 2007. Complaint at ¶ 1. "[D]uring the period of March 8 through March 12, 2007, five additional employees, including three of the six Directors in BlackRock Germany Frankfurt office also resigned." Id.[6] On March 12, 2007, Schroders Germany "issued a press release announcing that Mr. Küssner would be assuming the position of Country Head in Schroders Germany and would function as head of the German and Austrian offices." Connolly Aff. at ¶ 5.

Schroders plc has not made an offer of employment to any employee of BlackRock, BlackRock Germany or any related entity. Trust Decl. at ¶ 15. All offers of employment in Germany were made by Schroders Germany. Id.

---

[6] The total number of employees who resigned from BlackRock Germany during the week of March 5 represent only approximately 0.12 % of BlackRock's global workforce, according to its website.

6

### C.    Procedural History.

On April 4, 2007, Howard Trust, General Counsel for the Schroders Group, received a letter from Matthias Horbach, an attorney in the Frankfurt, Germany office of Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden Arps"), regarding "Schroders Announced Hire of BlackRock Employees in Germany."  Trust Decl. at ¶ 12, Exhibit 1.  Dr. Horbach stated that he represented both BlackRock and BlackRock Germany and raised alleged concerns regarding "the apparent transfer by a number of key BlackRock employees based in Germany and the United Kingdom to Schroder [Germany]."  Id.  He indicated that BlackRock and BlackRock Germany were considering a suit in Germany, the UK, or the United States.  Id.

By letter dated April 5, 2007, Nicholas Evans responded on Mr. Trust's behalf.  Trust Decl. at ¶ 13, Exhibit 2.  Mr. Evans noted the absence of any evidence of wrongdoing cited in the April 4 letter and asked Dr. Horbach to provide such evidence, if it existed, so the question of whether further discussions were warranted could be assessed.  BlackRock did not respond.  Id.  Instead, on April 20, 2007, Mr. Trust was surprised to receive notice through a telephone call that the *New York* office of Skadden Arps planned to file suit against Schroders plc in the United States that day on behalf of BlackRock.  Id.  The Complaint was filed on April 20, 2007.  The same day, the Court entered its Order to Show Cause.

### III.    ARGUMENT

#### A.    The Court Lacks Personal Jurisdiction Over Schroders plc.

In New York, "[t]he burden is on the plaintiff to demonstrate that the Court has personal jurisdiction over the defendant."  L'Europeene de Banque v. La Republica de Venezuela, 700 F. Supp. 114, 122 (S.D.N.Y. 1988) (holding New York court lacked personal jurisdiction over

foreign bank).[7]  In addition, "[i]n New York, there is a 'presumption of separateness' to related corporations."  Celi, 804 F. Supp. at 468.  As a result, "[m]ere ownership of a wholly-owned New York subsidiary by a foreign parent company is insufficient to confer personal jurisdiction over the parent."  Snyder v. Ply Gem Indus., Inc., 200 F. Supp. 2d 246, 249 (S.D.N.Y. 2001).[8]

This Court has rejected improper efforts, like those of BlackRock in this case, to ignore corporate form in order to obtain jurisdiction:

> Plaintiff's contention is basically that a multinational corporation invariably controls its subsidiaries, and that such control is tantamount to "doing business" for both the New York long arm and federal venue requirements.  Such a broad characterization would make every multinational corporation subject to jurisdiction and venue wherever it had a subsidiary, regardless of the relative activities or control exerted by the parent over the subsidiary.  This is not consistent with contemporary notions of jurisdiction or venue, and the policies underlying those principles.

Wade v. Olympus Indus., Inc., 695 F. Supp. 730, 733 (S.D.N.Y. 1988) (Leisure, J.)

### 1.    BlackRock Cannot Establish Personal Jurisdiction Over Schroders plc Under CPLR § 301.

Under CPLR § 301, New York courts may exercise general jurisdiction over a foreign

---

[7] See also Celi v. Canadian Occidental Petroleum Ltd., 804 F. Supp. 465, 468 (E.D.N.Y. 1992) (finding no jurisdiction over foreign parent under CPLR §§ 301 and 302 and holding "the party asserting jurisdiction also bears the burden of proof").  "Conclusory statements" and "bald assertions" of jurisdiction will not establish jurisdiction.  Jazini v. Nissan Motor Co., 148 F.3d 181, 184-85 (2d Cir. 1998) (affirming grant of motion to dismiss for lack of personal jurisdiction over a foreign corporation where claim to jurisdiction was based on "conclusory statements – without any supporting facts"); In re Ski Train Fire, 230 F. Supp. 2d 403, 410-11 (S.D.N.Y. 2002) (granting motion to dismiss and rejecting "entirely conclusory" allegations in support of jurisdiction over foreign parent under CPLR § 301).

