PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036-4039
(212) 858-1000
Frederick A. Brodie (FB 6429)

2300 N Street, NW
Washington, DC 20037-1122
(202) 663-8000
Christine N. Kearns (*Pro Hac Vice* pending)

Attorneys for Defendant
Schroders plc

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLACKROCK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SCHRODERS PLC,<br><br>Defendant. | 07 CV 3183 (PKL)<br>ECF CASE ELECTRONICALLY FILED |

**DECLARATION OF
OLIVER DRIVER-POLKE**

400567555v1

## DECLARATION

I, Oliver Driver-Polke having my offices at Oberlindau 3, 60323 Frankfurt am Main, hereby declare as follows:

I obtained my legal education from the Freie Universität Berlin (1994 to 1999) and received my practical training at the Higher Regional Court Berlin (KG Berlin). I have been admitted to practice law in the Federal Republic of Germany since the year 2002. From October 2002 until July 2004, I was employed by the Frankfurt office of Freshfields Bruckhaus Deringer, an international business law firm. From August 2004 until December 2005, I worked for the Berlin office of Linklaters Oppenhoff & Rädler, another international business law firm. Since January 1, 2006, I have been a partner at the law firm of JUSTEM Rechtsanwälte. While employed with Freshfields Bruckhaus Deringer, as well as at Linklaters Oppenhoff & Rädler, I independently advised national and international corporations on labor and employment law issues. The law firm JUSTEM Rechtsanwälte focuses exclusively on advising employers and businesses in the area of labor and employment law. In my past practice, I have frequently dealt with the validity and enforceability of post-contractual covenants not to compete, non-solicitation agreements, and the scope of contractual and post-contractual duties of confidentiality.

In 2006, JUSTEM was one of six law firms in Germany that were nominated by the professional journal JUVE for the title of "Law Firm of the Year 2006 for Labor and Employment Law".

I have read and am familiar with the basic contents of the complaint and supporting documents of the case *BlackRock, Inc. v. Schroders plc*, No. 07 CV 3183 (S.D.N.Y.). My opinions are set forth below:

Under German Law, the following legal issues will be of primary importance in this case:

1. Parties

1.1 Under German law, a plaintiff must have legal grounds for bringing claims against the defendant and seeking specific legal remedies. Claims are generally based upon specific provisions of codified law, and in some cases also so-called "blanket clauses" (*Generalklauseln*).

1.2 German law respects the principle of corporate separateness. The issue of who has standing to sue must generally be determined separately for each legal entity within a corporate group. There is no principle of German law according to which the parent company of a group may bring claims held by its subsidiaries.

1.3 Likewise, under German law, whether a defendant has been correctly sued must be determined separately for each legal entity within a corporate group. The correct affiliate must be named as the defendant. The fact that a plaintiff may have claims against a subsidiary or affiliate does not mean that claims may also be brought against the parent company of the subsidiary or affiliate or against the parent company of the group.

2. Applicable Law

2.1 German conflict of laws provisions are, for the most part, set forth in the Introductory Law to the German Civil Code (*EGBGB*). A court must determine whether German conflict of laws provisions would require application of German law or some other law.

2.2  A German Court would – with great likelihood - apply German law to all of BlackRock's allegations, including those brought under the German Act Against Unfair Competition (UWG) as well as related tort claims. The German rules on the conflict of laws (German Fed. Sup. Ct., printed in: GRUR 2004, 1035) apply the law of the market where the parties compete and which is intended to be affected by the allegedly illegal act.

