make limited issues of non-voting ordinary shares or to grant rights to subscribe for, or convert securities into, non-voting ordinary shares. This flexibility could be required should the Company wish to use non-voting ordinary shares as part of the consideration for possible acquisitions.

**Authority to purchase own shares**

11. That the Company be and is hereby generally and unconditionally authorised to make market purchases within the meaning of section 163(3) of the Companies Act 1985 (as amended) of non-voting ordinary shares of £1 each ('Shares'), subject to the following conditions:

    (a) such authority be limited to a maximum number of 14,700,000 Shares;

    (b) in the case of purchases made otherwise than by tender offer, the maximum price, exclusive of expenses, at which Shares may be purchased is the higher of:
    (i) 5 per cent. above the average of the middle market quotations for the Shares as derived from the London Stock Exchange Daily Official List for the five business days preceding the date of purchase; and
    (ii) the higher of the price of the last independent trade and the highest current independent bid on the London Stock Exchange at the time the purchase is carried out;

    (c) in the case of a tender offer, the maximum price, exclusive of expenses, at which Shares may be purchased is 5 per cent. above the average of the middle market quotations for the Shares as derived from the London Stock Exchange Daily Official List for the five business days preceding the date on which the tender offer is announced;

    (d) the minimum price at which Shares may be purchased is £1 per share, exclusive of expenses; and

    (e) such authority shall, unless renewed prior to such time, expire at the conclusion of the next Annual General Meeting of the Company save that the Company may before such expiry enter into a contract to purchase Shares which would or might be completed or executed wholly or partly after its expiry and may make a purchase of Shares in pursuance of any such contract.

*If passed, this resolution would renew the Company's general authority to make purchases of its non-voting ordinary shares. This authority relates to 14,700,000 shares, representing approximately 5 per cent. of the Company's total issued share capital and 21.8 per cent. of its issued non-voting ordinary share capital. The authority sets limits on the price which may be paid for any shares and is limited to market purchases on the London Stock Exchange or (so far as required under the Listing Rules) market purchases by tender offer to all shareholders.*

*Since the previous authority was renewed at the last Annual General Meeting on 26 April 2006, 6,445,073 non-voting ordinary shares have been purchased and cancelled at a total cost of £57,792,040. As at the date of this notice of meeting there were 11,106,854 options outstanding over non-voting ordinary shares. This represented 3.8 per cent. of the total issued share capital and 16.5 per cent. of the issued non-voting ordinary share capital at that date and would represent 4.0 per cent. of the total issued share capital and 21.1 per cent. of the issued non-voting ordinary share capital if the Company were to purchase the maximum number of shares allowed under this general authority.*

*In recent years, this authority has been used solely with a view to maintaining the ratio of ordinary shares to non-voting ordinary shares over the medium term, taking into account the issue of non-voting ordinary shares under the Company's share or share option plans. If the authority is renewed this year, the Board intends that the previous policy would be extended so as to take into account the issue of any non-voting ordinary shares pursuant to the authority contained in resolution 10 as well as under the Company's share or share option plans. In addition, purchases may also be undertaken at the Directors' discretion, where they consider them to be otherwise appropriate. Purchases under this authority would only be made where the Directors believed that they were in the best interests of the Company, taking into account other available investment opportunities and the overall financial position of the Group. Purchases would only be made where earnings per share would be increased (except possibly in respect of purchases made in relation to the issue of non-voting ordinary shares under the Company's share or share option plans).*

*If the Company were to purchase any non-voting ordinary shares pursuant to this authority, the Directors would consider whether to cancel those shares or (subject to the limits allowed by company law) hold them as treasury shares.*

**Amendments to Articles of Association**

12. That the Articles of Association of the Company be amended by the adoption of the amendments to Articles 13, 54, 84, 89, 99, 103, 104 and 146, together with consequential re-numbering and cross-referencing amendments, highlighted in the revised print of the Articles of Association initialled by the Chairman for the purposes of identification only.

*The Company's Articles of Association were adopted in 2000 and last amended in April 2004. Since then the coming into force of the Companies (Audit, Investigations and Enterprise) Act 2004 has made certain amendments to the Companies Act 1985 to clarify the circumstances in which a company may indemnify its directors against liabilities incurred by them and to permit a company to fund a director's expenditure on the defence of legal proceedings in certain circumstances. Amendments to Articles 99 and 146 of the Company's Articles of Association are being proposed so as expressly to provide, respectively, for the funding by the Company of a Director's defence proceedings and for*

the indemnification by the Company of any Director or any director of any company associated with the Company (being, in practice, any UK subsidiary of the Company), in each case to the extent permitted by company law.

If approved by shareholders, the amendment to Article 99 will give the Company express permission to fund a Director's expenditure in defending any criminal or civil proceedings and to do anything to enable a Director to avoid incurring such expenditure, as provided by company law. It will also give the Company specific permission to fund a Director's expenditure in defending himself in regulatory investigations or actions, as provided by company law. The Companies Act 2006 makes specific provision for the funding of directors' expenditure on the defence of regulatory investigations and actions, although the relevant section of that Act has not yet been brought into force.

