Jay S. Berke  (JB 6500)
A Member of the Firm
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BLACKROCK, INC.,                                   :
                                                   :   07 Civ. 3183 (PKL)
                              Plaintiff,            :
                                                   :   ECF CASE
             - against -                           :   ELECTRONICALLY FILED
                                                   :
SCHRODERS PLC.                                     :
                                                   :
                              Defendant.           :
                                                   :
                                                   :
                                                   :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### PLAINTIFF BLACKROCK, INC.'S MEMORANDUM OF
### LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

STATEMENT OF FACTS ...................................................................................................1

    A.    Facts Establishing Defendant's Conduct Causing Injury To Plaintiff In
           New York......................................................................................................1

    B.    Facts Establishing Defendant's Doing Business In New York ................................4

ARGUMENT ....................................................................................................................6

POINT I    SEQUENCING ISSUES SHOULD NOT DELAY AN EXPEDITED
           DENIAL OF DEFENDANT'S MOTION TO DISMISS FOLLOWED BY
           IMMEDIATE COMMENCEMENT OF EXPEDITED DISCOVERY ......................6

POINT II    APPLICATION OF APPROPRIATE STANDARDS SHOULD  RESULT IN
           DENIAL OF DEFENDANT'S MOTION TO DISMISS  AND IMMEDIATE
           COMMENCEMENT OF EXPEDITED DISCOVERY .............................................8

POINT III    DEFENDANT'S MOTION TO DISMISS ON RULE 12(B)(2)  LACK OF
           PERSONAL JURISDICTION SHOULD BE DENIED ...........................................13

    A.    There Is Personal Jurisdiction Over Defendant Under C.P.L.R. 301 ...................13

    B.    There Is Personal Jurisdiction Over Defendants Under C.P.L.R. 302 ..................18

POINT IV    DEFENDANT'S MOTION TO DISMISS FOR FORUM NON
           CONVENIENS SHOULD BE DENIED .................................................................20

    A.    Plaintiff Domiciliary's Choice Of This Home Forum Is Entitled To A High
           Degree Of Deference ..................................................................................20

    B.    In View Of The Need For Preliminary Injunction, Germany Is Not An
           Available Forum At This Time.......................................................................22

    C.    Defendant Cannot Sustain Any Alleged Inconvenience Or Interest Which
           Overrides Plaintiff's Choice Of Forum Here .................................................23

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76 (2d. 1983)......................................................9

And see Bellomo v. Pennsylvania Life Co., 488 F. Supp. 744 (S.D.N.Y. 1980) ..........................17

Ayyash v. Bank Al-Madina, 233 F.R.D. 325 (S.D.N.Y. 2005) ......................................................10

Bulova Watch Co. v. K. Hattori & Co., 508 F. Supp. 1322 (E.D.N.Y. 1981)...............................13

Calavo Growers v. Belgium, 632 F.2d 963 (2d Cir. 1980)............................................................24

Daewoo Int'l (America) Corp. Creditor Trust v. SSTS America Corp., No. 02 Civ. 9629
    (NRB) 2004 WL. 830079 (S.D.N.Y. Apr. 13, 2004)..............................................................16

Dagen v. CFC Group Holdings Ltd., No. OO Civ 5682 (DAB)(THK), 2002 U.S. Dist.
    LEXIS 25767 (Mar. 7, 2002).................................................................................................15

Dubied Machinery  Co. v. Vermont Knitting Co., Inc., 1992 WL. 142044 (S.D.N.Y. June
    3, 1992) ...............................................................................................................................8, 14

Ente Nazionale Idrocarburi v. Prudential Sec. Group., Inc., 744 F. Supp. 450 (S.D.N.Y.
    1990) .......................................................................................................................................24

Four Seasons Solar Products Corp. v. Solarium Systems, Inc., No. 86 C 3468, 1987 WL
    4818 (E.D.N.Y. May 6, 1987) .................................................................................................19

Georgiadis v. First Boston Corp., No. 90 Civ. 7672 (PLK), 1994 WL. 39229 (S.D.N.Y.
    July 27, 1994)..........................................................................................................................24

Hartford Fire Insurance Co. v. Evergreen Organization, Inc., 410 F. Supp. 2d 180
    (S.D.N.Y. 2006).......................................................................................................................22

Industrial Electronics Corp. v. Cline, 330 F.2d 480 (3d Cir. 1964)..............................................10

In re Fill, 68 BR 923, 932-33 (S.D.N.Y. 1987) ...........................................................................24

Iragorri v. United Tech. Corp., 274 F.3d 65 (2d Cir. 2001) ......................................................8, 23

Jacobs v. Felix Bloch Erben Verlag Fur Buhne Und Funk KG, 160 F. Supp. 2d 722
    (S.D.N.Y. 2001)..................................................................................................................15, 17

Kirch v. Liberty Media Corp., No. 04 Civ. 667(NRB), 2006 WL. 3247363 (S.D.N.Y.
    2006)........................................................................................................................................22

Klonis v. National Bank of Greece, No. 05 Civ. 6289 PKC DF, 2007 WL. 959257
  (S.D.N.Y. Mar. 28, 2007) ..................................................................................13

Manufacturing Technology, Inc. v. Kroger Co., No. 06 Civ. 3010(JSR), 2006 WL.
  3714445 (S.D.N.Y. Dec. 13, 2006)......................................................................19

Self Intern. (HK) Ltd. v. La Salle National Bank, Chicago, No. 01 CV 4291(RCC), 2002
  WL. 500372 (S.D.N.Y. Mar. 29, 2002) ................................................................10

Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913 (JFK), 1992 WL. 236208
  (S.D.N.Y. Sept. 8, 1992) ...................................................................................11

Sinochem International Co. Ltd. v. Malaysia International Shipping Corp., 127 S. Ct.
  1184 (2007) .......................................................................................6, 7, 12

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376
  (S.D.N.Y. 2002) ...............................................................................................16

Strategic Value Master Fund Ltd. v. Cargill Financial Services, Corp., 421 F. Supp. 2d
  741 (S.D.N.Y. 2006) .........................................................................................20

Sybron Corp. v. Wetzel, 385 N.E.2d 1055 (N.Y. 1978) ............................................8, 19

Treppel v. Biovail Corp., No. 03 Civ. 3002 (PLK), 2004 WL. 2339759 (S.D.N.Y. 2004).............9

Tsegaye v. Impol Aluminum Corp., 01 Civ. 5943  2003 WL. 221743 (S.D.N.Y. Jan. 30,
  2003) ............................................................................................................15

Visual Sciences, Inc. v. Integrated Committee Inc., 660 F.2d 56 (2d Cir. 1981)....................9

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117
  (2d Cir. 1984) ..................................................................................................15

Wade v. Olympus Industrial, Inc., 695 F. Supp. 730 (S.D.N.Y. 1988) ............................17

Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos, 712 F. Supp. 383
  (S.D.N.Y. 1989) ..........................................................................................12, 18

