10

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 500372 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Self Intern. (HK) Ltd. v. La Salle National Bank,
Chicago
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
SELF INTERNATIONAL (HK) LTD., Plaintiffs,
v.
LA SALLE NATIONAL BANK, CHICAGO, n/k/a
Lasalle Bank National Association, Defendant.
No. 01 CV 4291(RCC).

March 29, 2002.

Memorandum Decision and Order
CASEY, J.
*1 Plaintiff Self International (HK) Ltd., ("Self")
brings this action against defendant La Salle National
Bank, Chicago, n/k/a LaSalle Bank National Associ-
ation ("LaSalle Bank"), alleging that LaSalle Bank
improperly rejected Self's attempts to draw on five
letters of credit. LaSalle Bank now moves to dismiss
the Complaint for lack of personal jurisdiction pursu-
ant to Rule 12(b)(2) of the Federal Rules of Civil
Procedure, or alternatively, to transfer venue to the
United States District Court for the Northern District
of Illinois pursuant to 28 U.S.C. § 1404(a). For the
reasons set forth below, defendant's motion to dis-
miss for lack of personal jurisdiction is denied;
however, the motion to transfer venue is granted.[FN1]

> FN1. Recently, this Court issued an opinion
> in *Shin Won Corp. v. La Salle Nat'l Bank,*
> *Chicago,* 2002 WL 424663 (S.D.N.Y. Mar.
> 19, 2002). The fact pattern in *Shin Won* was
> remarkably similar to the facts of this case:
> the defendant was the same; the causes of
> action were also for breach of contract and
> breach of the duty of good faith and fair
> dealing; the dispute revolved around defend-
> ant's alleged failure to honor letters of credit
> it had issued to vendors who sold goods to
> Montgomery Ward; defendant moved to dis-
> miss for lack of jurisdiction or, in the altern-
> ative, for transfer to the Northern District of
> Illinois; and lastly, even the parties' papers

were similar. The Court concludes that, in
the instant case, it does have personal juris-
diction over LaSalle Bank for exactly the
same reasons as in *Shin Won,* and that trans-
fer is appropriate for substantially the same
reasons as in *Shin Won.*

**I. BACKGROUND**

Self is a manufacturing and trading company that is
incorporated under the laws of Hong Kong and with a
principal place of business in Kowloon, Hong Kong.
*See* Complaint ("Compl.") ¶ 1. Defendant LaSalle
Bank is a national banking association that maintains
its principal place of business in Chicago, Illinois.
*See id.* ¶ 2; *see also* Affidavit of John J. Brown dated
May 2, 2001 ("Brown Aff.") ¶ 3. LaSalle Bank
provided financing for the purchases of goods to non-
party Montgomery Ward, LLC ("Montgomery
Ward") by issuing letters of credit designating certain
vendors, including Self, as beneficiaries. Compl. ¶ 3.
In the fall of 2000, LaSalle Bank issued four Irrevoc-
able Transferable Documentary Credits (hereinafter,
the "L/C's") for Self's benefit, and Self sold and de-
livered goods to Montgomery Ward. *Id.* ¶¶ 3, 5, 9, 13
& 17. However, in January 2001, LaSalle Bank rejec-
ted Self's attempts to draw on the L/C's. *Id.* ¶¶ 7, 11,
15 & 19.

Self filed suit in New York State Supreme Court on
April 23, 2001, alleging breach of contract with re-
spect to each of the L/C's, as well as breach of the
duty of good faith and fair dealing. LaSalle Bank re-
moved the action to this Court on the basis of both di-
versity jurisdiction under 28 U.S.C. § 1332 and feder-
al question jurisdiction under 12 U.S.C. § 632. La
Salle then filed the instant motion seeking dismissal
for lack of personal jurisdiction pursuant to Federal
Rule of Civil Procedure 12(b)(2) or, alternatively, for
transfer to the Northern District of Illinois pursuant to
28 U.S.C. § 1404(A). Both parties have submitted af-
fidavits in support of their respective positions but
discovery has not yet commenced.

**B. DISCUSSION**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 500372 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

### A. Personal Jurisdiction

When responding to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999). Where the court relies on pleadings and affidavits, rather than conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing that the exercise of jurisdiction is proper. *Id.* Moreover, the pleadings and affidavits are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79-80 (2d Cir.1993).

*2 In diversity cases, or in federal question cases where the federal statute does not provide for national service of process, the court looks first to the law of the forum state, here New York, to determine whether personal jurisdiction exists. *Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir.2001); *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997). If the exercise of jurisdiction is appropriate under the applicable New York provisions, then the court must consider whether the requisites of due process are satisfied. *Whitaker,* 261 F.3d at 208 (citing *Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997)).

Although the Complaint itself does not identify any specific provision of the New York Civil Practice Law and Rules ("C.P.L.R.") as the basis for personal jurisdiction, Self relies in its papers upon C.P.L.R. § 301. Under that statute, New York courts may exercise personal jurisdiction over any foreign corporation that is "engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence in the state." *Jazini v. Nissan Motor Co., Ltd.,* 148 F .3d 181, 184 (2d Cir.1998) (citing *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany,* 29 N.Y.2d 426, 430-31, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972)). Accordingly, New York law requires that the defendant be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,* 131 F.Supp.2d 544, 547 (S.D.N.Y.2001) (quoting *Landoil Res.*

*Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990)).

Self does not dispute defendant's averments that LaSalle Bank maintains its principal place of business in Chicago, Illinois, and does not have an office, mailing address or telephone number in New York. Brown Aff. ¶¶ 3, 6; Def. Mem. at 1-2. Self asserts, however, that LaSalle Bank has a demonstrated presence in New York based on: (1) LaSalle Bank's use of its wholly-owned subsidiary, LaSalle Business Credit, Inc. ("LaSalle Credit"), to transact LaSalle Bank's asset-based lending business in New York; (2) LaSalle Bank's interactive website which solicits business in New York and which holds LaSalle Bank out as doing business in New York; (3) LaSalle Bank's direct transaction of substantial business with New York customers; (4) LaSalle Bank's prior acceptance of jurisdiction by New York and its repeated use of the New York courts; and (5) LaSalle Bank's role as an instrumentality of its parent corporation, ABN AMRO, a Netherlands bank with an office in New York. Affidavit of Chris Mularadelis dated July 29, 2001 ("Mularadelis Aff.") ¶ 47. The Court need not address all of these arguments in favor of jurisdiction. At this juncture of the litigation, Self has made a sufficient start toward establishing jurisdiction based upon the relationship between LaSalle Bank and LaSalle Credit.

*3 Although ordinarily the mere presence of a subsidiary in New York will not subject a foreign corporation to personal jurisdiction here, the exercise of jurisdiction is appropriate where the subsidiary acts as a "mere department" or as an "agent" of its parent. *Jazini,* 148 F.3d at 184. Here, although the issue is a close one, Self has set forth factual allegations-not mere bare assertions-that tend to support a *prima facie* showing of jurisdiction under the "mere department" analysis.

In determining whether a subsidiary is a "mere department," the Court considers four factors: (1) common ownership; (2) the subsidiary's financial dependence on the parent corporation; (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the de-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2002 WL 500372 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

gree of control over the marketing and operational policies of the subsidiary exercised by the parent. *See id. at 184-185.* The overall weighing of the various factors thus necessitates a balancing process, and not every factor need weigh entirely in the plaintiff's favor. *ESI, Inc. v. Coastal Corp., 61 F.Supp.2d 35, 51-52 (S.D.N.Y.1999)* (citations omitted).

LaSalle Bank's motion to dismiss cannot be granted at this stage of the proceedings because, considering the above factors, Self has made at least a colorable showing of jurisdiction which warrants exploration in discovery. First, common ownership is undisputed-LaSalle Bank is the sole shareholder of LaSalle Credit. Brown Aff. ¶ 9. As for financial dependence, Self alleges that the two entities are wholly integrated and points out that LaSalle Bank's consolidated financial statements do not distinguish the Bank's assets and liabilities from those of LaSalle Credit. *See* Mularadelis Aff. ¶ 25. Some courts have found this fact to weigh in favor of jurisdiction. *See, e.g., Public Adm'r v. Royal Bank of Canada, 19 N.Y.2d 127, 131, 278 N.Y.S.2d 378, 381, 224 N.E .2d 877, 879 (1967)* (finding it significant for jurisdictional purposes that the subsidiary's assets and liabilities were carried on the books of the parent corporation). However, consolidated financial statements will be deemed irrelevant in certain situations, such as when the parent is merely complying with the requirements of the securities laws. *See, e.g., Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F .2d 117, 121 n. 3 (2d Cir.1984).* At this stage of the litigation, however, the record is simply insufficient for the Court to make an informed assessment regarding financial dependence.

Discovery is also warranted with respect to the third and fourth factors of the "mere department" analysis. Although it is normal in a parent-subsidiary relationship for corporate officers to overlap "to an extent," *see Jazini, 148 F.3d at 185,* here Self alleges, and LaSalle Bank does not dispute, that there is a "mirror image symmetry" between the executive personnel of LaSalle Bank and LaSalle Credit. Muladelis Aff. ¶ 14. All of LaSalle Bank's Senior Vice Presidents are Senior Vice Presidents of LaSalle Credit. *Id.* LaSalle Bank's Executive Vice Presidents Walter M. Macur and Michael D. Sharkey serve as the Chairman and

President/C.E .O. of LaSalle Credit, respectively. *Id.* Courts have found that where, as here, the officers of the two entities are substantially the same, it suggests that the parent has considerable control over the selection and assignment of its subsidiary's personnel. *See, e.g., Obabueki v. International Bus. Mach. Corp.,* Nos. 99 Civ. 11262, 99 Civ. 12486, 2001 WL 921172, at *5 (S.D.N.Y. Aug. 14, 2001)* (finding that the exercise of personal jurisdiction was appropriate under the third factor of the mere department test where all but one of the subsidiary's officers was an officer of the parent); *ESI, 61 F.Supp.2d at 54-55* (finding that the "massive overlap" of corporate officers and directors weighed in favor of jurisdiction, even where there was no evidence regarding the failure to observe corporate formalities).

*4 The fourth factor-control over marketing and operational policies-also militates in favor of Self, at least at this point in the litigation. First, Self points out that LaSalle Bank previously conducted the asset-based lending business itself, as a division of the Bank, until forming LaSalle Credit as a separate corporation in 1993. Mularadelis Aff. ¶¶ 16-19. Although LaSalle Bank argues that it properly may structure its operations so as to avoid subjecting itself to jurisdiction, the purpose of the "mere department" analysis is to look beyond separate incorporation in order to determine whether there is any real difference between the two entities. Here, Self contends that in reality the management of LaSalle Credit is unchanged from the time when the asset-based lending business was a division of LaSalle Bank. *Id.* ¶¶ 18-19. Specifically, Self alleges the present "core group" of overlapping executives between LaSalle Bank and LaSalle Credit-Christopher G. Clifford, Robert Corsentino, Bruce Denby and Joseph G. Fudacz-were the same individuals having significant authority ten years ago. *Id.* ¶ 19. Therefore, Self contends that LaSalle Bank continues to exercise the same control over LaSalle Credit today as it did when LaSalle Credit was still a division of the Bank.

Furthermore, Self argues that LaSalle Bank's control over LaSalle Credit is evident from the fact that LaSalle Bank makes no distinction between the two entities in its annual report and on its website, portraying Credit's business as its own. *See id.* ¶¶ 8-10; Ex. 1 &

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 500372 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

2. Courts are divided as to whether such statements are significant in the jurisdictional calculus. *Compare Dorfman v. Marriott Int'l Hotels, Inc., No. 99 Civ. 10496, 2002 WL 14363, at ~8 (S.D.N.Y. Jan. 3, 2002)* ("The fact that the parent characterizes its subsidiary as part of the parent's business tends to show that the parent treats the subsidiary as a department.") (citing cases), *and Obabueki, 2001 WL 921172 at ~5* ("Such operational control may also be presumed from the lack of distinction between the two entities on the [parent's] interactive website and in its annual report, with respect to services ... that [the subsidiary] purportedly provides."), *with J.L.B. Equities, 131 F.Supp.2d at 550* ("[T]he Court is not persuaded that a failure to distinguish between parent and subsidiary on a web page is sufficient to show that the parent controls the subsidiary's marketing and operational policies."). However, here Self alleges that LaSalle Bank's control is evidenced by more than mere verbiage; for example, Self points out that LaSalle Credit does not have its own website but rather its services are offered only through the Bank's website. Mularadelis Aff. ¶ 24.

