PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036-4039
(212) 858-1000
Frederick A. Brodie (FB 6429)

2300 N Street, NW
Washington, DC 20037-1122
(202) 663-8000
Christine N. Kearns (*Pro Hac Vice*)
Attorneys for Defendant
Schroders plc

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLACKROCK, INC, <br><br> Plaintiff, <br><br> -against- <br><br> SCHRODERS PLC., <br><br> Defendant. | Civil No. 07 CV 03183 (PKL) <br> ECF CASE ELECTRONICALLY FILED |

**COMPENDIUM OF UNREPORTED DECISIONS CITED IN REPLY MEMORANDUM**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## INDEX

**CASES**                                                                                                    **TAB**

<u>Commc'n Partners Worldwide, Inc. v. Main St. Res.</u>, No 04 Civ. 10003 (PKL),
     2005 U.S. Dist. LEXIS 14911 (S.D.N.Y. July 26, 2005) .................................................1

<u>Morris v. Chem. Bank</u>, No. 85 Civ. 9839 (SWK), 1987 WL 16973
     (S.D.N.Y. Sept. 10, 1987)................................................................................................2

<u>St. Paul Fire & Marine Ins. Co. v. Health Fielding Ins. Broking, Ltd.</u>,
     No. 91 Civ. 0748 (MJL), 1993 WL 410160 (S.D.N.Y. Oct. 14, 1993) .........................3

**1**

LEXSEE 2005 US DIST LEXIS 14911

**COMMUNICATION PARTNERS WORLDWIDE, INC., Plaintiff, - against - MAIN STREET RESOURCES, RAINBOW CAPITAL, DANIEL LEVINSON, MARSHALL KIEV, DAVID SCHNEIDER, and STEVE MARCUS, Defendants.**

**04 Civ. 10003 (PKL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2005 U.S. Dist. LEXIS 14911*

**July 25, 2005, Decided
July 26, 2005, Filed**

**DISPOSITION:** [*1] Defendants' motions to dismiss plaintiff's complaint in its entirety pursuant to Rule 12(b)(2) GRANTED with prejudice.

**COUNSEL:** LAW OFFICES OF NATASHA MEYERS, ESQ., PLLC, Huntington, New York, Natasha Meyers, Esq., Attorneys for Plaintiff.

LEVETT ROCKWOOD P.C., Westport, Connecticut, Andrew B. Nevas, Esq., Robert Laplaca, Esq., Attorneys for Defendants Main Street Resources, Daniel Levinson, Marshall Kiev and David Schneider.

OLSHAN GRUNDMAN FROME, ROSENZWEIG & WOLOSKY LLP, New York, New York, Kenneth J. Rubenstein, Esq., Lori Marks-Esterman, Esq., Attorneys for Defendants Rainbow Capital and Steve Marcus.

**JUDGES:** Peter K. Leisure, U.S.D.J.

**OPINION BY:** Peter K. Leisure

**OPINION:**

**OPINION AND ORDER**

**LEISURE, District Judge:**

Plaintiff, Communication Partners Worldwide, Inc. ("CPW"), served as a financial advisor to non-party Classic Tuxedo, Inc. ("Classic Tuxedo"). In that capacity, CPW introduced defendants Main Street Resources ("Main Street") and Rainbow Capital LLC ("Rainbow Capital") to Classic Tuxedo as potential investors. CPW commenced this suit because it claims that Main Street, led by Daniel Levinson, Marshall Kiev and David Schneider (collectively, the "Main Street [*2] Defen-

dants"), and Rainbow Capital, led by Steven Marcus (collectively, the "Rainbow Capital Defendants"), n1 took improper advantage of the introduction and caused Classic Tuxedo to terminate its relationship with CPW. CPW asserts two causes of action -- tortious interference with its contractual relationship with Classic Tuxedo, and tortious interference with its prospective business relationship with Classic Tuxedo. Both the Main Street Defendants and Rainbow Capital Defendants now petition the Court to dismiss the action pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("FRCP") for failure to state a claim upon which relief can be granted or, in the alternative, for lack of personal jurisdiction pursuant to *FRCP 12(b)(2)*. In addition, the Main Street Defendants seek transfer of the action to the District of Connecticut pursuant to *28 U.S.C. § 1404(a)* as an alternative to dismissal. For the reasons below, defendants' motions to dismiss are granted.

n1 The caption lists the Rainbow Capital Defendants as "Rainbow Capital" and "Steve Marcus." It appears that the parties' full names are Rainbow Capital LLC and Steven Marcus.

[*3]

**BACKGROUND**

By letter agreement dated April 9, 2004, CPW and Classic Tuxedo confirmed the exclusive engagement of CPW to act as financial advisor to Classic Tuxedo for any merger and acquisition work as well as for funding and financing by sources arranged by CPW (the "Agreement"). (See Complaint ("Compl.") P15.) On June 24, 2004, as part of its effort to obtain funding and financing for Classic Tuxedo, CPW met with Steven Marcus of Rainbow Capital in New York. (See Declaration

2005 U.S. Dist. LEXIS 14911, *

of Phillip Schein dated March 11, 2005 ("Schein Decl.") P3.) As a result of the meeting, the Main Street Defendants and Rainbow Capital Defendants began to collaborate with the intention of investing in Classic Tuxedo. (Id.) Over the course of the following months, Phillip Schein, President of CPW, corresponded with defendants from CPW's office in New York. (Id. P4.)

On August 13, 2004, defendants sent CPW a financing proposal, which outlined the basic terms and assumptions of defendants' potential investment in Classic Tuxedo. (Id. P5, Ex. B; Compl. P19.) CPW and Classic Tuxedo then formulated a response to the proposal, which they communicated to defendants both verbally and [*4] in writing. (See Schein Decl. P5; Compl. P20.) On August 25, 2004, defendants sent CPW a binding letter agreement, which incorporated CPW and Classic Tuxedo's response and set forth the specific terms of defendants' investment. (See Schein Decl. P6; Compl. P23.)

In August and September 2004, unbeknownst to CPW, defendants began to communicate directly with Classic Tuxedo in order to convince Classic Tuxedo to request that CPW lower the compensation it was due to receive if defendants proceeded with their investment. (See Schein Decl. P7; Compl. PP25-28.) On September 7, 2004, CPW received a letter of termination from Classic Tuxedo. (See Schein Decl. P8; Compl. 30.) Moreover, on September 14, 2004, CPW received another letter from Classic Tuxedo seeking to modify the Agreement by reducing the compensation due to CPW. (See Schein Decl. P9; Compl. P31.) In addition, at this time, Schein was repeatedly contacted by defendants who attempted to persuade him to accept the proposed reduction in compensation. (See Schein Decl. P9.)

As a result, CPW filed the instant action for tortious interference on November 8, 2004 in New York Supreme Court. On December 20, 2004, the [*5] Rainbow Capital Defendants removed the action to this Court. Defendants now argue that (1) CPW's tortious interference with contract claim should be dismissed because the Agreement is terminable-at-will; (2) CPW's tortious interference with prospective business advantage claim should be dismissed because CPW failed to plead wrongful means; and (3) both claims should be dismissed because the Court cannot properly exercise personal jurisdiction over any defendants. The Court need only address defendants' personal jurisdiction argument because it is dispositive of the instant motion.

## DISCUSSION

### I. Standard for a *Rule 12(b)(2)* Motion

When considering a *Rule 12(b)(2)* motion to dismiss for lack of personal jurisdiction, it is well established that "the plaintiff bears the burden of showing that the court

has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003)* (per curiam); *Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)*. "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Metro. Life, 84 F.3d at 566.* [*6] Ultimately, personal jurisdiction must be proven by a preponderance of the evidence, either at an evidentiary hearing or at trial. See *A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)*. "But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." Id.; see also *Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)*.

Furthermore, "absent a specific grant of jurisdiction, the reach of a federal district court's personal jurisdiction is coterminous with that of the personal jurisdiction of a court of general jurisdiction in the state in which the court sits." *Geller Media Mgmt., Inc. v. Beaudreault, 910 F. Supp. 135, 137 (S.D.N.Y. 1996)* (Leisure, J.) (citing *Fed. R. Civ. P. 4(k)(1)(A)*). Thus, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the [*7] picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metro. Life, 84 F.3d at 567* (quoting *Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963)* (en banc)). To determine whether it has personal jurisdiction over defendants, the Court must engage in a two-part inquiry. First, it must determine whether there is personal jurisdiction over defendants under New York state law; second, if New York law provides for personal jurisdiction, the Court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process. Id.

