USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5|30|07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLACKROCK, INC.,

     Plaintiff,

- against -

SCHRODERS PLC,

     Defendant.

**OPINION AND ORDER**
07 Civ. 3183(PKL)

**APPEARANCES**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay Samuel Berke, Esq.
Four Times Square
New York, NY 10036

Attorney for Plaintiff

PILLSBURY WINTHROP SHAW PITTMAN, LLP
Frederick Arthur Brodie, Esq.
1540 Broadway
New York, NY 10036
Christine N. Kearns, Esq.

Attorneys for Defendant

**LEISURE, District Judge:**

Plaintiff BlackRock, Inc. ("BlackRock") brought this action seeking to enjoin defendant Schroders plc ("Schroders") and its subsidiary companies from employing former employees of BlackRock and from inducing those employees to violate their contractual obligations and fiduciary duties to BlackRock. Schroders now moves to dismiss the complaint on the grounds that this Court lacks personal jurisdiction over Schroders and pursuant to the doctrine of *forum non conveniens*. For the reasons set forth below, Schroders' motion is GRANTED on the grounds of *forum non conveniens*.

## BACKGROUND

BlackRock is an asset management firm incorporated in Delaware and headquartered in New York. (Connolly Aff. ¶ 2.) BlackRock (Deutschland) GmbH ("BlackRock Germany") is a German subsidiary of BlackRock, and it has offices in Frankfurt, Germany. (Id. at 4.)  Schroders, a United Kingdom public limited company with offices only in London, England, is a holding company for a portfolio of asset management companies. (Trust Decl. ¶¶ 2, 4.)  One of these companies is Schroders Investment Management GmbH ("Schroders Germany"), an indirect subsidiary of Schroders. (Id. ¶ 2.)

This action arises out of the March 5, 2007 resignation of Achim Küssner from BlackRock and BlackRock Germany, where he had

2

been a Managing Director of both. (Connolly Aff. ¶ 4.)  On March
12, 2007, Schroders Germany announced that Mr. Küssner would
become its new Country Head. (Id.)  Between March 8 and March
12, 2007, five other employees of BlackRock Germany, including
three directors, also resigned. (Id.)  BlackRock claims that Mr.
Küssner solicited these employees to leave BlackRock Germany for
Schroders Germany (id. ¶ 7) and that Schroders induced him to do
so (Comp. ¶ 2).  BlackRock contends that Mr. Küssner's actions
were in violation of the Confidentiality and Employment Policy
that is part of Mr. Küssner's employment contract (the
"Employment Contract") with BlackRock Germany[1] (see id. Ex. A)
and that Mr Küssner breached the fiduciary duties he owes his
employer. (Id. ¶ 3.)  According to the Employment Contract's
choice of law provision, the Employment Contract, and thus the
Confidentiality and Employment Policy, is subject to German law.
(Kearns Decl. Ex. A ¶ 13.1); see Sterling Drug, Inc. v. Bayer
AG, 14 F.3d 733, 739 n.2 (2d Cir. 1994) (choice of law provision
in agreement applies also to subsequent, modifying agreement
with no choice of law provision).

---

[1] Mr. Küssner was initially employed by Merrill Lynch Investment Managers
(Deutschland) GmbH ("MLIM Germany"), the original counterparty to the
Employment Contract. (See Kearns Decl. Ex. A; Connolly Aff. ¶ 8.)  In the
second half of 2006, Merrill Lynch Investment Managers merged with BlackRock,
and MLIM Germany changed its name to BlackRock (Deutschland) GmbH (referred
to herein as BlackRock Germany). (See Connolly Aff. ¶ 8.)  As a result of the
merger, Mr. Küssner became an employee of BlackRock Germany. (See id.)  On
September 29, 2006, in anticipation of the merger, MLIM Germany and Mr.
Küssner expressly amended the Employment Contract to include BlackRock's
Confidentiality and Employment Policy. (Id. ¶ 9; Kearns Decl. Ex. B.)

3

Mr. Küssner is not a party to this action.  BlackRock maintains that this is because it might not be able to assert jurisdiction over him in this forum promptly enough for the purposes of a preliminary injunction. (See Hr'g Tr. 6:11-16, May 9, 2007.)  Schroders notes that Mr. Küssner's employment contract with BlackRock Germany provides for jurisdiction in Frankfurt, Germany, not this forum. (See Kearns Decl. Ex. A § 13.1.)