[8] See also Tsegaye v. Impol Aluminum Corp., 01 Civ. 5943 (LMM), 2003 U.S. Dist. LEXIS 1397, at *14 (S.D.N.Y. Jan. 30, 2003) (finding no personal jurisdiction over foreign parent under CPLR §§ 301 and 302 and holding "[t]he mere presence of a subsidiary in New York does not establish the parent's presence in the state"); Jazini, 148 F.3d at 184 ("the presence of the subsidiary alone does not establish the parent's presence"); Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 604 (S.D.N.Y. 1998) ("Mere ownership by a parent company of a subsidiary that is subject to jurisdiction is insufficient to establish jurisdiction over the parent," and granting motion to dismiss for lack of personal jurisdiction).

corporation if it is "engaged in such continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." Tsegaye, 2003 U.S. Dist. LEXIS 1397, at *13.  New York courts focus on "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts and other property in New York; and the presence of employees or agents in New York." Id.  As this Court recently recognized, the test is a "stringent" one and "requires a showing of continuous, permanent and substantial activity in New York." Jacobs v. Feliz Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (granting motion to dismiss foreign defendants for lack of personal jurisdiction under CPLR §§ 301 and 302) (citations omitted).

Schroders plc does not "do business" in New York.  As described above, it is a UK public limited company with its only office in London.  It is neither licensed nor qualified to do business in New York.  It has no place of business or bank account in New York, and does not own, use, or possess any property in New York.  It has no employees in New York.  Because it has no "continuous, permanent and substantial activity in New York," Schroders plc is not subject to personal jurisdiction in the state under CPLR § 301.

> **a.    BlackRock Cannot Establish Personal Jurisdiction Over Schroders plc Through SIMNA.**

BlackRock's limp effort to establish jurisdiction over Schroders plc through the presence of a distant subsidiary fails.  SIMNA's activities in New York are wholly unrelated to any of the causes of action alleged in the Complaint.  Indeed, SIMNA is not even mentioned in the Complaint.  This alone defeats BlackRock's attempt to establish jurisdiction through SIMNA. See Stutts v. DE Dietrich Group, 465 F. Supp. 2d 156, 162 (E.D.N.Y. 2006) (finding that the Court lacked personal jurisdiction over a foreign parent company despite the fact that it had a U.S. subsidiary with New York contacts, noting that "[i]n the complaint, plaintiffs make no

9

factual allegations about [the subsidiary].  Indeed they do not even mention [the subsidiary])."[9]

In this case, neither SIMNA nor any U.S. entity has a connection to BlackRock's claims.

SIMNA's presence, therefore, cannot subject Schroders plc to the jurisdiction of this Court

without offending traditional due process notions of "fair play and substantial justice."  Int'l

Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

> ### b. SIMNA Is Not An "Agent" or "Mere Department" of Schroders plc.

BlackRock also cannot demonstrate that SIMNA is an "agent" or "mere department" of

Schroders plc.  An agency relationship exists for jurisdictional purposes only where the New

York subsidiary "does all the business which [the foreign parent] could do were it here by its

own officials."  Tsegaye, 2003 U.S. Dist. LEXIS 1397, at *14 (citing Jazini, 148 F.3d at 184).

See Porter v. LSB Indus. Inc., 600 N.Y.S.2d 867, 874 (App. Div. 4th Dep't 1993) (holding that

subsidiary was not parent's agent where parent's business is "carried out entirely at the parent

level"); Saraceno v. S.C. Johnson & Son, Inc., 83 F.R.D. 65, 71 (S.D.N.Y. 1979) (holding that

corporation was not agent of foreign subsidiary).  Furthermore, "where the New York entity is

unable to contractually bind the foreign defendant in New York, the New York entity is 'unable

to do all business [the out-of-state defendant] could do' were it in New York."  Jacobs, 160 F.

Supp. 2d at 738 (holding that local individual was not agent of foreign defendants because, inter

alia, she was not authorized to bind foreign defendants).