2.3  Introductory Law to the German Civil Code Art. 27 provides, in part, as follows: "*The agreement is subject to the law chosen by the parties. The choice of law must be express or must be implied by the provisions of the agreement or the circumstances of each case with sufficient certainty.*"

2.4  Introductory Law to the German Civil Code Art. 28 provides, in part, as follows: "*If the parties have made no choice of law in accordance with Art. 27, the agreement is subject to the law of the country to which the agreement has the closest nexus. [...]. There is a presumption that the agreement has the closest nexus to the country in which the party rendering the performance characteristic of the agreement has its habitual abode or, in case of a business, association or legal entity, its principal place of office at the time the agreement is signed.*"

2.5  The extensive provisions of Introductory Law to the German Civil Code Art. 29a regulate which provisions of European law are applicable even if foreign law is chosen, in cases where the agreement has a close nexus to the territory of the Federal Republic of Germany. These provisions include the EU Directive for the Protection of Consumers (RL 93/13/EC dated April 5, 1993), which may also impose legal limitations on the type of clauses that may lawfully be included in agreements with managing directors.

2.6 Introductory Law to the German Civil Code Art. 30 provides, in part, as follows:

Paragraph 1: "Where employment agreements or employment relationships are concerned, the choice of law made by the parties may not have the result of depriving the employee of the protection that would be available to the employee under mandatory provisions of the law that would be applicable in accordance with paragraph 2 absent a choice of law by the parties."

Paragraph 2: "Absent a choice of law, employment agreements and employment relationships are governed by the law of the country,

1. in which the employee ordinarily works in performance of the agreement, even if the employee is temporarily assigned to work in a different country, or

2. in which the branch office that hired the employee is located, if the employee ordinarily does not perform his work in one and the same country, unless the totality of circumstances demonstrates that the employment agreement or employment relationship has a closer nexus to another country; in the latter case, the law of the other country is applicable."

2.7 Based on the facts and claims alleged in the complaint, in my opinion a German court will apply German law to this case.

3. Legal Grounds

3.1 Where a plaintiff claims that the defendant induced another to breach a contract, a court must determine, in accordance with the provisions of the

German Unfair Competition Act (*UWG*), whether the defendant engaged in unfair competition. In particular, it must determine whether the conduct of the defendant rose to the level of illegal inducement within the meaning of unfair competition law. This depends primarily on the distinction under German law between positive, active "inducement" and mere passive benefit from another's breach of contract.

3.2  A claim of interference with contract must be based on a valid contract.

4.  Valid Execution of the Confidentiality and Employment Policy

4.1  A threshold issue under German Law will be who should be treated as Mr. Küssner's counterparty on the Confidentiality and Employment Policy: BlackRock, Inc. or its German subsidiary which employed him. Because the Confidentiality and Employment Policy is linked to Mr. Küssner's employment agreement a German court may well view the German subsidiary as the true counterparty.

4.2  A German court would also consider whether an agreement was formed in accordance with German law. Under German law an agreement with a Managing Director must be negotiated and concluded or approved by the shareholders or the supervisory board. There would have to be a valid shareholder resolution or supervisory board resolution. Whether this is the case would have to be determined in accordance with the provisions of the German Limited Liability Company Act (*GmbHG*), the German Act for One-Third Representation of Employees on the Supervisory Board (*Drittelbeteiligungsgesetz*), or the German Co-Determination Act (*MitbestG*) and, possibly, also in accordance with the provisions of the German Stock Corporation Act (*AktG*), which may apply by cross-reference.



4.3   A German court would additionally consider whether an agreement must comply with the written form requirement, and, if so, whether this requirement was met. Under German Commercial Code (*HGB*) § 74, any agreement limiting the professional activities of an employee after termination of his employment agreement (covenant not to compete) must be in written form.

5.   Voidability of the Confidentiality and Employment Policy

5.1   Under Civil Code § 123 a legal representation, such as the acceptance of an offer, is voidable if the party who made the legal representation was coerced to do so by an unlawful threat. Under German law, an agreement may be voided based upon unlawful coercion within one year from the date the coercion ceased.

6.   Substantive Validity of the Confidentiality and Employment Policy

6.1   A German court would determine whether it may strike any invalid portions of a contract.

6.2   A German court would determine whether the provisions of Commercial Code §§ 75 *et seq.* apply to this case, because those sections apply only to commercial employee (*Handlungsgehilfe*) within the meaning of those provisions. Under German law a court will have to determine on how independent a managing director was in the performance of his responsibilities as managing director and whether, if his independence was subject to restrictions, he should be regarded as an employee, rather than a statutory managing director.