The proposed amendment to Article 146 will have the effect of simplifying the provision in the Company's Articles of Association for the indemnification of Directors. The existing Article 146 (Indemnity of Officers) provides for automatic indemnification by the Company of its Directors and other officers (other than its auditors) in certain limited circumstances, as well as permitting the Company to indemnify such officeholders more broadly to the extent permitted by company law. The automatic indemnification provision will be removed if the proposed amendment to that Article takes effect. The proposed amendment to Article 146 will also remove the existing provision in the Company's Articles of Association for the indemnification of officers other than directors and auditors, on the basis that, following the coming into force of the Companies (Audit, Investigations and Enterprise) Act 2004, there are now no specific company law restrictions on the indemnification of such officers. If the amendment to Article 146 is approved by shareholders, it is proposed that the Company grants specific deeds of indemnity to each of its Directors and its Company Secretary in place of the automatic indemnity, as more particularly described in the Directors' report on page 22.

In addition, it is proposed to delete Articles 84 and 89 in their entirety. Section 293 of the Companies Act 1985 (as amended), which provides for an age limit of 70 for directors, is to be repealed as from 6 April 2007. Article 84 excludes the operation of that section and, to the extent it does, is therefore superfluous. Article 84 also provides for the Board, when convening a general meeting at which a director will be proposed for appointment or reappointment who at the date for which the meeting is convened will be 70 or over, to give notice of the Director's age in the notice convening the meeting or in any document accompanying the notice. In light of the forthcoming repeal of section 293, the Directors consider this provision to be unnecessary. Article 89 provides for a director to retire if he or she has reached the age of 70 or over at the date of an annual general meeting. In light of the Employment Equality (Age) Regulations 2006, the Board considers it inappropriate to retain this provision.

It should be noted that, in accordance with the provisions of the Combined Code, non-executive Directors who have served at least nine years on the Board, are subject to annual re-election.

Minor amendments are also proposed to Articles 13, 54, 103 and 104 to take account of developments in market practice or which are of a technical or drafting nature. Certain consequential re-numbering and cross-referencing amendments are also proposed.

The number of amendments is such that they have not been described separately in this resolution but have been highlighted in the revised print of the Articles of Association which is available for inspection as detailed below.

**Proxy forms**
A proxy form is enclosed to enable shareholders unable to attend the meeting to cast their votes at the Annual General Meeting by post or online.

By Order of the Board

**Graham Staples**
Company Secretary

Registered office:
31 Gresham Street
London EC2V 7QA
8 March 2007

**Notes**
Only ordinary shareholders entitled to attend and vote at the meeting are entitled to appoint one or more proxies to attend and (insofar as permitted by the Company's Articles of Association) to vote instead of him or her. The Company currently has 226,022,400 ordinary shares in issue with voting rights attached and 67,369,380 non-voting ordinary shares in issue. No shares are held in treasury. Non-voting ordinary shareholders have no right to attend or vote at the Annual General Meeting.

A proxy need not be a member of the Company. A form of proxy is enclosed for ordinary shareholders which should be completed and returned to the Company's registrar, Lloyds TSB Registrars, The Causeway, Worthing, West Sussex, BN99 6AB not later than 48 hours before the time fixed for the meeting. Completion of the proxy will not preclude an ordinary shareholder from attending and voting in person.

Shareholders who prefer to register the appointment of their proxy electronically via the internet can do so at www.sharevote.co.uk where full instructions are given. The personal reference number, card ID and account number printed on the proxy form will be required. Alternatively shareholders who have already registered with Lloyds TSB Registrars' Shareview service can appoint their proxy by logging on to their portfolio at www.shareview.co.uk and clicking on 'Company Meetings'. A proxy appointment made electronically will not be valid if sent to any address other than those provided or if received after 11.30 a.m. on 22 April 2007. Any communication found to contain a computer virus will not be accepted.

Only those ordinary shareholders on the register of members as at 6.00 p.m. on 22 April 2007 will be entitled to attend or vote at the meeting in respect of the number of shares registered in their name at that time. Changes to entries on the register of members after 6.00 p.m. on 22 April 2007 will be disregarded in determining the rights of any person to attend or vote at the meeting.

CREST members who wish to appoint a proxy or proxies through the CREST electronic proxy appointment service may do so for the Annual General Meeting to be held on 24 April 2007 and any adjournment(s) thereof by using the procedures described in the CREST Manual. CREST Personal Members or other CREST sponsored members, and those CREST members who have appointed a voting service provider(s), should refer to their CREST sponsor or voting service provider(s), who will be able to take the appropriate action on their behalf.