Weitzman v. Stein, 897 F.2d 653 (2d Cir. 1990) ..................................................10

Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000).............................7, 12,
                                                                                        13, 16,
                                                                                        17, 18,
                                                                                        22

World Film Services, Inc. v. RAI Radiotelevisione Italiana S.p.A., No. 97 Civ. 8627
    (LMM), 1999 WL. 47206 (S.D.N.Y. Feb. 3, 1999)................................................................24

Plaintiff BlackRock, Inc. ("BlackRock"), respectfully submits this Memorandum Of Law In Opposition To Defendant's Motion to Dismiss.  The Motion to Dismiss should be denied because there is personal jurisdiction over Defendant Schroders plc ("Defendant" or "Schroders") and this Court is the convenient forum.  Upon denial of Defendant's Motion to Dismiss, the Court should order commencement of expedited discovery immediately, and set a hearing date in June, 2007 for issuance of a preliminary injunction preventing Schroders from employing Plaintiff's resigned Managing Director Achim Kussner, or inducing him or other BlackRock executives to violate covenants and fiduciary duties prohibiting them from soliciting BlackRock's personnel and disclosing its confidential information.  The preliminary injunction is urgently needed on or before July 1, 2007 because Defendant has induced Mr. Kussner to violate these covenants and duties and has announced that it will begin employing Mr. Kussner in July, 2007.

## STATEMENT OF FACTS

**A.**     **Facts Establishing Defendant's Conduct Causing Injury To Plaintiff In New York**

Plaintiff, a Delaware corporation headquartered in the Southern District of New York, and Defendant, a company of the United Kingdom, are direct global competitors in the multi-billion dollar highly competitive business of asset management.  Cmp. ¶ 1.[1]  Mr. Achim Kussner

---

[1] References are to the Complaint "Cmp. ¶ _"; to the Affidavit of Robert P. Connolly dated April 19, 2007 "Conn. Aff. ¶ _"; to the Reply Affirmation of Jay S. Berke in Support of Orders to Show Cause for Expedited Discovery and Preliminary Injunction executed May 7, 2007 "Berke Aff. 1 ¶ _"; to the Supplemental Affirmation of Jay S. Berke in Opposition to Motion to Dismiss dated May 15, 2007 "Berke Aff. 2 ¶ _"; to the Affirmation of Harris Oliner in Opposition to Defendant's Motion To Dismiss dated May 15, 2007 "Oliner Aff. ¶ _"; to the Affidavit of J. Richard Kushel in Opposition to Defendant's Motion To Dismiss dated May 15, 2007 "Kushel Aff. ¶ _"; to the Memorandum of Law in Support of Defendant's Motion to Dismiss "Def. Memo p. _"; to the Declaration of Howard Trust dated May 7, 2007 "Trust Dec. ¶ _"; to the Declaration of Christine Kearns dated May 7, 2007 "Kearns Dec. ¶ _"; to the Declaration of Oliver Driver-Polke dated May 7, 2007 "Polke Dec. ¶ _"; to the Affidavit of Christine Kearns dated May 1,

1

was a member of BlackRock's Account Management Group, Head of BlackRock's institutional and retail businesses in Germany and Austria and a Managing Director of both BlackRock and BlackRock (Deutschland) GmbH ("BlackRock Germany"). Id.; Oliner Aff. ¶ 2. As such, Mr. Kussner had fiduciary duties of loyalty and fidelity to Plaintiff and to BlackRock Germany.

Mr. Kussner's affiliation with Plaintiff grew out of BlackRock's acquisition of Merrill Merrill Lynch Investment Managers ("MLIM"), a transaction which was primarily negotiated in New York and closed in New York on September 29, 2006. Conn. Aff. ¶¶ 8-9. In connection with that transaction, Mr. Kussner who had formerly headed up the regional operations of MLIM's division based in Germany, was offered and accepted the opportunity to continue on with BlackRock. Id. In accepting that offer, Mr. Kussner executed the BlackRock, Inc. Confidentiality and Employment Policy (the "Confidentiality and Employment Policy"), an agreement which, by its terms, is specifically with and for the benefit of Plaintiff, as well as its subsidiaries, which, among other things, binds Mr. Kussner to covenants prohibiting him from soliciting employees away from BlackRock for a period ending one year after his departure from BlackRock, and from disclosing BlackRock's confidential business information. Id. ¶¶ 9-13, 29.

Suddenly, on March 5, 2007, Mr. Kussner resigned from BlackRock and BlackRock Germany. Id. at ¶ 5. His resignation as Managing Director was made effective immediately, but Mr. Kussner continues as an employee through and until June 30, 2007. Id. Virtually simultaneously, during the period of March 8, through March 12, 2007, five additional employees, including three of the directors of the BlackRock Germany Frankfurt Office also resigned. Id. On March 12, 2007, Schroders Investment Management GmbH ("Schroders Germany"), wholly owned by Defendant, issued a press release announcing that Mr. Kussner

---

2007 "Kearns Aff. ¶ _"; and to any exhibit or attachment to any of the preceding "Ex. _" or "Att. _".

would be assuming the position as "Country Head for Germany, Austria and Luxembourg" for "Schroders plc...a leading international Asset Management Group." Cmp. Ex. N.

Emails attached to the Complaint reveal that Defendant, rather than Schroders Germany, was the principal actor in inducing Mr. Kussner to breach his fiduciary duties and contractual obligations to Plaintiff, and that officials and agents of Defendant in London actively and directly negotiated with Mr. Kussner over the terms and conditions of employment for all of the BlackRock Directors and other key employees he would be bringing with him to Defendant's German regional operations. Cmp. ¶¶ 26, 37, 59, Exs. B, C, D, I, N. It is inevitable that in targeting and identifying BlackRock Germany's Directors and employees for Schroders and in negotiating employment terms for these employees with Schroders, Mr. Kussner utilized his knowledge as Head of BlackRock Germany's Frankfurt Office, of the particular competence, experience, and compensation levels of these BlackRock Germany employees (specifically defined as confidential information under the Confidentiality and Employment Policy), and disclosed this information to Plaintiff's executives and agents. Conn. Aff. ¶¶ 29-30.

Emails establish that Defendant committed its misconduct through the direct participation of its Chief Executive Officer, Mr. Michael Dobson, its Head of Human Resources for the Investment and Distribution Group, Ms. Jayne Bayliss, its Global Head of Distribution, Mr. Massimo Tosato, its then-Head of Investment, Mr. Alan Brown, its Deputy Head of Distribution, Mr. John Troiano, and its Head of Continental Europe, Mr. Gavin Ralston. Cmp. ¶¶ 26, 37, 59, Exs. B, C, D, I, N. Indeed, Mr. Kussner, as Defendant's new Country Head in Germany is to report, not to any official of Defendant's German subsidiary, but directly to Mr. Ralston in London. Cmp., Exs. B, I, N.