Finally, accepting Self's allegations as true, due process would not be offended by the exercise of jurisdiction over LaSalle Bank. In addition to LaSalle Bank's connection with this forum through its subsidiary, Self also alleges that LaSalle Bank has a number of independent contacts with New York. LaSalle Bank allegedly solicits New York consumers through its website, which allows those consumers to buy goods online, conduct online banking and apply online for credit cards and loans. *See id.* ¶ 27 & n. 3. Moreover, LaSalle Bank also purportedly has a number of important clients that are based in New York. *See id.* ¶¶ 28-31 (listing corporations). Finally, LaSalle Bank recently has brought a number of lawsuits in the New York courts. *See id.* ¶ 35. Therefore, at this point in the litigation, Self has provided sufficient factual allegations to defeat the instant motion to dismiss and to warrant discovery on the issue of personal jurisdiction, although it is unclear whether Self ultimately would be able to meet its burden of proving jurisdiction by a preponderance of the evidence. However, this Court will not have the opportunity to address that issue because, as discussed below, the interest of justice favors transfer to the Northern District of Illinois.

### B. Transfer

**\*5** *Section 1404(a) of Title 28* provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. The burden is on the moving party to make a clear and convincing showing that transfer is proper. *See Wechsler v. Macke Int'l Trade, Inc.,* No. 99 Civ. 5725(AGS), *1999 WL 1261251, at ~(S . D.N.Y. Dec. 27, 1999); see also Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir.1978), cert. denied, 440 U.S. 908 (1979).*

The preliminary inquiry is whether the action "might have been brought" in the district to which the transfer is requested. *28 U.S .C. § 1404(a)*. There is no doubt that Self could have brought this action in the Northern District of Illinois. Because LaSalle Bank maintains its principal place of business there, *see* Brown Aff. ¶ 3, both the personal jurisdiction and venue requirements would be met.

This Court then must assess whether transfer will promote convenience and fairness. *See Orb Factory Ltd. v. Design Sci. Toys, Ltd., 6 F.Supp.2d 203, 208 (S.D.N.Y.1998)* (citing *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp., 976 F.Supp. 174, 180 (W.D.N.Y.1997)*). Courts generally look to the following factors: (1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) the trial efficiency and the interests of justice based on the circumstances. *See id.; see also Intria Corp. v. Intira Corp.,* No. 00 Civ. 7198(AGS), *2000 WL 1745043, at ~2 (S.D.N.Y. Nov. 27, 2000).*

After weighing the above considerations, the Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

concludes that transfer clearly is warranted here. First, it is undisputed that all of the operative events occurred in Chicago-the L/C's were issued in Chicago, Self presented its documents to LaSalle Bank in Chicago in its attempt to draw on the L/C's, and LaSalle Bank dishonored the draws in Chicago. *See* Brown Aff. ¶¶ 10-12. Moreover, LaSalle Bank's witnesses and documents are located there. *See id.* ¶¶ 13-14; *see also* Affidavit of Graham K. Bromley dated July 27, 2001 ("Bromley Aff.") ¶¶ 5-6. For example, Mr. Sam Jebamony, the person most directly responsible for dealing with the Self L/C's on behalf of LaSalle, resides in the Chicago area. *See* Bromley Aff. ¶ 5. On the other hand, it is undisputed that *no* documents or witnesses are located in New York.FN2 Even more significantly, *none* of the events at issue occurred here.

> FN2. Self states that until March 2001, Kenji Yamamoto, a Self representative, was permanently stationed in New York. Affidavit of Hiroki Kato dated August 14, 2001 ("Kato Aff.") ¶ 4. Self further represents that it sends representatives to New York on business. *Id.* ¶ 7. There is no evidence as to where Mr. Yamamoto is now located or whether he would be called as a witness, nor is there any evidence that the representatives who travel to New York would be called as witnesses to the instant dispute.

*6 Moreover, Self is a Hong Kong corporation with a branch in the Philippines, it is not a New York resident. Kato Aff. ¶ 2-3. The deference accorded to plaintiff's choice of forum is diminished where the plaintiff is a foreign entity and the operative events occurred outside this district. *See, e.g., Eisenberg v. Wachovia Bank, N.A.,* No. 00 Civ. 7910, 2001 WL 30452, at *4 (S.D.N.Y. Jan. 11, 2001) ("[W]here, as here, a plaintiff is a foreigner and the forum is simply his preferred venue, the weight accorded his choice of forum is generally diminished."); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 990 (E.D.N.Y.1991) ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced signific-

ance.") (citations omitted).

Self has conducted business in New York since 1963 but it appears that it does not currently lease office space in this state.FN3 Self argues that its attorneys are located here in New York. However, counsel's presence is irrelevant to a transfer motion. *See Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F.Supp.2d 433, 438 (S.D.N.Y.2001) ("[T]he convenience of counsel is not an appropriate factor to consider on a motion to transfer.").

> FN3. According to Self, in 1999, Self renewed its lease for office space in New York for an additional two year period. *Id.* ¶ 3. However, Self also states that it was forced to close its New York office in 2000, due to financial difficulties. *Id.* ¶ 5. Because there is no other evidence that Self might still maintain an office in New York, the Court can only conclude that it does not.

It is apparent that this dispute lacks any relevant nexus with New York. Convenience and fairness concerns clearly favor transfer to the Northern District of Illinois. Discovery has not yet commenced and there are no efficiency benefits to be had by keeping the action in this Court.

III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is DENIED and the motion to transfer is GRANTED. It is hereby ordered that this case be transferred in its entirety to the United States District Court for the Northern District of Illinois.

S.D.N.Y.,2002.
Self Intern. (HK) Ltd. v. La Salle National Bank, Chicago
Not Reported in F.Supp.2d, 2002 WL 500372 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11

Westlaw.

Not Reported in F.Supp.    Page 1
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
**(Cite as: Not Reported in F.Supp.)**

**H**
Sierra Rutile Ltd. v. Katz
S.D.N.Y.,1992.

United States District Court, S.D. New York.
SIERRA RUTILE LIMITED, Plaintiff,
v.
Shimon Y. Katz, Michael Lobel, Jack A. Weintraub,
Benjamin Bollag, Berisford Int'l, Plc, Berisford, Inc.,
f/k/a Erlanger & Co., Inc., Erlanger Minerals &
Metals Inc., Berisford Metals Corp., Bomar Holdings
Inc., Bomar Resources Holdings Inc., Comsup Com-
modities Inc. f/k/a Bomar Commodities Inc., Global
Technology Group, Ltd., Bomar Commodities Ltd.,
Bomar Resources Ltd., A/S Bulkhandling, Eggerding
& Co., Concores Trading Establishment, Patmar
Trading Establishment, Curtis, Mallet-Prevost, Colt
& Mosle, Ephraim Margulies, Howard Zuckerman,
Patrice Klein, Tradeco Int'l Inc., Ronnie Greenwald,
Roland Schaer, David Fleischman, William Karon,
John Does 1 through 20, John Doe Corporations 1
through 20, Defendants.
**No. 90 Civ. 4913 (JFK).**

Sept. 8, 1992.

Spitzer & Feldman P.C., New York City (M. James
Spitzer, Ronald J. Offenkrantz, Michael H. Smith, of
counsel), for plaintiff.
Loeb & Loeb, New York City (Martin R. Pollner,
John F. Lang, Donald N. Cohen, of counsel), for Ber-
isford defendants.
Tenzer, Greenblatt, Fallon & Kaplan, New York City
(Allan J. Kirschner, Lawrence S. Feld, Paul J. Giac-
omo, Fredda L. Plesser, of counsel), for defendant
Benjamin Bollag.
Bigham Englar Jones & Houston, New York City
(Francis A. Montbach, Karin A. Schlosser, of coun-
sel), for defendant Eggerding & Co.
Coblence & Warner, New York City (Paul J. Hanly,
Jr., Lewis S. Fischbein, of counsel), for defendants
Klein and Comsup Commodities, Inc.

OPINION AND ORDER
KEENAN, District Judge.
*1 Before the Court are Defendants' motions to dis-

miss the amended complaint. For the reasons that fol-
low, the motions are denied in their entirety.

BACKGROUND

The Defendants in this action are past and present
owners, directors, officers, employees and affiliates
of Bomar Resources, Inc. ("Bomar"), and other entit-
ies that have had business relations with Bomar.
Bomar is a trading company that markets and sells
commodities in international trade. Plaintiff, Sierra
Rutile Ltd. ("Sierra"), owns a concession in Sierra
Leone, West Africa that mines rutile, a mineral used
for making pigments. In 1982, Bomar and Sierra
entered into an exclusive sales agreement providing
that Bomar would market and sell Sierra's entire ru-
tile production. The agreement provided that any
controversies over breach of the agreement would be
settled by arbitration.

Six years later, in 1988, Sierra terminated the rela-
tionship under the terms of the agreement. Bomar al-
leges that the parties thereafter negotiated for a con-
tinuing, but non-exclusive, sales agency. The negoti-
ations failed when the parties disagreed about com-
missions Bomar claimed it was owed for shipments
of rutile delivered after the agency was terminated
but authorized by contracts executed during the
agency. In January 1990, Sierra served on Bomar a
demand for arbitration of its claims that Bomar had
committed various breaches of its exclusive agency
during the term of their agreement.

On July 5, 1990, Sierra filed the instant action in
State Supreme Court. Plaintiff stated nine state-law
claims, including fraud, breach of fiduciary duty,
constructive trust and conversion, as well three
claims based on the Federal Racketeer Influenced and
Corrupt Organizations Act ("RICO"). On July 24,
1990, defendants removed the action to this Court
pursuant to 28 U.S.C. section 1441(c) on the strength
of plaintiff's federal claims. Defendants now move to
dismiss the amended complaint on various grounds.
The Court will address each Defendant's motion in
turn.[FN1]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 2
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
**(Cite as: Not Reported in F.Supp.)**

### DISCUSSION

#### 1. Berisford Defendants' Motion to Dismiss

Defendants Berisford International plc ("Berisford plc"), Berisford, Inc., Erlanger Minerals & Metals, Inc. ("EMM"), Berisford Metals Corporation ("BMC"), Ephraim Margulies, Howard Zuckerman, David Fleischman, William Karon and Harry Wiltshire (collectively, "Berisford Defendants"),[FN2] move for an order dismissing the counts stated against them. Berisford plc, Margulies and Wiltshire seek dismissal for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). All the Berisford Defendants seek dismissal of the third, fourth, seventh and ninth causes of action for failure to state a claim and failure to plead fraud with particularity. Fed.R.Civ.P. 12(b)(6), 9(b).

#### A. Personal Jurisdiction

Berisford plc, Margulies and Wiltshire assert that the Court does not have personal jurisdiction over them because they are not present in New York and do not transact business in New York under New York Civil Practice Law and Rules ("CPLR") § 301, and because they have not committed any of the acts enumerated in CPLR § 302(a). Further, they contend that the presence of the Berisford Subsidiaries in New York is insufficient to obtain jurisdiction over Berisford plc under these sections. Finally, they assert that the due process clause of the Constitution prohibits this Court from asserting jurisdiction over them. None of these contentions has any merit.