There are two types of jurisdiction that a court may exercise over a defendant: general and specific. See *Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)*. In the case of general jurisdiction, plaintiff's claim need not arise out of defendant's contacts with the forum state, but defendant's contacts must be substantial; with specific jurisdiction, however, defendant's contacts need not be as substantial, but plaintiff's claim must arise out of the contacts. These two types [*8] of jurisdiction are reflected both in New York's jurisdictional statutes, see *N.Y.C.P.L.R. §§ 301-302* (McKinney 2001), and in the jurisprudence interpreting the Due Process limits of jurisdiction, see *Helicopteros, 466 U.S. at 414*.

Relying on the declaration of its President, Phillip Schein, CPW argues that the Court may exercise specific

personal jurisdiction over defendants pursuant to *Sections 302(a)(1)* and *302(a)(3)* of the New York Civil Practice Law and Rules ("CPLR"). (See CPW Memorandum of Law In Opposition To Main Street Defendants' Motion To Dismiss ("CPW Main Street Opp.") at 14-23; CPW Memorandum of Law In Opposition To Rainbow Capital Defendants' Motion To Dismiss ("CPW Rainbow Opp.") at 15-23.) However, defendants contend that none of them has had sufficient contacts with New York to permit the exercise of jurisdiction under *Section 302(a)(1)* or *302(a)(3)*, and that even if they have, CPW's claims do not arise out of those contacts. (See Main Street Defendants' Memorandum of Law In Support Of Their Motion To Dismiss ("Main Street Mem.") at 15-23; Rainbow Capital Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss ("Rainbow Capital [*9] Mem.") at 15-23.)

## II. Jurisdiction Under CPLR Section 302(a)(1)

*Section 302(a)(1)* allows a court to exercise specific jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business within the state." *N.Y.C.P.L.R. § 302(a)(1)* (McKinney 2001). Thus, jurisdiction is proper under *section 302(a)(1)* when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business. Id.; *Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)* (citing *McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643 (1981)*) (requiring "an articulable nexus between the business transacted and the cause of action sued upon"). A non-domiciliary transacts business under *section 302(a)(1)* when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Cutco, 806 F.2d at 365* (quoting *McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34 (1967)*). The following factors should [*10] be considered when determining whether a non-domiciliary has transacted business: (1) whether the defendant has an on-going contractual relationship with a New York corporation; (2) whether the defendant negotiated or executed a contract in New York, and whether the defendant visited New York after executing the contract with the parties; (3) whether there is a choice of law clause in any such contract; and (4) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. See *Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)*. Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity, and require a "substantial nexus" between the business transacted and the cause of action sued upon. See *PDK Labs*

*v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997)*; *Agency Rent a Car, 98 F.3d at 29-31*; *CutCo Indus., 806 F.2d at 365*; *Cedric Kushner Prods. v. Thobela, 1994 U.S. Dist. LEXIS 5247, No. 93 Civ. 4592,1994 WL 163992, at *2 (S. [*11] D.N.Y. Apr. 22, 1994)* (Leisure, J.). Indeed, jurisdiction cannot be founded upon "random," "fortuitous," or "attenuated" contacts. *SAS Group, Inc. v. Worldwide Inventions, Inc., 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003)* (citing *CutCo Indus., 806 F.2d at 365*); *Burger King v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*. Notably, New York's provision for specific jurisdiction under *Section 302* does not extend as far as the federal Constitution permits. *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GMBH & Co., 150 F. Supp. 2d 566, 572 (S.D.N.Y. 2001)*.

Even if the "transacts business" requirement is satisfied, jurisdiction under *Section 302(a)(1)* is not proper unless the cause of action "arises from" the defendant's contacts with the forum state. A cause of action "arises from" a defendant's New York contacts if the contacts are "substantially proximate to the allegedly unlawful acts." *Avecmedia, Inc. v. Gottschalk, 2004 U.S. Dist. LEXIS 13228, at *15, No. 03 Civ. 7831, 2004 WL 1586411, at *5 (S.D.N.Y. July 14, 2004)* (quoting *Xedit Corp. v. Harvel Indus. Corp., 456 F. Supp. 725, 729 (S.D.N.Y. 1978)*). Thus, the business [*12] transacted by the foreign defendant in New York must "bear a substantial relationship to the transaction out of which the instant cause of action arises." *McGowan, 52 N.Y.2d at 272, 419 N.E.2d at 323*.

### A. *Section 302(a)(1)* Jurisdiction Over the Main Street Defendants

CPW argues that the Main Street Defendants are subject to jurisdiction under *Section 302(a)(1)* because the initial meeting between CPW and Rainbow Capital occurred in New York, the majority of telephone conversations concerning the investment originated in New York, and the Main Street Defendants sent the financing proposal to CPW in New York. (See CPW Main Street Opp. at 19.) The Court finds that these allegations are insufficient to establish that the non-domiciliary Main Street Defendants transacted business in New York. Main Street Resources is a registered trade name of MSR Advisors, Inc., formerly known as Colt Services, Inc., which is a corporation based in Westport, Connecticut. (See Declaration of Daniel A. Levinson dated December 23, 2004 ("Levinson Decl.") P2.) Moreover, each of the individual Main Street Defendants resides and works in Connecticut. (See Levinson Decl. P5; [*13] Declaration of Marshall Kiev dated December 23, 2004 ("Kiev Decl.") P2; Declaration of David M. Schneider dated December 23, 2004 ("Schneider Decl.") P2.) Aside from corresponding with CPW's New York office, CPW is

Case 1:07-cv-03183-PKL    Document 27-2    Filed 05/22/2007    Page 7 of 22

Page 4
2005 U.S. Dist. LEXIS 14911, *

unable to identify any contact that the Main Street Defendants had with New York concerning the Classic Tuxedo investment. More specifically, CPW does not dispute that the individual Main Street Defendants did not participate in any meetings in New York with regard to Main Street's potential investment in Classic Tuxedo. (See generally CPW Main Street Opp.) Although the state's long arm jurisdiction may be invoked even if a defendant never enters New York, see *Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195 (1988)*, "telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction." *Burrows Paper Corp. v. R.G. Eng'g, Inc., 363 F. Supp. 2d 379, 386 (N.D.N.Y. 2005)* (quoting *Int'l Customs Assocs. v. Ford Motor Co., 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995)*); see also *Standard Enters., Inc. v. Bag-It, Inc., 673 F. Supp. 1216, 1220 (S.D.N.Y. 1987)* [*14] ("Interstate telephone contacts do not generally have any great significance in § 302(a)(1) analyses."); *Current Textiles Corp. v. Ava Indus., 624 F. Supp. 819, 821 (S.D.N.Y. 1985)* ("In general, telephone conversations between litigants inside and outside of the state about the contract at issue will not sustain personal jurisdiction under *section 302(a)(1)* absent additional evidence that the out of state litigant purposefully availed himself of the privilege of conducting activities in New York State.") (citation omitted).

Other than the correspondence, CPW can point to no other conduct demonstrating that the Main Street Defendants purposefully availed themselves of the privilege of doing business in New York. Plainly, the fact that CPW and Rainbow Capital held an initial meeting in New York does not bolster CPW's argument that the Main Street Defendants transacted business in New York. In fact, CPW's President acknowledges that the Main Street Defendants were not yet involved in the Classic Tuxedo financing at the time of this meeting. (See Schein Decl. P3.) Moreover, the two cases upon which CPW relies are not persuasive. First, *Berk v. Theatre Arts of West Virginia, Inc., 157 Misc. 2d 696, 598 N.Y.S.2d 418 (N.Y. Civ. Ct. 1993)*, [*15] is readily distinguishable because defendants there conducted auditions in New York for four days, which the Court found "substantially advanced" the contract negotiations with plaintiff. *Id. at 700*. Here, as noted above, the Main Street Defendants did not spend any time in New York relating to the Classic Tuxedo proposal. Second, *Largotta v. Banner Promotions Inc., 356 F. Supp. 2d 388 (S.D.N.Y. 2005)*, is inapposite because it concerns the contacts necessary for venue under *28 U.S.C. § 1391*, not personal jurisdiction under *CPLR § 302(a)(1)*. *Id. at 390*. Accordingly, because directing correspondence to New York does not alone constitute transacting business, the Court finds that

it cannot properly exercise personal jurisdiction over the Main Street Defendants under *Section 302(a)(1)*.