## DISCUSSION

Schroders has moved to dismiss BlackRock's complaint on the grounds of lack of personal jurisdiction and pursuant to the doctrine of *forum non conveniens*.  The issue of personal jurisdiction in this matter is closely intertwined with the merits of the case, and the inquiry into the issue promises to be fact-intensive.  Accordingly, the Court first assesses the convenience of this forum.  Because the result of this inquiry is dispositive, the Court does not reach the question of whether it has personal jurisdiction over Schroders. See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 127 S. Ct. 1184, 1194 (2007) ("[W]here subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").

4

I.   *Forum Non Conveniens* Dismissal Standards

The doctrine of *forum non conveniens* is based on the
principle that "'a court may resist imposition upon its
jurisdiction even when jurisdiction is authorized by the letter
of a general venue statute.'" Norex Petroleum Ltd. v. Access
Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (quoting Gulf Oil
Corp. v. Gilbert, 330 U.S. 501, 507 (1947)); In re Union Carbide
Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984, 634 F.
Supp. 842, 845 (S.D.N.Y. 1986) (Keenan, J.) ("The doctrine of
*forum non conveniens* allows a court to decline jurisdiction,
even when jurisdiction is authorized by a general venue
statute."), aff'd, 809 F.2d 195 (2d Cir. 1987).  Notwithstanding
the propriety of the action under the venue statute, "dismissal
will ordinarily be appropriate where trial in the plaintiff's
chosen forum imposes a heavy burden on the defendant or the
court, and where the plaintiff is unable to offer any specific
reasons of convenience supporting his choice." Piper Aircraft
Co. v. Reyno, 454 U.S. 233, 249 (1981).  The Supreme Court has
declined to fashion the exact circumstances that would "'justify
or require either grant or denial of remedy.'" Id. (quoting
Gilbert, 330 U.S. at 508).  Consequently, a district court's
inquiry is highly fact-specific. Id. ("'Each case turns on its
facts.'" (quoting Williams v. Green Bay & W.R. Co., 326 U.S.
549, 557 (1946))); Walpex Trading Co. v. Yacimientos

5

Petroliferos Fiscales Bolivanos, 712 F. Supp. 383, 392-93

(S.D.N.Y. 1989) (Leisure, J.) ("The Supreme Court has emphasized

the flexibility with which the District Court must approach a

*forum non conveniens* determination, and consequently there are

no specific circumstances which would require either a grant or

denial of the remedy.").

In furtherance of these general principles of law, the

Second Circuit has crafted a three-step inquiry for its district

courts to follow:

> At step one, a court determines the degree of
> deference properly accorded the plaintiff's choice of
> forum.  At step two, it considers whether the
> alternative forum proposed by the defendants is
> adequate to adjudicate the parties' dispute.  Finally,
> at step three, a court balances the private and public
> interests implicated in the choice of forum.

Norex, 416 F.3d at 153 (citing Iragorri v. United Techs.

Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)).  A

defendant moving for dismissal on *forum non conveniens*

grounds bears the burden of proof.  Aguinda v. Texaco,

Inc., 303 F.3d 470, 476 (2d Cir. 2002); see also

VictoriaTea.com, Inc. v. Cott Beverages Canada, 239 F.

Supp. 2d 377, 381 (S.D.N.Y. 2003).  Finally, the Second

Circuit's review of a district court's dismissal on the

basis of *forum non conveniens* is "severely cabined."

Alfadda v. Fenn, 159 F.3d 41, 45 (2d Cir. 1998).  Analysis

of each of these three steps follows.

## II.   The Degree of Deference Due the Plaintiff

Under Supreme Court and Second Circuit precedent, a court should defer to a plaintiff's choice of forum. Iragorri, 274 F.3d at 70; see also Piper, 454 U.S. at 255 ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum."); Gilbert, 330 U.S. at 508 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). However, such deference is "not dispositive, and it may be overcome." Iragorri, 274 F.3d at 71. It is important to note that "the reason we give deference to a plaintiff's choice of her home forum is because it is presumed to be convenient." Id. (citing Piper, 454 U.S. at 255-56). Therefore, where it becomes apparent that plaintiff's choice of forum was not made with regard to convenience, and instead was made for "forum-shopping reasons," it is acceptable to afford plaintiff's choice less deference. Iragorri, 274 F.3d at 71.

Under this general approach, a district court's determination of "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." Iragorri, 274 F.3d at 71. Specifically, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor

7

the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." Id. at 71-72 (footnotes omitted). The factors favoring denial of a motion for dismissal include

> the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense.