A subsidiary will be considered a "mere department" of its foreign parent only if the

---

[9] Accord Meteoro Amusement Corp. v. Six Flags, 267 F. Supp. 2d 263, 269-71 (N.D.N.Y. 2003)
(foreign parent was not subject to jurisdiction under CPLR § 301 where alleged "mere department" and
"agent" subsidiaries were not parties to the action and "the complaint does not allege any infringing acts
by the . . . subsidiaries."); Soltex Polymer Corp. v. Fortex Indus. Inc., 590 F. Supp. 1453, 1467 (E.D.N.Y.
1984) (finding personal jurisdiction would be "manifestly unfair" under CPLR § 301 where activities of
subsidiary are "wholly unrelated" to claim against a foreign parent), aff'd, 832 F.2d 1325 (2d Cir. 1987).

parent's control of the subsidiary is "so pervasive that the corporate separation is more formal than real." Porter, 600 N.Y.S.2d at 873. The four-factor test for establishing jurisdiction as a "mere department" is exacting: (1) common ownership; (2) the financial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes with the subsidiary's selection and assignment of executive personnel and fails to observe corporate formalities; and (4) the parent's control of the subsidiary's marketing and operational policies. Id. (citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-22 (2d Cir. 1984)). See also Stutts, 465 F. Supp. 2d at 163 (plaintiff's allegations failed to allege that subsidiary was a "mere department" where foreign parent submitted evidence that it and subsidiary were "separate corporations that independently manage their own business affairs" and that both corporations "observe[d] all corporate formalities.").

Of course, "[p]arent corporations are allowed a range of normal shareholder involvement in the operations of their subsidiaries – without rendering those subsidiaries 'mere departments' for jurisdictional purposes." In re Ski Train, 230 F. Supp. 2d at 410 (citations omitted). As a result, "under New York law a parent of a multinational corporate enterprise may make broad policy decisions for its subsidiaries. Such control is inherent in the parent-subsidiary relationship and does not justify labeling a subsidiary a 'mere department' of the parent." Saraceno, 83 F.R.D. at 71. To the extent BlackRock contends that Schroders plc asserted any control over the business goals and policies of its global subsidiaries, that fact has "no legal significance." In re Ski Train, 230 F. Supp. 2d at 411. Rather, "it is perfectly appropriate for a parent corporation to urge companies it owns to achieve its strategic and financial goals: that is, in fact, the purpose behind owning a portfolio of companies." Id.

Under these standards, SIMNA is not an agent or a mere department of Schroders plc in

11

New York.  As described above, SIMNA plays no role in New York (or elsewhere) in acting for Schroders plc.  SIMNA is not authorized to contractually bind Schroders plc or act as its agent in any respect.  In addition, SIMNA maintains all corporate formalities.  Both Schroders plc and its ultimate subsidiary SIMNA have duly elected officers and boards of directors.  SIMNA has a single director in common with Schroders plc.  They conduct separate board meetings and maintain separate minutes of such meetings.  Any transactions between them are recorded by appropriate entries in the books and records of the companies in accordance with generally recognized accounting principles.  Schroders plc, therefore, does not act through SIMNA as its agent or "mere department."[10]

>**2.      BlackRock Cannot Establish Personal Jurisdiction Over Schroders plc Under CPLR § 302.**

Section 302 of New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state."  CPLR § 302(a)(1).  In order to satisfy this standard, "the non-domiciliary must transact business within the state, and the claim against the non-domiciliary must arise out of that business activity."  Tsegaye, 2003 U.S. Dist. LEXIS 1397, at *17 (citing JLB Equities, Inc. v. Owen Fin. Corp., 131

---

[10] BlackRock appears to rely on alleged statements on a Schroders.com website that "Schroders is a global asset management company with $251.5 billion in assets under management as of December 31, 2006, and with approximately 12% of such assets – approximately $30 billion – representing funds under Management in the Americas, including the United States and New York," and alleged statements made by Michael Dobson regarding "Schroders'" financial results and goals.  See Connolly Aff. at ¶ 3; Compl. at ¶ 10.  These select quotations, when read in context, clearly refer to the global operations of multiple distinct entities on a consolidated basis.  Moreover, references to websites grouping a foreign parent and its subsidiary are "insufficient to raise an inference of agency," because they do not inform the Court about the relationship between the two entities."  Stutts, 465 F. Supp. 2d at 163; see also Schenker v. Assicurazioni Generali, No. 98 Civ. 9186 (MBM), 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 15, 2002) (website of foreign parent corporation stating that defendant conducted business in U.S. and listing U.S. subsidiaries failed to show activities by subsidiary that would subject parent to jurisdiction).

F. Supp. 2d 544, 550 (S.D.N.Y. 2001)).  A plaintiff "must show that [the] defendant regularly transacted or solicited business, engaged in any other persistent course of conduct, or otherwise, 'purposefully directed' its activities at residents of the forum."  Porter, 600 N.Y.S.2d at 872 (citations omitted) (dismissing foreign parent because "as a mere holding company, it has no contacts with New York").  Importantly, in New York, "it is well-settled that the relationship between the claim and the in-state action must be *direct*."  Jacobs, 160 F. Supp. 2d at 739 (internal citations and quotation marks omitted) (emphasis added).