6.3  Under German law whether a restriction on competition violates public policy depends on a variety of factors, including the scope, territory and term of the restriction, and requires a balancing of the countervailing interests of both parties. This determination must be made in accordance with German law for each restriction contained in an agreement.

6.4  According to Commercial Code § 75f, an agreement under which one principal covenants to another principal not to hire, or to hire only under certain conditions, an employee that was formerly employed by the other principal, is non-binding.

6.5  To determine whether duties of confidentiality are valid under German law, the interests of the employer in confidentiality must, in consideration of the particular circumstances of each case, be balanced against the interests of the employee in the continuation of his professional career, an interest protected by Article 12 of the German Constitution (*Grundgesetz*).

7.  Procedural and Evidentiary Issues

7.1  Under German law, e-mail correspondence of an employee or managing director is protected from inspection by the employer, provided that personal use of the e-mail account is permitted or tolerated. Unlawful access to the inbox of an employee's e-mail account may constitute a criminal offense within the meaning of German Penal Code (*StGB*) § 206. In addition, unauthorized inspection of such e-mail correspondence is subject to criminal prosecution under Federal Data Protection Act (*BDSG*) § 43 (2) and Tele Services Data Protection Act (*TDDSG*) § 9 (1).

The right to privacy of each person is protected under Art. 2 (1) of the German Constitution. The right to privacy includes the right to informational self-determination, which, in turn, includes the freedom to



decide who may inspect one's personal data, including private e-mails. These constitutional rights may preclude inspection and use of private e-mails.

7.2  In view of the above considerations, a German court might exclude the e-mails from use in a legal proceeding.

7.3  Matters, like the one in dispute, are regularly filed in the German Regional Courts or „Landgerichte". Civil law matters at the Regional Court level are tried before a bench of three judges. Judgments handed down by the Regional Courts may be appealed to the next higher court, the Court of Appeals or „Oberlandesgericht". The Court of Appeals reviews the lower court's ruling for errors in law or process. If permitted either by the Court of Appeals or the German Federal Supreme Court (*Bundesgerichtshof*), a further appeal is possible to the German Federal Supreme Court.

7.4.  The German court's procedural principles are based upon the rule of law and fairness to all parties, found in, among others places, in 20 III, 103 of the German Constitution (*Grundgesetz*) and 6, 13 of the European Human Rights Convention.

7.5  German courts may issue preliminary injunctions in civil law matters. Applicants are required to establish, among other things the existence of a claim and the urgency for injunctive relief (Secs. 916 et seq. German Act on Civil Procedure - *ZPO*).

7.6  German courts are an available forum for the claims in this case. Both under the Council Regulation 44/2001 (Art. 5 No. 3), Sec. 32 German Act on Civil Procedure and Sec. 14 German Unfair Competition Act, German courts have jurisdiction.



7.7 Ordinarily the German court may summon witnesses whose identities have been made known to the court by either party. Should a witness not appear in court, the court will sanction the witness for contempt. Testimony of witnesses residing abroad is subject to international treaties to which Germany is a party. In preliminary injunction proceedings the court will not summon witnesses, the parties need to rely on affidavits, documentary evidence and witnesses that appear in court voluntarily.

7.8 German procedural law provides several methods to enforce judgments. These include, but are not limited to, the attachment of claims or property, penalty payments and the temporary freezing of accounts.

7.9 In sum, the German courts offer an adequate, fair and efficient forum for resolving disputes like this one.

7.10 Germany has an interest in having this dispute decided in the German courts as Germany is the market in which the competition occurs and the alleged acts occurred. Germany also has an interest in protecting the rights of employees as noted in paragraph 2.6.

I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed May 7th, 2007.

*[signature]*

Oliver Driver-Polke