In order for a proxy appointment or instruction made using the CREST service to be valid, the appropriate CREST message (a 'CREST Proxy Instruction') must be properly authenticated in accordance with CRESTCo's specifications and must contain the information required for such instructions, as described in the CREST Manual. The message, regardless of whether it constitutes the appointment of a proxy or an amendment to the instruction given to a previously appointed proxy must, in order to be valid, be transmitted so as to be received by the issuer's agent (ID 7RA01) by the latest time(s) for receipt of proxy appointments specified in the notice of meeting. For this purpose, the time of receipt will be taken to be the time (as determined by the timestamp applied to the message by the CREST Applications Host) from which the issuer's agent is able to retrieve the message by enquiry to CREST in the manner prescribed by CREST. After this time any change of instructions to proxies appointed through CREST should be communicated to the appointee through other means.

CREST members and, where applicable, their CREST sponsors or voting service providers should note that CRESTCo does not make available special procedures in CREST for any particular messages. Normal system timings and limitations will therefore apply in relation to the input of CREST Proxy Instructions. It is the responsibility of the CREST member concerned to take (or, if the CREST member is a CREST personal member or sponsored member or has appointed a voting service provider(s), to procure that his CREST sponsor or voting service provider(s) take(s)) such action as shall be necessary to ensure that a message is transmitted by means of the CREST system by any particular time. In this connection, CREST members and, where applicable, their CREST sponsors or voting service providers are referred, in particular, to those sections of the CREST Manual concerning practical limitations of the CREST system and timings.

The Company may treat as invalid a CREST Proxy Instruction in the circumstances set out in Regulation 35(5) of the Uncertificated Securities Regulations 2001.

Profiles of each of the Directors offering themselves for election or re-election are on pages 18 and 19 of this report. The profiles include, where appropriate, membership of Board Committees.

The following documents are available for inspection at the Company's registered office during normal business hours on weekdays and will be available for inspection at least 15 minutes prior to and during the meeting:
- Register of Directors' interests kept in accordance with section 325 of the Companies Act 1985;
- Articles of Association;
- Directors' service contracts or letters of appointment; and
- Proposed amendments to the Articles of Association (see resolution 12).

In the event that you have sold or transferred your shares in the Company, you should pass this Annual Report and Accounts to the person through whom the sale or transfer was made for transmission to the purchaser or transferee.

# Schroders
# Shareholder information

**98/99**

## Shareholder information

### Schroders plc
Company No. 3909886

### Registered office
Schroders plc
31 Gresham Street
London EC2V 7QA
Tel: +44 (0)20 7658 6000
Fax: +44 (0)20 7658 6965
www.schroders.com

### Company Secretary
Graham Staples
Schroders plc
31 Gresham Street
London EC2V 7QA
Tel: +44 (0)20 7658 6000
Fax: +44 (0)20 7658 6965
Email: company.secretary@schroders.com

### Financial calendar
| | |
|---|---|
| Ex-dividend date | 14 March 2007 |
| Record date | 16 March 2007 |
| Annual General Meeting | 24 April 2007 |
| Final dividend payment date | 27 April 2007 |
| First quarter trading update | May 2007* |
| Interim results announcement | August 2007* |
| Interim dividend paid | Sept 2007* |
| Third quarter trading update | Oct/Nov 2007* |

* Dates to be confirmed

### Investor information
Enquiries and notifications concerning dividends, share certificates or transfers and address changes should be sent to the Registrar; other shareholder enquiries should be addressed to the Company Secretary at the registered office.

The Company's governance reports, corporate governance guidelines, the terms of reference of the Board Committees and our results' presentations can be found at www.schroders.com

### Registrar
Lloyds TSB Registrars
The Causeway
Worthing
West Sussex BN99 6DA
UK shareholder helpline:
Freephone 0800 169 1199
International shareholder helpline:
+44 121 415 7192
Fax: +44 (0)870 600 3980

### Shareholder services and electronic communication
Lloyds TSB Registrars provides a range of shareholder information online. Shareholders can access their shareholdings, including balance movements, indicative share prices, information on recent dividends, portfolio valuation and update their details at www.shareview.co.uk.

Following a change in the law, shareholder documents such as the annual report will now be available electronically on the Company's website or by email. This has the advantage of reducing the cost to the environment of printing and enables shareholders to access such documents more quickly. If you would like to receive a notification by email that such documents are available on the website, you should register your email address at www.shareview.co.uk. If you wish to receive hard copies of shareholder documents, please write to the Registrar.

In addition, shareholders can register the appointment of their proxy electronically via the internet at www.sharevote.co.uk where full instructions are given. The personal reference number, card ID and account number printed on the proxy form will be required when registering online.

### Dealing services
Shareview Dealing is a shareholder service offered by the Registrar. It is a simple way to buy or sell shares via the internet or telephone with quick settlement. For further information visit www.shareview.co.uk/dealing or call 0870 850 0852.

JPMorgan Cazenove Ltd also operates a postal dealing service in the Company's shares. Further information is available from:
JPMorgan Cazenove Limited
20 Moorgate
London EC2R 6DA
Tel: +44 (0)20 7588 2828
Fax: +44 (0)20 7155 9000

### Sharegift
If you only have a small number of shares whose value makes them uneconomic to sell, you may wish to consider donating to charity through Sharegift, an independent charity share donation scheme. For further information, please contact either the Registrars or Sharegift on +44 (0)20 7337 0501, or see the website at www.sharegift.org.