Alarmingly, upon his resignation from BlackRock, Mr. Kussner specifically repudiated his obligations to Plaintiff under the Confidentiality and Employment Policy, considering himself free to select and solicit for Defendant, more of his former colleagues at MLIM who now work for Plaintiff around the world as a consequence of Plaintiff's New York based acquisition of MLIM.  Conn. Aff. ¶¶ 35, 36.  Given this repudiation, Mr. Kussner also feels himself free to disclose to Defendant, Plaintiff's global confidential information, including collective strategic operational plans going forward, confidential marketing strategies and business plans, and other like information, to which Mr. Kussner gained access by virtue of his high level access to BlackRock's central computer system emanating from New York, through daily BlackRock global investment management telephone conference calls also emanating from New York, and through trips to New York for high level training or Country Head meetings.  Id.; Kushel Aff. ¶¶ 3-8.

**B.      Facts Establishing Defendant's Doing Business In New York**

Defendant continually holds itself out to the public, its shareholders, clients, and members of the investment community as having a "presence" in New York.  Berke Aff. 1 ¶ 9. According to Defendant's statements, New York is one of its global network of offices, and is one of its "three key investment centres" from which Defendant and its subsidiaries manage billions of dollars in U.S. assets.  Berke Aff. 1 ¶¶ 8-11, 19, 21; Att. 4 at p. 12.  Defendant's wholly owned subsidiary, Schroders Investment Management North America Inc. ("SIMNA Inc."), occupies these offices on Third Avenue in Manhattan.  Id. at ¶¶ 7, 8.  The same American assets managed by SIMNA Inc. are also managed by Schroder Investment Management North America Limited ("SIMNA Ltd.") from Defendant's headquarters in London, where a duplicate set of SIMNA Inc.'s records are maintained and used in the course of these management

4

activities. Id. at ¶¶ 14, 15. The Third Avenue Manhattan office also houses another subsidiary Schroder Fund Advisors Inc. ("SFAI"), engaged as a broker dealer, buying and selling securities for Defendant's and its subsidiaries' activities, presumably trading on the New York Stock Exchange and other New York based securities exchanges. Id. at ¶ 16. There are significant officers, directors or executives who hold positions with both SIMNA Inc. and SIMNA Ltd. and in some cases also with Defendant. Id. at ¶¶ 17, 18. Moreover, significant subsidiary operations managers, such as the Chief Operating Officer of SIMNA Inc. report directly to Defendant's "North American Head" in London. Id. at ¶ 18. Similarly, the operations of subsidiaries are controlled by Defendant's Executive Committee on which sits a high management operations executive of SIMNA Inc. Id.

Defendant's control over its subsidiaries is exemplified by the very manner in which it proceeded with Mr. Kussner here, ostensibly for its subsidiary Schroders Germany. These facts show that Defendant controlled the hiring process of the entire BlackRock team through the involvement of Defendant's top management and operational executives. The titles of these executives further reflect their operational involvement and control over subsidiary activities, in asset management (e.g., Head of Investment, Group Chief Investment Officer), distribution[2] (Head and Deputy Head of Distribution), regional operations (e.g., Head of Continental Europe, analogous to North American Head), and human resources. Cmp. ¶¶ 26, 37, 59, Exs. B, C, D, I, N; Berke Aff. 1 ¶ 18.

---

[2] According to Defendant's Annual Report and Accounts 2006, Distribution is Defendant's term for marketing since it refers to "delivering products to institutional and retail clients[,] build[ing] successful, long-term relationships with clients across a wide spread of locations and markets by understanding their investment requirements and ensuring … suitable investment solutions. This process is supported by sales and client service teams who deliver across the full range of strategies, market segments, distribution channels, products and geographies." Berke Aff. 1, Att. 4, p.6.

Furthermore, Defendant directly involves itself in the asset management operations of its subsidiaries through ownership and operation of its "proprietary equity risk analysis system PRISM," a crucial activity which is part and parcel of asset management.  Berke Aff. 1. ¶¶ 19-20.  Defendant's annual report additionally details some of the infrastructure services provided by Defendant to its subsidiaries, which "range from Operations, Information Technology, Human Resources and Facilities to Finance, Tax, Legal, Risk and Compliance," as well as management of Defendant's and its subsidiaries "major projects and outsourcing arrangements." Berke Aff. 1, Att. 4, p.7.  In addition, the evidence shows that Defendant participates in training of subsidiary employees, payment of subsidiary employees with shares of Defendant's stock, and provision of publicity and public relations to subsidiaries through Defendant's proprietary website www.Schroders.com.  Berke Aff. 1 ¶¶ 17-22, Berke Aff. 2 ¶¶ 2-5.

Apart from its involvement with operating subsidiaries, it appears that Defendant, through another subsidiary, has engaged in at least one significant United States and New York based business transaction.  Berke Aff. 2 ¶¶ 8-11. Thus, in March 2000, Internet Finance Partners, a majority owned subsidiary of Defendant, invested £3 million in Lava Trading, Inc., headquartered in New York City, which was then sold to Citigroup, apparently resulting in profits representing 24.2% of Defendant's total profits in 2004.  Id.

## ARGUMENT

## POINT I

### SEQUENCING ISSUES SHOULD NOT DELAY AN EXPEDITED DENIAL OF DEFENDANT'S MOTION TO DISMISS FOLLOWED BY IMMEDIATE COMMENCEMENT OF EXPEDITED DISCOVERY

Sinochem International Co. Ltd. v. Malaysia International Shipping Corp., 127 S. Ct. 1184 (2007), did not give Defendant the license to require this Court to consider the issue of

forum non conveniens first, before personal jurisdiction and before expedited discovery, so that Defendant could improperly postpone expedited discovery and prevent a timely preliminary injunction. Sinochem merely held that a District Court "has discretion" to initially consider "a defendant's forum non conveniens plea" and "need not resolve…personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly…more suitable." Here, Germany is not "plainly more suitable," since the harm was to Plaintiff in New York, and Defendant's wrongful conduct occurred primarily in London. Defendant cannot meet its burden of establishing that the instant litigation involves "oppressiveness and vexation to [Schroders] out of all proportion to [BlackRock's] convenience," or that this Court has such "administrative and legal problems" in dealing with the choice of law issues here, that it must decline the appropriate deference accorded to a New York domiciliary plaintiff's choice of forum. Id. at 1188, 1190; see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 103 (2d Cir. 2000) ("greater deference is due the forum choice of 'citizens' and 'residents'") (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.23 (1981)).