*2 The Court finds that Berisford plc is present in New York and transacts business here for the purposes of CPLR § 301. The Court makes this finding notwithstanding the affidavit of Mr. P.F. O'Connor, Secretary/director of Berisford plc. The conclusory statements in his affidavit are belied in virtually every respect by consistent and continued representations by the company and its principals that Berisford plc has a substantial presence in New York. An incomplete listing of such representations follows:
1. In its 1988 Annual Report, Berisford placed the following caption below a photograph of the Wall Street skyline: "Downtown Manhattan: our US

headquarters is in the heart of New York's financial district." See Affidavit of Ronald J. Offenkrantz In Opposition to the Various Defendants' Motions to Dismiss ("Offenkrantz Aff."), Exh. 1 at 14-15.
2. The 1989 Annual Report lists Berisford's "Corporate Headquarters USA" at 77 Water Street, New York City. See Offenkrantz Aff., Exh. 1.
3. Berisford's New York stationery lists its address as 77 Water Street, New York, NY 10006, and gives New York telex and facsimile numbers. See Offenkrantz Aff., Exh. 5.
4. A Dun & Bradstreet search of filings of Uniform Commercial Code Financing Statements relating to Defendant Comsup Commodities Inc. f/k/a Bomar Commodities Inc. disclosed filings by Berisford as the secured party in many states. A February 1992 Dun & Bradstreet report on Berisford Inc. states that it had relocated in 1990 from 77 Water Street to 111 Broadway.
5. Various of the Annual Reports list from one to three of Berisford's directors and officers as permanently stationed at the New York office. See Offenkrantz Aff., Exh. 2, 3 & 4.
6. The assets, liabilities, profits, losses, cash flow and turnover of all the Berisford subsidiaries were consolidated with the financial results of all other Berisford businesses, and reflected on a consolidated basis in its Annual Reports. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motions ("Opp.Mem.") at 19.
7. Employees of all Berisford entities were deemed employees of Berisford, which maintained uniform pension and other benefit plans for all personnel at all Berisford businesses. Opp.Mem. at 20.
8. Berisford's executives sat on the boards of and controlled the affairs of the subsidiaries. Opp.Mem. at 21.
9. Berisford engaged as a partner in the purchase of large commercial properties in Manhattan: it made equity infusions, paid interest, obtained and guaranteed loans, etc. Bank of New York v. Berisford International PLC, 91 Civ. 1130 (JFK).

CPLR § 301 confers personal jurisdiction over an unlicensed foreign corporation that "does business" in New York. Bulova Watch Co. v. K. Hattori & Co., 508 F.Supp. 1322, 1333 (E.D.N.Y.1981). The test is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
(Cite as: Not Reported in F.Supp.)

whether the foreign corporation "is here, not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917). According to Judge Cardozo, "[a]ll that is requisite is that enough be done to enable us to see that the corporation is here." *Id.* Berisford itself has represented that its "Corporate Headquarters USA" is in New York. *See* Offenkrantz Aff., Exh. 1 at 14-15. That, in addition to the cumulative significance of Berisford's listed contacts with New York, leads this Court to the inevitable conclusion that Berisford is indeed doing business in New York for jurisdictional purposes. *See Bulova*, 508 F.Supp. at 1327-28. Berisford's attempt to deny its presence in New York is more than disingenuous: it is duplicitous.

*3 Margulies and Wiltshire's motion to dismiss for lack of personal jurisdiction is also denied. In the Amended Complaint, Plaintiff alleges that Margulies and Wiltshire neglected their duties as directors of Old Bomar, and that they came to New York in connection with their duties as directors. The affidavits submitted do not refute that allegation. Further, Defendants had not complied fully with Plaintiff's discovery demands before plaintiff was obliged to oppose Defendants' motions. *See* Opp.Mem. at 40. Because information pertinent to personal jurisdiction is peculiarly within the possession of the moving parties, and because Plaintiff was operating at a disadvantage in not having that information at its disposal on this motion, the Court declines to grant Margulies and Wiltshire's motion to dismiss for lack of personal jurisdiction.

### B. Failure to State A Claim

The Berisford Defendants next assert that counts three and nine of the Amended Complaint should be dismissed for failure to state a claim. In Count Three, Plaintiff alleges that the Berisford individuals, "as officers and/or directors of Old Bomar ... each owed a fiduciary duty to plaintiff to render to plaintiff honest, faithful, and loyal services and to act with sole regard for plaintiff's rights and interests." Amended Complaint ¶ 104. In Count Nine, Plaintiff alleges that "[e]ach of the defendants who were officers and/or directors of Old Bomar ... owed a duty to plaintiff to

ensure that Old Bomar performed and fulfilled its fiduciary duties under the Restated Agency Agreement." Amended Complaint ¶ 131.

In considering a motion to dismiss for failure to state a claim, the Court must view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1985). Moreover, the Court must accept the factual allegations set forth in the complaint as true. *Cooper v. Pate*, 378 U.S. 546 (1964). Accordingly, a motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The Berisford Defendants assert that Plaintiff has failed to state a claim against the Berisford Individuals, because the Complaint does not allege that the Individuals themselves committed any wrongdoing. Rather, Plaintiff "relies wholly on the Berisford Individuals' one-time status as officers and/or directors as the nexus to hold the Berisford Individuals responsible for the wrongful acts of Old Bomar." Berisford Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint ("Berisford Mem.") at 26. The Court rejects this argument.

As Plaintiff correctly observes, an officer or director is individually liable if he transfers funds from the corporation that were held there in trust for a creditor. *Hinkle Iron Co. v. Kohn*, 229 N.Y. 179, 128 N.E. 113 (1920). An officer or director may also be held liable for misappropriating and converting sales proceeds owed to the plaintiff for corporate uses. This is so whether or not the officer or director "was acting for the corporation, so long as he participated in the act." *Edwards v. Horsemen's Sales Co.*, 148 Misc.2d 212, 560 N.Y.S.2d 165 (Sup.Ct.1989). Directors may also be personally liable for the misappropriations of other directors. 3A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1185 (rev. ed. 1986). And officers and directors who participate in or have knowledge of tortious conduct are personally liable for such conduct, even if it was committed on behalf of

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
(Cite as: Not Reported in F.Supp.)

the corporation. See *American Airlines, Inc. v. American Coupon Exchange, Inc.,* 721 F.Supp. 61, 63 (S.D.N.Y.1989); *National Survival Game, Inc. v. Skirmish, U.S.A., Inc.,* 603 F.Supp. 339, 341 (S.D.N.Y.1985). Liability attaches even if the officer or director did not participate in the tort, but only knew of its commission. See *Marine Midland Bank v. John E. Russo Produce Co.,* 50 N.Y.2d 31, 427 N.Y.S.2d 961, 968-69, 405 N.E.2d 205 (1980); *Keenan v. Artintype Inc.,* 145 Misc.2d 90, 546 N.Y.S.2d 741, 745 (Sup.Ct.1989). As these cases make clear, Plaintiff has adequately stated a claim against the Berisford Individual Defendants in Counts Three and Nine.

*4 The Berisford Defendants also contend that the constructive trust claim in Count Three fails to state a claim. That contention is without merit. In an Opinion and Order dated February 25, 1992, this Court held that Plaintiff's constructive trust claims against Defendants Katz and Lobel were adequately stated. The reasoning set forth in that opinion applies equally to the Berisford Defendants. Accordingly, Defendants' motion to dismiss the constructive-trust claim contained in Count Three is denied.

The Berisford Defendants go on to assert that Count Four must be dismissed for failure to state a claim. Count Four alleges that Berisford plc induced and/or aided and abetted third parties in committing fraud against Plaintiff and in breaching their fiduciary duties to Plaintiff. They argue that Plaintiff has failed to plead the aiding-and-abetting-a-fraud claim with sufficient particularity, and that it has failed to state a claim for aiding and abetting a breach of fiduciary duty. Both arguments are rejected.

Under New York law, one who knowingly participates with or benefits from a fiduciary's breach of trust is liable for the full amount of any resulting damage. *Whitney v. Citibank, N.A.,* 782 F.2d 1106 (2d Cir.1986). In the Amended Complaint, Plaintiff has alleged that all monies that Old Bomar received as freight rebates or as "self-dealing profits" were trust funds that it should have segregated and protected as trust funds. Plaintiff also alleges that millions of those trust fund dollars were transferred to various Swiss and other bank accounts by Bomar's nominees.

Plaintiff explicitly alleges that Berisford plc knowingly received these trust fund monies. Plaintiff also charges that Bulkhandling was instructed to transfer $195,000.00 of the freight rebate monies from Bulkhandling's New York account at Banker's Trust to a Berisford account at National Westminster Bank in London. The Court finds that these allegations adequately state a claim against Berisford plc. *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 119 (2d Cir.1982). Accordingly, the motion to dismiss Count Four is denied.

Finally, the Berisford Defendants argue that Count Seven must be dismissed for failure to state a claim. That Count alleges that Berisford plc and the Berisford Subsidiaries are "liable for the debts and obligations of Old Bomar including the arbitration award dated November 15, 1991." Defendants argue that Plaintiff cannot pierce the corporate veil of Old Bomar to reach Berisford plc and its subsidiaries because Berisford is no longer affiliated with Old Bomar. Further, Defendants assert, Plaintiff has failed to state a veil-piercing claim. The Court disagrees.

As the Second Circuit stated in *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* "to pierce the corporate veil, the parent corporation must *at the time of the transaction complained of:* (1) have exercised such control that the subsidiary 'has become a mere instrumentality' of the parent, which is the real actor; (2) such control has been used to commit fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." 933 F.2d 131, 138 (2d Cir.1991) (emphasis added). Hence, in stating a veil-piercing claim, the relevant time period is at the time of the disputed transaction. In this case, Berisford was the parent corporation of Old Bomar at the time of the disputed transactions. Accordingly, that Berisford no longer owns Old Bomar does not preclude Plaintiff's veil-piercing claim.

*5 Further, Count Seven adequately states a claim. Plaintiff alleges that Berisford plc dominated and controlled Old Bomar in such a pervasive manner that Old Bomar's fraudulent acts are attributable to it. Accordingly, Defendants' motion to dismiss Count

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
**(Cite as: Not Reported in F.Supp.)**

Seven is denied. Plaintiff is entitled to attempt to prove its assertions to the trier of fact. *See Wm. Passalacqua, 933 F.2d at 138-39.*

### 2. Benjamin Bollag's Motion to Dismiss

Defendant Benjamin Bollag moves to dismiss Counts One, Two, Three, Four and Nine for failure to plead fraud with particularity, to dismiss Count Eight for failure to state a claim, and to dismiss the state-law claims against him for lack of subject-matter jurisdiction. His motion is denied.

### A. 9(b) Motion to Dismiss

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The allegations against Bollag observe this mandate. The Amended Complaint makes the following specific allegations of Bollag's fraudulent conduct:

1. Old Bomar was organized and controlled by a group that included Bollag, who was a shareholder, director, officer and/or employee of Old Bomar. Amended Complaint ¶¶ 14, 22.

2. Bollag purported to execute the guaranties of the agency agreement between Plaintiff and Old Bomar in 1982 and 1983 as "Chief Executive Officer" of a fictitious entity, Tradeco International Inc. ¶¶ 21, 23, 58.

3. Bollag and/or members of his family now own Defendant Comsup Commodities Inc., which was created to transfer assets of Old Bomar without consideration and which is successor to Old Bomar's liability. Bollag is president and director of Comsup. ¶¶ 22, 47.

4. Bollag negotiated and executed the Agency Agreement with Plaintiff. ¶¶ 55-56.

5. Bollag, with Katz, Lobel and Weintraub, perpetrated unlawful and fraudulent acts of theft and breaches of fiduciary duty and trust that included procuring kickbacks from shipping companies, overstating freight charges, secretly diluting Plaintiff's rutile, arranging sham transactions, converting the trust funds collected from these activities, and concealing these activities from Plaintiff. ¶¶ 59-68.

6. Bollag was involved in the use of interstate and foreign wires to effectuate the transfer of concealed rebates to designated accounts, which are detailed in the Amended Complaint. ¶¶ 66-68.

7. Bollag participated in the conspiracy to cause Bomar to secretly create its own mineral sands position and to breach its fiduciary duty by engaging in competition with Plaintiff (¶ 70) by blending with ilmenite and converting Plaintiff's rutile, etc.

8. Bollag participated in the "conduct of affairs of Old Bomar as an enterprise through a pattern of racketeering activity by committing, in furtherance of schemes to defraud Plaintiff, repeated acts of mail and wire fraud. ¶ 97. Paragraph 98 of the Amended Complaint details the allegedly fraudulent use of the wires.

**\*6** The Court finds that the Amended Complaint gives Defendant Bollag adequate notice of the allegations against him. That is the proper role of a complaint: it need not marshal all the evidence against him.

Further, to the extent that the Amended Complaint is based on information and belief, that is acceptable where the matter pleaded is peculiarly within the knowledge of the defendant. *Azurite Corp. v. Amster & Co.,* 730 F.Supp. 571, 576 (S.D.N.Y.1990). Any discovery Plaintiff may have had in the arbitration proceeding was from third parties, not from Bollag. The arbitration, between Sierra Rutile Ltd. and Bomar Resources Inc., concluded in a finding by the arbitrators in favor of Sierra. *See Sierra Rutile Ltd. v. Bomar Resources Inc.,* 90 Civ. 0835 (JFK), Opinion and Order, August 20, 1992. Bollag was not a party to the arbitration, produced no documents in it, and did not testify at the arbitration hearing. Because Plaintiff has based its allegations of fraud upon information from third parties, its information-and-belief allegations are acceptable. This is particularly true here, given that Plaintiff cannot be expected to have direct knowledge of Bollag's allegedly fraudulent conduct. Accordingly, the Court denies Bollag's motion to dismiss for failure to plead fraud with particularity.