**B. *Section 302(a)(1)* Jurisdiction Over the Rainbow Capital Defendants**

CPW alleges that the Rainbow Capital Defendants satisfy the "transacts business" prong of *Section 302(a)(1)* because they met with CPW and Classic Tuxedo in New York, and communicated regularly with CPW in New York concerning the financing for Classic Tuxedo. [*16] (See CPW Rainbow Capital Opp. at 18.) Rainbow Capital LLC is organized under the laws of Delaware and maintains its sole office in New Jersey. (See Declaration of Steven E. Marcus dated December 24, 2004 P2.) Steven Marcus, the sole member of Rainbow Capital, resides and works in New Jersey. (Id. P4.) CPW describes the gathering in New York as an "initial meeting" that resulted in an "ongoing business relationship" between the Main Street Defendants and the Rainbow Capital Defendants. (Schein Decl. P3.) "Any contract negotiations which indicate a purposeful invocation of the laws of New York State are transactions of business for the purposes of New York's long arm statute." *SAS Group, 245 F. Supp. 2d at 548-49* (citing *Premier Lending Servs., Inc. v. J.L.J. Assocs., 924 F. Supp. 13, 15-16 (S.D.N.Y. 1996)*). CPW fails to establish that any of the parties at this meeting intended to purposefully invoke New York State law; rather, it appears that the meeting was held in New York because that is where CPW's office is located and that location served the parties' convenience. The purpose of the meeting was to introduce the parties to each other [*17] and there is no evidence that any specific contract negotiations occurred. Moreover, "a long line of cases has established that *§ 302(a)(1)* permits the assertion of jurisdiction over a defendant who has engaged in meetings or precontractual negotiations in New York, so long as those negotiations significantly advance or are essential to the formation of an agreement." *Avecmedia, 2004 U.S. Dist. LEXIS 13228, at *17, 2004 WL 1586411, at *5* (quoting *Goldstein v. CTT Mobile Mgmt. Servs., No. 84 Civ. 824, 1985 U.S. Dist. LEXIS 22289, at *11 (S.D.N.Y. Feb. 26, 1985)*). Here, there is no indication that the meeting in New York involved any contractual negotiations, much less negotiations that significantly advanced or were essential to the formation of a contract. Moreover, the parties did not begin to exchange drafts of a proposed agreement until nearly two months after the meeting. Therefore, this isolated meeting does not constitute transacting business and the Court cannot exercise jurisdiction based upon it.

Furthermore, assuming *arguendo* that the meeting in New York satisfies the "transacts business" requirement of *Section 302(a)(1)*, it does not satisfy the section's "arise from" [*18] requirement. CPW alleges that the

June meeting in New York marked the beginning of the parties' discussions concerning the Classic Tuxedo financing. However, according to CPW's President, defendants did not begin to tortiously interfere with CPW's relationship with Classic Tuxedo until August. n2 (See Schein Decl. P7.) Indeed, it would strain credulity for CPW to allege that defendants began their tortious conduct at a meeting organized and attended by CPW, and to which CPW invited certain defendants to meet their purported target, Classic Tuxedo. Thus, even if CPW could demonstrate that the Rainbow Capital Defendants transact business in New York, jurisdiction is not proper under *Section 302(a)(1)* because the Rainbow Capital Defendants' contacts with the forum are not "substantially proximate" to the conduct alleged. *Avecmedia, 2004 U.S. Dist. LEXIS 13228, at *15, 2004 WL 1586411, at *5.*

n2 The complaint is less precise about the timing of defendants' alleged interference. (See Compl. P25 ("*On or after June 24, 2004,* unbeknownst to Plaintiff, Defendants began a course of conduct consisting of directly communicating with Classic to request a lower schedule of compensation to Plaintiff, which was intended to disrupt Plaintiff's contractual relationship with Classic, and which in fact did disrupt that relationship.") (emphasis added)).

[*19]

### III. Jurisdiction Under CPLR Section 302(a)(3)

CPW also argues for personal jurisdiction pursuant to *CPLR Section 302(a)(3)*, which provides in relevant part:

(a) [A] Court may exercise personal jurisdiction over a non-domiciliary, or his executor or administrator, who in person or through an agent (3) commits a tortious act without the state causing injury to person or property within the state, . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

*N.Y.C.P.L.R. § 302(a)(3)* (McKinney 2001).

To establish jurisdiction under this provision, CPW must make a prima facie showing of the following: (1) defendants committed a tortious act outside of the state; (2) the cause of action arises from that act; (3) the act caused the injury to a person or property within the state; (4) defendants expected or should reasonably have expected [*20] the act to have consequences in the state; and (5) defendants derived substantial revenue from interstate or international commerce. See *LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 735 N.E.2d 883, 886, 713 N.Y.S.2d 304 (2000).* New York courts have devoted considerable attention to the third element, causing injury within the state, as they have attempted to fashion a clear test for locating the place of injury. When "determining whether the injury in New York is sufficient to warrant *§ 302(a)(3)* jurisdiction [courts] must generally apply a situs-of-injury test, which asks them to locate the 'original event' which caused the injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999);* see also *Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001).* "The 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Bank Brussels, 171 F.3d at 791;* see also *Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990)* ("'The situs of the injury is the location of the original event [*21] which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.'") (quoting *Carte v. Parkoff, 152 A.D.2d 615, 616, 543 N.Y.S.2d 718 (App. Div. 1989)).* Thus, it is of "paramount importance that the exercise of personal jurisdiction must be based on a direct injury within the state and a close expectation of consequences within the state stemming from the tortious act." *Bank Brussels, 171 F.3d at 791* (quotations and citations omitted). Moreover, while the loss of customers in New York will satisfy the local injury requirement, "New York does not become the situs of the injury merely because the plaintiff is a domiciliary or resident of New York." *Plastwood Corp. v. Robinson, No. 04 Civ. 3214, 2004 U.S. Dist. LEXIS 17403, at *17 (S.D.N.Y. Aug. 30, 2004)* (citing *Am. Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 433 (2d Cir. 1971)).*

CPW's tortious interference claims are founded upon two original events: (1) the Agreement between CPW and Classic Tuxedo, and (2) defendants' inducement of the breach of the Agreement by Classic Tuxedo, which destroyed CPW's relationship [*22] with Classic Tuxedo. (See Compl. PP34-45.) CPW has failed to establish that either of these events took place in New York. Although CPW is based in New York and thus, it is possible that the Agreement may have sufficient contacts with New York, CPW does not allege or provide any evidence that that is the case. Moreover, given that CPW does not

Case 1:07-cv-03183-PKL     Document 27-2     Filed 05/22/2007     Page 9 of 22

Page 6
2005 U.S. Dist. LEXIS 14911, *

dispute that Classic Tuxedo is a Massachusetts based company, it is equally possible that the parties negotiated and executed the Agreement there. More importantly, there is no allegation that defendants made any effort to induce Classic Tuxedo to breach the Agreement while in New York. n3 Indeed, other than the initial meeting discussed above which involved CPW, Rainbow Capital and Classic Tuxedo, there has been no showing that the Main Street Defendants or the Rainbow Capital Defendants ever met with or directly communicated with Classic Tuxedo in New York. Further, CPW's claim that it has lost Classic Tuxedo as a client provides little support for its jurisdictional argument because Classic Tuxedo is not based in New York. See *Barricade Books, Inc. v. Langberg, 2000 U.S. Dist. LEXIS 18279, at *15, No. 95 Civ. 8906, 2000 WL 1863764, at *5 (S.D.N.Y. Dec. 19, 2000)* [*23] ("Courts in the Second Circuit have generally refused to find an injury basis for personal jurisdiction when plaintiffs claim that defendants' torts caused plaintiff to lose out-of-state customers.") (citations omitted.) Based on the present record, therefore, CPW has not sufficiently alleged that defendants' purported interference with Classic Tuxedo caused injury to CPW in New York. As a result, the Court cannot exercise personal jurisdiction over defendants pursuant to *Section 302(a)(3)*. n4

N3 Defendants argue that a breach by Classic Tuxedo is not even possible because the Agreement, by its express terms, was terminable-at-will. (See Main Street Mem. at 5-7; Rainbow Capital Mem. at 7.)

n4 Because the Court finds that the exercise of personal jurisdiction over defendants does not satisfy New York's statutory requirements, it need not address whether it comports with the constitutional guarantee of due process.