Id. at 72. Conversely, where it appears that a plaintiff has chosen a U.S. forum because of forum-shopping reasons less deference will be afforded plaintiff's choice and, consequently, the greater the likelihood of dismissal. Id. Such forum-shopping reasons include

> attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum.

Id.; see, e.g., Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 71 (2d Cir. 2003) ("In such circumstances, it is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's selection.").

Schroders brings this motion for dismissal claiming that "BlackRock's choice of forum deserves no deference." (Def.'s

8

Mot. at 18.)  It believes no deference is warranted because it

claims the core of the dispute is based in Germany. (Def.'s Mot.

at 16.)  Schroders further argues that BlackRock's decision not

to name BlackRock Germany as plaintiff - the party Schroders

believes is the correct plaintiff - is evidence that BlackRock

was motivated by forum-shopping reasons, primarily that the

discovery procedures in Germany would not be as favorable to

BlackRock as the procedures in New York. (Def.'s Mot. at 17-18.)

BlackRock responds, contending that, because it is

headquartered in Manhattan and it has chosen to file the instant

action in this District, the Court should accord full deference

to that decision.  BlackRock claims that deference to its choice

must be given unless Schroders shows "such oppressiveness and

vexation as to be out of all proportion to plaintiff's

convenience." (Pl.'s Opp. at 20 (citing Wiwa v. Royal Dutch

Petroleum Co., 226 F.3d 88, 103 (2d Cir. 2000)).)[2]  BlackRock

further contests Schroders's claim of forum-shopping by claiming

it has named the correct party in interest as Schroders, rather

than Schroders Germany.[3] (Pl.'s Opp. at 2-4, 20-22.)  BlackRock

_____

[2] The Court believes BlackRock mischaracterizes Wiwa, and misses its core
holding:  Second Circuit case law on this issue shows that there is not a
"rigid rule of decision protecting U.S. citizen or resident plaintiffs from
dismissal for *forum non conveniens*." Wiwa, 226 F.3d at 102.  Instead, the
Wiwa Court held that the key to the case law in this Circuit is "a
consistent, pragmatic application' of the Gilbert factors to actions in which
a plaintiff has particular ties to the forum state." Id. (citations omitted).
[3] Interestingly, BlackRock discusses at length the appropriateness of its
choice of defendant rather than focusing on the relevant considerations of
the lawsuit's ties to this District and questions of convenience. BlackRock

9

also suggests that by claiming Germany as the correct alternate

forum rather than the United Kingdom, Schroders is forum

shopping. (Pl.'s Opp. at 22.)

It is undisputed that BlackRock itself has "bona fide

connection" to this District, Iragorri, 274 F.3d at 71-72, as it

is headquartered in Manhattan. It is less clear that BlackRock

is, in fact, the real plaintiff in interest in this matter, or

simply a "prox[y] chosen for an improper purpose," as Schroders

claims. (Def.'s Reply at 4.)  The Court will not defer to a

plaintiff's choice of forum where that plaintiff "falls back on

its United States citizenship as the sole and only possible

basis for suing these defendants in a court of the United

States." Ionescu v. E.F. Hutton & Co. (France) S.A., 465 F. Supp

139, 146 (S.D.N.Y. 1976) (Pollack, J.) (quoting Mizokami Bros.

of Arizona, Inc. v. Baychem Corp., 556 F.2d 975, 977 (9th Cir.

1977) (per curiam)).  Nor will the Court give a plaintiff's

choice of forum strong deference where it is not "one of the

principal parties in interest." VictoriaTea.com, 239 F. Supp. 2d

at 381; see also Capital Currency Exch., N.V. v. Nat'l

Westminster Bank PLC, 155 F.3d 603, 612 (2d Cir. 1998) ("Because

the real parties in interest are foreign corporations, there is

not a strong presumption in favor of the plaintiffs' choice of

---

explains this by claiming that Schroders's allegations of forum-shopping are
based on BlackRock's choice of defendant (Pl.'s Opp. at 21), however,
Schroders's primary argument is that BlackRock brought its claim in this
District to "obtain[] U.S.-style discovery." (Def.'s Mot. at 18.)

10

forum."). It is also unclear that the lawsuit as a whole has sufficient connections to this District to warrant deference to BlackRock's choice of forum. Iragorri, 274 F.3d at 71-72; see also Ionescu, 465 F. Supp at 146 (dismissing on grounds of *forum non conveniens* where "no act whatsoever of the defendant in connection with this claim took place in this country").