Schroders plc does not meet these criteria.  As set forth above, Schroders plc transacts no business at all in New York.  More important, the claims in this case arise solely from actions that allegedly occurred in Germany or the UK.  There is absolutely no allegation of any relationship between BlackRock's purported claims and any in-state action by Schroders plc, much less the *direct* relationship required under Section 302(a)(1).

Finally, BlackRock cannot establish jurisdiction under CPLR §§ 302(a)(3).  This section applies only if each of four elements is present:  (1) a tortious act occurred outside New York, (2) an injury occurred within New York, (3) the defendant expected or should reasonably expected the act to have consequences in New York, and (4) the defendant derives substantial revenue from interstate commerce.  Cedric Kushner Prods., Ltd., v. Thobela, No. 93 Civ. 4592 (PKL), 1994 U.S. Dist. LEXIS 5247, at **15-16, 19 (S.D.N.Y. Apr. 22, 1994) (Leisure, J.) (concluding that the Court lacked personal jurisdiction over defendants under § 302(a)(3)(ii) where plaintiff alleged tortious interference with contract and "the 'critical events' of the allegedly infringing agreement and the performance of that agreement [including the negotiation, signing and alleged breaching] all transpired outside of New York").  See also Feinberg v. Deloitte & Touche, No. 91 Civ. 4496 (JFK), 1993 U.S. Dist. LEXIS 11749 (S.D.N.Y. Aug. 25,

13

1993) (finding that the Court lacked personal jurisdiction over defendant under § 302(a)(3)(ii) where critical and disputed events underlying the action occurred in Canada).

This Court has repeatedly held that the "injury caused by a commercial tort under New York law 'does not occur within the state merely because New York was the place where the plaintiff is located and lost profits.'" Cedric Kushner Prods. Ltd., 1994 U.S. Dist. LEXIS 5247, at *18. Rather, "[t]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." Id. See also Mareno v Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) ("An injury, however, does not occur within the state simply because the plaintiff is a resident."); Feinberg, 1993 U.S. Dist. LEXIS 11749, at **9-10 ("In commercial torts, the courts have uniformly held that the mere fact that the plaintiff resides in New York and therefore ultimately experiences a financial loss there is not a sufficient basis for jurisdiction under § 302(a)(3)."). Here, the "critical events associated" with the alleged tortious interference undisputedly occurred outside of New York. In addition, BlackRock cannot establish a "reasonable expectation" of consequences in New York. For purposes of jurisdiction, "foreseeable consequences must be tied to purposeful availment." Feinberg, 1993 U.S. Dist. LEXIS, at *13 n.8 (citation omitted) (granting motion to dismiss because, among other things, "Deloitte has not purposefully availed itself of the benefits and protections of New York law. Indeed, Deloitte has no license to practice in New York, has no offices or agents here, owns no land here, and conducts no business here."). As a result, BlackRock cannot establish personal jurisdiction under § 302 and the Complaint should be dismissed.

14

**B.    Plaintiffs' Complaint Should Be Dismissed
on the Ground of Forum Non Conveniens**

The Complaint should also be dismissed on the ground of *forum non conveniens*.  *Forum non conveniens* is based upon the principle that "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp., 421 F. Supp. 2d 741, 753 (S.D.N.Y. 2006) (Leisure, J.) (granting motion to dismiss based upon *forum non conveniens*).

The Second Circuit applies a three-step inquiry when evaluating *forum non conveniens*:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Strategic Value Master Fund, 421 F. Supp. 2d at 754, citing Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citing Iragorri v. United Techs Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)).  That inquiry leads to one conclusion in this case – it belongs in Germany.

**1.    No Deference Should Be Given To Plaintiff's Choice of Forum.**

"The degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations."  Iragorri, 274 F.3d at 71.  The degree of deference is higher if the plaintiff's choice "has been dictated by reasons that the law recognizes as valid."  Id. at 71-72.  On the other hand,

> [T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons – such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case . . . or the inconvenience and expense to the defendant resulting from litigation in that forum – the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non*

15

> *conveniens* motion by showing that convenience would be better
> served by litigating in another country's courts.