In Sinochem, the plaintiff was a Chinese state-owned importer and the underlying controversy was simultaneously pending in ongoing litigation before a Chinese court. Sinochem, 12 S. Ct. at 1188-89, 1193. By contrast to the "textbook case for immediate forum non conveniens dismissal" in Sinochem, the instant matter involves Plaintiff BlackRock, headquartered in New York, against Defendant Schroders, a United Kingdom company which maintains its United States investment center in New York. See Berke Aff 1, Att. 4 at p. 12. Among other things, the preliminary injunction Plaintiff seeks is to prohibit Defendant from improperly inducing a BlackRock fiduciary, Mr. Kussner, bound by BlackRock's Confidentiality and Employment Policy which specifically names and benefits Plaintiff, from disclosing

7

BlackRock's global confidential information emanating from New York.  See Sybron Corp. v. Wetzel, 385 N.E.2d 1055 (N.Y. 1978) (New York injunction would properly prohibit foreign disclosure of confidential information emanating from New York).  The preliminary injunction also seeks to prevent Defendant from employing Mr. Kussner in Germany or elsewhere, and from inducing him or other BlackRock executives or fiduciaries from soliciting other BlackRock personnel away from Plaintiff.  Defendant, whose highest officials in London have reached into Germany[3] to tortiously use Mr. Kussner to obtain other BlackRock personnel and confidential information, can just as easily do so, through Mr. Kussner and other BlackRock personnel, in other countries where Plaintiff and Defendant compete on a global basis.  Plaintiff has properly asked this Court to enjoin such illegal practices and need not wait for Defendant to wrong it again in other jurisdictions and need not proceed via one-by-one actions against Defendant in different countries around the world.  Defendant, who acted from London, but chooses Germany over the United Kingdom for this litigation, is clearly forum shopping here, not Plaintiff.  See Iragorri v. United Tech. Corp., 274 F.3d 65, 75 (2d Cir. 2001) (cautioning against defendants who improperly use forum non conveniens for "forum shopping reasons").

## POINT II

### APPLICATION OF APPROPRIATE STANDARDS SHOULD RESULT IN DENIAL OF DEFENDANT'S MOTION TO DISMISS AND IMMEDIATE COMMENCEMENT OF EXPEDITED DISCOVERY

Where as here, the Complaint and affidavits by the parties have been filed and the Court is at the stage of ruling on a Rule 12(b)(2) motion to dismiss by Defendant, and Plaintiff's application for expedited discovery has been fully briefed and argued and is ripe for a ruling, the Court must deny the 12(b)(2) motion because Plaintiff has surpassed the required standard of

---

[3] Significantly, Defendant also tortiously induced Mr. Kussner to solicit away Mr. Adrian Harris from BlackRock's London, England operations.  Cmp. ¶ 39.

making a "prima facie showing of [personal] jurisdiction" over Defendant. Dubied Machinery Co. v. Vermont Knitting Co., Inc., 1992 WL 142044, at *2 (S.D.N.Y. June 3, 1992) (Leisure, J.). As this court stated in Treppel v. Biovail Corp., No. 03 Civ. 3002 (PLK), 2004 WL 2339759, at *4 (S.D.N.Y. 2004) (Leisure, J.), "[p]rior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction…But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." Quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d. 1983).  As the Second Circuit has further stated, "in passing upon a defendant's Rule 12(b) motion to dismiss for lack of jurisdiction…[t]he court may determine the motion on the basis of affidavits alone; it may grant discovery [and] [i]n the absence of a full blown hearing on the merits, plaintiff need make only a prima facie showing that the court has jurisdiction under a long arm statute." Visual Sciences, Inc. v. Integrated Comm. Inc., 660 F.2d 56, 58-59 (2d Cir. 1981) (emphasis added.)

That the Court, at this stage of the litigation, is also determining whether to issue an order to show cause setting a hearing date in June at which the parties will present evidence based on the expedited discovery taken, and the court will thereafter determine whether a preliminary injunction will be entered, does not alter plaintiff's burden to make only a "prima facie" showing of personal jurisdiction as a prerequisite to proceeding with expedited discovery.  The Second Circuit in Visual Sciences, in stating that a "prima facie showing of jurisdiction will not suffice, however where a plaintiff seeks preliminary injunctive relief," obviously did not mean that an enhanced showing of personal jurisdiction was required of Plaintiff to defeat a 12(b)(2) motion made prior to discovery, prior to a hearing on the preliminary injunction, and prior to the court's entry of the preliminary injunction.  Id.  Thus, Visual Sciences clarified that a "court must have

in personam jurisdiction over a party before it can validly <u>enter</u>...an interlocutory injunction."
<u>Id.</u> (emphasis added). But at this stage of the instant proceedings, the court is not being asked to
"enter" a preliminary injunction against Schroders, but merely to set a hearing date on the issue
of whether such injunction will be entered. <u>Visual Sciences</u> means only that plaintiff is required
at the preliminary injunction hearing, to "adequately establish that there is at least a reasonable
probability of ultimate success upon the question of jurisdiction when the action is tried on the
merits." <u>See also</u> <u>Weitzman v. Stein</u>, 897 F.2d 653, 659 (2d Cir. 1990) (holding that the "<u>prima</u>
<u>facie</u> showing [of personal jurisdiction] was sufficient to permit the [claim] to be litigated, but it
was not sufficient to permit the <u>entry</u> of a preliminary injunction") (emphasis added); <u>Indus.</u>
<u>Electronics Corp. v. Cline</u>, 330 F.2d 480, 482 (3d Cir. 1964) (stating that "plaintiff is required" to
establish "at least a reasonable probability of ultimate success" where "jurisdictional
allegations...have been appropriately challenged <u>at the</u> [preliminary injunction] <u>hearing</u>")
(emphasis added). Accordingly, a "flexible standard of reasonableness and good cause" should
guide the Court here since "a preliminary injunction type analysis to determine entitlement to
expedited discovery makes little sense, especially when applied to a request to expedite
discovery in order to prepare for a preliminary injunction hearing." <u>Ayyash v. Bank Al-Madina</u>,
233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) (citations omitted.)

Even assuming <u>arguendo</u>, that the standard on the instant 12(b)(2) motion to dismiss is
"reasonable probability of success," rather than "<u>prima facie</u>" showing, Plaintiff meets and
exceeds either standard. The Complaint's allegations, Plaintiff's affidavits and affirmations, and
documentary admission by Defendant amply demonstrate that Defendant is present and doing
business in New York, within the meaning of C.P.L.R. Section 301. See <u>Statement of Facts</u>,
Section B, supra, <u>See also</u> <u>Self Intern. (HK) Ltd. v. La Salle National Bank, Chicago</u>, No. 01 CV

4291(RCC), 2002 WL 500372, at *3-4 (S.D.N.Y. Mar. 29, 2002) (establishing personal jurisdiction, based on evidence including annual report and website admissions, to defeat 12(b)(2) motion). Likewise, the Complaint, the emails, and Plaintiff's affidavits and affirmations fully establish jurisdiction under C.P.L.R. Section 302(a)(3) for this Court to enter a preliminary injunction halting and prohibiting further inducement of violations of Mr. Kussner's nonsolicitation and confidentiality covenants resulting in injury to Plaintiff in New York. See Statement of Facts, Section A, supra.