### B. 12(b)(6) Motion to Dismiss Count Eight

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
**(Cite as: Not Reported in F.Supp.)**

Bollag moves to dismiss Count Eight for failure to state a claim. Count Eight alleges that Bollag is personally liable as guarantor of the obligations of Old Bomar under the agency agreement because he signed the agreement on behalf of a fictitious entity, Tradeco International Inc. Defendant argues that Tradeco Int'l Inc. was not a fictitious entity; rather, "the parties understood that the guarantor was to be Tradeco International Limited ("Tradeco Ltd"), a Cayman Island corporation which was formed on August 6, 1982; ... Tradeco Ltd. did business as Bomar International Limited ("Bomar Ltd."); and ... Tradeco Ltd.'s name was changed to Bomar Ltd. on November 5, 1982." Memorandum of Law in Support of the Motion to Dismiss of Defendant Benjamin Bollag to the Amended Complaint ("Bollag Mem.") at 26. Hence, Bollag claims, Bomar Ltd., the party intended as guarantor, is responsible, not him. Further, Bollag claims that the relief Plaintiff seeks far exceeds the limitations of the guaranty, which only covered the entity's obligations under a specified contract, not the arbitration award.

Under New York law, "one who contracts as an agent in the name of a nonexistent or fictitious principal, or a principal without legal status or existence, renders himself personally liable on the contract so made." *3 Am.Jur.2d Agency § 306 (1986); 3 N.Y.Jur.2d Agency § 280 (1980)*. This rule has been applied to purported officers or promoters of corporations without legal existence. "As a general rule, when a promoter makes a contract for the benefit of, or in the name of, a prospective corporation, he is personally liable on the contract in the absence of an agreement with the contracting party that the promoter is not liable." *18 Am.Jur.2d Corporations § 131 (1985)*. This imposition of personal liability "is based upon the principle that one who assumes to act for a nonexistent principal is himself liable on the contract in absence of any agreement to the contrary." *1A Fletcher Cyc. Corp. § 190 (1983); see also Republic National Bank v. GSO Inc., 177 A.D.2d 417, 576 N.Y.S.2d 533 (1st Dep't 1991)* (holding guarantor who signed above a corporate signature line personally bound on guarantee).

*7 There is no dispute that "Tradeco International Inc." did not exist. While Defendant Bollag's moving papers argue that the name was a mistake, and that the intended guarantor was Tradeco International Ltd., at this juncture the Court must accept the allegations of the Complaint as true and draw every inference in favor of the non-moving party. Accordingly, the Court declines to grant Bollag's motion to dismiss Count Eight.

The Court declines to accept Bollag's argument that the guaranty does not cover the arbitration award. Based on the allegations in the amended complaint, which must be accepted as true, *First National Bank v. Citizens & Southern Bank, 651 F.2d 696, 699 (10th Cir.1981)*, the Court finds that Count Eight states a claim.

### C. Pendent Jurisdiction over State-Law Claims Against Bollag

Because the Court has not dismissed the federal claims against Bollag, it denies Defendant Bollag's motion to dismiss the state-law claims for lack of subject-matter jurisdiction.

#### 3. Eggerding & Co.'s Motion to Dismiss

##### A. Personal Jurisdiction over Eggerding

Defendant Expeditie en Veembedrijf Eggerding & Co. B.V. ("Eggerding") moves to dismiss the Amended Complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). Alternatively, Eggerding seeks transfer of the action on the ground of forum non conveniens.

The Court first addresses the personal jurisdiction issue. Eggerding, a corporation incorporated under the laws of The Netherlands, is engaged in the storage, handling, processing and distribution of industrial minerals, including rutile sands. Eggerding asserts that it conducts no business in the United States, and that it has no offices, resident sales personnel, local agents or distributors in the United States. It admits to placing monthly advertisements of its services in *Industrial Minerals,* "a leading publication in the mineral industry," but asserts that its contacts with the magazine are only with its advertisement and sales office in England. Defendant Eggerding & Co.'s Memorandum of Law in Support of Their Motion to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                       Page 7
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
(Cite as: Not Reported in F.Supp.)

Dismiss ("Eggerding Mem.") at 4.

In 1983, Bomar and Eggerding entered into an agreement pursuant to which Bomar began to store rutile at Eggerding's warehouse in The Netherlands. The Agreement was negotiated by Eggerding's Chief Executive Officer, Willem van der Linde, Sr., and Bomar's David Holt and Michael Lobel. All negotiations took place by telephone or in person at Eggerding's offices in Amsterdam or Bomar's offices in London. Affidavit of Willem van der Linde, Sr. in Support of Eggerding's Motion to Dismiss ("Linde Aff."), ¶ 15. Eggerding was asked to issue invoices for warehousing services in the name of Bomar Resources Inc., 445 Park Avenue, New York, New York, but to mail the invoices to Bomar London. Linde Aff., Exh. 9. When Bomar moved to Fort Lee, New Jersey, the invoices were then issued to Bomar at that address. Eggerding Mem. at 5-7.

*8 From 1983 to 1989, Eggerding's employees spoke "sporadically" by telephone with Bomar Resources Inc. in New York, and later New Jersey, to discuss the payment of their invoices. Eggerding Mem. at 7. Defendant contends, however, that the daily communication regarding the delivery, preparation, and other services under the agreement was generally with David Holt of Bomar Resources, Inc. (now known as Brinc Ltd.), located in London. Eggerding states that no Eggerding executive or employee travelled to New York during the 1982 to 1990 period.

In opposing a jurisdictional motion brought before an answer has been filed or discovery completed, a plaintiff need only make out a prima facie case for jurisdiction through its pleadings and affidavits. *Bomar Resources, Inc. v. Sierra Rutile Ltd., et al., 1991 WL 4544, 1991 LEXIS 396* (S.D.N.Y. January 15, 1991 (JFK); *Welinsky v. Resort of World DNV, 839 F.2d 928, 930* (2d Cir.1988). Such pleadings and affidavits are to be construed in the light most favorable to the plaintiff, with all doubts resolved in plaintiff's favor. *Cutco Industries, Inc. v. Naughton, 806 F.2d 361, 365* (2d Cir.1986); *Hoffritz for Cutlery Inc. v. Amajac, Ltd., 763 F.2d 55* (2d Cir.1985).

Under New York law, the acts of a co-conspirator within the state may be attributed to an out-of-state

defendant for the purposes of obtaining personal jurisdiction. *See, e.g., Grosser v. Commodity Exchange, Inc., 639 F.Supp. 1293 (S.D.N.Y.1986); Singer v. Bell, 585 F.Supp. 300 (S.D.N.Y.1984).* New York Civil Practice Law & Rules § 302(a)(2) provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person *or through an agent:* ... commits a tortious act within the state," where the cause of action arises from that act. "Agent" has been defined to include co-conspirators. *Lehigh Valley Indus., Inc. v. Birenbaum, 389 F.Supp. 798 (S.D.N.Y.1975), aff'd, 527 F.2d 87 (2d Cir.1975).*

To establish jurisdiction against an out-of-state co-conspirator, a plaintiff must allege facts warranting the inference that the out-of-state defendant was a member of the conspiracy and that the defendant had an awareness (a) of the effects of its activity in New York and (b) that the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators. *Chrysler Capital Corp. v. Century Power Corp., 778 F.Supp. 1260 (S.D.N.Y.1991).* Because a conspiracy "can rarely be proved by direct evidence, and is instead 'usually established by circumstantial evidence based upon independent proof of each alleged co-conspirator's act," normally evidence of conspiracy must await discovery. *Singer v. Bell, 585 F.Supp. 300, 303 (S.D.N.Y.1984).* For this reason, the Second Circuit has held that in a case where the plaintiff has submitted evidentiary facts tending to connect the defendant to New York transactions, the conspiracy/jurisdictional issue should not be resolved and the complaint dismissed without discovery. *Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1343-44 (2d Cir.1972).*

*9 In this case, Plaintiff has alleged that the "scheme devised by the defendants was initiated, directed and consummated in the City and State of New York" and that New York was its focal point. The Amended Complaint details the acts and conduct that allegedly occurred within this state, including the use of New York City banks, transactions with shipping companies in New York and, in Eggerding's case, the furnishing to Old Bomar of allegedly false and fictitious invoices, which Eggerding is alleged to have known "were being passed to plaintiff for approval and pay-

Not Reported in F.Supp.                                                    Page 8
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
**(Cite as: Not Reported in F.Supp.)**

ment." Amended Complaint, ¶ 49. The Court finds that these allegations of tortious acts in New York on behalf of alleged co-conspirators are sufficient under CPLR § 302(a)(2) to defeat Eggerding's motion to dismiss. *Singer v. Bell*, 585 F.Supp. 300, 302 & n. 3 (S.D.N.Y.1984). Accordingly, the Court need not address Eggerding's jurisdictional arguments premised on CPLR § 302(a)(1) and (a)(3).

### B. Forum Non Conveniens

Eggerding alternatively seeks to have this action transferred to The Netherlands. While Eggerding's moving papers do not make clear whether it wishes to transfer the entire case, or only the causes of action asserted against it, the result is the same in either event: the motion must be denied. The Netherlands may be a more convenient forum to Eggerding, it is not more convenient to any other of the approximately 28 parties to this action. Further, there is no purpose in severing one of many causes of action. Motion denied.

### 4. Klein and Comsup Commodities' Motion to Dismiss or for Summary Judgment

Defendants Patrice Klein and Comsup Commodities Inc. move to dismiss the complaint on the grounds of res judicata and collateral estoppel, lack of personal jurisdiction, failure to state a claim, and failure to plead fraud with particularity. Alternatively, Defendants seek summary judgment on all the claims against them. Comsup also seeks summary judgment as to Count Thirteen. Finally, they seek Rule 11 sanctions against Plaintiff and Plaintiff's counsel.

### A. Res Judicata and Collateral Estoppel

Klein moves to dismiss Counts One, Two, Four and Thirteen for failure to state a claim because they are barred by the doctrines of collateral estoppel and res judicata. Alternatively, he seeks summary judgment on those counts. This motion must be denied for a single, and anticipated, reason. In order to assess the res judicata and collateral estoppel arguments, the Court must review the filings in the arbitration, as well as the arbitrators' decision. Because those matters are outside the pleadings, they may not be considered on a motion to dismiss. Because Defendants

did not request permission to file a summery judgment motion, the Court declines to convert the Rule 12 motion into a Rule 56 motion. In addition, there are clearly disputed issues of material fact that would require denial of the summary judgment motion. Accordingly, the motion to dismiss these counts is denied.

### B. Personal Jurisdiction Over Klein

**\*10** Klein also seeks dismissal of the action for lack of personal jurisdiction over him. The Court finds that Plaintiff has made out a prima facie case for jurisdiction through its pleadings and affidavits, which is all that need be done in opposing a jurisdictional motion brought before an answer has been filed or discovery completed. *Bomar Resources, Inc. v. Sierra Rutile Ltd., et al.,* 1991 LEXIS 396 (S.D.N.Y. January 15, 1991) (JFK); *Welinsky v. Resort of World DNV,* 839 F.2d 928, 930 (2d Cir.1988).

Under New York law, the acts of a co-conspirator within the state may be attributed to an out-of-state defendant for the purposes of obtaining personal jurisdiction. *See, e.g., Grosser v. Commodity Exchange, Inc.,* 639 F.Supp. 1293 (S.D.N.Y.1986); *Singer v. Bell,* 585 F.Supp. 300 (S.D.N.Y.1984). New York Civil Practice Law & Rules § 302(a)(2) provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person *or through an agent:* ... commits a tortious act within the state," where the cause of action arises from that act. "Agent" has been defined to include co-conspirators. *Lehigh Valley Indus., Inc. v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y.1975), *aff'd,* 527 F.2d 87 (2d Cir.1975).

To establish jurisdiction against an out-of-state co-conspirator, a plaintiff must allege facts warranting the inference that the out-of-state defendant was a member of the conspiracy and that the defendant had an awareness (a) of the effects of its activity in New York and (b) that the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators. *Chrysler Capital Corp. v. Century Power Corp.,* 778 F.Supp. 1260 (S.D.N.Y.1991). Because a conspiracy "can rarely be proved by direct evidence, and is instead 'usually established by cir-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
(Cite as: Not Reported in F.Supp.)