## CONCLUSION

For the reasons discussed above, the Court cannot exercise personal [*24] jurisdiction over defendants. As a result, defendants' motions to dismiss plaintiff's complaint in its entirety pursuant to *Rule 12(b)(2)* are GRANTED with prejudice. The dismissal is with prejudice because the Court finds that it would be futile to allow CPW to replead. See *Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003)*; *Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139, 168 (2d Cir. 2003)*.

**SO ORDERED.**

New York, New York
July 25, 2005

Peter K. Leisure

U.S.D.J.

**2**

*Westlaw.*

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 16973 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**

Morris v. Chemical Bank
S.D.N.Y., 1987.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
David Alan MORRIS, Plaintiff,
v.
CHEMICAL BANK, Chemco International Leasing,
Inc., George C. Ross and Vivian H. Breitel,
Defendants.
**No. 85 Civ. 9838 (SWK).**

September 10, 1987.

MEMORANDUM OPINION AND ORDER
KRAM, District Judge.
**\*1** This action is brought in federal court pursuant to
28 U.S.C. Section 1332. The amount in controversy
is greater than $10,000 and venue is proper under 28
U.S.C. Section 1391.

Plaintiff alleges that oral and written statements made
by his ex-employers (the defendants) constitute libel
and slander. He also alleges nonpayment of monies
owed to him as constituting, inter alia, breach of
contract.

Defendants filed a motion to dismiss on various
grounds including forum non conveniens, claiming
that Great Britain, where the majority of the
statements were uttered, and where the plaintiff
resides and works, is a more appropriate forum to
hear plaintiff's claims. The Court agrees and
defendants' motion is thus granted.

I. FACTUAL BACKGROUND[FN1]

Plaintiff David A. Morris is a citizen and resident of
the United Kingdom. Defendants Chemical Bank
('Chemical') and Chemco International Leasing, Inc.
('Chem. Int'l') are New York corporations. Chem.
Int'l is a wholly owned subsidiary of Chemical.
Chemco Financial ('Chem. Fin.') (not a defendant) is
plaintiff's employer (DV) or nominal employer
(PV)[FN2] and is a wholly owned British subsidiary of
Chemical.

Defendants George C. Ross ('Ross') and Vivian H.
Breitel ('Breitel'), employees of the corporate

defendants, are both New York based.[FN3]

Plaintiff was an employee of either Chem. Fin. (DV)
or defendants Chemical and Chem. Int'l (PV) from
November 1972 until December 1984 (PV) or 1982
(DV). [FN4] He lists various positions he allegedly held
during this time as an employee of the defendants,
while defendants assert that plaintiff was entirely an
employee of Chem. Fin.[FN5] He was dismissed from
his employment in either 1982 or 1984.[FN6]

The defendants' alleged statements of their reasons
for the dismissal, (allegedly published to various
people), plus several other published statements,
form the basis of this lawsuit.

Plaintiff completed service of this action upon the
corporate defendants as of March 13, 1986, and the
individual defendants as of either March 13, 1986
(PV) or April 14, 1986 (DV).

The complaint alleges that defendants and their
employees libeled and slandered plaintiff on various
occasions (listed in ¶ 19 of the complaint), resulting
in scorn and ridicule, calling his name and reputation
into discrepute, and costing the plaintiff income from
valuable business opportunities. Morris also alleges
that the defendants interfered with prospective
business advantages by making the above mentioned
statements and other various unfair and improper
statements (listed in ¶ 31 of the complaint). Morris
also claims that defendants' false words caused
special damages for which he is suing. He
additionally claims that all of the foregoing conduct
constituted outrageous conduct resulting in
intentional infliction of emotional distress.[FN7] Morris'
final claim is for breach of contract and the obligation
to act in good faith, due to nonpayment of a bonus,
non-reimbursement of expenses, and actions or
failures to act by the defendants which resulted in his
expending otherwise unnecessary sums of money.

**\*2** As additional related background, the Court notes
that there are, in England, two suits currently pending
brought by, inter alios, defendant Chemical,
concerning plaintiff's actions during the period he
was employed by the defendants and/or their
subsidiaries and/or affiliates, in one of which plaintiff
has asserted as a counterclaim a large part of his fifth
claim based on breach of contract.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 16973 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Defendants bring this motion on the grounds that: 1) certain of the statements complained of cannot be sued upon as their use is barred by the applicable statute of limitations; 2) claims against one of the defendants must be dismissed as the only claim involving him personally is barred by the applicable statute of limitations, and he cannot be held responsible for the rest; 3) plaintiff has failed to state a claim upon which relief can be granted for varying reasons (in three of the five causes of action); 4) the Court should exercise its discretion and dismiss the claims as there is prior litigation pending in Great Britain; 5) certain of the claims are not cognizable under English law; and 6) this claim should be dismissed under the doctrine of forum non conveniens.

Since this Court grants defendants' request as to dismissal on grounds of forum non conveniens, the Court declines to reach any of the other issues raised.

## II. FORUM NON CONVENIENS

Defendants' motion is brought under the common law doctrine of forum non conveniens, a predecessor of 28 U.S.C. § 1404(a). Section 1404(a) is currently used to transfer suits from one district to another within the United States. Dismissal on grounds of forum non conveniens remains viable for use in situations where the pending lawsuit cannot be transferred to the forum defendants contend is a more convenient forum as that forum is within the court system of a foreign country. Fiorenza v. United States Steel Int'l, Ltd., 311 F. Supp. 117 (S.D.N.Y. 1969), see also Schertenleib v. Traum, 589 F.2d 1156 (2d Cir. 1978).

As is a motion to transfer, a motion to dismiss on forum non conveniens grounds is a balancing test in which '[A] court [should] weigh relative advantages and obstacles to a fair trial . . .' Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). While, as Gulf Oil and the plaintiff point out, a plaintiff's choice of forum should seldom be disturbed, id. at 508, another leading Supreme Court case (and the defendants) states that a foreign plaintiff is entitled to a far weaker presumption than is a United States citizen. Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981); Agyenkwa v. American Motors Corp., 622 F. Supp. 242, 244 (E.D.N.Y. 1985). Even in cases involving foreign plaintiffs, however, '[T]he burden remains on defendant(s) to demonstrate why the presumption in favor of plaintiff's choice-a weakened presumption though it may be-should be disturbed.' Karvelis v.

Constellation Lines, SA, 608 F. Supp. 966, 972 (S.D.N.Y. 1985), aff'd, 806 F.2d 49 (2d Cir. 1986), cert. denied, 107 S. Ct. 1891 (1987); Ayers v. Arabian American Oil Co., 571 F. Supp. 707, 709 (S.D.N.Y. 1983).

*3 In Gulf Oil, the Court divided up the field of inquiry as to forum non conveniens into two divisions: private and public interest. Where private interests are concerned, '[i]mportant considerations [include] the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.' Gulf Oil Corp., 330 U.S. at 543.

Public interest concerns include the congestion of the competing courts and the degree of comfort the trial court has with the applicable substantive law. Id. See also Piper Aircraft, supra, 454 U.S. at 258 n. 6.

### A. Private Interests

Ease of Access to Sources of Proof

In a case such as the one at bar, the two most crucial sources of proof are, obviously, witnesses and documents. Defendants claim that the only sources of proof in New York are defendants themselves.

They initially assert that since the defamatory statements were largely published in the United Kingdom and since the listener's reaction is essential to a claim, the only sources of proof on whether the publications were slanderous are in London. This is however specious reasoning. Slander is judged by a 'reasonable person' standard and it is up to the finder of fact to decide if a statement is slanderous, not up to a witness to 'prove' slander by stating what they thought at the time. Cole Fischer Rogow, Inc. v. Carl Ally, Inc., 29 A.D.2d 423, 288 N.Y.S.2d 556 (1st Dept. 1968), aff'd, 25 N.Y.2d 943, 305 N.Y.S.2d 154, 252 N.E.2d 633 (1969).

The defendants further allege that the recipients of the defamatory publications are 'indispensable witnesses' and that the trial should be where they reside/work. Certainly, at the very least, such witnesses are highly desirable.[FN8] Plaintiff's answer to defendants' interrogatories appear to give the Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1987 WL 16973 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

the whereabouts of these witnesses. According to the interrogatories, they are overwhelmingly in the United Kingdom: of the eight witnesses listed, seven out of eight reside or work in the United Kingdom.