To determine if BlackRock is the real party in interest here, the Court looks to whether it was a key member of the "relationships and transactions that engendered the action." VictoriaTea.com, 239 F. Supp. 2d at 381. Mr. Küssner went from being an employee of MLIM Germany to "an employee and Managing Director of BlackRock Germany." (Complaint ¶ 16.) The employees Mr. Küssner allegedly enticed away from BlackRock were employed by BlackRock Germany. (Complaint ¶ 22.) Moreover, the agreement at issue was signed in Germany as a condition to work at BlackRock Germany, expressly references German law, is subject to German law and is written in German. (Connolly Aff. ¶ 8; Complaint Ex. A; Kearns Decl. Ex. A ¶ 13.1, Ex. B.)

BlackRock, however, claims that it has been and will be harmed directly, in addition to the harm done to its BlackRock Germany subsidiary. (Pl.'s Opp. at 2; Complaint ¶ 65.)[4]

---

[4] BlackRock also claims that Mr. Küssner had contact with New York in his position as Managing Director of BlackRock Germany (Complaint ¶ 16) and that it will be harmed directly because "BlackRock, Inc. . . . measures and reports its income and financial performance . . . based on the performance of all its subsidiaries and affiliates, including BlackRock Germany"

11

Certainly as an employee of BlackRock and BlackRock Germany, Mr.
Küssner had fiduciary duties to both BlackRock and BlackRock
Germany.  As in Ionescu, however, none of the acts by Schroders
upon which this claim is based took place in the United States,
let alone this District.  Instead, all of the key events upon
which this dispute is based took place either in Germany or in
the United Kingdom.

    Thus, the Court's concerns about whether BlackRock is the
key party in interest coupled with the lack of ties to this
District in the core underlying facts of the dispute convince
this Court that the lawsuit itself does not have a sufficient
connection to this forum to warrant strong deference. See Kirch
v. Liberty Media Corp., No. 4 Civ. 667 (NRB), 2006 U.S. Dist.
LEXIS 82175, at *4, 2006 WL 3247363 (S.D.N.Y Nov. 8, 2006)
("[P]laintiff's choice of this forum is not to be afforded great
deference, in light of the inherently Germany nature of this
dispute."); VictoriaTea.com, 239 F. Supp. 2d at 381 (dismissing
for forum non conveniens where "the principal parties in
interest to the underlying relationships and transactions that
engendered the action" were not citizens of the United States or
of the chosen forum); Diatronics, Inc. v. Elbit Computers, LTD,
649 F. Supp. 122, 128 (S.D.N.Y. 1986) (dismissing for forum non

---

(Complaint ¶ 65; Def.'s Mot. at 16-17). However, the Court finds these claims
insufficient to overcome the dearth of connections between the underlying
lawsuit and this forum.

*conveniens* where "[a]lmost every significant event concerning the pertinent transaction took place In Israel").

Having evaluated the connection of BlackRock and the underlying lawsuit to this forum, the Court also must weigh the question of convenience to determine if it may save BlackRock's request for strong deference to its choice of forum. See Iragorri, 274 F.3d at 71-72. Thus, the Court now turns to a consideration of

> the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense.

Id. at 72.

As has been discussed in detail above, BlackRock's residence is in its chosen forum. However, after consideration of the other factors at issue, it seems this forum is not the most convenient for this litigation. The majority of witnesses BlackRock claims are necessary to depose – eight of the eleven mentioned in BlackRock's papers – are in Germany or the U.K.[5] (See Connolly Aff., Kushel Aff., Oliner Aff.); see also Kirch, 2006 U.S. Dist. LEXIS 82175, at *4. Further, Schroders has already indicated that it would be amenable to suit in the forum district. (Trust Dec. ¶ 15; Def.'s Mot. at 18; Def.'s Reply at

---

[5] As is discussed in detail below, factors relating to BlackRock's ability to obtain witnesses' attendance weigh heavily in favor of dismissal.

5.)  And finally, as the early communications between the
parties prior to the filing of the Order to Show Cause in this
Court show, legal assistance would be readily available to both
parties in Germany. (See Trust Dec. at Exs. 1-2.)  Thus, factors
of convenience do not convince this Court that BlackRock's
choice of forum deserves strong deference.