Id. at 72; accord Strategic Value Master Fund, 421 F. Supp. 2d at 754 (declining to afford

significant deference to plaintiff's choice of forum, noting evidence of forum shopping,

including fact that plaintiff sued a party it did not contract with, while failing to name "the real

party in interest" as a defendant); Ionescu v. E.F. Hutton & Co. (France) S.A., 465 F. Supp. 139,

147 (S.D.N.Y. 1979) (dismissing case based on *forum non conveniens* where it was apparent that

the plaintiff had not sued various obvious parties who would have destroyed diversity

jurisdiction, and holding that the "crazy-quilt" alignment of parties was further evidence of the

plaintiff's intent to "vex" the defendant "by choosing a forum where the controversy does not

fairly belong").[11]

BlackRock has selectively chosen to sue in its name rather than in the name of

BlackRock Germany.  BlackRock Germany, however, is Mr. Küssner's actual employer, the

counterparty to his Employment Contract, the entity to which he owes any fiduciary duties, and

the entity that BlackRock admits would suffer the alleged damages from the departure of the

German employees.  See Connolly Aff. at ¶ 30 ("in targeting and identifying BlackRock

Germany's Directors and employees. . . Mr. Küssner utilized his knowledge as Head of

BlackRock Germany's Frankfurt Office. . . to successfully hire away key personnel from

BlackRock Germany and thereby to deplete the managerial ranks of BlackRock's German

operations").  See also Complaint at ¶ 65  ("BlackRock, Inc., which measures and reports its

income and financial performance to its shareholders based on the performance of all of its

---

[11] Significantly, "[t]he fact that the plaintiff is a United States corporation, does not prevent
dismissal of the action [on *forum non conveniens* grounds], since an American citizen does not have an
absolute right to sue in an American court."  Diatronics, Inc. v. Elbit Computers, Ltd., 649 F. Supp. 122,
129 (S.D.N.Y. 1986), aff'd, 812 F.2d 712 (2d Cir. 1987).

16

subsidiaries and affiliates, including BlackRock Germany, together with BlackRock Germany, has been and will be irreparably harmed by the simultaneous departure of such a large percentage of its Frankfurt, Germany office employees, and by the disclosure of BlackRock's confidential information").

BlackRock's decision not to name the correct plaintiff was deliberate. To sue in the name of BlackRock Germany would destroy diversity jurisdiction in this Court, because both BlackRock Germany and Schroders plc are foreign corporations.[12] This Court has previously rejected the ruse of collapsing separate corporations to forum shop. In Strategic Value Master Fund, the plaintiff unsuccessfully attempted a similar confusion of corporate entities with its proposed defendant Cargill:

> [Plaintiff's] statement impliedly portrays "Cargill" as a unitary business form rather than as a global corporation comprised of a multitude of business entities with various interrelationships between them. The further implication is that the various Cargill entities do not respect each others corporate form because certain employees have been represented to be employees of more than one entity.

Id. at 761. BlackRock apparently also disrespects its own corporate form.[13]

Moreover, BlackRock seeks to enjoin Mr. Küssner's employment, but has not sued his new employer, Schroders Germany, over whom this Court could not assert personal jurisdiction. It is thus deliberately seeking relief from the wrong party in order to sue in New York. Finally, the Complaint omits as a party, Mr. Küssner, the alleged faithless fiduciary and the center of the Complaint's allegations. Neither BlackRock nor BlackRock Germany can sue him here, because they have contractually agreed to do so in Germany.

---

[12] See 28 U.S.C. §1332(a)(2).

[13] See In re Beck Indus., Inc., 479 F.2d 410, 418 (2d Cir. 1973) (parent corporation cannot disregard corporate separateness of its own subsidiary).

There can be only one explanation for filing a case with these gaping problems:
obtaining U.S.-style discovery.  In Kirch v. Liberty Media Corp., No. 04 Civ. 667, 2006 U.S.
Dist. LEXIS 82175 (S.D.N.Y. Nov. 8, 2006), this Court concluded that "it seems as though a
major motivation behind the plaintiff's pursuit of the present action is to take advantage of the
substantive and procedural benefits of this forum in relation to those available to Plaintiffs in
Germany."  Id. at **13-14.  (rejecting plaintiff's argument that a German court would not afford
them adequate discovery as grounds for surviving a motion to dismiss on *forum non conveniens*
grounds).  Not surprisingly, BlackRock has requested extensive (and expedited) discovery,
including over ten depositions – all in Europe.  See 4/20/07 Order to Show Cause, Att. A.  There
is simply no other explanation for being here.[14]  BlackRock's choice of forum, therefore,
deserves no deference.

### 2.    Germany's Courts Provide An Adequate, Alternative Forum.

The second inquiry is whether an alternative forum is available.  A suitable alternative
forum exists "where (1) the defendant is amenable to process in the other jurisdiction" and
"(2) the alternative forum can provide a satisfactory remedy."  Strategic Value Master Fund, 421
F. Supp. 2d at 755-56 (internal citations and quotation marks omitted).  In this case, Schroders
plc has agreed to submit to the jurisdiction of a German court.  Trust Decl. at ¶ 15.  In addition,
the German court would take jurisdiction, would be able to provide remedies sought in this case,