    In support of its 12(b)(2) motion to dismiss, Defendant offers only the Trust Declaration, which is wholly conclusory in nature and contradicted by the admissions of Defendant and its subsidiaries attached to Plaintiff's affidavits. According to the Trust Declaration, "Schroders plc has no operations in the United States…no office, place of business, [or] employees…in New York and, does not…use…any property in New York [or] solicit business in New York," but says nothing about how Defendant, which is supposedly only a "holding company," actually operates. Trust Dec. ¶¶ 4, 9-11. Although, the Trust Declaration admits that Defendant engages in "supervision of the activities of its subsidiaries and companies," it pointedly declines to explain the nature of such supervision. Trust Dec. ¶¶ 7, 8. This is for good reason, because were Mr. Trust to provide that explanation, he would have to reveal the significant and ongoing control and integral involvement which Defendant has over, and engages in with, its subsidiaries. See Statement of Facts, Section B, supra.

    As in Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913 (JFK), 1992 WL 236208, at *2 (S.D.N.Y. Sept. 8, 1992), "[t]he conclusory statements in [the moving party's] affidavit are belied in virtually every respect by consistent and continued representations by the company and its principals that [it] has a substantial presence in New York." "Because information pertinent to

11

personal jurisdiction is peculiarly within the possession of the moving parties, and because

Plaintiff [is] operating at a disadvantage in not having that information at its disposal on this

motion," the Court should deny Defendant's "motion to dismiss for lack of personal jurisdiction."

Id. at *3.

The insufficiency of the Trust Declaration is magnified, because Defendant has attempted

unsuccessfully, in at least one prior case, to similarly avoid New York court jurisdiction through

the very same type of conclusory affidavit.  Compare the Supplemental Affidavit of Francis

Neate, dated December 4, 2003 submitted by Defendant in Haugh v. Schroders plc, No. Civ.

600651/03 (N.Y. Sup. Ct. Nov. 24, 2003) Berke Aff. 1, Att. 12 to the Trust Declaration.  In

Haugh, the court rejected this tactic, denied Defendant's jurisdictional motion to dismiss, and

permitted discovery "in view of [Defendant's] confusing and contradictory allegations regarding

the identity of Schroders plc itself, much less its activities in New York and through New York

entities." Haugh v. Schroders plc, No. Civ. 600651/03, Slip. Op. at *1.  The same result should

follow here.

Likewise, the paucity and demonstrable inaccuracy of the Trust Declaration should

dictate denial of Defendant's motion to dismiss on alleged, but wholly unsupported grounds, of

forum non conveniens.  Unlike on its Rule 12(b)(2) motion, it is Defendant, not Plaintiff, who

carries the burden of proof of forum non conveniens.  As the Supreme Court recently stated in

Sinochem, 127 S. Ct. at 1191, a "defendant invoking forum non conveniens ordinarily bears a

heavy burden in opposing the plaintiff's chosen forum" and that burden applies with full force

where as here, the plaintiff's choice is its home forum.  See Wiwa, 226 F.3d at 101 (2d Cir. 2000)

(reversing forum non conveniens dismissal because "district court failed to give weight

to…significant considerations" including "a United States resident plaintiff's choice of forum");

12

<u>Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos</u>, 712 F. Supp. 383, 392 (S.D.N.Y. 1989) (Leisure, J.) (similarly recognizing that Defendant "bears a heavy burden" and that the "distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified") (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. at 255).

## POINT III

### DEFENDANT'S MOTION TO DISMISS ON RULE 12(B)(2) LACK OF PERSONAL JURISDICTION SHOULD BE DENIED

**A.    There Is Personal Jurisdiction Over Defendant Under C.P.L.R. 301**

As the Second Circuit set forth in <u>Wiwa</u>, 226 F.3d at 95 a case thus far ignored by Defendant, "under New York law, a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state…" under C.P.L.R. Section 301. As <u>Wiwa</u> makes clear, a defendant such as Schroders here, will be "present" in New York and "subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" <u>Id.</u> Such presence and jurisdiction over a foreign parent corporation will result, where, as here, the defendant's subsidiary corporations conduct permanent and continuing substantial business so that "if the subsidiaries were not in New York," Defendant "would have to [operate in New York] directly," especially, where, as here, "[t]his market is simply too important to the parent's welfare to use independent and uncontrolled" persons or entities to run its key U.S. business center. <u>Bulova Watch Co. v. K. Hattori & Co.</u>, 508 F. Supp. 1322, 1342 (E.D.N.Y. 1981) (Weinstein, J.). <u>See</u> <u>Klonis v. National Bank of Greece</u>, No. 05 Civ. 6289 PKC DF, 2007 WL 959257, at *5 (S.D.N.Y. Mar. 28, 2007) ("no precise test for doing business … and courts must look to the aggregate of the corporation's activities within the state"). "Thus, if 'a subsidiary establishes and expands a parent's market

position then, so long as that activity is being conducted, and with respect to those activities furthering the parent's ends, the parent is doing business in New York.'" Dubied Machinery Co. v. Vermont Knitting Co., Inc., 1992 WL 142044, at *3 (S.D.N.Y. June 3, 1992) (Leisure, J.) (citation omitted).

Indisputably meeting all of these tests, this Defendant has outright admitted its "presence" in New York, that SIMNA, Inc.'s Third Avenue Manhattan offices are but one of "Schroders plc['s] network of offices" around the world, that its "US. Funds under management" grew from "£36.0 billion" in 2005 to "£ 42.5 billion" in 2006, and that New York is one of its "three key international investment centres," and a continuing target for future growth. Berke Aff. 1 ¶¶ 8-10, Att. 4 at p. 12. Even the Trust Declaration cannot avoid admitting Defendant's engagement in the business of managing U.S. client assets through its subsidiaries in New York and London. Thus, in what amounts to a non-denial-denial, the Trust Declaration states that "Schroders plc…manages no financial products and has no global asset management business other than that carried on by its subsidiaries." Trust Dec. ¶ 7. (emphasis added.) Moreover, Section B of the Statement of Facts herein lays out the substantial control over and involvement in the business of its subsidiaries by this Defendant parent, including hiring and appointment of subsidiary executives, interlocking directors, officers, and executives between subsidiaries and defendant, Executive Committee control over subsidiaries, control over investment management activities, control over distribution activities, direct engagement in investment management through owner-operation of the PRISM system of analytics, compensation to subsidiary executives in Defendant's stock, infrastructure including centralized legal, compliance, human resources, and special projects activities, and engagement in acquisition and sale activities in the United States and New York. Moreover, Defendant's presence has continued in New York since

1923 (Berke Aff. 1 ¶ 9), more than satisfying any "stringent" interpretation urged by Defendant of the requirement for "continuous, permanent and substantial activity in New York," within the meaning of Tsegaye v. Impol Aluminum Corp., 01 Civ. 5943 (LMM), 2003 WL 221743 (S.D.N.Y. Jan. 30, 2003), and Jacobs v. Felix Bloch Erben Verlag Fur Buhne Und Funk KG, 160 F. Supp. 2d 722 (S.D.N.Y. 2001). Def. Memo p. 9.