Page 9

cumstantial evidence based upon independent proof of each alleged co-conspirator's act," normally evidence of conspiracy must await discovery. *Singer v. Bell,* 585 F.Supp. 300, 303 (S.D.N.Y.1984). For this reason, the Second Circuit has held that in a case where the plaintiff has submitted evidentiary facts tending to connect the defendant to New York transactions, the conspiracy/jurisdictional issue should not be resolved and the complaint dismissed without discovery. *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1343-44 (2d Cir.1972).

In this case, Plaintiff has alleged that the "scheme devised by the defendants was initiated, directed and consummated in the City and State of new York" and that New York was its focal point. The Amended Complaint details the acts and conduct that allegedly occurred within this state, including the use of New York City banks and transactions with shipping companies in New York. In Klein's case, he is alleged to have defrauded Plaintiff by directing and participating in the purchase of all the issued and outstanding stock of Old Bomar and Commodities Ltd. in New York; he is also alleged to have aided and abetted the acts described in paragraphs 59 to 70 of the Amended Complaint, and, knowing of those acts, causing the transfer, without consideration, of substantial assets of Old Bomar. The Court finds that these allegations are sufficient on this motion to establish that Klein was part of the conspiracy, and that the tortious acts in New York of alleged co-conspirators are sufficient under CPLR § 302(a)(2) to defeat Klein's motion to dismiss. *Singer v. Bell,* 585 F.Supp. 300, 302 & n. 3 (S.D.N.Y.1984). Accordingly, the Court need not address Klein's jurisdictional arguments premised on CPLR § 302(a)(1) and (a)(3). *See also* Section 3(A) of this Opinion.

### C. 12(b)(6) and 9(b)

*11 Klein moves to dismiss Counts One, Two and Four for failure to state a claim, and all the counts against him for failure to plead fraud with particularity. Comsup also moves to dismiss Count Thirteen for failure to plead fraud with particularity. These motions are denied for the reasons already set forth in this Opinion. *See, e.g.,* section 1(B) of this Opinion.

Plaintiff's pleading satisfies the intent of Rule 9(b), which is to give defendants adequate information of the charges against them in order to frame responsive pleadings. *Ross v. A.H. Robins, Co.,* 607 F.2d 545, 557-58 (2d Cir.1979), *cert. denied,* 446 U.S. 946 (1980). Because the forms of constructive fraud alleged here involve acts of omission rather than of affirmative misrepresentation, the rule that a fraud complaint must specify the time, place, speaker and content of the alleged misrepresentation does not apply. *See also* discussion at section 2(A) of this Opinion.

### E. Summary Judgment as to Count Thirteen

Comsup moves for summary judgment as to Count Thirteen. Because Defendants did not request permission to file this motion, *see* Rule One of This Court's Individual Rules, it is denied. Because such a motion is also premature, as discovery has not been completed, it would probably be denied as involving a factual issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (motions for summary judgment appropriate after there has been "adequate time for discovery").

### F. Rule 11 Sanctions

Klein moves for the imposition of Rule 11 sanctions against Plaintiff and Plaintiff's counsel. That motion is denied. As stated earlier, the Court has not considered the arbitrator's decision in deciding this motion, nor does it have the parties' submissions to the arbitrators. Accordingly, the Court declines to grant Klein's application for rule 11 sanctions. All parties would be well advised to cool it: this litigation is, for better or worse, still in its infancy. Sanctions can wait. If the Court continues to field applications for sanctions, it may well begin to assess costs sua sponte.

### CONCLUSION

Defendants' motions are denied in their entirety. Discovery is to proceed.

SO ORDERED.

FN1. Defendants Shimon Y. Katz, Michael

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 10
Not Reported in F.Supp., 1992 WL 236208 (S.D.N.Y.), RICO Bus.Disp.Guide 8123
**(Cite as: Not Reported in F.Supp.)**

> Lobel and certain Bomar entities filed a mo-
> tion to dismiss, but withdrew it during the
> oral argument of this motion on September
> 2, 1992. Accordingly, this Opinion does not
> address their motion.

> FN2. Berisford, Inc., EMM and BMC will
> occasionally be referred to as the "Berisford
> Subsidiaries."    Margulies,    Zuckerman,
> Fleischman, Karon and Wiltshire will some-
> times be referred to herein as the "Berisford
> Individuals."

S.D.N.Y.,1992.
Sierra Rutile Ltd. v. Katz
Not Reported in F.Supp., 1992 WL 236208
(S.D.N.Y.), RICO Bus.Disp.Guide 8123

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
(Cite as: Not Reported in F.Supp.2d)

**H**
Tsegaye v. Impol Aluminum Corp.
S.D.N.Y.,2003.

United States District Court,S.D. New York.
Bilyana H. TSEGAYE, Plaintiff,
v.
IMPOL ALUMINUM CORP., Impol Slovenia, Miro
Skrlj, Individually and on Behalf of the Corporation,
and Madja Skrlj, Individually and on Behalf of the
Corporation, Defendants.
No. 01 Civ. 5943(LMM).

Jan. 30, 2003.

Employee brought action against corporation she
worked for and its foreign parent for breach of letter
agreement and duty of good faith and fair dealing,
age and disability discrimination in violation of New
York Human Rights Law (NYHRL), and tortious in-
terference with contract. Action was removed on
basis that claim implicated Employee Retirement In-
come Security Act (ERISA). Employee amended
complaint and moved to remand. The District Court,
2002 WL 553561, denied motion. Defendants moved
for summary judgment. The District Court,
McKenna, J., held that: (1) no personal jurisdiction
existed under New York statutes over foreign parent,
which was not "doing business" in New York based
on activities of its subsidiary; (2) president of subsi-
diary corporation and his wife were not personally li-
able for breach of letter agreement, which was signed
only by president in his official capacity; (3) employ-
ee's claims for annual Consumer Price Index (CPI)
and merit increases for more than six years before
date lawsuit was filed were time-barred, and sum-
mary judgment was precluded on claims as to re-
maining years; (4) genuine issue of material fact, as
to whether employee was terminated or resigned, pre-
cluded summary judgment on claim for breach of let-
ter agreement provision requiring employer to give
six months notice of termination; (5) president and
his wife did not tortiously interfere with contract; and
(6) neither subsidiary nor parent corporation was
plaintiff's "employer" within meaning of NYHRL.

Motion granted in part and denied in part.
West Headnotes
**[1] Federal Courts 170B ⟨⟩417**

170B Federal Courts
   170BVI State Laws as Rules of Decision
      170BVI(C) Application to Particular Matters
         170Bk417 k. Federal Jurisdiction. Most
Cited Cases
Amenability of foreign corporation to suit in federal
court in diversity action is determined in accordance
with law of state where court sits, with federal law
entering the picture only for the purpose of deciding
whether state's assertion of jurisdiction contravenes a
constitutional guarantee.

**[2] Federal Courts 170B ⟨⟩86**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk86 k. Aliens or Alien Corporations.
Most Cited Cases
Foreign corporation was not "doing business" in New
York within meaning of statute permitting the general
exercise of personal jurisdiction over a foreign cor-
poration engaged in a continuous and systematic
course of doing business in the state, where it played
no role in daily operations of its subsidiary, was not
authorized to do business in New York, did not have
office, officers, employees, agents or bank accounts
in New York, and did not directly buy, sell or trade
with New York customers. N.Y.McKinney's CPLR
301.

**[3] Corporations 101 ⟨⟩665(1)**

101 Corporations
   101XVI Foreign Corporations
      101k663 Actions by or Against
         101k665 Jurisdiction
            101k665(1) k. Facts and Circumstances
Conferring Jurisdiction. Most Cited Cases
Mere presence of a subsidiary in New York does not
establish the parent's presence in the state, and for
New York courts to have personal jurisdiction over

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
**(Cite as: Not Reported in F.Supp.2d)**

parent under statute permitting the general exercise of personal jurisdiction over a foreign corporation engaged in a continuous and systematic course of doing business in the state, subsidiary must be either an agent or a mere department of the foreign parent. N.Y.McKinney's CPLR 301.

**[4] Corporations 101 ☞665(1)**

101 Corporations
    101XVI Foreign Corporations
        101k663 Actions by or Against
            101k665 Jurisdiction
                101k665(1) k. Facts and Circumstances Conferring Jurisdiction. Most Cited Cases
To be an "agent" of the foreign parent within meaning of New York statute permitting the general exercise of personal jurisdiction over a foreign corporation engaged in a continuous and systematic course of doing business in the state, it must be shown that subsidiary does all the business which parent corporation could do were it in New York by its own officials. N.Y.McKinney's CPLR 301.

**[5] Corporations 101 ☞1.6(9)**

101 Corporations
    101I Incorporation and Organization
        101k1.6 Particular Occasions for Determining Corporate Entity
            101k1.6(9) k. Remedies and Procedure; Parties. Most Cited Cases

**Corporations 101 ☞665(1)**

101 Corporations
    101XVI Foreign Corporations
        101k663 Actions by or Against
            101k665 Jurisdiction
                101k665(1) k. Facts and Circumstances Conferring Jurisdiction. Most Cited Cases
Subsidiary will be considered a "mere department" of foreign parent under New York statute permitting the general exercise of personal jurisdiction over a foreign corporation engaged in a continuous and systematic course of doing business in the state only if the foreign parent's control of the subsidiary is so pervasive that the corporate separation is more formal than real; four factors used in making this determination

are 1) common ownership, which is essential, 2) financial dependency of the subsidiary on the parent, 3) degree to which parent interferes in selection and assignment of subsidiary's executive personnel and fails to observe corporate formalities, and 4) degree of parent's control of subsidiary's marketing and operational policies. N.Y.McKinney's CPLR 301.

**[6] Courts 106 ☞12(2.15)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General
                    106k12(2.15) k. Transacting or Doing Business. Most Cited Cases
To have jurisdiction under New York long-arm statute, nondomiciliary must transact business within the state, and the claim against the nondomiciliary must arise out of that business activity. N.Y.McKinney's CPLR 302.

**[7] Corporations 101 ☞325**

101 Corporations
    101X Officers and Agents
        101X(D) Liability for Corporate Debts and Acts
            101k325 k. Nature and Grounds in General. Most Cited Cases
Under New York law, individual who signs a corporate contract and indicates the name of the corporation and the nature of his representative capacity on the contract is generally not subject to personal liability; corporate agent who signs a contract within the authority of his official capacity will not be personally bound unless there is clear and explicit evidence that the agent intended to substitute his personal liability for that of his principal or that fraud is involved.

**[8] Limitation of Actions 241 ☞46(6)**

241 Limitation of Actions
    241III Computation of Period of Limitation
        241III(A) Accrual of Right of Action or Defense

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
(Cite as: Not Reported in F.Supp.2d)

241k46 Contracts in General
241k46(6) k. Breach of Contract in General. Most Cited Cases

**Limitation of Actions 241 €══50(1)**

241 Limitation of Actions
241II Computation of Period of Limitation
241II(A) Accrual of Right of Action or Defense
241k50 Continuing Contracts
241k50(1) k. In General. Most Cited Cases
Generally, in contract actions, New York's six-year statute of limitations begins to run when the contract is breached; however, for contracts entailing continuing performance, such as employment contracts, each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to the filing of the suit. N.Y.McKinney's CPLR 213.

**[9] Federal Civil Procedure 170A €══2497.1**

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(C) Summary Judgment
170AXVII(C)2 Particular Cases
170Ak2497 Employees and Employment Discrimination, Actions Involving
170Ak2497.1 k. In General. Most Cited Cases
Discrepancies between salary adjustments received and those to which employee was actually entitled to under letter agreement precluded summary judgment as to employee's timely claims under New York law for annual Consumer Price Index (CPI) and merit increases. Fed.Rules Civ.Proc. Rule 56, 28 U.S.C.A.; N.Y.McKinney's CPLR 213.

**[10] Labor and Employment 231H €══175**

231H Labor and Employment
231HIV Compensation and Benefits
231HIV(A) In General
231Hk175 k. Bonus. Most Cited Cases
(Formerly 255k72 Master and Servant)
Under New York law, an employee may enforce an

agreement to pay an annual bonus made at the onset of an employment relationship where such bonus constitutes an integral part of the employee's compensation package.