In addition to the defamation counts, plaintiff has alleged lost business opportunities, due both to the statements that allegedly constitute defamation, and to various additional allegedly unfair and improper statements made by the defendants.[FN9] Defendants assert that the recipients of almost all of these utterances are 'in London, or at least not in the United States'. (Defendant's Memorandum of Law, p. 31).

The recipients of the statements allegedly constituting libel or slander are, as discussed *supra*, almost entirely United Kingdom residents or employed within those bounds. It is harder to tell where the recipients of the additional statements relied on are located. For those whose addresses can be culled from the aforementioned interrogatories, only two are in New York: one is in Connecticut, three are in the United Kingdom, one is in Israel, and the others are unidentified.

**\*4** Defendants assert that taken altogether, the majority of these witnesses (whom defendants allege are the crucial ones) are far more likely to be found in the United Kingdom than in New York, and that trial in that forum would thus clearly be more convenient.

Plaintiff views the evidence of the witnesses' whereabouts quite differently. He first notes that all of the defendants are in New York. He then states that 'virtually all of the party witnesses on plaintiff's contract claims and the majority of the witnesses on plaintiff's other claims are in New York or under the direct control of the defendants', (Plaintiff's Memorandum of Law, p. 65) and refers the Court to his own affidavit at Paragraphs 37 and 40.

Upon reading Paragraphs 37 and 40, it is clear to the Court that the people referred to in those paragraphs are all party witnesses: defendants or employees of the defendants (except for a few former employees), who are required by law to be available at trial wherever it is held, and who, as parties, have a stake in the outcome. Plaintiff also states that 'a number' (unspecified and unnamed) of the non-party witnesses are in New York, while others are in other foreign countries, shoring up his weakness in numbers by stating that the non-New Yorkers are 'international businessmen' whom he has 'no reason to believe . . . would refuse to testify at the trial'

(Morris affidavit, ¶ 41) a statement not bolstered by affidavits from the witnesses nor any other evidence as to their 'willingness'.

Plaintiff weakens his argument as to these foreign witnesses by noting that there are other 'procedures whereby their testimony could be obtained'. (Morris affidavit, ¶ 41). He shows no reason why this alternative (which he seems to find acceptable), would not be equally as acceptable as an alternative to their testifying in London, if these 'international businessmen' had, for some reason, a greater repugnance to testifying there than in New York.

Plaintiff submitted a list to the Court consisting only of 'Witnesses working for Chemical in the United States', 'Former employees of Chemical in the United States' (not labeled as witnesses) and 'Other non-United Kingdom witnesses' whom he intends to call to testify. (Morris affidavit, Exhibit A). In simple terms, fourteen are Chemical employees in the United States, eight are former Chemical employees, and eighteen are non-United Kingdom witnesses.

The Court wishes to note three things: 1) the list deliberately does not show witnesses in the United Kingdom; 2) there is much unnecessary duplication of names, giving the list the illusory appearance of greater length; and 3) four of the non-United Kingdom witnesses are listed as being in Ireland and undesignated as to North or South, making this Court unsure as to whether they in fact <u>are</u> United Kingdom witnesses. Certainly their much greater proximity to London than to New York would entitle them to be treated as such.

Looking at the evidence presented by both sides, the Court feels that the interrogatories, a document prepared by the plaintiff in response to defendants' simply phrased questions, as to who the witnesses are on each statement, is the most honest statement presented to the Court (accepted as it is by both sides) of the truly pertinent witnesses.

**\*5** Upon consideration of the evidence before it, the Court concludes that the non-party witnesses are overwhelmingly in the United Kingdom or other parts of Europe and that the witnesses listed as being in the United States are almost entirely party witnesses, <u>i.e.</u>, Chemical employees.

This Court feels that it is perfectly proper to consider the needs and ease of access to non-party witnesses as more compelling than that of party witnesses. <u>Levin v. Haas Development Corp.</u>, slip op., No. 87

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                         Page 4
Not Reported in F.Supp., 1987 WL 16973 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Civ. 0296 (N.D. Ill. May 14, 1987) available on Westlaw Dct database as of July 20, 1987; Commercial Solvents Corp. v. Liberty Mutual Insurance Co., 371 F. Supp. 247, 250 (S.D.N.Y. 1974).

Since discovery is apparently proceeding apace, neither side seems overly concerned with access to documents. Only plaintiff mentions documents, and, while contending that most of the relevant books and records are in New York, he admits that some may be in London. (Plaintiff's Memorandum of Law, p. 67). It also appears from the copy of Plaintiff's answers to defendants' interrogatories, attached to defendants' reply memorandum, that plaintiff has, or is in the process of obtaining, the desired documents. This factor is therefore inconclusive. Karvelis, 608 F. Supp. at 972.

### Availability of Compulsory Process of Unwilling, and Cost of Obtaining Willing, Witnesses

As stated earlier, it appears that the majority of non-party witnesses are in the United Kingdom. They are not therefore subject to the compulsory process of this Court.[FN10] Jaynes v. Jaynes, 496 F.2d 9 (2d Cir. 1974); Lynch v. Luckenbach S.S. Co., 104 F. Supp. 494 (S.D.N.Y. 1952).

As other courts have found, it is important to ensure the live presence of material non-party witnesses whenever possible. Levin v. Haas Development Corp., slip op., No. 87 Civ. 0296 (N.D. Ill. May 4, 1987) (available on Westlaw DCT database as of July 19, 1987); Coats Co. Inc. v. Vulcan Equipment Co., Ltd, 459 F. Supp. 654 (N.D. Ill. 1978).

Defendants have received no more from plaintiff than his unsupported assertion, absent a sworn affidavit, that these witnesses would be willing to attend a trial in New York. If they change their minds, neither this Court, nor the plaintiff, has any means by which to compel their attendance. If defendants desired to examine or cross-examine these witnesses, it would result in an unduly burdensome expense to the defendants to locate and depose the witnesses in the United Kingdom. Should defendants desire their presence at trial, assuming they were willing to come, it would still be obtained at fairly great expense.

These considerations therefore, are strongly persuasive that the United Kingdom is a more convenient forum for all concerned. Fitzgerald v. Texaco, Inc., 521 F.2d 448 (2d Cir. 1975), dert. denied, 423 U.S. 1052 (1976); see also Gulf Oil Corp., 330 U.S. at 511.

While there are a substantial number of party witnesses, they are split between New York and London, with New York admittedly having the clear majority. Unlike nonparty witnesses, however, they can be required to testify in London due to their status as parties. While there will be a substantial sum expended in sending them to the United Kingdom, this cost will be borne by defendants who are apparently willing to do so, and, since there are a fairly substantial number of people in both countries, one set of whom will have to be sent to the other country, cost will not be used by this Court as a decisive factor.

**\*6** In sum, there are slightly more non-party witnesses than party witnesses, and the inconvenience to them, plus the potential inability of obtaining their testimony, outweighs the inconvenience to party witnesses who will have to go to England and the cost to send and maintain them there.

### All Other Practical Problems of Trial That May Make Litigation Costly and Time Consuming

Several factors not yet discussed include: the defendants' presence in plaintiff's choice of forum, avoiding duplicitous litigation, and the enforceability of an English judgment.

As the Second Circuit has made clear, where defendants' presence in plaintiff's choice of forum is the sole factor pointing towards retention of a case, it is not enough for the plaintiff to cling to, to defeat an otherwise appropriate forum non conveniens dismissal. Schertenleib v. Traum, 589 F.2d 1156, 1164-65 (2d Cir. 1978).

With regard to duplicitous litigation, dismissing this suit would also encourage plaintiff to sue in Great Britain, where certain related claims are already pending.[FN11] This would tend to lessen unnecessary duplication and reduce costs. If all of these claims could be consolidated in a single action, it would save the witnesses' time, and the litigants' expense, as there appears to be at least a partial overlap between the suits pending here and in the United Kingdom.

Finally there is no question as to the enforceability here of a judgment obtained in England. Any final judgment received by plaintiff enforceable in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

England against these defendants is as enforceable in New York as it is in England. See N.Y.C.P.L.R. § 5301.