Instead, it seems that BlackRock was motivated to
bring suit in this forum based on considerations related to
procedure available here. See Iragorri, 274 F.3d at 72
(finding evidence of forum-shopping where reasons for
bringing case in chosen forum include "attempts to win a
tactical advantage resulting from local laws that favor the
plaintiff's case").  Specifically, BlackRock has indicated
that a preliminary injunction is the goal of its action
here.  (See Hr'g Tr. 22:14-16).  According to BlackRock,
however, it believes it will not be able to obtain a
preliminary injunction without expedited discovery, which
it seems to claim would not be available to it in Germany.
(See Pl.'s Opp. at 23.)  Moreover, Mr. Küssner, who is
seemingly a key party at interest to this case, is not even
named by BlackRock because BlackRock believes it is
unlikely to be able to assert jurisdiction over him in this
District within the time frame it would like. (See Hr'g Tr.
6:11-16.)  Schroders also points out that BlackRock relies

14

on e-mail communications it "discovered" and has attached

to its complaint, many of which may not be admissible under

German constitutional and statutory law. (See Def.'s Mot.

at 18 n.14.)   The Court addresses many of these issues in

greater detail below, but for purposes of the analysis at

hand here, they do provide some indication that forum-

shopping informed BlackRock's choice of forum.

Thus, given all of the Iragorri factors this Court has

considered — that the connection of the underlying

litigation to this forum is attenuated, and that there is

some inference of forum-shopping — the Court concludes that

BlackRock's choice of forum will not be given the strong

deference ordinarily afforded a plaintiff in a *forum non*

*conveniens* analysis.   Instead, BlackRock's choice of venue

will be given limited deference.

### III. Adequacy of an Alternative Forum

The second step in this analysis involves considerations

related to selection of an alternate forum.  A complaint is not

properly dismissed under the doctrine of *forum non conveniens*

unless a suitable alternate forum for the dispute exists.

Iragorri, 274 F.3d at 73; see Piper, 454 U.S. at 254 n.22.   The

movant bears the burden of demonstrating that an adequate

alternative forum exists. Bank of Credit and Commerce Int'l

(OVERSEAS) Ltd. v. State Bank of Pak., 273 F.3d 241 248 (2d Cir.

2001). "'An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.'" Norex, 416 F.3d at 157 (quoting Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003)).

Schroders contends that the courts of Germany present an adequate alternative forum and that this case should be tried there. BlackRock disputes the adequacy of the forum that German courts provide, apparently on the basis that German procedure does not permit for expedited discovery. BlackRock maintains that it requires expedited discovery for its application for a preliminary injunction. BlackRock's argument is unpersuasive.

"'An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.'" Norex, 416 F.3d at 157 (quoting Pollux, 329 F.3d at 75). Implicit in a finding that an alternative forum permits litigation of the subject matter of the dispute is "a finding that the foreign jurisdiction is as presently capable of hearing the merits of the plaintiff's claim . . . as the United States court where the case is pending," Norex, 416 F.3d at 159, and that the alternative forum offers a remedy that is not "clearly unsatisfactory," Piper, 454 U.S. at 254 n.22. The possibility of a difference in substantive law between the forums "should

16

ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." Piper, 454 U.S. at 247.

Schroders has represented to this Court that it will consent to the personal jurisdiction of the courts in Germany. (Trust Decl. ¶ 15.)   Thus Schroders is amenable to service of process in Germany, and BlackRock does not dispute this.

It is also not disputed that German courts will permit the litigation of BlackRock's claims.   Rather, BlackRock argues that German courts cannot provide a satisfactory remedy to BlackRock because a timely preliminary injunction — the remedy it seeks foremost — is not available to it in a German court. (See Hr'g Tr. 22:14-16 ("[T]he needs that BlackRock has turned to this Court for . . . is ultimately a preliminary injunction.").) BlackRock argues that a preliminary injunction will not be available to it without expedited discovery. (See Pl.'s Opp. at 23.)   In essence, BlackRock argues that without the sort of expedited discovery sometimes permitted by United States courts, it will not be able to prevail in an application to a German court for a preliminary injunction. (Id.)

Initially, the Court notes that German courts are empowered to issue preliminary injunctions in civil matters. (See Driver-Polke Decl. ¶ 7.5 (citing Zivilprozessordnung § 916 et seq.).) Further, it is not in dispute that BlackRock's underlying claims

17

can be litigated in German courts.  In fact, as discussed below,

most of the claims arise out of German law.