---

[14] BlackRock also relies on numerous "discovered" emails that it attached to its Complaint.
Compl. at ¶¶ 30-43.  Apparently, BlackRock is attempting to circumvent German constitutional and
statutory law, which protects employees' privacy in their workplace email.  See Driver-Polke Decl. at
¶ 7.1.  ("Unlawful access to the inbox of an employee's e-mail account may constitute a criminal offense
within the meaning of the German Penal Code (StGB) § 206.  In addition, unauthorized inspection of
such e-mail correspondence is subject to criminal prosecution under the Federal Data Protection Act
(BDSG) § 43(c) and the Online Data Protection Act (TDDSG) § 9(1).")  BlackRock is attempting to
proceed in a forum where such access to employee e-mail may not be illegal.

including preliminary injunctive relief if appropriate, and can provide methods of enforcement. See Driver-Polke Decl. at ¶¶ 7.3-7.8.[15]

This Court has repeatedly recognized that Germany provides an available and adequate forum. See Kirch, 2006 U.S. Dist. LEXIS 82175, at *2 (dismissing complaint alleging, among other things, tortious interference with economic advantage, on the ground of *forum non conveniens*, and holding that Germany was an available and adequate forum); NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale, No. 96 Civ. 9321 (LMM), 1999 U.S. Dist. LEXIS 817 (S.D.N.Y. Jan. 28, 1999) (dismissing complaint alleging various torts arising from breach based on *forum non conveniens*, and holding that Germany was an available and adequate forum); Fagan v. Deutsche Bundesbank, 438 F. Supp. 2d 376, 382 (S.D.N.Y. 2006) (dismissing defamation action based on *forum non conveniens*, noting that "numerous courts have found Germany to be an adequate alternative forum"); Opert v. Schmid, 535 F. Supp. 591 (S.D.N.Y. 1982) (dismissing defamation suit on *forum non conveniens* grounds).  As this Court has observed, "[that] the German legal system is different than that of the United States does not render Germany an inadequate forum.  'Some inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate.'"  NCA Holding Corp., 1999 U.S. Dist. LEXIS 817, at *5, citing Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822, 829 (2d Cir. 1990).  Germany presents an adequate forum for this case.

### 3.    The Public and Private Interest Factors All Favor Dismissal.

An action should be dismissed on the ground of *forum non conveniens* where private and

---

[15] "[A] plaintiff may not defeat a motion to dismiss for *forum non conveniens* on the sole ground that the substantive law to be applied in the alternative forum is less favorable than the law that would be applied in the present forum."  Strategic Value Master Fund, 421 F. Supp. 2d at 756 n.6.

public interest factors point toward trial in another forum. These factors include: "(1) the ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) practical problems involving the efficiency and expense of a trial; (5) enforceability of judgments; (6) administrative difficulties flowing from court congestion; (7) imposing jury duty on citizens of the forum; (8) the local interest in having controversies decided at home; and (9) the avoidance of unnecessary problems in the application of foreign law." See Allstate Life Ins. Co. v. Linter Group, Ltd., 994 F.2d 996, 1001 (2d Cir. 1993), citing Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508-09 (1947). Here, the public and private factors all weigh heavily in favor of dismissal.

### a.    All Relevant Sources of Proof Are in Germany or the UK.

The relevant witnesses in this case reside primarily in Germany; the remainder are in the UK. In contrast, not one material witness resides in New York. Plaintiff implicitly concedes this point by asking this Court to order expedited discovery and allow the depositions of over ten (10) individuals (eight specifically named), all of whom are in Europe. See 4/20/07 Order to Show Cause, Att. A. BlackRock seeks no depositions in New York. In addition, all of the relevant documents in this case are in Europe where BlackRock has alleged all events occurred. "Where most of the witnesses and documentary evidence reside in a foreign country, conducting trial in the U.S. could impose such significant burdens on the parties that dismissal is favored." Strategic Value Master Fund, 421 F. Supp. 2d at 766.[16]

---

[16] See also Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 611 (2d Cir. 1998) (finding that parties might be significantly burdened by a trial in the United States where "most of the witnesses in this case reside in England, and the cost of transporting these witnesses to New York could be enormous. . . . [and] most of the documentary evidence in the case was created, and is stored, in England"); Calavo Growers of Cal. v. Generali Belg., 632 F.2d 963, 966-67 (2d Cir. 1980) (holding that dismissal was favored when documents relating to the negotiation of the contract in dispute were located in Europe and only two essential witnesses were located in New York).