Not only is Defendant doing business in the United States and New York through its subsidiaries under a general test of economic realities, control and integrated operations, but also because these subsidiaries qualify both as "mere departments" and "agents" of Defendant for C.P.L.R. 301 jurisdictional purposes.  Of the four main factors usually considered when determining "if jurisdiction founded on 'mere department analysis is appropriate, [c]ommon ownership is a requirement'" and it is clearly met here.  Dagen v. CFC Group Holdings Ltd., No. OO Civ 5682 (DAB)(THK), 2002 U.S. Dist. Lexis 25767, at *24 (Mar. 7, 2002).  Thereafter, "financial dependence, the level of control over selection of executive personnel, and the level of control over marketing and operational policies," though each not a requirement, are "seen as important factors." Id.

Here, the evidence shows that Defendant makes loans to its subsidiaries, but discovery would be necessary to determine whether such loans indicate financial dependence.  Regardless of the outcome of such discovery, however, the evidence currently before the court establishes a strong record of control over executive selection and marketing and operational policies of its subsidiaries. See above, see also Statement of Facts, Section B, supra.  This plethora of evidence, demonstrable even prior to discovery, clearly meets the tests for "mere department" doing business jurisdiction outlined by the Second Circuit in Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984) (foreign

corporation doing business in New York based on ownership, control, and integrated activities of New York based subsidiary).  See also Daewoo Int'l (America) Corp. Creditor Trust v. SSTS America Corp., No. 02 Civ. 9629 (NRB) 2004 WL 830079, at *8 (S.D.N.Y. Apr. 13, 2004) ("the parent's degree of control over the marketing and operational policies of the subsidiary is satisfied where the parent's promotional materials or public documents hold out the subsidiary as a branch or division of the parent, or the parent determines the subsidiary's operational policies and strategy." (Citations omitted.)

SIMNA, Inc., SIMNA, Ltd., and SFAI are also clearly "agents" of Defendant for purposes of "doing business" jurisdiction.  As the Second Circuit held in Wiwa, the required "continuous presence and substantial activities … do not necessarily have to be conducted by the foreign corporation itself" where the Defendant "affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available."  226 F.3d at 95. "To come within the rule, a plaintiff need demonstrate neither a formal agency agreement … nor that the defendant exercised direct control over it putative agent … The agent must be primarily employed by the defendant and not engaged in similar services for other clients."  Id.

In Wiwa, the agent was an independent investor relations company.  But, in the instant case, C.P.L.R. 301 jurisdiction lies "even if the resident corporation is not controlled by the nonresident entity" and without any showing "with respect to piercing the corporate veil."  In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376, 385 (S.D.N.Y. 2002) (citations omitted).  "Plaintiff need only 'show that the subsidiary does all the business which the parent corporation could do were it here by its own officials.'"  Id. (quoting Frummer v. Hilton

Hotels Int'l Inc., 227 N.E.2d 851 (N.Y. 1967)). The "significant and pivotal factor" in fulfilling this test is that "the business of the foreign corporation and agent [is] the same," that is, that if Defendant "has been present itself, it would have conducted the same activities as" its agents who are New York based or otherwise doing business in New York. Wade v. Olympus Indus., Inc., 695 F. Supp. 730, 733 (S.D.N.Y. 1988) (Leisure, J.). Here, that test is indisputably met because, as the evidence demonstrates and as Defendant has admitted, "[a]t Schroders, asset management is our only business." Berke Aff. 1, Att. 4 second cover page.

Accordingly, Defendant's reliance upon Jacobs, 160 F. Supp. 2d at 738, is misplaced. Def. Memo p.10. Solely because the Trust Declaration contends that Defendant's subsidiaries cannot bind their parents, surely does not destroy agency based jurisdiction. Indeed, when SIMNA Inc. provides investment management services to a U.S. client, it does bind Defendant to furnish its analytics, infrastructure, and global capabilities for such client. SIMNA Inc. and SIMNA Ltd. have additionally designated Defendant as a "Control Person" on Forms ADV, filed with the SEC, and have thereby bound Defendant to liability for certain acts of these subsidiaries if securities laws are violated thereby. Berke Aff. 1 ¶¶ 13-15. And see Bellomo v. Pennsylvania Life Co., 488 F. Supp. 744, 746 (S.D.N.Y. 1980) (finding jurisdiction over a foreign holding company because "everything the New York subsidiaries do satisfies the Frummer test since their business, together with the business of other subsidiaries, constitutes the only business of the parent").

Furthermore, Defendant is wrong in its contention that C.P.L.R. Section 301 jurisdiction cannot exist, or would offend due process, where, as here, it is based on the activities of a local subsidiary not named as a party and whose activities do not give rise to the claims being litigated. Def. Memo p. 9-10, n.9. Wiwa's description of general jurisdiction based on doing

business, 226 F.3d at 95, directly refutes this argument, as does this Court's discussion in <u>Walpex</u>
<u>Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos</u>, 712 F. Supp. 383, 391 (S.D.N.Y.
1989) (Leisure, J.) ("Even when the cause of action does not arise out of or relate to the foreign
corporation's activities in the forum state, due process is not offended by a State's subjecting the
corporation to its in personam jurisdiction when there are sufficient contacts between the state
and the foreign corporation.")  Nor has Defendant made any "compelling case that the presence
of some other considerations would render jurisdiction unreasonable," thereby negating due
process.  <u>Wiwa</u>, 226 F.3d at 99.  Indeed, as in <u>Wiwa</u>, <u>id.</u>, Schroders

> control[s] a vast, wealthy and far flung business empire which
> operates in most parts of the globe [has] a physical presence in the
> forum state, [has] access to enormous resources, face[s] little or no
> language barrier, [has] litigated in this country on previous
> occasions, [has] a [five year] long relationship with one of the
> nation's leading law firms [Pillsbury Winthrop], and [is] the parent
> compan[y] of [a large American] corporation[], which has a very
> significant presence in New York.  New York City, furthermore,
> where the trial will be held is a major world capital which offers
> central location, easy access and extensive facilities of all kinds,
> [and it therefore must be concluded] that the inconvenience to the
> defendant[] involved in litigating in New York City would not be
> great and that nothing in the Due Process Clause precludes New
> York from exercising jurisdiction over the defendant[].

## B.    There Is Personal Jurisdiction Over Defendants Under C.P.L.R. 302

Personal jurisdiction is alternatively established under C.P.L.R. Section 302 because
Defendant's tortious acts in London and Germany injured Plaintiff in New York.  On the facts
here, Defendant exploited Mr. Kussner, the Country Head of Plaintiff BlackRock's German and
Austrian operations, who did not report down through Plaintiff's German subsidiary, but reported
up through BlackRock's system, ultimately to BlackRock in New York.  The disruption caused
by the improper solicitation of directors and other key employees of a BlackRock regional
operation in Europe, whose clients place assets with Plaintiff, not merely its German subsidiary,

to be managed and invested by investment advisors in Manhattan and Plainsboro New Jersey, disrupts Plaintiff and damages its reputation and goodwill in the United States and New York and globally.  Berke Aff. 1 ¶¶ 24-36.