**[11] Labor and Employment 231H €══175**

231H Labor and Employment
231HIV Compensation and Benefits
231HIV(A) In General
231Hk175 k. Bonus. Most Cited Cases
(Formerly 255k72 Master and Servant)
Under New York law, where a bonus constitutes a term of employment and there exists a reasonable basis for calculating it, a court may enforce the contract terms; however, a promise to pay a bonus is unenforceable if the bonus plan vests the employer with absolute discretion as to the entitlement and amount of any payments thereunder.

**[12] Federal Civil Procedure 170A €══2497.1**

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(C) Summary Judgment
170AXVII(C)2 Particular Cases
170Ak2497 Employees and Employment Discrimination, Actions Involving
170Ak2497.1 k. In General. Most Cited Cases
Genuine issue of material fact, as to amount of bonus to which employee was entitled for years in question, precluded summary judgment on claim for annual merit increase under letter agreement governed by New York law. Fed.Rules Civ.Proc. Rule 56(c), 28 U.S.C.A.

**[13] Federal Civil Procedure 170A €══2497.1**

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(C) Summary Judgment
170AXVII(C)2 Particular Cases
170Ak2497 Employees and Employment Discrimination, Actions Involving
170Ak2497.1 k. In General. Most Cited Cases
Genuine issue of material fact, as to whether employee was terminated or resigned, precluded summary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
(Cite as: Not Reported in F.Supp.2d)

Page 4

judgment on claim for breach of letter agreement provision requiring employer to give six months notice of termination. Fed.Rules Civ.Proc. Rule 56(c), 28 U.S.C.A.

[14] Torts 379 ⟲212

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)1 In General
                379k212 k. Contracts. Most Cited Cases
    (Formerly 379k12)
Under New York law, tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.

[15] Civil Rights 78 ⟲1111

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1111 k. Number of Employees. Most Cited Cases
    (Formerly 78k143)

Civil Rights 78 ⟲1112

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1112 k. Multiple Entities; Third Parties. Most Cited Cases
    (Formerly 78k143)
Neither corporation that employee worked for nor its foreign parent was "employer" for purposes of employee's age and disability discrimination claims under New York Human Rights Law (NYHRL); subsidiary had less than four employees at time of alleged discharge, and parent did not have power to select plaintiff for employment, did not pay her salary, did not have power to dismiss her, and had no control over her conduct. N.Y.McKinney's Executive Law, § 296, subd. 1.

[16] Labor and Employment 231H ⟲868(4)

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(B) Actions
            231Hk864 Monetary Relief; Damages
                231Hk868 Aggravation, Mitigation, or Reduction of Loss
                    231Hk868(2) Other Employment
                        231Hk868(4) k. Nature of Work; Extent of Employee's Efforts. Most Cited Cases
    (Formerly 255k42(1) Master and Servant)
Under New York law, employee who made no effort to mitigate damages by seeking alternate employment after her alleged discharge would have any damages she received for breach of letter agreement reduced by amount, if any, she could have earned from date of alleged discharge to date letter agreement was terminated.

[17] Federal Civil Procedure 170A ⟲2737.1

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2737 Attorneys' Fees
            170Ak2737.1 k. Result; Prevailing Parties; "American Rule". Most Cited Cases
Attorney fees ordinarily are incidents of litigation and may not be recovered from the losing party absent an agreement between them, a statute, or a rule.

*MEMORANDUM AND ORDER*

McKENNA, J.
*1 Plaintiff Bilyana H. Tsegaye ("Tsegaye") brings this action against Impol Aluminum Corp. ("Impol Aluminum"), Impol Slovenia, Miro Skrlj and Madja Skrlj. She alleges two causes of action against all defendants: 1) breach of contract and the duty of good faith and fair dealing; and 2) employment discrimination in violation of the New York Human Rights Law, Executive Law §§ 290 et. seq. In addition, she alleges tortious interference with contract against Miro Skrlj and Madja Skrlj. Defendants have moved for summary judgment on all claims. For the following reasons, the Court grants the motion in part.

BACKGROUND

*1. The Parties*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
(Cite as: Not Reported in F.Supp.2d)

Impol Aluminum, which is in the business of importing and exporting aluminum products, is registered and has its principal place of business in New York. (Second Am. Compl. ¶ 3.) Impol Slovenia is located in the Republic of Slovenia and is the parent company of Impol Aluminum. (*Id.* ¶ 5.) Miro Skrlj is President of Impol Aluminum. (*Id.* ¶ 6.) Madja Skrlj is Miro Skrlj's wife, and has been employed by Impol Aluminum since 1997. (*Id.* ¶ 7.) Tsegaye was employed by Impol Aluminum as the "Assistant to the U.S. Representative of Impol" from January 15, 1991 through June 2000. (*Id.* ¶¶ 1-4; Tsegaye Aff., Ex. C.)

### 2. *Impol Aluminum and its Relationship to Impol Slovenia*

Impol Slovenia owns ninety percent of the stock of Impol Aluminum. (Defs. 56.1 Stmt. ¶ 30.) [FN1] However, Impol Slovenia plays no role in Impol Aluminum's daily operations; it is not authorized to do business in New York; it has no office, employees, authorized agents, or bank accounts in New York, and does not directly buy, sell or trade aluminum with New York customers. (*Id.* ¶¶ 35-36.) Miro Skrlj exercises full authority as to employment matters of Impol Aluminum, including hiring, firing, salaries, benefits and terms of employment. (*Id.* ¶ 31.) Miro Skrlj also authorizes all transactions undertaken by Impol Aluminum. (*Id.* ¶ 43.) In 2000, Impol Aluminum transacted approximately twenty percent of its total business with Impol Slovenia. (*Id.* ¶ 37.) In 2001, it conducted only nine percent of its sales and none of its purchases with its parent company. (*Id.*) None of the officers, directors or employees of Impol Slovenia holds a position at Impol Aluminum, except that one of its officers is a vice president of Impol Aluminum. (Skrlj Aff. ¶ 14.)

FN1. Local Civil Rule 56.1(c) provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Here, defendants have filed a detailed and annotated Rule 56.1 statement. In response, Tsegaye has filed a statement which merely identifies the issues in dispute on this motion, such as

"Whether Defendants breached," and "Whether harassment occurred due to age and disability." This statement fails to controvert defendants' statement and therefore the Court deems the facts as set out in defendants' Rule 56.1 statement to be admitted. *See SNCB Corporate Fin. Ltd. v. Schuster,* 877 F.Supp. 820, 825 n. 3 (S.D.N.Y.1994) (assertions in movant's statement deemed admitted since non-movant failed to controvert them), *aff'd,* 71 F.3d 406 (2d Cir.1995).

Likewise, Impol Aluminum does not place or accept orders on behalf of Impol Slovenia. (Defs. 56.1 Stmt. ¶ 42.) Miro and Madja Skrlj are not officers, directors, employees or authorized agents of Impol Slovenia, and have no power to sign any contracts on behalf of Impol Slovenia or to bind it in any way. (*Id.* ¶ 39, 40.)

### 3. *Tsegaye's Employment with Impol Aluminum*

Tsegaye, who suffers from coronary artery disease and hypertension, was employed by Impol Aluminum pursuant to a letter agreement dated December 31, 1990 ("the letter agreement"). (Second Am. Compl. ¶ 10; Tsegaye Aff., Ex. C; Def.'s 56.1 Stmt. ¶¶ 2-3.) The five-year agreement commenced on January 15, 1991. (Second Am. Compl. ¶ 3.) The agreement was subsequently renewed for another five years, making it effective until January 15, 2001. (*Id.*) Pursuant to the letter agreement, Tsegaye was to receive "an annual merit increase reflecting [her] contribution to IMPOL ALUMINUM CORP. during the previous calendar year." (Tsegaye Aff., Ex. C.) In addition, Tsegaye's salary was to be adjusted annually "in accordance with the Consumer Price Index." (*Id.*)

*2 Tsegaye worked solely under the direction and control of Miro Skrlj. (*Id.* ¶ 33.) Impol Aluminum paid her salary. (*Id.* ¶ 32.) No one at Impol Slovenia exercised any control over the terms and conditions of Tsegaye's employment. (*Id.* ¶ 34.) Tsegaye received a raise and bonus each year she was employed, except in 1999 when no raises were granted. (*Id.* ¶ 19.) Throughout Tsegaye's tenure there, Impol Aluminum never employed more than three persons,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 6
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
(Cite as: Not Reported in F.Supp.2d)

except between October 1996 and November 1998, when the company employed two full time and two part time persons. (*Id.* ¶¶ 22-23.)

Tsegaye alleges that, during her employment at Impol Aluminum, Miro and Madja Skrlj frequently questioned Tsegaye about when she was going to retire, to which she responded that she had no intention of retiring until she was 65 years old, in July 2002. Tsegaye claims that the questioning escalated in approximately June 2000, when they frequently made statements such as "you should let us know when you're retiring so we can find a replacement for you," "the company is not doing well," and "the company may be bought out." (Second Am. Compl. ¶ 44.) In addition, Miro Skrlj would allegedly raise his voice to her, "snap" at her, "hit the table and start screaming at [her]", and throw paper at her when he was displeased with her work. (Defs. 56.1 Stmt., Ex. H, p. 2, 3, 6, 7, 9) She claims that these comments exacerbated her medical condition. (Second Am. Compl. ¶ 47.)

On June 8, 2000, Tsegaye left the office of Impol Aluminum. (Defs. 56.1 Stmt. ¶ 11.) Later that day, Tsegaye's husband called to say she would not be returning to work. (*Id.* ¶ 12.) In a letter dated June 8, 2000, Miro Skrlj stated to Tsegaye that Impol Aluminum considered that she had resigned from the company as of that date, and that she would be compensated up until June 16, 2000. (Defs. 56.1 Stmt., Ex. F.) According to Tsegaye, she did not resign from Impol Aluminum on that day or give defendants any indication that she was resigning. (*Id.* ¶ 13.) Tsegaye claims from that day forward she was on sick leave from Impol Aluminum. (*Id.*) Following her departure from Impol Aluminum, Tsegaye made no effort to find new employment. (*Id.* ¶ 29.)

#### 4. *Tsegaye's Allegations* [FN2]

> FN2. Tsegaye originally brought this action in November 2000 in New York state court. The action was removed to federal court in June 2001 because her claim for breach of fiduciary duty implicated a federal question under the Employee Retirement Income Security Act of 1974 ("ERISA"). Sub-

sequently, Tsegaye amended her complaint to allege only claims for breach of contract, tortious interference with contract, and employment discrimination under New York State law. Tsegaye then moved to remand the case back to state court. However, the Court found that this action remained within the Court's federal subject matter jurisdiction because Tsegaye's claim for breach of contract still implicated ERISA. *See Tsegaye v. Impol Aluminum Corp.,* No. 01 Civ. 5943, 2002 WL 553561, at *1 (S.D.N.Y. Apr.12, 2002).

In her Second Amended Complaint, Tsegaye's first cause of action alleges that in breach of the letter agreement and the duty of good faith and fair dealing, defendants: 1) terminated her employment on or about June 8, 2001 without her consent or knowledge; 2) failed to adjust her annual salary in accordance with the U.S. Consumer Price Index ("C.P.I."); 3) failed to pay her annual merit increases; 4) withheld Tsegaye's paychecks; 5) "created a violent, abusive, oppressive, demeaning, humiliating, reprehensible and unwelcome hostile work environment, rendering it impossible at certain times for [Tsegaye] to remain at the offices of [Impol Aluminum] ... and done solely to attempt to drive [Tsegaye] from her employment"; and 5) delegated some of Tsegaye's duties to Madja Skrlj.[FN3] (Second Am. Compl. at ¶¶ 4-8, 9.) Based on these allegations, Tsegaye seeks $550,000, plus costs and reasonable attorneys' fees. (*Id.* ¶ 25.)

> FN3. Tsegaye also alleges that she was precluded from receiving benefits under Impol Aluminum's Profit Sharing Plan in breach of the letter agreement. (Second Am. Compl. ¶ 21.) However, this issue was not raised in the present motion.

*3 Tsegaye's second cause of action alleges that Miro and Madja Skrlj tortiously interfered with Tsegaye's letter agreement with Impol Aluminum. Tsegaye claims that Miro and Madja Skrlj were aware of the existence of the employment contract, and intentionally procured its breach so that Madja Skrlj could usurp Tsegaye's position at Impol Aluminum, and

Not Reported in F.Supp.2d                                                                                          Page 7
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
(Cite as: Not Reported in F.Supp.2d)

drive Tsegaye from her employment. (*Id.* ¶ 30.) Tsegaye seeks damages for this claim in the sum of $550,000 and an additional $1,000,000 in punitive damages, plus costs and reasonable attorneys' fees. (*Id.* ¶ 34.)