### B. PUBLIC INTERESTS

Under this category, plaintiff appears to rely on two grounds as reasons for maintaining this action in New York. The first is that 'questions of intent, as they apply to the plaintiff's intentional tort actions, can only be resolved with reference to the New York forum.' (Plaintiff's Memorandum of Law, p. 71). Plaintiff appears to be referring to the undisputed fact that three of plaintiff's five causes of action are not separately cognizable claims under English law, but are merely sources of damages, attainable only by jury approval of his defamation claim (Elias Affidavit, Exhibit D).

However true the foregoing may be, the Supreme Court has held that 'the possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry.' Piper Aircraft, 454 U.S. at 247. In Piper, the Court held in a wrongful death suit due to an airplane crash, that even where the law of the transferee forum (Scotland) unlike the transferor forum in the United States, did not recognize strict liability in tort and had a narrower measure of damages, dismissal was proper.

The plaintiff's second alleged 'public interest' ground is his alleged employment relationship with the defendants in New York. Even giving plaintiff the benefit of the doubt on this issue,[FN12] the Court cannot rely on it as the sole reason to retain a suit, when all other factors point to a dismissal.[FN13] Cf. Schertenlieb v. Traum, 589 F.2d 1156 (2d Cir. 1978) (defendant's presence in New York not strong enough factor on which to base retention of case).

*7 Defendants cite several reasons why it is in the public interest to dismiss this action in favor of one in England. Plaintiff is an English resident, and plaintiff's non-United States residence is a very strong counterweight to the defendants' New York presence. Bulk Oil (Milano) S.R.L. v. Sun Intern. Ltd., 584 F. Supp. 43 (S.D.N.Y. 1983), aff'd, 742 F.2d 1431 (2d Cir. 1984).

In addition, the majority of these statements were published in England, (Plaintiff's Complaint, ¶ ¶ 19, 23), giving England a greater interest in either plaintiff's vindication, or defendants' right to freedom of speech within the boundaries of Great Britain. Also, the employment contract apparently relied upon by plaintiff[FN14] was signed by a British corporation and a British citizen.

The trial court's comfort with the applicable substantive law is the final issue that the Court should consider under this heading. Thus, the question of whether English or New York law applies must be decided. In New York, (whose choice of law rules apply, Reeves v. American Broadcasting Companies, Inc., 719 F.2d 602, 605 (2d Cir. 1983)) the currently evolving rule applies the law of the jurisdiction with the greater interest in the litigation, i.e., the greatest 'grouping of contacts'. Anderson v. A/S Berge Sigval Bergesen, 29 A.D.2d 756, 287 N.Y.S.2d 712 (1st Dept.), aff'd, 22 N.Y.2d 944, 295 N.Y.S.2d 161, 242 N.E.2d 393 (1968).

The courts are instructed to look at the various contacts the competing fora have with the transaction, and, after weighing and not just enumerating them, conclude that one jurisdiction has a clearer interest than the other, and that their law should thus govern. Id.

The two most crucial contacts in a contract are the parties' intent as to where it should be litigated and/or where the parties' duties under the contract action were to be performed. The law of the place where the contract was made is often considered to reflect the parties' intent. Haag v. Barnes, 9 N.Y.2d 554, 216 N.Y.S.2d 65, 175 N.E.2d 441 (1961); Southern International Sales Co. v. Potter & Brumfield Div. of AMF., Inc., 410 F. Supp. 1339 (S.D.N.Y. 1976).

Although, as noted before, it is not clear under exactly what contract plaintiff is suing, both the 1972 'offer letter' and the 1973 contract appear to have been signed in Great Britain, by a British citizen and a British corporation, a fact not contradicted by the plaintiff. While plaintiff makes claims about not relying upon these as constituting the contract sued upon, his complaint belies those statements, and he has neither attached another letter nor alleged an oral contract.

The place of performance was, and peradventure was intended to be, in Great Britain for the benefit of a chartered British company. That this company may have been owned by a New York based corporation does not change the essentials of plaintiff's performance, and plaintiff admits that his principal base of operations was London, England. That the contract (whatever it may be) may have been

Not Reported in F.Supp.                                                                                  Page 6
Not Reported in F.Supp., 1987 WL 16973 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

negotiated for by a New York based agent of one or both of the defendants, hardly seems to add much weight to the other side.[FN15] Therefore, the contract claims should be decided by British law.

**\*8** The defamation claims must next be considered.[FN16] The forum with the most significant relationship in a defamation case is 'usually the forum where plaintiff was domiciled at the time that the [defamatory statement] was published in that [forum], since that is where he is presumed to have been most injured.' Davis v. Costa Gavras, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984). Plaintiff states, however, and this Court agrees, that where another forum has a more significant relationship the laws of that forum will apply. Id.; accord, Restatement 2d of Conflict of Laws, § 150 Comment e (1977). Plaintiff has not, however, shown that a more significant relationship exists with New York than with Great Britain where plaintiff resides, and where by far the largest number of the various publications were made.

Davis, relied on by both plaintiff and defendants, cites nine factors to be considered in deciding which forum has the most significant relationship to the defamation claim at bar. The analysis, first enunciated by Judge Kaufman in Palmisano v. News Syndicate Co., Inc., 130 F. Supp. 17, 19, n. 2 (S.D.N.Y. 1955), considers:
1. The state of the plaintiff's domicile: Here, Great Britain.
2. The state of plaintiff's principal activity to which the alleged defamation relates: By plaintiff's own admission he has lived and worked in his field and in Great Britain for the last fifteen years, and shows no sign of changing.
3. The state where the plaintiff in fact suffered greatest harm: The only actual loss alleged was from Bitish Midland Airways Ltd.'s refusal to deal with him, stated in ¶ 31(i) of Plaintiff's Amended Complaint. Since it is plaintiff's reputation that was allegedly harmed and since, as noted above, he has continued to work in Great Britain, although the Court is willing to agree that his reputation could be perceived as having been harmed in the aviation industry at large, of which New York is apparently a major center of such commerce, it certainly appears that the greatest damage would have been done in England.
4. The state of the publisher's domicile or incorporation: New York for all defendants.
5. The state where the defendants main publishing office is located: not relevant here.
6. The state of principal circulation: This is hard to

say, as almost all of what plaintiff alleges is slander and not libel, but since these statements were largely made in Great Britain, it is fair to assume, since nothing was told to this Court to make it consider otherwise, that the large part of their circulation would be among compatriots.
7. The place of emanation: The majority of statements were allegedly uttered in the United Kingdom.
8. The state where the libel (or slander) was first seen (or spoken): Again, clearly Great Britain.
9. The law of the forum.[FN17]

In both numerosity and relative importance of the various considerations, British law clearly emerges as the forum most closely connected to the alleged defamation.

**\*9** The Court thus adds to its considerations the fact that it is difficult for an American court to apply foreign (albeit British) law. Gulf Oil, 330 U.S. at 512; Calavo Growers of California v. Generali Belgium, 632 F.2d 963, 967 (2d Cir. 1980), cert. denied, 449 U.S. 1084 (1981).

### FINAL ANALYSIS

In sum, all roads lead to Brittania. Looking at all the factors, considered singly and en masse this Court finds that the case at bar is one amply suited to a finding of forum non conveniens, and thus orders this case dismissed as it may be more appropriately brought in a court of the United Kingdom.

SO ORDERED.

> FN1 Many of the underlying facts in this case are hotly in dispute. For purposes of clarity, therefore, they will be clearly labeled as disputed where it is necessary to include such facts.

> FN2 'PV and DV' stand for 'Plaintiff's Version' and 'Defendants' Version' respectively. See notes.

> FN3 Defendants list only New York working addresses in their affidavits for the individual defendants, which addresses plaintiff does not contradict.

> FN4 Defendants refer to the date of departure only once, and state that it was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 7
Not Reported in F.Supp., 1987 WL 16973 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

1982. Plaintiff consistently says that it was 1984, and attaches to his Memorandum of Law and affidavits a copy of an 'Employee Leaving' form with his date of departure listed as December 18, 1984. It is not of major importance and the Court merely notes the discrepancy.

FN5    Plaintiff and defendants are at loggerheads over the issue of who was plaintiff's employer. Since two of defendants' motions involve (at least peripherally) a decision on this issue, both will be discussed at this juncture.