What is more, it is clear that "the unavailability of

beneficial litigation procedures similar to those available in

the federal district courts does not render an alternative forum

inadequate." Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d

974, 982 (2d Cir. 1993) (citing Borden, Inc. v. Meiji Milk

Products Co., Ltd., 919 F.2d 822, 829 (2d Cir. 1990)); see also

Panama Processes, S.A. v. Cities Service Co., 650 F.2d 408, 415,

416 (2d Cir. 1981) (Kearse, J.) (affirming dismissal over

dissent's objection that no discovery would be available to

plaintiff in the alternative forum); Potomac Capital Inv. Corp.

v. K.L.M., 97 Civ. 8141, 1998 U.S. Dist. LEXIS 2343, 1998 WL

92416, at *5 (S.D.N.Y. Mar. 4, 1998) ("[W]ere a forum considered

inadequate merely because it did not provide for federal style

discovery, few foreign forums could be considered 'adequate'—

and that is not the law.").  For this reason, courts in this

District have repeatedly found Germany to be an adequate

alternative forum despite the differences in discovery

procedures. See, e.g., Kirch, 2006 U.S. Dist. LEXIS 82175, at

**19-21; Fagan v. Deutsche Bundesbank, 438 F. Supp. 2d 376, 382

(S.D.N.Y. 2006); NCA Holding Corp v. Norddeutsche Landesbank

Girozentrale, 96 Civ. 9321 (LMM), 1999 U.S. Dist. LEXIS 817,

1999 WL 39539, at *2 (S.D.N.Y. Jan. 28, 1999) ("That the German

18

legal system is different than that of the United States does not render Germany an inadequate forum."); Opert v. Schmid, 535 F. Supp. 591 (S.D.N.Y. 1982).

Furthermore, the sort of expedited discovery that BlackRock argues is unavailable in German courts is not necessarily available in this forum. Rather, it is available only at the district court's sound discretion. See Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 326 (S.D.N.Y. 2005). Courts in this district apply one of two tests to determine whether the expedited discovery is appropriate. Depending on the test the court applies, the party requesting expedited discovery must either satisfy a four-part test similar to the standard for a preliminary injunction, see Notaro v. Koch, 95 F.R.D. 403, 405 n.4 (S.D.N.Y. 1982), or demonstrate that it has "good cause" for its request and that the request is reasonable in light of the circumstances, see Ayyash, 233 F.R.D. at 327. This Court has not granted BlackRock's application for an order granting expedited discovery. Thus, the inadequacy BlackRock perceives in German courts does not necessarily distinguish the alternative forum from the present forum.

For these reasons, this Court agrees with the many other courts in this district that have found the courts of Germany to provide an adequate forum.

19

## IV.  Private and Public Interest Factors

Once a court has determined the degree of deference due a plaintiff's choice of forum and satisfied itself that an alternate forum exists, it must weigh two sets of factors to determine whether adjudication is more appropriate in the present forum or the alternative forum. See Pollux, 329 F.3d at 75.  The first set of factors concerns the private interests of the litigants. See Iragorri, 274 F.3d at 73.  In considering these factors, the district court weighs the hardships the defendant will face if jurisdiction is retained in the present forum against the hardships plaintiff will face if the motion to dismiss is granted. Pollux, 329 F.3d at 75.  The court must also weigh the public interest factors of justice and court efficiency. Alcoa Steamship Co. v. M/V Nordic Regent, 654 F.2d 147, 151 (2d Cir. 1978) (en banc).  In short, "[t]he action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." Iragorri, 274 F.3d at 74-75.

### A.  Private Interest Factors

The private interest factors address the convenience to the litigants.  These factors include

"the relative ease of access to sources of proof;
availability of compulsory process for attendance of
unwilling, and the cost of obtaining attendance of
willing, witnesses; possibility of view of premises,
if view would be appropriate to the action; and all

20

        other practical problems that make trial of a case
        easy, expeditious and inexpensive."

Iragorri, 274 F.3d at 73-74 (quoting Gilbert, 330 U.S. at 508).

While analyzing these factors, a district court weighs the

difficulties a defendant would suffer if the dispute were

adjudicated in the present forum against the difficulties a

plaintiff would face if the case were dismissed and the

plaintiff were thus forced to bring suit in an alternate forum.

See id. at 74.

        Two private interest factors strongly favor dismissal of

this case in favor of litigation in the courts of Germany.

These factors are the availability of compulsory process for

attendance of unwilling witnesses and the cost of obtaining

attendance of willing witnesses.  The other private interest

factors are not significant in this case.  The bulk of the non-

testimonial sources of proof in this case is documentary, and

largely electronic, and thus is readily transportable.  Further,

it appears that the documents are not concentrated in any one

geographic area.  Likewise, it appears that some documents are

in English and others in German and that translation will be

necessary regardless of forum.