### b.    Compulsory Process is Available In Germany, But Not New York.

"The Second Circuit has held that a witness's live in-court testimony is the preferred method of presenting his or her testimony." Strategic Value Master Fund, 421 F. Supp. 2d at 769; citing DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002). Neither Mr. Küssner, any of the departing BlackRock Germany employees, nor Schroders Germany personnel can be compelled to appear in New York. In contrast, "[c]ompulsory process for the attendance of unwilling witnesses residing in Germany is available in Germany." NCA Holding Corp., 1999 U.S. Dist. LEXIS 817, at **6-7. The unavailability of compulsory process in this forum "militates in favor of litigation in the German courts." Fagan, 438 F. Supp. 2d at 383. See also Driver-Polke Decl. at ¶ 7.7.

Most significantly, this case should not proceed without Mr. Küssner. BlackRock "is, in essence, requesting that [the Court] adjudicate whether [Küssner] breached the contract without allowing [Küssner] the opportunity to be heard." Ente Nazionale Idrocarburi v. Prudential Sec. Group, 744 F. Supp. 450, 460 (S.D.N.Y. 1990) (dismissing case based on ground of *forum non conveniens* and pursuant to Fed. R. Civ. P. 19). In Ente Nazionale, the court dismissed the case, concluding "it would be best for all concerned, if the question at issue, namely whether Montedison breached the Agreement because of an illicit pact with Prudential and others, is to be adjudicated in a forum where all interested parties could be joined and have their claims heard." Id. at 461.[17] The same is true here.

### c.    Cost of Obtaining Willing Witnesses.

"The Court is obligated to weigh the costs defendant would incur in obtaining willing witnesses to appear at a trial in the present forum." Strategic Value Master Fund, 421 F. Supp.

---

[17] Of course, if Mr. Küssner were deemed an indispensable party under Fed. R. Civ. P. 19(a), the case must be dismissed, because BlackRock Germany is required to sue him in Germany.

2d at 766, citing Gilbert, 330 U.S. at 508. "[T]he Court should apply a comparative approach that evaluates, on the one hand, the costs that defendant would incur in the present forum, versus the costs plaintiffs would incur in the foreign forum." Id. citing Iragorri, 274 F.3d at 74. Under any "comparative approach," the costs to litigate here (for either party) are far greater than to litigate in Germany.

> **d.    Local Interest in the Controversy.**

When all significant actions pertinent to a claim take place in a foreign jurisdiction, that foreign forum is the proper forum for trying the action. See Allstate, 994 F.2d at 1002 (since the actions taken in "furtherance of the alleged fraud were carried out in Australia by Australian corporations, there is a strong local interest in trying this case in Australia").[18] This dispute is "inherently German." See Kirch, 2006 U.S. Dis. LEXIS 82175, at *13.

Mr. Küssner was "an employee and Managing Director of BlackRock Germany," heading up their German asset management group. The alleged tortious conduct allegedly occurred through the process of Mr. Küssner interviewing with and accepting a job offer as "Country Head of Schroders Germany," in Germany. All of the employees that Mr. Küssner allegedly solicited, with alleged encouragement from Schroders plc, were and continued to be employees of BlackRock Germany, in Germany.

There is more. The Confidentiality and Employment Policy that was the subject of alleged interference was undisputedly signed in Germany (as a requirement to work for

---

[18] See also Diatronics, Inc. v. Elbit Computers, Ltd., 649 F. Supp. 122, 128 (S.D.N.Y. 1986), aff'd, 812 F.2d 712 (2d Cir. 1987) (finding that the private factors pointed strongly to Israel as the proper forum for trying an action where "[a]lmost every significant event concerning the pertinent transaction took place in Israel," and "the allegations in this action. . . have little or no relationship to the plaintiff's activities in the United States"); NCA Holding Corp., 1999 U.S. Dist. LEXIS 817, at *9 (holding that the local interest factor "favor[ed] the German forum" because "examination of the complaint very clearly indicates that the present dispute centers in Germany, not here").

BlackRock Germany), and, in fact, is written in German (See Attachment A to the Complaint).

Moreover, the Confidentiality and Employment Policy was "amended to reflect the specific

applicability of the policy to employees of BlackRock Germany" and expressly references

German law.  Mr. Küssner's actual Employment Contract is governed by German law and

BlackRock Germany is contractually bound to adjudicate claims about it in Germany.  Nothing

connects this matter to New York.[19]

        **e.**        **Burden On New York Jurors.**

"Jury duty is a burden that ought not to be imposed upon the people of a community

which has no relation to the litigation."  Gilbert, 330 U.S. at 508-09.  Consequently, New York

jurors should not be required to decide this German employment dispute.  See Fagan, 438 F.