The confidential information Defendant has taken and already used was Plaintiff's in New York.  Id. at ¶ 26; Conn. Aff. ¶¶ 34, 35; Kushel Aff. ¶¶ 3-8.  The wide range of confidential information that Mr. Kussner had access to was Plaintiff's in New York.  Berke Aff. 1, ¶ 26; Conn. Aff. ¶¶ 34, 35; Kushel Aff. ¶¶ 3-8.  The confidentiality and employment policy that Mr. Kussner violated, due to Defendant's conduct, was drafted in New York and is a contract with Plaintiff, which by its precise terms is directly for Plaintiff's benefit and protection, in its global asset management business, including in New York.  Conn. Aff. ¶¶ 8-11.  Mr. Kussner's fiduciary duties, violated due to Defendant's conduct, were to Plaintiff as its Managing Director. Id. at ¶ 10; Oliner Aff. ¶ 2.  Mr. Kussner's repudiation of his obligations was therefore a rejection of obligations owed directly to Plaintiff, and Mr. Kussner now claims freedom to solicit additional employees away from Plaintiff for Defendant and disclose additional confidential information of Plaintiff to Defendant.  Conn. Aff. ¶¶ 36, 37.

Accordingly, this Court has jurisdiction pursuant to C.P.L.R. Section 302, as well as Section 301, to preliminarily enjoin conduct to remedy and prevent such past and future injuries to Plaintiff in New York.  As discussed by the court in Four Seasons Solar Products Corp. v. Solarium Systems, Inc., No. 86 C 3468, 1987 WL 4818, *3 (E.D.N.Y. May 6, 1987) in relying on and quoting the New York Court of Appeals decision in Sybron Corp., 385 N.E.2d at 1058:

> a tort need not 'already have [even] been committed for jurisdiction
> to be available under the statute' [referring to C.P.L.R. Section
> 302(a)(3)]...to hold that the plaintiff had to show a completed tort
> would mean that the section 'would never be usable by a plaintiff
> seeking anticipatory injunctive relief.'  It was thus enough that the
> facts gave 'rise to the probable inference that there is a conscious

plan to engage in unfair competition and misappropriation of trade secrets.'

See Manufacturing Technology, Inc. v. Kroger Co., No. 06 Civ. 3010(JSR), 2006 WL 3714445, at *2 (S.D.N.Y. Dec. 13, 2006) (Rakoff, J.) ("because plaintiff (and its intellectual property) is based in New York, the injury from the alleged trade secret theft is felt within New York State no matter where the theft took place.")

## POINT IV

### DEFENDANT'S MOTION TO DISMISS
### FOR FORUM NON CONVENIENS SHOULD BE DENIED

**A.    Plaintiff Domiciliary's Choice Of This Home Forum Is Entitled To A High Degree Of Deference**

Because BlackRock, headquartered in Manhattan, has chosen to file the instant action in the Southern District of New York, the Court's deference to that choice, though not required to "accord talismanic significance to the citizenship or residence" of the plaintiff, must apply the principal "that the Gilbert factors will favor dismissal (in the absence of strong public interest factors favoring dismissal) only if the defendant can establish "such oppressiveness and vexation as to be out of all proportion to plaintiff's convenience." Wiwa, 226 F.3d at 102-103 (citations omitted, referring to the factors set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)). As earlier pointed out, only recently, in Sinochem, 127 S. Ct. at 1188, 1190, the Supreme Court reaffirmed the "oppressiveness and vexation...out of all proportion" burden faced by Defendant on this motion. Defendant, unable to meet this burden has ignored any mention of it, or of Sinochem, or Wiwa, in its moving papers.

Defendant has also inappropriately relied on this Court's opinion in Strategic Value Master Fund Ltd. v. Cargill Financial Services, Corp., 421 F. Supp. 2d 741 (S.D.N.Y. 2006), to argue that no or minimal deference should be given to Plaintiff's choice of forum here. In

Strategic Value, the Plaintiff was a foreign corporation, not suing in its home state, and the fact

that it sued only a Delaware corporation, with a mere indirect interest in the equity which was the

subject of the litigation, and did not join as a defendant, an English corporation that was the real

party in interest, "raised a strong inference that forum-shopping reasons motivated plaintiff's

choice of forum." Id. at 758.  Somewhat disingenuously, Defendant argues that Plaintiff is

similarly forum shopping here because it sued Schroders plc, a U.K. company, and did not sue

Schroders Germany.  According to the Trust Declaration, Schroders Germany should be viewed

as the real party in interest here because supposedly:

> "Schroders plc is a holding company[,] [i]ts direct subsidiary
> Schroder Administration Limited (a UK corporation), owns
> Schroder International Holdings Limited (a UK corporation),
> which in turn owns all the common shares in Schroder[s]
> [Germany,] Schroders plc has not made an offer of employment to
> any employee of BlackRock, Inc. or BlackRock [Germany, and]
> [a]ll offers of employment in Germany have been made by
> Schroders [Germany]."

Trust Dec. ¶¶ 2, 3, 7, 14, 15.  In fact, however, Defendant's Annual Report and Accounts 2006

lists Schroders Germany as a "wholly owned subsidiary undertaking[]" of Schroders plc, not an

entity three steps removed from Defendant as Mr. Trust would like the Court to believe.  Berke

Aff. 1, Att. 4, p. 93.  Nor does the Trust Declaration disclose the degree to which Defendant

controls and functions in a single integrated enterprise with its subsidiaries, including Schroders

Germany.  See Statement of Facts, Section A, supra.  But perhaps most misleading, is the Trust

Declaration's total failure to mention the direct and prominent role, documented in emails which

Defendant's highest executives in London played in the misconduct complained of in this action.

Cmp. ¶¶ 26, 37, 59, Exs. B, C, D, I, N.  The statement in the Trust Declaration, that "[a]ll offers

of employment in Germany have been made by Schroders [Germany]" makes this failure a gross

omission.  Indeed, the press release announcing Mr. Kussner's appointment, nominally issued by

Schroders Germany, contains statements made only by Mr. Ralston, an executive from Defendant in London. Cmp. Ex. N. No statement by anyone from Schroders Germany appears in this release, which further compounds the seriousness of this omission in the Trust Declaration. Id. Moreover, this press release reveals that Mr. Kussner will be replacing Martin Theisinger, the current "Country Head for Germany, Austria and Luxembourg," and it is highly unlikely that Mr. Theisinger or any of his loyal assistants from Schroders Germany played any role at all in selecting and negotiating with Mr. Kussner to steal away the BlackRock team. Id.[4]

Accordingly, Plaintiff has named the real party in interest, which acted from its London headquarters, as the proper defendant in this case. Mr. Kussner will be controlled by Defendant, reporting directly to Mr. Ralston in London, beginning in July and there was no necessity to name Mr. Kussner in this action. Id.; Cmp. Ex. B, p.2. Therefore, as earlier stated, it is Defendant, which notwithstanding the realities of its London based wrongdoing here, has purported to Select Germany, not London, as the appropriate forum, revealing that Defendant is forum shopping the instant motion.