Finally, Tsegaye alleges that, during her employment at Impol Aluminum, she was subjected to discrimination and harassment because of her age and disability in violation of the New York Human Rights Law, Executive Law §§ 290 *et. seq.* She requests $2,000,000 in damages for this claim, including punitive damages, costs, attorneys' fees and such other and further relief as the Court deems just and proper. (Second Am. Compl. ¶ 52.)

### 5. *Defendants' Motion for Summary Judgment*

Defendants have moved for summary judgment as to Tsegaye's claims for breach of contract, tortious interference, employment discrimination, and punitive damages. (Defs. Mem. at 3-20.) In addition, they argue that Tsegaye failed to mitigate her damages. (*Id.* at 19.) Defendants also argue that the Court lacks personal jurisdiction over Impol Slovenia. (*Id.* at 21.)

### STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 250.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255. "If, as to the issue on which summary judg-

ment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. "[T]he mere existence of factual issues-where those issues are not material to the claims before the court-will not suffice to defeat a motion for summary judgment." *Quarles v. Gen. Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

*4 For a dispute to be genuine requires more than "metaphysical doubt." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

### DISCUSSION

### 1. *Whether Impol Slovenia is Subject to Personal Jurisdiction in New York*

[1] Defendants argue that Impol Slovenia is not subject to personal jurisdiction in New York. (Defs. Mem. at 23.) In response, Tsegaye argues that jurisdiction is proper because Impol Slovenia and the New York based Impol Aluminum are one and the same company.[FN4] The Court agrees with defendants.

> FN4. In response, Tsegaye also points out that the New York Supreme Court, in an opinion issued on May 8, 2001, denied defendants' motion to dismiss the claims against Impol Slovenia for lack of jurisdiction. (Opp. at 17, n. 8.) Tsegaye seems to imply that the Court should find this New York State Supreme Court decision persuasive on the issue. (*Id.* at 18.) However, the court in that decision merely found that Tsegaye was entitled to conduct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 8
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
**(Cite as: Not Reported in F.Supp.2d)**

additional discovery on whether Impol Slovenia and Impol Aluminum were separate corporations, and permitted defendants to renew their motion upon completion of discovery. (*Id.,* Ex. I.) This decision did not decide the issue and has no effect on the Court's determination of whether there is personal jurisdiction.

*a. Personal Jurisdiction Under New York Law*

"[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999) (citing *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963)). Accordingly, The Court must follow a two-step procedure to determine whether personal jurisdiction exists. First, the Court must decide whether a statutory basis for personal jurisdiction exists under the New York Civil Practice Law and Rules (the "C.P.L.R."). Second, if a statutory basis does exist, the Court must conduct a constitutional inquiry to determine whether the exercise of personal jurisdiction is consistent with the requirements of due process. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Because the Court finds there is no statutory basis to exercise personal jurisdiction over Impol Slovenia, it is not necessary to address the constitutional due process issue.

1) *C.P.L.R. § 301 ("Section 301")*

[2] Section 301 permits the general exercise of personal jurisdiction over a foreign corporation if it is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,* 131 F.Supp.2d 544, 547-48 (S.D.N.Y.2001) (quoting *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). In determining jurisdiction, New York courts have generally focused on the following factors: "[t]he existence of an office in New York;

the solicitation of business in New York; the presence of bank accounts and other property in New York; and the presence of employees or agents in New York." *Id.* at 548.

Impol Slovenia plays no role in the daily operations of Impol Aluminum. (Defs. 56.1 Stmt. ¶ 35.) Impol Slovenia is not authorized to do business in New York. (*Id.* ¶ 36.) It does not have an office, or any officers, employees, agents, or bank accounts in New York. (*Id.*) In addition, it does not directly buy, sell or trade aluminum with New York customers. (*Id.*) However, Tsegaye argues that Impol Slovenia is "doing business" in New York based on the activities of its subsidiary, Impol Aluminum. For the reasons discussed below, the Court rejects this argument.

\*5 [3][4] The mere presence of a subsidiary in New York does not establish the parent's presence in the state. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984). For New York courts to have personal jurisdiction, "the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir.1998). To be an agent of the parent, the plaintiff must show that the subsidiary "does all the business which [the parent corporation] could do were it here by its own officials." *Id.* (citation omitted).

A) *Agent*

In this case, it is true that Impol Slovenia and Impol Aluminum are in the same business of aluminum products. However, neither Miro nor Madja Skrlj has any power to sign contracts on behalf of Impol Slovenia or to bind it in any way. (Defs. 56.1 Stmt. ¶ 40.) Likewise, Impol Aluminum does not place or accept orders on behalf of Impol Slovenia, or act for it in any way. (*Id.* ¶ 42.) All transactions undertaken by Impol Aluminum are undertaken on the sole authority of Miro Skrlj. (*Id.* ¶ 43.) Therefore, it cannot be said that Impol Aluminum can do all of the business Impol Slovenia could do were its own officials present in New York. The Court finds that Impol Aluminum is not an agent of Impol Slovenia.

B) *Mere Department*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 9
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
**(Cite as: Not Reported in F.Supp.2d)**

[5] "A subsidiary will be considered a 'mere department' only if the foreign parent's control of the subsidiary is so pervasive that the corporate separation is more formal than real." *Porter v. LSB Indus., Inc.,* 192 A.D.2d 205, 600 N.Y.S.2d 867, 873 (App.Div.1993). Generally, there are four factors used in determining whether a subsidiary is a mere department of the foreign parent: 1) common ownership-which is essential; 2) financial dependency of the subsidiary on the parent; 3) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and 4) the degree of the parent's control of the subsidiary's marketing and operational policies. *Jazini,* 148 F.3d at 184-85 (citing *Volkswagenwerk Aktiengesellschaft,* 751 F.2d at 120).

In the present case, the first factor, common ownership, is clearly met, since Impol Slovenia owns ninety percent of the stock of Impol Aluminum. (Defs. 56.1 Stmt. ¶ 30.) However, the evidence does not indicate that Impol Aluminum is financially dependent on Impol Slovenia. For example, in the year 2000, only twenty percent of the total business of Impol Aluminum was transacted with Impol Slovenia, and in 2001, only about nine percent of its sales and none of its purchases were with that entity. (*Id.* ¶ 37.) All of Impol Aluminum's remaining business was transacted with third parties. (*Id.*) The evidence also fails to show that Impol Slovenia interferes with the selection of Impol Aluminum's executive personnel. Neither Miro nor Madja Skrlj is an officer, director, employee or authorized agent of Impol Slovenia. (*Id.* ¶ 39.) Miro Skrlj exercises full authority as to employment matters of Impol Aluminum, including hiring, firing, salaries, benefits and terms of employment. (*Id.* ¶ 31.) With respect to the fourth factor, Tsegaye claims that the Impol Slovenia logo is similar to the Impol Aluminum logo. But other than the logo there is no evidence that Impol Slovenia controls the marketing and operation policies of Impol Aluminum. For all the above reasons, the Court finds that Impol Aluminum is not a "mere department" of Impol Slovenia.

*6 Because the Court finds that jurisdiction is not conferred over Impol Slovenia by Section 301, the Court proceeds to analyze this jurisdictional issue under C.P.L.R. § 302 ("Section 302").

### 2) *C.P.L.R. 302 ("Section 302")*

[6] New York's long-arm statute, Section 302, provides, in relevant part, that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). Accordingly, the non-domiciliary must transact business within the state, and the claim against the non-domiciliary must arise out of that business activity. *J.L.B. Equities, Inc.* 131 F.Supp.2d at 550.

Impol Slovenia does transact business with Impol Aluminum in New York. However, that business is not the subject of this action and therefore cannot be a basis for personal jurisdiction. The contract at issue in the current action is the letter agreement between Impol Aluminum and Tsegaye, to which Impol Slovenia is not a party. Therefore, the Court finds that Impol Slovenia is not covered by the long-arm statute.

In conclusion, for the reasons discussed above, the Court finds that there is no statutory basis for jurisdiction in New York over Impol Slovenia.

### 2. *Breach of Contract and the Duty of Good Faith and Fair Dealing*

#### a. *Miro and Madja Skrlj*

Defendants argue that Miro and Madja Skrlj cannot be personally liable for breach of the letter agreement because it was signed only by Miro Skrlj, in his capacity as president of Impol Aluminum. Therefore, defendants claim that only Impol Aluminum can be subject to a claim for breach of the letter agreement. The Court agrees.

[7] Clearly, Madja Skrlj cannot be held liable for breach of the letter agreement because she did not sign the agreement. Likewise, Miro Skrlj cannot be subject to liability individually, because:
it is well settled that an individual who signs a corporate contract and indicates the name of the corporation and the nature of his representative capacity on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
(Cite as: Not Reported in F.Supp.2d)

the contract is generally not subject to personal liability. A corporate agent who signs a contract within the authority of his official capacity 'will not be personally bound unless there is clear and explicit evidence that the agent intended to substitute his personal liability for that of his principal or that fraud is involved.'

*In re Estate of Gifford*, 144 A.D.2d 742, 535 N.Y.S.2d 154, 156 (App.Div.1988) (internal citations omitted); *see Walz v. Todd & Honeywell, Inc.*, 195 A.D.2d 455, 599 N.Y.S.2d 638, 639 (App.Div.1993).

Here, Miro Skrlj signed the letter agreement as "Miro Skrlj, President, Impol Aluminum Corporation." (Tsegaye Aff., Ex. O.) He clearly indicated that he was signing the agreement in his representative capacity. In addition, there is no evidence that he intended to be personally liable under the contract or acted fraudulently. Therefore, the Court finds that if the letter agreement was breached, Impol Aluminum is the only defendant which may be held liable.

### b. *Claim for Annual C.P.I. and Merit Increases*

#### 1) *Statute of Limitations*

**\*7** Tsegaye asserts that beginning in 1992 she did not receive the appropriate C.P.I. or merit increase according to the terms of the letter agreement. The letter agreement provided: "Your salary shall be adjusted at the beginning of each calendar year in accordance with the Consumer Price Index prepared by the Bureau of Labor Statistics of the United States of America. You shall also be entitled to an annual merit increase reflecting your contribution to IMPOL ALUMINUM CORP. during the previous calendar year." (Tsegaye Aff., Ex. C.) Defendants argue that this claim is time-barred. The Court agrees in part.

[8] Generally, in contract actions, a six-year statute of limitations begins to run when the contract is breached. *See Raine v. RKO Gen., Inc.*, 138 F.3d 90, 93 (2d Cir.1998); C.P.L.R. § 213. However, for contracts entailing continuing performance, such as employment contracts, there is an exception to this rule. In such cases, "each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to the filing of the

suit." *Stahlex-Interhandel Trustee, Reg. v. W. Union Fin. Servs. E. Europe Ltd.*, No. 99 Civ. 2246, 2002 WL 31359011, at *5 (S.D.N.Y. Oct. 21, 2002) (citing *Airco Alloys Div. v. Niagra Mohawk Power*, 76 A.D.2d 68, 430 N.Y.S.2d 179 (App.Div.1980)); *Lennon v. Seaman*, 63 F.Supp.2d 428, 446 (S.D.N.Y.1999).

In this case, the defendants' first alleged failure to award Tsegaye C.P.I. or merit increases under the contract occurred in 1992. Tsegaye did not bring the current suit until November 29, 2000-eight years from the time of the first breach. If the Court applied the general six year statute of limitations period, Tsegaye's claim would be time-barred. However, according to the letter agreement, which was in effect for at least five years from the date it was signed, Tsegaye's salary "shall be adjusted at the beginning of each calendar year in accordance with the Consumer Price Index" and she would also be "entitled to an annual merit increase reflecting [her] contribution to IMPOL ALUMINUM CORP. during the previous calendar year." (Tsegaye Aff., Ex. C.) Because the contract provided for continuous performance, Tsegaye may assert claims for damages occurring as far back as six years from the date she filed her lawsuit, that is, as early as November of 1994. Therefore, Tsegaye's claims for failure to adjust her salary or award her a merit increase in January of 1992, 1993, and 1994 are time-barred.