Defendants have made a motion to dismiss on the grounds that plaintiff has failed to state a claim for which relief can be granted as to the contract claims, alleging that plaintiff was never an employee of the defendants. On a motion to dismiss for failure to state a claim, the Court will read the complaint liberally, and will not dismiss unless there is no reading of the complaint that would present plaintiff with a viable claim. Budco, Inc. v. The Big Lights, Inc., 594 F.2d 900 (2d Cir. 1979); Heese v. Dematteis Development Corp., 417 F. Supp. 864 (S.D.N.Y. 1976).

Since plaintiff alleges formation of a contract between plaintiff and defendants, defendants' failure to perform, and resulting damages, he has alleged a prima facie breach of contract claim and the causes of action are not subject to dismissal on this ground. Republic Corp. v. Procedyne Corp., 401 F. Supp. 1061 (S.D.N.Y. 1975).

On a motion to dismiss, the court will consider only the complaint and not extraneous matter such as affidavits. Land v. Dollar, 330 U.S. 731 (1947). If the defendants desired the Court to take a deeper look, the proper avenue would have been a motion for summary judgment under Fed. R. Civ. P. 56(e) whereby both sides are given time to respond with competent affidavits.

In deciding whether to grant a motion for dismissal for forum non conveniens however, the court can consider any and all memoranda and affidavits presented to it. Jones v. Walt Disney World Co., 409 F. Supp. 526 (W.D.N.Y. 1976). Since the question of who was plaintiff's employer loomed large in many places during consideration of the motion for forum non conveniens dismissal, the Court feels constrained to attempt to resolve this small portion of the dispute. Defendants base their insistence that Chem. Fin. was plaintiff's employer upon the existence of a 1972 employment contract to which plaintiff and Chem. Fin. are the sole signatories, upon which contract, they insist, plaintiff must be suing.

Plaintiff insists a) that he is not suing upon that contract (Plaintiff's memorandum of Law, pp. 5-6 and 59) and b) that Chem. Fin. was, in essence, a shell corporation. He states that Chem. Fin. was constructed by the defendants for a single purpose, to evade taxes, and that application of the New York doctrine known as 'piercing the corporate veil' is required. He cites numerous alleged facts with which to reinforce his theory. (Plaintiff's Memorandum of Law, pp. 44, et. seq.).

As support for Claim (a), plaintiff states that commencing in 1976, the defendants ceased using formal employment agreements and began using an 'offer letter' sent prior to the time of employment, apparently intending to imply that the contract is somehow rendered invalid by this fact. Without even considering the validity of plaintiff's theory, the Court notes that plaintiff's position is not internally consistent. While he does attach as Exhibit B to his affidavit an 'offer letter', it is dated October 27, 1982 and thus predates, and is presumably subsumed in, his 1973 employment contract, a copy of which defendants attach as Exhibit A to the Elias affidavit. Defendants were, therefore, apparently utilizing offer letters and contracts at that time.

Further, plaintiff's complaint lists as one ground for his breach of contract claim, breach of 'clause 7 of his employment agreement with them' (Amended Complaint, ¶ 47). Since he has not alleged a superseding contract, oral or written, the Court must assume he refers to the 1973 contract, clause 7 of which concerns the items complained of, i.e., reimbursements. He also relies on his contract as if it were still active and binding when he utilizes it to show that his employment agreement was in fact with the defendants. (Morris affidavit, ¶ 11).

While plaintiff's case is far from perfect on ground (a), defendants have not presented to this Court any facts whereby it can judge whether the 'corporate veil' should not be pierced, possibly relying on the fact that this issue was not presented to the Court as one for summary judgment.

Based upon the foregoing, this Court finds it impossible to even begin to decide this issue. Therefore, since it is the plaintiff who wishes to remain in this forum, and since it is the plaintiff who is given 'the benefit of the doubt' on a motion to transfer (albeit a lessened one, see p. 5, infra), and since a finding that the plaintiff's employers are New York corporations will increase the contacts with this forum, for purposes of this motion the Court shall assume that plaintiff was employed by New York corporations.

FN6    See endnote 4.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 8
Not Reported in F.Supp., 1987 WL 16973 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

FN7    Plaintiff claims in ¶ 39 of his Amended Complaint that the defamatory statements contained in ¶ 19 thereof 'culminated in the termination of plaintiff's employment.   The Court is hard pressed to see how this could occur, as plaintiff's last date of employment was prior to the earliest of the alleged statements, which statement concerned the grounds for plaintiff's termination.

FN8    As discussed infra, depositions, although nto preferable are a potentially available alternative.

FN9    Although defendants' Memoranda refer only to the statements in ¶ 31 as the acts on which plaintiff's lost opportunities claim is based, the complaint makes clear at ¶ 22 that the acts in both ¶ ¶ 19 (previously labeled defamatory) and 31 are relied upon for this claim.

FN10    Plaintiff notes, in passing, the possibility of the use of 28 U.S.C. § 1781 to obtain the testimony of foreign non-party witnesses via letters rogatory.  The reverse is also provided for in § 1782, allowing a foreign court to request a federal court to order a resident of the court's district to provide that foreign tribunal with testimony.  Be either as they may, both are extremely complicated procedures seldom resorted to (and usually in criminal cases), and not of such utility that this Court would wish to rely upon them in a case such as the one at bar.

FN11    In one line on page 70 of plaintiff's Memorandum of Law, plaintiff states that he is 'unclear whether [he] would be able to secure jurisdiction in London over all of the defendants.'   Such a speculative statement in one line, deeply buried, is not enough for this Court to retain jurisdiction over an action that otherwise clearly belongs in another country.

FN12   See endnote 5, supra.

FN13    Since neither side has adduced any evidence that either forum is more crowded, the Court cannot consider this issue.

FN14    See endnote 5, supra.

FN15    One of plaintiff's efforts is to claim that, because the contract was negotiated in New York, New York should retain this suit due to its desire to maintain its status as the 'pre-eminent commercial and financial nerve center of the Nation and the World.'   Ehrlich-Bober & Co. v. University of Houston, 49 N.Y.2d 574, 580, 427 N.Y.S.2d 604, 608, 404 N.E.2d 726 (1980).

This argument has no application to the situation herein.  New York has stated its desire to be available for redress for financially based transactions, whose conceptual core is that a nondomiciliary entered New York specifically due to New York's pre-eminent financial status, creating a special nexus with New York such that New York law should protect him.  It is not a concept applicable to an action based on defamation, nor one for partial breach of an employment contract, the performance of which has no connection with New York.  Id.; Intercontinental Planning Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 300 N.Y.S. 2d 817, 248 N.E.2d 576 (1969).

FN16    Since the other three claims (2-4) are essentially linked to the claim for defamation, and are of the same character, they will be considered subsumed into this analysis.

FN17    This list was originally put forth by Judge Kaufman not as a list of factors to be considered, but as a list of nine separate unconnected solutions by different writers to the conflicts problem.  Since Judge Sofaer in Davis cleverly adopted, but did not adapt, the list, the ninth item is not relevant, since the whole point of this all encompassing analysis is that the law of the forum does not necessarily apply, as one theorist would have had it.

S.D.N.Y., 1987.
Morris v. Chemical Bank
Not Reported in F.Supp., 1987 WL 16973 (S.D.N.Y.)

END OF DOCUMENT

**3**

Westlaw.

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1993 WL 410160 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**


H
St. Paul Fire and Marine Ins. Co. v. Heath Fielding
Ins. Broking, Ltd.
S.D.N.Y.,1993.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
ST. PAUL FIRE AND MARINE INSURANCE
COMPANY, Plaintiff,
v.
HEATH FIELDING INSURANCE BROKING,
LTD., et al., Defendants.
**No. 91 Civ. 0748 (MJL).**


Oct. 14, 1993.


Oppenheimer Wolff & Donnelly by Ted G. Semaya,
Robert J. Tracy, New York City, for plaintiff.
Kroll & Tract by Elliott M. Kroll, New York City, for
defendant Heath Fielding Ins. Broking, Ltd.
Dickstein, Shapiro & Morin by Peter J. Kadzik,
Robert E. Curry, Jr., New York City, for the Farex
defendants.

MEMORANDUM OPINION
LOWE, District Judge.
**\*1** Before the Court is the motion by plaintiff, St.
Paul Fire and Marine Insurance Company
("Plaintiff"), brought pursuant to Rule 3(j) of the
Civil Rules of the Southern District of New York, for
reargument of this Court's Opinion and Order dated
May 25, 1993 (the "May Order"). For the reasons
below, Plaintiff's motion is denied.