        Compulsory process is unavailable in this forum for

attendance of most, if not all, of the unwilling witnesses in

this matter.  It is undisputed that the eight identified

                                21

witnesses for which BlackRock sought an order for expedited depositions cannot be compelled to appear at trial if it were to take place in New York. (See Order to Show Cause, Att. A, Apr. 20, 2007.)  Likewise, compulsory process is not available for Mr. Küssner, who is perhaps the single most important witness in this matter.[6]  Compulsory process is available in Germany for the witnesses who are residents of Germany, however. See NCA Holding Corp., 1999 U.S. Dist. LEXIS 817, at *6.

This matter could be tried without the live trial testimony of the unwilling witnesses.  However, so proceeding would be contrary to the policy of this Circuit.  Unwilling witnesses can be deposed pursuant to the Hague Evidence Convention, to which the United States, Germany, and the United Kingdom are all signatories. See Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555. Likewise, there are alternatives to live, in-person testimony at trial.  However, there is a preference in this Circuit for live trial testimony. See DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002).  This preference is even stronger in cases such as this one where the jury's ability to assess the credibility of the witnesses will be particularly important. See

---

[6] BlackRock assumes that Mr. Küssner and the other former employees of BlackRock Germany will appear willingly as witnesses on Schroders' behalf. This might well be the case.  However, the Court is unwilling to base its decision on a party's speculations about its adversary's litigation strategy and about non-party witnesses' intentions.

id.  Further, it would be undesirable to proceed in this matter
without the presence of Mr. Küssner given that, at its core,
this action concerns Mr. Küssner's alleged breach of contractual
obligations and violation of fiduciary duties. See Allstate Life
Ins. Co. v. Linter Group, Ltd., 994 F.2d 996, 1001 (2d Cir.
1993) (unavailability of key witnesses is a factor favoring
dismissal on the grounds of *forum non conveniens*.)  Thus, this
factor favors dismissal of the complaint in favor of litigation
in the courts of Germany.

     The cost of obtaining attendance of willing witnesses also
favors dismissal in favor of litigation in Germany.  Most of the
witnesses involved in this matter are in Germany or the United
Kingdom.  Indeed, the only witnesses in New York are two of
BlackRock's lawyers and a member of BlackRock's management
committee, and it appears from the affirmations of these New
York witnesses that they have no information pertaining to
Schroders' alleged torts. (See Connolly Aff., Kushel Aff.,
Oliner Aff.)  Any of the European witnesses willing to appear
would need to be transported to New York.  With a trial in
Germany, transport of English witnesses would be considerably
less costly, in terms of time and money, and the transport of
German witnesses would, of course, not be an issue to consider.

In sum, the private interest factors that are of significance in this case decidedly favor dismissal in favor of adjudication in Germany.

### B.   Public Interest Factors

The Court now turns to those considerations of the *forum non conveniens* inquiry that protect the public's interest. These factors include (1) the consideration that jurors should not be obligated to decide disputes with no relation to their community; (2) the fact that where a case affects many people, a forum that allows those affected to view the suit, rather than learn of it by report from a foreign forum, is preferable; (3) the forum's local interest in having its own controversies decided at home; and (4) the potential pitfalls that stem from a diversity case being heard in a foreign forum that must resolve conflicts of law and substantive law problems, rather than a forum familiar with the state law to be applied to the case.[7] Gilbert, 330 U.S. at 508-09; Iragorri, 274 F.3d at 74.

As previously noted, this case is at heart a German one. The application of Gilbert's public interest factors reflects this and weighs further in favor of dismissal. New York jurors

---

[7] Gilbert also specifies administrative difficulties resulting from court congestion as a public factor consideration. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947). This consideration is not presently applicable in this District, however. Cf. Guidi v. Inter-Continental Hotels Corp., 224 F.3d 142, 147 (2d Cir. 2000) ("the recent filling of all judicial vacancies and the resulting full complement of judges for the District makes this concern of little or no present significance").

24

have no connection to this German dispute and should not be burdened with the duty of finding the facts of this case. Likewise, to the extent this case touches on the affairs of other people, those people are in Germany, not New York, further supporting trial in Germany rather than in the Southern District of New York.