Supp. 2d at 384 (finding that "there is no justification for requiring local jurors to devote their

public service to finding the facts" in an action where "all of the pertinent conduct . . . occurred

in Germany" and "the case ha[d] no relation to this forum"); FESA UK Ltd v. M/V Artis Sun,

No. 01 Civ. 2940 (SHS), 2002 U.S. Dist. LEXIS 23419, at *9 (S.D.N.Y. Mar. 26, 2002) (finding

that "[t]here is a strong need for the Court to 'guard our docket from disputes' with no

connection to this forum").  Conversely, Germany has a strong interest in this dispute being

---

[19] BlackRock strains to draw some tenuous connection with New York.  First, BlackRock notes that the original form of the Confidentiality and Employment Policy was drafted in New York.  Yet, the document was signed in Germany, references German law, was amended for specific applicability to the employees of BlackRock Germany, and actually is written in German.  Connolly Aff. at ¶ 8.  BlackRock also alleges that the corporate transaction between Merrill Lynch & Co., Inc. and BlackRock was conducted and finalized primarily in New York.  Id.  That transaction is not the subject of this litigation; all the relevant facts in this case took place well after the acquisition occurred.  Such makeweight arguments cannot overcome the matter's ties to Europe generally, and Germany specifically.  See NCA Holding Corp., 1999 U.S. Dist. LEXIS 817, at *9 (dismissing complaint on the grounds of *forum non conveniens*, finding that "[e]ven the briefest perusal of the complaint shows that almost all of the transactions alleged by plaintiffs occurred in Germany," and finding that "[t]he fact that a few meetings took place in the United States does not make the dispute one local to New York").

decided by German courts.  Germany also has an interest in protecting the rights of German

employees.  See Driver-Polke Decl. at ¶ 7.10.

       **f.**     **Familiarity with the Law.**

     "The likelihood that the present forum would have to apply a foreign jurisdiction's law

would weigh in favor of dismissal."  Strategic Value Master Fund, 421 F. Supp. 2d at 774.

BlackRock's claims will be decided under German law.  Under New York choice of law rules, if

there is a conflict of laws, a "court must apply the substantive tort law of the state that has the

most significant relationship with the occurrence and with the parties."  Machleder v. Diaz, 801

F.2d 46, 51 (2d Cir. 1986) (citing Babcock v. Jackson, 12 N.Y.2d 473, 482, 191 N.E.2d 279, 287

(1963)).  See also AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992) (In tort

actions, if there is a conflict of laws, New York courts apply an "interests analysis," under which

the law of the jurisdiction having the greatest interest in the litigation is applied).  Indeed,

BlackRock even cites to German law when it argues (incorrectly) that it is likely to prevail on its

claims.  See Memorandum at ¶¶ 23-24, 26.  In addition, the predicate issue of whether

Mr. Küssner breached  fiduciary obligations as an employee must be decided under German law.

     Other German legal issues that will arise if this case is litigated include:

-    Whether the proper corporate parties have sued and been sued, under German law

-    Whether the "Confidentiality and Employment Policy" is even enforceable under German law, including the German Commercial Code, German Limited Liability Act, the German Act for One-Third Representation of Employees on the Supervisory Board, or the German Co-Determination Act.

-    Whether Schroders plc or Mr. Küssner has violated the German Unfair Competition Act (UWF)

-    Whether BlackRock's interception of its employees' e-mails violates the German Federal Data Protection Act § 43(2), the Online Data Protection Act (TDDSG) § 9(1), the German Penal Code § 206, or the German Constitution and whether the emails that BlackRock "discovered" are admissible evidence.

24

Driver-Polke Decl. at ¶¶ 1.1-1.3, 3.1-4.3, 7.1-7.2.  "Dismissal in such a case obviates the prospect of misunderstanding and/or misapplying law that the foreign court is more familiar with."  Strategic Value Master Fund, 421 F. Supp. 2d at 774.[20]

In sum, both private and public factors require dismissal of this action under the doctrine of *forum non conveniens*.

## IV.    CONCLUSION

The Complaint should be dismissed in its entirety.

Dated:  May 7, 2007                    Respectfully submitted,


                                        /s/ Frederick A. Brodie
                                       Frederick A. Brodie (FB 6429)
                                       PILLSBURY WINTHROP SHAW PITTMAN LLP
                                       1540 Broadway
                                       New York, New York 10036-4039
                                       (212) 858-1000

                                       Christine N. Kearns (*Pro Hac Vice* pending)
                                       PILLSBURY WINTHROP SHAW PITTMAN LLP
                                       2300 N Street, N.W.
                                       Washington, D.C.  20037-1128
                                       (202) 663-8000

                                       Counsel for Schroders plc

---

[20] See also Kirch, 2006 U.S. Dist. LEXIS 82175, at *30 (finding that the German forum was preferable given its greater familiarity with principles of German law); Conte v. Flota Mercante Del Estado, 277 F.2d 664, 667 (2d Cir. 1960) ("[T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.").