**B.    In View Of The Need For Preliminary Injunction, Germany Is Not An Available Forum At This Time**

---

[4] Note also, that to buttress Defendant's false accusation of forum shopping against BlackRock, the Trust Declaration incorrectly suggests that BlackRock rushed to file this litigation, after sending only an April 4, 2007 letter from Skadden, Arps to which Defendant provided a five-line terse denial of wrongdoing on April 5, 2007. Trust Dec. ¶¶ 12-13. But Mr. Trust conveniently omits that Plaintiff's General Counsel, Mr. Connolly, initially wrote to Mr. Dobson on March 14, 2007, detailing Mr. Kussner's legal obligations to Plaintiff and expressing BlackRock's concerns over Defendant's role in the mass resignation and defection of employees to Schroders which had just taken place during approximately March 5 - 12. Oliner Aff., Att. 2. Mr. Trust himself responded to Mr. Connolly's letter on March 16, 2007, with a three line terse denial of wrongdoing. Id. Att. 3. Clearly, Mr. Trust's telephone call to Mr. Connolly on April 16 was tactical in nature, to enable Defendant to continue to feign good faith, while in fact intending to continue the staunch resistance Defendant displayed to BlackRock's earlier efforts at pre-filing resolution.

Defendant's reliance on Kirch v. Liberty Media Corp., No. 04 Civ. 667(NRB), 2006 WL 3247363 (S.D.N.Y. 2006), on the issue of available forum is misplaced in this matter.  Kirch found that Germany was an available forum even though Germany's pleading and discovery procedures were far more limited that those in the S.D.N.Y., and because the defendant in Kirch agreed to submit itself to German jurisdiction.  But Germany is not clearly an available forum in the instant matter, because immediate expedited discovery is necessary for a preliminary injunction hearing and determination prior to July 1, 2007.  Given that timing, a transfer to Germany now will not work.  Plaintiff filed for the instant Order to Show Cause on April 20, 2007, originally seeking the instant hearing for the week of April 23.  Defendant's New York counsel, Pillsbury Winthrop appeared on April 20, and consented to the entry of the original order to show cause to obtain additional time to respond which, in light of the Court's schedule, resulted in a May 9 hearing.  Berke Aff. 1 ¶ 28.  Having utilized the instant forum for its convenience, Defendant should be estopped from now arguing for another forum.  Moreover, Defendant's motion to dismiss has now consumed more of the Court's and the parties' time away, and delayed expedited discovery, making any other forum, including Germany even more unavailable.

**C.      Defendant Cannot Sustain Any Alleged Inconvenience Or Interest Which Overrides Plaintiff's Choice Of Forum Here**

Even assuming arguendo that Germany was an available forum, that fact would not carry the day for Defendant because it cannot show interests or inconvenience "out of all proportion" to Plaintiff's appropriate choice of forum.  Indeed, Sections A and B of the Statement of Facts supra, detail Plaintiff's and Defendant's many connections to the United States and the Southern District of New York, and the injury to Plaintiff in New York at issue.  Therefore, here, "[w]hile

any plaintiff's selection of a forum is entitled to deference, that deference increases as the plaintiff's ties to the forum increase." Wiwa, 226 F.3d at 101.

Defendant is experienced in conveniently litigating in the United States and is represented by counsel who has "managed substantially all United States litigation for Schroders plc and its United States subsidiaries over the past five years." Kearns Aff. p.2; Berke Aff. 1 ¶ 29. That some events took place in Germany, that there are choice of law issues, that some witnesses may be deposed in Germany, and that some documents may need to be translated, does not mean the Plaintiff's forum choice of this Court should be overridden. There are also New York (e.g. Messrs. Connolly, Oliner, and Kushel) and London witnesses (e.g. the officials of Defendant, not its subsidiaries, who actually perpetrated the wrongs here). The major German witnesses, Mr. Kussner and the other BlackRock Directors and key employees he solicited, are now aligned in interest with Defendant and it should be presumed, will appear on Defendant's behalf. Indeed, Mr. Kussner has already been obviously cooperating with Defendant, as evidenced by Defendant's submission of certain of Mr. Kussner's MLIM and BlackRock employment documents. Kearns Dec. Exs. A, B. Further, involuntary German witnesses can be deposed pursuant to the Hague Evidence Convention. In re Fill, 68 BR 923, 932-33 (S.D.N.Y. 1987).

Defendants' documents are in English and would have to be translated for a German court. And the German court as well must make choice of law decisions. As this Court has recognized, "it will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit," Georgiadis v. First Boston Corp., No. 90 Civ. 7672 (PLK), 1994 WL 39229, at *3 (S.D.N.Y. July 27, 1994) (Leisure, J.) citing Calavo Growers v. Belgium, 632 F.2d 963, 969 (2d Cir. 1980). Moreover, on their face, Mr. Kussner's MLIM and BlackRock

employment documents attached to the Kearns Affidavit do not clearly choose German law for application to the Confidentiality and Employment Policy, much less to torts occurring in London or otherwise outside of Germany, which induce breach of that Policy, causing harm in New York. Since the issues here clearly implicate Plaintiff's New York and globally based interests, in ultimately choosing the applicable law, either this Court or a German Court should not be expected to rotely apply German law, notwithstanding the unsupported "ipse dixit" purported expert opinion by Dr. Oliver Driver-Polke, rendered upon the facts set forth in the incomplete and inaccurate Trust Declaration. Such an expert opinion is wholly unacceptable under Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 157 (1999) (disallowing the "ipse dixit" of an alleged expert under the doctrine of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993)).

## CONCLUSION

This Court should deny Defendant's Motion to Dismiss, order immediate expedited discovery and execute the Order To Show Cause setting a June 2007 hearing date for the issuance of a preliminary injunction against Defendant Schroders.

Respectfully Submitted,

Dated: New York, New York
      May 16, 2007

Jay S. Berke (JB 6500)
A Member of the Firm
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax:    (212) 735-2000
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on May 16, 2007, I caused a true copy of the foregoing

- *Plaintiff Blackrock, Inc.'s Memorandum of Law in Opposition to Defendant's Motion to Dismiss*;

- *Supplemental Affirmation of Jay S. Berke in Opposition to Motion to Dismiss, dated, May 15, 2007;*

- *Affirmation of Harris Oliner in Opposition to Defendant's Motion to Dismiss, dated May 15, 2007;*

- *Affidavit of J. Richard Kushel in Opposition to Defendant's Motion to Dismiss, dated May 15, 2007; and*

- *Compendium of Unreported Decisions Cited in Plaintiff Blackrock, Inc.'s Memorandum of Law in Opposition to Defendant's Motion to Dismiss*

to be served by hand delivery upon

Frederick A. Brodie, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036

Dated:  New York, New York
        May 16, 2007

Steven Ray Katzenstein (SK7599)