#### 2) *The Annual Salary Adjustment in Accordance with the C.P.I.*

[9] Tsegaye claims that she was not provided with annual C.P.I. adjustments to her salary in accordance with the letter agreement. Defendants concede that there may be discrepancies between the salary adjustments that Tsegaye received and the adjustments which she was actually entitled to in the years 1995 through 2000. (Reply at 4 n. 2.) Therefore, the Court denies summary judgment on this issue.

#### 3) *The Annual Merit Increase*

**\*8** Defendants argue that the letter agreement is devoid of any objective standard for calculating the annual merit increase, and that this provision should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 11
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
(Cite as: Not Reported in F.Supp.2d)

thus be deemed unenforceable. (Defs. Mem. at 5.) The Court disagrees.

[10][11] Under New York law, an employee " 'may enforce an agreement to pay an annual bonus made at the onset of an employment relationship where such bonus constitutes an 'integral part of [the employee's] compensation package.' " *Thomson v. Saatchi & Saatchi Holdings (USA), Inc., 958 F.Supp. 808, 824-25 (W.D.N.Y.1997)* (citing *Mirchel v. RMJ Secs. Corp., 205 A.D.2d 388, 613 N.Y.S.2d 876 (App.Div.1994)), aff'd, 159 F.3d 1348 (2d Cir.1998)).* Where a bonus constitutes a term of employment and there exists a reasonable basis for calculating it, a court may enforce the contract terms. *O'Shea v. Bidcom, Inc., No. 01 Civ. 3855, 2002 WL 1610942, at *3 (S.D.N.Y. Jul.22, 2002); Valentine v. Carlisle Leasing Int'l Co., No. 97 Civ. 1406, 1998 WL 690877, at *3 (N.D.N.Y. Sept. 30, 1998).* However, a promise to pay a bonus is unenforceable if the bonus plan "vests the employer with absolute discretion as to the entitlement and amount of any payments thereunder." *Culver v. Merrill Lynch & Co., Inc., No. 94 Civ. 8124, 1995 WL 422203, at *3 (S.D.N.Y. Jul.17, 1995).*

[12] In the present case, the letter agreement provides: "You shall also be entitled to an annual merit increase reflecting your contribution to IMPOL ALUMINUM CORP. during the previous calendar year." (Tsegaye Aff., Ex. C.) The Court finds that "although [Impol Aluminum] had the discretion to determine the *amount* of the bonus, a bonus was part of [Tsegaye's] employment contract." *Canet v. Gooch Ware Travelstead, 917 F.Supp. 969, 986 (E.D.N.Y.1996).* Therefore, because there is an issue of material fact as to the amount of the bonus to which Tsegaye was entitled for the years 1995 through 2000, the Court denies defendants' motion for summary judgment on this issue.

### 4) Tsegaye's Absence: Termination or Resignation?

[13] In a letter to Tsegaye dated June 8, 2000, Miro Skrlj stated that Impol Aluminum considered her to have resigned as of that date and would send her a check for her salary through June 16, 2000. (Tsegaye Aff., Ex. G.) However, Tsegaye claims that she did not resign, and was merely on sick leave from that day forward. (Second Am. Compl. ¶ 1, Opp. at 8.) She therefore claims that she was terminated on that date in breach of the letter agreement.

The letter agreement provides "that the employer may terminate this Employment Contract for cause upon giving of six (6) months' notice." (Tsegaye Aff., Ex. C.) If Tsegaye was terminated on June 16, 2000, she did not receive the requisite six months notice and defendants would be in breach of the contract. However, if Tsegaye resigned, there would be no breach. The question of whether Tsegaye was terminated or resigned is an issue of material fact, and the Court must deny defendants' motion for summary judgment on this issue.[FN5]

> FN5. From their motion papers, it appears that defendants assume that Tsegaye is asserting a claim for constructive discharge, in other words, that she was forced to resign due to intolerable working conditions. However, in her opposition, Tsegaye corrects defendants, and states that she never resigned, but instead was unilaterally terminated from her employment. Her claim, therefore, is for termination in breach of the letter agreement not constructive discharge. (Opp. at 8.) This makes her allegations of intolerable working conditions, as stated in the Second Amended Complaint, irrelevant. (*See, e.g.*, Second Am. Compl. at ¶¶ 10-12.)

### 4. Tortious Interference Claims against Miro and Madja Skrlj

*9 Tsegaye alleges that "Defendants Miro and Madja Skrlj intentionally, knowingly, purposefully, recklessly, wantonly and in bad faith procured defendants' breach of the contract ... so that Madja Skrlj could usurp Plaintiff's position at Impol." (Second Am. Compl. at ¶ 30.) The Court grants defendants' motion for summary judgment on this issue.

[14] "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                            Page 12
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
**(Cite as: Not Reported in F.Supp.2d)**

party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996).

With respect to Madja Skrlj, there is no showing that she acted intentionally or used improper means to procure the alleged breach by Impol Aluminum of the letter agreement. Tsegaye's claim against Madja Skrlj fails.

Tsegaye's claim against Miro Skrlj also fails because "[o]fficers, directors or employees of a corporation are not personally liable for inducing the corporation to breach a contract with a third party if they act on behalf of the corporation and within the scope of their duties." *Mobile Data Shred, Inc. v. United Bank of Switzerland,* No. 99 Civ. 10315, 2000 WL 351516, at *7 n. 9 (S.D.N.Y. Apr.5, 2000) (citing *Bon Temps Agency Ltd. v. Mittman,* 260 A.D.2d 191, 688 N.Y.S.2d 43, 44 (App.Div.1999); *Nu-Life Const. Corp. v. Bd. of Ed.,* 204 A.D.2d 106, 611 N.Y.S.2d 529, 530 (App.Div.1994)). "Personal liability will be imposed only if the plaintiff shows that the officer or employee acted outside the scope of his employment by committing an independent tort or by pursuing a personal interest." *Mobile Data Shred, Inc.,* 2000 WL 351516, at *7 n. 9.

In the present case, Tsegaye has failed to produce any evidence that Miro Skrlj induced Impol Aluminum to breach the letter agreement with Tsegaye. But even if Tsegaye had produced such evidence, her claim still cannot withstand summary judgment. Miro Skrlj is an officer of Impol Aluminum and therefore cannot be personally liable for tortiously interfering with the contract, unless he acted in his personal interest. Tsegaye does allege that Miro Skrlj procured breach of the letter agreement out of his interest in acquiring Tsegaye's job for his wife. However, Tsegaye has failed to provide any evidence that this was in fact Miro Skrlj's interest or that he was not acting on behalf of Impol Aluminum. Thus, Miro Skrlj cannot be liable for tortious interference of the letter agreement between Impol Aluminum and Tsegaye. The Court grants summary judgment with respect to Tsegaye's claim for tortious interference against both Madja and Miro Skrlj.

*5. Employment Discrimination*

a. *Whether Impol Aluminum Qualifies as an "Employer"*

Under the New York Human Rights Law:
It shall be an unlawful discriminatory practice:
(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

**\*10** Executive Law § 296(1)(a).

[15] Under the New York Human Rights Law, "[t]he term 'employer' does not include any employer with fewer than four persons in his employ." *Id.* § 292. At the time Tsegaye was allegedly discharged in June 2000, Impol Aluminum employed less than four persons. *See Rivkin v. Coleman,* No. 95 Civ. 6332, 1997 WL 639239, at *5 n. 1 (S.D.N.Y. Oct.16, 1997) (focusing on the number of employees at time of plaintiff's discharge). Therefore, Impol Aluminum does not fit the definition of an "employer" under the New York Human Rights Law. (Defs. 56.1 Stmt. ¶¶ 22-23.)

In her opposition, Tsegaye appears to concede that Impol Aluminum does not have the requisite number of employees to be liable under the New York Human Rights Law. However, she argues that Impol Slovenia and Impol Aluminum are one and the same company, with over 100 employees. (Opp. at 17.) The Court rejects this argument.

In determining whether the parent entity of a plaintiff's direct employer may be considered an "employer" under the New York Human Rights Law, courts consider: "(1) whether the proposed employer had the power of selection and engagement of the employee; (2) whether the proposed employer made the payment of salary or wages to the employee; (3) whether the proposed employer had the power of dismissal over the employee; and (4) whether the proposed employer had the power to control the employ-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 13
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241
**(Cite as: Not Reported in F.Supp.2d)**

ee's conduct." *Meng v. Ipanema Shoe Corp.*, 73 F.Supp.2d 392, 405 n. 9 (S.D.N.Y.1999); *Pampillonia v. RJR/Nabisco, Inc.*, No. 96 Civ. 8235, 1997 WL 225832, at *3 (S.D.N.Y. May 5, 1997), *aff'd*, 138 F.3d 459 (2d Cir.1998); *Houston v. Fidelity*, No. 95 Civ. 7764, 1997 WL 97838, at *12 (S.D.N.Y. Mar.6, 1997).

In the present case, Impol Slovenia had no power to select Tsegaye for employment, did not pay her salary, did not have the power to dismiss her, and had no control over her conduct. Therefore, Impol Slovenia cannot be considered Tsegaye's employer as defined by the New York Human Rights Law. Because neither Impol Aluminum nor Impol Slovenia was Tsegaye's employer as defined by the statute, the Court need not address whether there is any evidence that Tsegaye was discriminated against due to her age or disability. The motion for summary judgment on Tsegaye's employment discrimination claims is granted.

### 6. *Damages*

#### a. *Failure to Mitigate*

[16] The Court notes that Tsegaye has made no effort to seek alternate employment after being discharged from Impol Aluminum. (Defs. 56.1 Stmt. ¶ 29.) Therefore, any damages she receives for her breach of contract claim will be "reduced by the amount, if any, that [she] with reasonable diligence could have earned from the date of [her] discharge to the date the [letter agreement] was terminated." *See Sudul v. Computer Outsourcing Servs., Inc.*, 917 F.Supp. 1033, 1048 (S.D.N.Y.1996).

#### b. *Attorneys' fees*

[17] In addition, the Court rejects Tsegaye's request for attorneys' fees if successful on her breach of contract claim. "Attorney's fees ordinarily 'are incidents of litigation' and may not be recovered from the losing party absent an agreement between them, a statute, or a rule." *Decarlo v. Archie Comic Publ'ns*, 127 F.Supp.2d 497, 511 (S.D.N.Y.2001) (citations omitted), *aff'd*, 2001 WL 604184 (2d Cir. Jun.1, 2001), *cert. denied*, 534 U.S. 1056, 122 S.Ct. 647, 151 L.Ed.2d 564. The letter agreement did not provide for

attorneys' fees in the case of breach, and there is no applicable statute or rule.

### CONCLUSION

*11 For the foregoing reasons, the Court:

1) finds that there is no personal jurisdiction over Impol Slovenia;

2) finds that Miro Skrlj and Madja Skrlj are not liable under the letter agreement;

3) finds that Tsegaye's claims for annual C.P.I. and merit increases are time barred for the years 1992, 1993, and 1994;

4) denies the motion for summary judgment with respect to Tsegaye's claims for annual C.P.I. and merit increases for the years 1995 onward;

5) denies the motion for summary judgment with respect to Tsegaye's claim that she was terminated in violation of the letter agreement;

6) grants the motion for summary judgment with respect to Tsegaye's claim for tortious interference of contract; and

7) grants the motion for summary judgment with respect to Tsegaye's claims under the New York Human Rights Law.

S.D.N.Y.,2003.
Tsegaye v. Impol Aluminum Corp.
Not Reported in F.Supp.2d, 2003 WL 221743 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 241

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on May 16, 2007, I caused a true copy of the foregoing

- *Plaintiff Blackrock, Inc.'s Memorandum of Law in Opposition to Defendant's Motion to Dismiss*;

- *Supplemental Affirmation of Jay S. Berke in Opposition to Motion to Dismiss, dated, May 15, 2007*;

- *Affirmation of Harris Oliner in Opposition to Defendant's Motion to Dismiss, dated May 15, 2007*;

- *Affidavit of J. Richard Kushel in Opposition to Defendant's Motion to Dismiss, dated May 15, 2007*; *and*

- *Compendium of Unreported Decisions Cited in Plaintiff Blackrock, Inc.'s Memorandum of Law in Opposition to Defendant's Motion to Dismiss*

to be served by hand delivery upon

Frederick A. Brodie, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036

Dated:  New York, New York
       May 16, 2007

Steven Ray Katzenstein (SK7599)