BACKGROUND

The background and underlying facts of this action
are fully set forth in the May Order. Prior to the
instant motion, the Farex Defendants [FN1] and Heath
Fielding Insurance Broking, Ltd. ("Heath") made
motions seeking orders dismissing this action on
various grounds. The Farex Defendants motion was
based upon lack of personal jurisdiction and on
grounds of *forum non conveniens.* Heath's motions
were pursuant to Rules 9(b) and 12(b)(6) of the
Federal Rules of Civil Procedure, *forum non
conveniens,* and lack of an indispensable party. The
motions were referred to Magistrate Judge Barbara
A. Lee for a report and recommendation ("R & R").

In the May Order, this Court adopted in part and
declined to adopt in part the Magistrate Judge's
recommendations.[FN2] In that order, the Court
dismissed all claims against the Farex Defendants on
grounds of *forum non conveniens.* Finding that
Plaintiff failed to state a cause of action, the Court
dismissed with prejudice Plaintiff's claims against
Heath for breach of the duty of good faith and fair
dealing, negligence and breach of fiduciary duty.
The Court also dismissed claims for rescission and
declaratory judgment on the grounds of *forum non
conveniens.* Finally, the Court denied Heath's
motion to dismiss with prejudice the claim for
injunctive relief and the cause of action based upon
fraud.

The instant motion charges that the Court both (1)
overlooked Plaintiff's "numerous New York
contacts" in dismissing claims on grounds of *forum
non conveniens* and failed to adequately consider
circumstances where dismissal would deny a citizen a
domestic forum, and (2) erroneously concluded that
there exists no basis upon which Plaintiff may rest a
claim for breach of the duty of good faith and fair
dealing. These contentions will be examined
separately.


DISCUSSION

*I. New York as the Only Available United States
Forum.*


In the May Order, this Court adopted Magistrate
Judge Lee's R & R and dismissed several of
Plaintiff's claims on grounds of *forum non
conveniens.* The Court, as required by the Supreme
Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501,
508-09 (1947), balanced public and private factors in
reaching this determination. Given the number of
defendants and witnesses in Europe and the minor
connection of any party with New York, England or
France would be most appropriate for this litigation.
Plaintiff argues that the Court failed to give proper
deference to its interests as an American corporation
in having a United States forum in which to litigate.


Civil Rule 3(j) provides for reconsideration of a
decision when the Court has overlooked matters or
controlling decisions. Plaintiff's contentions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                     Page 2
Not Reported in F.Supp., 1993 WL 410160 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

regarding the Court's lack of consideration of its choice of forum are mistaken. This Court expressly stated in the May Order that it is "mindful of Plaintiff's choice of forum." Despite this consideration, the Court applied the controlling *Gulf Oil* balancing test. The balance tilted in favor of dismissal. The Court has overlooked no factual matters in making this decision.

**\*2** The Court also has not overlooked controlling law. Plaintiff argues that the Court failed to apply a heightened standard of review to a situation where dismissal would deny a United States citizen access to the courts of this country. Plaintiff relies heavily on the 1972 Court of Appeals decision of <u>Leasco Data Processing Equip. Corp. v. Maxwell,</u> 468 F.2d 1326 (2d Cir.1972), in which that court declined to direct the district court to dismiss a complaint on the ground of *forum non conveniens.* The Court of Appeals stated that "courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest" before dismissing a citizen's complaint on grounds of *forum non conveniens.* <u>Id.</u> at 1344 (quoting <u>Burt v. Isthmus Dev. Co.,</u> 218 F.2d 353, 357, *cert. denied,* 349 U.S. 922 (1955)).

In support of this proposition, Plaintiff cites to <u>Allstate Life Ins. Co. v. Linter Group Ltd.,</u> 782 F.Supp. 215 (S.D.N.Y.1992), in which Judge Patterson of this district declined to dismiss a U.S. corporation's case despite the fact that a foreign forum would be more convenient. However, Plaintiff admittedly failed to note that the court reconsidered its opinion and later granted the motion to dismiss in <u>Allstate Life Ins. Co. v. Linter Group Ltd.,</u> Fed.Sec.L.Rep. ¶ 96,864, 1992 WL 136849 (S.D.N.Y. June 1, 1992), and that the Court of Appeals in a most recent discussion of *forum non conveniens* affirmed that decision in <u>Allstate Life Ins. Co. v. Linter Group Ltd.,</u> 994 F.2d 996 (2d Cir.1993).

United States citizens are not automatically entitled to litigate in domestic courts simply by reason of their citizenship. "[T]he reluctance to dismiss on the ground of forum non conveniens is not 'as profound as the language [in *Leasco* and earlier cases] might suggest.' " *Id.* at 1001 (quoting <u>Alcoa S.S. Co. v. M/V Nordic Regent,</u> 654 F.2d 147, 156 (2d Cir.) (en banc), *cert. denied,* 449 U.S. 890 (1980)). Although great weight is given to a plaintiff's choice of forum, dismissal "may be appropriate where certain private and public interest factors point towards trial in an alternative forum." *Allstate Life,* 994 F.2d at 1001 (citing <u>Gulf Oil,</u> 330 U.S. at 508-09; *Piper Aircraft*

<u>Co. v. Reyno,</u> 454 U.S. 235, 255 (1981)).

Although the recent Court of Appeals' decision in *Allstate Life* was not available at the time of the May Order, the Court nevertheless engaged in the proper analysis of private and public factors and based its reasoning on both *Gulf Oil* and *Piper Aircraft.* The Court is satisfied that no matters or controlling decisions were overlooked in reaching the May Order.

II. *Breach of the Duty of Good Faith and Fair Dealing.*

In the May Order, this Court dismissed Plaintiff's cause of action for breach of the duty of good faith and fair dealing. The Court found that that duty necessarily originates in an existing contract. Plaintiff's cause of action was based upon conduct which allegedly occurred prior to the time of contract; therefore, the Court reasoned that there could be no breach of this duty as no such duty had yet arisen. Plaintiff contends, however, that the duty of good faith exists between all persons involved in reinsurance transactions-the type of transaction at issue in this case-prior to the formation of a contract.

**\*3** Plaintiff claims that the duty allegedly breached by Heath is tantamount to, or "virtually," a fiduciary duty. Memorandum in Support of Motion Pursuant to Local Civil Rule 3(j) at p. 11. While one's fiduciary duty encompasses a duty of utmost good faith, *see* <u>Commonwealth Ins. Co. v. Thomas A. Greene & Co., Inc.,</u> 709 F.Supp. 86, 88 (S.D.N.Y.1989), Plaintiff's cause of action based on an alleged breach of this underlying fiduciary duty has been dismissed, and the Magistrate Judge's findings in this regard have gone unchallenged. This Court will not say that there is no fiduciary duty between Heath and Plaintiff, yet allow a claim that is grounded upon the existence of such a duty.[FN3] Again, this Court has overlooked no matters or controlling decisions in dismissing the cause of action for breach of the duty of good faith and fair dealing.

CONCLUSION

For the reasons stated above, Plaintiff's motion for reargument of the Opinion and Order dated May 25, 1993 is denied in its entirety. Each party shall bear its own costs.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1993 WL 410160 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

It is SO ORDERED.

> FN1. Again, the Farex Defendants are the following French insurance/reinsurance companies: Farex G.I.E.; Saltiel S.A.; La Concorde, Compagnie d'Assurances Contre Les Risques de Toute Nature; La Paternelle Risques Divers; Presence Assurances; La France, Compagnie d'Assurances I.A.R.D.; Rhin et Moselle Assurances Francaises, Compagnie Generale d'Assurances et de Reassurances S.A.; Les Mutuelle du Mans; and, Compagnie d'Assurances Maritimes, Aeriennes Et Terrestres.

> FN2. The reports to this Court are dated November 15, 1991, September 15, 1992, and March 25, 1993. All three reports are addressed in the May Order.

> FN3. As stated in the May Order, Plaintiff has stated a cause of action against Heath for fraud resulting from the same alleged conduct complained of in the cause of action for breach of the duty of good faith. This surviving cause of action is not based upon any sort of breach of fiduciary duty.

S.D.N.Y.,1993.
St. Paul Fire and Marine Ins. Co. v. Heath Fielding Ins. Broking, Ltd.
Not Reported in F.Supp., 1993 WL 410160 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.