Of greater significance is Germany's interest in having this case decided in Germany.  This case implicates issues such as German competition law (see Driver-Polke Decl. ¶ 3.1), German employment law (see id. at ¶ 6.3), and German privacy law (see id. at ¶ 7.1), which are clearly of interest to Germany. See Allstate, 994 F.2d at 1002 (government has a strong interest in enforcing its own laws); Kirch, 2006 U.S. Dist. LEXIS 82175, at *30 (forums have an interest in applying their own laws). Further, to the extent these concerns appear in procedural or evidentiary contexts, they may be completely ignored by a court in this district, even if the district court applies German law. For example, BlackRock's review and use of Mr. Küssner's e-mails may violate German criminal statutes and the German Constitution. (Id. at ¶ 7.1.)  Accordingly, a German court might exclude such evidence. (Id. at ¶ 7.1-7.2.)  However, a district court sitting in diversity jurisdiction could well find that such an exclusionary rule is evidentiary and, accordingly, not applicable. See, e.g., L-3 Communications Corp. v. OSI Systems,

25

Inc., 02 Civ. 9144 (PAC), 2006 U.S. Dist. LEXIS 19686, at **54-
55, 2006 WL 988143, *17 (S.D.N.Y. Apr. 11, 2006) (Federal courts
apply the Federal Rules of Evidence without regard for the Erie
doctrine).

Finally, as indicated, trial in this forum would likely
require the application of German law.  The likelihood that the
present forum would have to apply a foreign jurisdiction's law
"lends weight to the conclusion that the suit should be
prosecuted in that jurisdiction." Calavo Growers of Cal. v.
Generali Belg., 632 F.2d 963, 967 (2d Cir. 1980).  Inherent in
the application of foreign law is the risk of the
misunderstanding or misapplication of the foreign law.  In the
words of Judge Friendly,

> try as we may to apply the foreign law as it comes to
> us through the lips of the experts, there is an
> inevitable hazard that, in those areas, perhaps
> interstitial but far from inconsequential, where we
> have no clear guides, our labors, moulded by our own
> habits of mind as they necessarily must be, may
> produce a result whose conformity with that of the
> foreign court may be greater in theory than it is in
> fact.

Conte v. Flota Mercante Del Estado, 277 F.2d 664, 667 (2d Cir.
1960).

A court in this forum would likely apply German law to this
case.  Further, although a definitive determination that German
substantive law applies to this case would be premature, the
mere need to "untangle problems in conflict of laws" is part of

26

the Court's consideration in evaluating the public interest

factors. Peregrine Myanmar v. Segal, 89 F.3d 41, 47 (2d Cir.

1996).  As a general matter, a district court sitting in

diversity jurisdiction applies the choice of law rules of the

state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg.

Co., 313 U.S. 487, 496 (1941); Lee v. Bankers Trust Co., 166

F.3d 540, 545 (2d Cir. 1999).  In this respect, it is worth

noting that, when faced with a conflict of tort laws, New York

courts apply an "interest analysis" to determine which

jurisdiction's law will apply. Stichting Ter Behartiging Van De

Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l

B.V. v. Schreiber, 407 F.3d 34, 50 (2d Cir. 2005) (quoting

Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 521 (1994)).

Where, as is the case here, the laws in question regulate

conduct, courts in New York will usually apply the law of the

place of the tort. Lee, 166 F.3d at 545.  As previously

discussed, the actions giving rise to BlackRock's complaint

occurred largely in Germany.  However, in New York, the first

step in a choice of law analysis is to determine whether an

actual conflict of laws exists. Curley v. AMR Corp., 153 F.3d 5,

12 (2d Cir. 1998); In re Allstate Ins. Co. (Stolarz), 613 N.E.2d

936, 937 (N.Y. 1993) (Kaye, C.J.).  The Court is not now in the

position to determine if an actual conflict exists and,

accordingly, notes that it appears that German law will likely

27

apply rather than holding so.  However, "the likelihood that [foreign] law would govern in turn lends weight to the conclusion that the suit should be prosecuted in that jurisdiction." Calavo Growers, 632 F.2d at 967.

In sum, the private factors strongly favor dismissal of this case in favor of trial in Germany, and public factors overwhelmingly favor dismissal in favor of trial in Germany. The Court would have found this even if granting the plaintiff's selection of forum maximum deference.  Dismissal is warranted, a fortiori, in light of the reduced deference the plaintiff's selection of forum is entitled to in this case.


**CONCLUSION**

For the reasons set for herein, Schroders' motion to dismiss BlackRock's action is hereby GRANTED on the grounds of forum non conveniens.

**SO ORDERED.**

**New York, New York**

May **30**, 2007

Peter K. Leveno

U.S.D.J.